Karen M. Wahle (KW 0716)
Robert M. Stern (RS 3005)
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
Tel:  (202) 383-5300
Fax:  (202) 383-5414

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GARY WYATT and DOV FRISHBERG, | Civil Action No. 07 Civ. 7249 (ECF Matter) |
| Plaintiffs, | |
| v. | Judge Harold Baer |
| PRICEWATERHOUSECOOPERS LLP., RETIREMENT PLAN FOR EMPLOYEES OF PRICEWATERHOUSECOOPERS LLP, and RETIREMENT BENEFIT ACCUMULATION PLAN FOR EMPLOYEES OF PRICEWATERHOUSECOOPERS LLP, | |
| Defendants. | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(c)

Defendants PricewaterhouseCoopers LLP, the Retirement Plan for Employees of

PricewaterhouseCoopers LLP, and the Retirement Benefit Accumulation Plan for Employees of

PricewaterhouseCoopers LLP respectfully submit this memorandum in support of their motion

for judgment on the pleadings, seeking dismissal of Plaintiffs' Class Action Complaint

("Compl.") [Dkt. #1] pursuant to Fed. R. Civ. P. 12(c).

# <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

INTRODUCTION ................................................................................................................. 1

CLAIMS AND FACTS ALLEGED ...................................................................................... 2

   A.  Plaintiffs' Employment History.................................................................................2

   B.  The Merger of C&L and PW and their Pension Plans..........................................................3

   C.  The Complaint and Plaintiffs' Claim .................................................................................4

ARGUMENT ......................................................................................................................... 5

   I.  JUDGMENT ON THE PLEADINGS STANDARD OF REVIEW...................................5

   II.  PLAINTIFFS LACK STANDING UNDER ERISA.........................................................6

   III.  THE SUCCESSOR EMPLOYER RULE DOES NOT SUPPORT PLAINTIFFS' CLAIM TO VESTED BENEFITS .........................................................................................10

      A.  Plaintiffs' Non-Vested Accrued Benefits Were Properly Forfeited ............................ 11

      B.  The "Successor Employer Rule" Does Not Require Defendants to Retroactively Recognize Plaintiffs' Previously Forfeited Benefits With C&L and PW............................ 14

   IV.  PLAINTIFFS SEEK IMPERMISSIBLE MONEY DAMAGES ......................................19

   V.  PLAINTIFFS' CLAIM IS TIME-BARRED ....................................................................23

CONCLUSION.......................................................................................................................25

# TABLE OF AUTHORITIES

**Page**

## Cases

*Achtman v. Kirby, Mcinerney & Squire*, LLP, 464 F.3d 328 (2d Cir. 2006)....................................5

*Alessi v. Raybestos-Manhattan Inc.*, 451 U.S. 504 (1981) .............................................16

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ........................................................5

*Calhoon v. TWA, Inc.*, 400 F.3d 593 (8th Cir. 2005).....................................................21

*Callery v. United States Life Ins. Co*., 392 F.3d 401 (10th Cir. 2004) .........................................21

*Campanella v. Mason Tenders' Dist. Council Pension Plan*, 299 F. Supp. 2d 274 (S.D.N.Y. 2004) ..................................................................................................23

*Carey v. IBEW Local 363 Pension Plan*, 201 F.3d 44 (2d Cir. 1999)...........................................24

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care*, 433 F.3d 181 (2d Cir. 2005) ..................................................................................7

*Chayoon v. Chao*, 355 F.3d 141 (2d Cir. 2004)...............................................................6

*Connecticut v. Physicians Health Servs. of Conn., Inc.*, 287 F.3d 110 (2d Cir. 2002)...................6

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991) ...........................................5

*Crosby v. Bowater Inc. Retirement Plan*, 382 F.3d 587 (6th Cir. 2004) ................................21, 22

*Dickerson v. Feldman*, 426 F. Supp. 2d 130 (S.D.N.Y. 2006) ....................................................9

*DiGiacomo v. Teamsters Pension Trust Fund*, 420 F.3d 220 (3d Cir. 2005)...............................11

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989)....................................................7, 8

*Fisher v. Penn Traffic Co.*, No. 06 Civ. 5848 (HB), 2007 U.S. Dist. LEXIS 10708 (S.D.N.Y. Feb. 16, 2007) ....................................................................................................22

*Franchise Tax Bd. v. Constr. Laborers Vacation Trust*,  463 U.S. 1 (1983)..................................6

*Freytag v. Commissioner*, 501 U.S. 868 (1991) ...........................................................18

*Gerosa v. Savasta & Co.*, 329 F.3d 317 (2d Cir. 2003)..........................................................20, 23

*Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002).......................19, 20, 22, 23

Guilbert v. Gardne*r*, 480 F.3d 140 (2d Cir. 2007)........................................................24

*Halpert Enters.  v. Harrison*, No. 06-civ-2331 (HB), 2007 U.S. Dist. LEXIS 9769 (S.D.N.Y. Feb. 14, 2007) ....................................................................................................7

*In re J.P. Morgan Chase Cash Balance Litig.*, 242 F.R.D. 265 (S.D.N.Y. 2007)...........8, 9, 10, 21

*In re Marsh ERISA Litig.*, No. 04 Civ. 8157 (SWK), 2006 U.S. Dist. LEXIS 90631 (S.D.N.Y. Dec. 14, 2006)..................................................................................................22

*Joseph v. New Orleans Elec. Pension & Retirement Plan*, 754 F.2d 628 (5th Cir. 1985) .............9

# TABLE OF AUTHORITIES

**Page**

*Kishter v. Principal Life Ins. Co.*, 186 F. Supp. 2d 438 (S.D.N.Y. 2002) ....................................23

*Kuntz v. Reese*, 785 F.2d 1410 (9th Cir. 1986)...................................................................................9

*Leyse v. Domino's Pizza LLC*, No. 04 Civ. 2411, 2004 WL 1900328 (S.D.N.Y. Aug. 24, 2004) .........................................................................................................................................6

*Litwin v. American Express Co.*, 838 F. Supp. 855 (S.D.N.Y. 1993 ...........................................18

*McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 320 F.3d 151 (2d Cir. 2003) ..................................................................................................................................11, 17

*McLeod v. Oregon Lithoprint, Inc.*, 102 F.3d 376 (9th Cir. 1996) ...............................................21

*Mertens v. Hewitt Assocs.*, 508 U.S. 248 (1993) ...................................................................19, 23

*Miles v. New York State Teamsters Conference Pension and Ret. Fund Employee Pension Benefit Plan*, 698 F.2d 593 (2d Cir. 1983)................................................................................23

*Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516 (3d Cir. 2007) ....................................................25

*Mitchell v. Mobil Oil Corp.*, 896 F.2d 463 (10th Cir. 1990) ...........................................................9

*Moser v. Pollin*, 294 F.3d 335 (2d Cir. 2002)..................................................................................6

*Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96 (2d Cir. 2005) ...........................................21, 23

*Pancotti v. Boehringer Ingelheim Pharms., Inc.*, No. 3:06cv1674 (PCD), 2007 U.S. Dist. LEXIS 51464 (D. Conn. July 14, 2007) .................................................................................22

*Pelosi v. Schwab Capital Mkts., L.P.*, 462 F. Supp. 2d 503 (S.D.N.Y. 2006).............................22

*Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552 (1990) ....................................18

*Saladino v. I.L.G.W.U. Nat'l Ret. Fund*, 754 F.2d 473 (2d Cir. 1985).........................................7

*Schultz v. Texaco Inc.*, 127 F. Supp. 2d 443 (S.D.N.Y. 2000)......................................................25

*Sereboff v. Mid Atl. Med. Servs.*, 126 S. Ct. 1869 (2006)............................................................20

*Shamoun v. Bd. of Trs., Liquor Salesmen's Union Local 2 Pension Fund*, No. 05-CV-5730 (SLT) (RER), 2007 U.S. Dist. LEXIS 62606 (E.D.N.Y. Aug. 23, 2007) ...............................22

*Shepley v. New Coleman Holdings Inc.*, 174 F.3d 65 (2d Cir. 1999) ...........................................17

*Sheppard v. Beerman*, 18 F.3d 147 (2d Cir. 1994) ........................................................................5

*Thomson v. Gaskill*, 315 U.S. 442 (1942)......................................................................................6

*Wachtell, Lipton, Rosen & Katz v. Commissioner*, 26 F.3d 291 (2d Cir. 1994)...........................17

*West v. AK Steel Corp.*, 484 F.3d 395 (6th Cir. 2007)..................................................................23

*Wharton v. Duke Realty, LLP*, 467 F. Supp. 2d 381 (S.D.N.Y. 2006) .........................................22

*Wright v. SEC*, 112 F.2d 89 (2d Cir. 1940)...................................................................................18

<u>**TABLE OF AUTHORITIES**</u>

<u>**Page**</u>

**Statutes**

ERISA § 203(a), 29 U.S.C. § 1053(a) ...................................................................8, 10

ERISA § 210(b)(1), 29 U.S.C. § 1060(b)(1)............................................... passim

ERISA § 3(25), 29 U.S.C. § 1002(25) ...........................................................................2

ERISA § 3(35), 29 U.S.C. § 1002(35) ...........................................................................2

ERISA § 3(7), 29 U.S.C. § 1002(7) ...............................................................................7

ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) .................................................8, 19

ERISA § 502(a), 29 U.S.C. § 1132(a) ...........................................................................6

ERISA §§ 3041-42, 29 U.S.C. §§ 1241-42 ..................................................................17

ERISA § 4069(b), 29 U.S.C. § 1369 ............................................................................15

I.R.C. § 414(a)(1), 26 U.S.C. § 414(a)(1).....................................................................14

## INTRODUCTION

Plaintiffs Gary Wyatt and Dov Frishberg bring this action to recover a windfall of pension benefits under two plans sponsored by Defendant PricewaterhouseCoopers LLP ("PwC"). They readily acknowledge that they never worked for PwC. Although they had short terms of employment for two separate predecessor firms of PwC in the 1980's and early 90's – Coopers & Lybrand L.L.P. and Price Waterhouse LLP – they readily acknowledge that they failed to satisfy the minimum vesting standards under the pension plans sponsored by these companies during their employment. Nonetheless, Plaintiffs contend in this action that the 1998 formation of PwC from the merger of Plaintiffs' two prior employers served to revive their previously non-vested, forfeited benefits earned under each of these predecessor plans. They argue that these benefits must now be aggregated and recognized by the PwC-sponsored successor plans based on the "Successor Employer Rule" in ERISA § 210(b)(1), 29 U.S.C. § 1060(b)(1).

Plaintiffs' Complaint is without merit and should be dismissed with prejudice on several grounds. The 1998 merger of Plaintiffs' two prior employers – occurring years after Plaintiffs terminated their employment from either firm – does not serve to magically revive previously forfeited accrued benefits. Nothing in ERISA § 210(b)(1), ERISA's legislative history, or the regulations require otherwise. Giving effect to Plaintiffs' novel theory would essentially re-write the employee benefit plans at issue and would impose limits on the application of ERISA's vesting and forfeiture provisions that are not present in the statute.

Because the Complaint presents this issue as a purely legal one, it can be decided by the Court solely on the pleadings. However, the Court may also dismiss the Complaint with prejudice on other grounds prior to reaching the merits. As a threshold matter, based on the clear

1

precedent of this Court, Plaintiffs lack standing to assert any claim under ERISA because they are not "participants" in either of the two pension plans under which they seek benefits.  Even if Plaintiffs had standing under ERISA to maintain this action, their claim is legally deficient because it does not seek permissible relief under ERISA.  Finally, the Complaint should also be dismissed because Plaintiffs' claim is barred by the applicable statute of limitations.

## CLAIMS AND FACTS ALLEGED

**A.    Plaintiffs' Employment History**

The two Plaintiffs in this matter share a similar employment history.  Each was employed for short periods during the 1984-1994 time frame by two separate and independent accounting firms:  (1) Coopers and Lybrand L.L.P. ("C&L"), and (2) Price Waterhouse LLP ("PW").  Specifically, Plaintiff Frishberg was employed by C&L from January 1984 to June 1986, and by PW from May 1987 to May 1991.  (Compl. ¶ 21.)  Plaintiff Wyatt was employed by C&L from October 1987 to February 1991, and by PW from February 1991 to July 1994.  (*Id*. ¶ 20.)  C&L and PW had no relationship to each other at those times.

During their respective terms of employment with C&L, Plaintiffs were participants in the Coopers & Lybrand Retirement Plan ("C&L Retirement Plan"), a defined benefit pension plan, as that term is defined by ERISA § 3(35), 29 U.S.C. § 1002(35), sponsored by C&L.  (*Id*. ¶¶ 22, 26.)  The C&L Retirement Plan contained a five-year vesting requirement (*id.* ¶ 22), meaning that a participant must accrue five years of vestable service before that participant's benefits become "nonforfeitable."  ERISA § 3(25), 29 U.S.C. § 1002(25).  Because neither Plaintiff had been employed by C&L for five years at the time of their termination of employment, neither satisfied the five-year vesting requirement under the C&L Retirement Plan.  (Compl. ¶¶ 22, 23.)

During their respective terms of employment with PW, Plaintiffs were participants in the Retirement Plan for Employees of Price Waterhouse LLP ("PW Retirement Plan"), a defined benefit pension plan sponsored by PW. (*Id*. ¶¶ 22, 28.) The PW Retirement Plan also contained a five-year vesting requirement. (*Id.* ¶ 22.) Because neither Plaintiff was employed for five years by PW at the time of their respective termination of employment from PW, neither satisfied the five-year vesting requirement under the PW Retirement Plan. (*Id*. ¶¶ 22, 23.)

Accordingly, as of their final day of employment at PW, which for Frishberg was in May 1991, and for Wyatt was in July 1994, neither Plaintiff had earned any vested (or nonforfeitable) benefit under either the C&L Retirement Plan or the PW Retirement Plan. (*Id.* ¶ 23.) Neither Frishberg nor Wyatt ever worked for C&L or PW – or their successor firm, PwC – again.

**B.     The Merger of C&L and PW and their Pension Plans**

On July 1, 1998, C&L and PW merged to form a new firm – PricewaterhouseCoopers LLP (Compl. ¶ 25.) As the new merged entity, PwC became the sponsor of both the C&L Retirement Plan and the PW Retirement Plan, the latter of which was renamed the Retirement Plan for Employees of PricewaterhouseCoopers LLP ("PwC Retirement Plan.") (*Id.* ¶¶ 25, 28.)

On July 1, 1999, approximately one year after its formation, PwC merged the C&L Retirement Plan with an already-existing PW "cash balance" pension plan, the Retirement Benefit Accumulation Plan of Price Waterhouse LLP,[1] and renamed the merged plan the Retirement Benefit Accumulation Plan of PricewaterhouseCoopers LLP ("PwC RBAP"). (*Id.* ¶ 26.)

Both the PwC Retirement Plan and the PwC RBAP exist today as pension plans

---

[1] Technically, the Retirement Benefit Accumulation Plan of Price Waterhouse LLP had been renamed the Retirement Benefit Accumulation Plan of PricewaterhouseCoopers LLP on July 1, 1998. Neither Plaintiff claims to ever have been a participant of the Retirement Benefit Accumulation Plan of Price Waterhouse LLP, which was not established until after both Plaintiffs terminated their employment at PW. (Compl. ¶ 24.)

sponsored by PwC.  It is from these two plans that Plaintiffs seek benefits, despite never having

vested in either plan nor ever having been employed by PwC.

**C.     The Complaint and Plaintiffs' Claim**

Plaintiffs filed this action on August 14, 2007, more than 13 years after the last of them

(Wyatt) left employment at PW and more than 9 years after the PwC merger.  Plaintiffs seek

benefits under the plans in which they participated during their respective employments at C&L

and PW (the C&L Retirement Plan and the PW Retirement Plan), which now exist as the PwC

RBAP and the PwC Retirement Plan, respectively.  Plaintiffs purport to represent a class of

former C&L and PW employees who share the same unique employment history:  individuals

who were employed by C&L prior to the July 1, 1998 merger but did not accrue sufficient

service to vest in the C&L Retirement Plan, *and* were also employed by PW prior to the July 1,

1998 merger but did not accrue sufficient service with PW to vest in the PW Retirement Plan,

but when their service at C&L and PW are combined, they would satisfying the five-year vesting

rule under the C&L Retirement Plan and PW Retirement Plan.  (Compl. ¶ 34.)  The Complaint

alleges that, despite the fact that Plaintiffs terminated from both C&L and PW with insufficient

service to vest in their accrued benefits, the 1998 merger of C&L and PW served to revive their

previously non-vested and forfeited benefits under each of the two plans in which they

participated.  Further, *when added together*, their terms of service at C&L and PW are sufficient

to vest them in the successor plans, despite never having worked for the successor firm.  (*Id.*

¶¶ 29, 32.)

Plaintiffs acknowledge that they find no support for this argument under the terms of the

plans themselves.  Indeed, they argue that they need not exhaust the plans' administrative

remedies because their claim is a "statutory" claim.  (*Id.* ¶ 30.)  Rather than relying on the terms

of the plans, which clearly do not support their argument, Plaintiffs instead argue that the

"Successor Employer Rule" in ERISA § 210(b)(1) requires Defendants to revive and recognize

their previously forfeited accrued benefits earned at C&L and PW.  (*Id*. ¶ 29.)[2]  For the reasons

below, Plaintiffs lack standing to assert these claims, which are themselves legally insufficient

and should be dismissed with prejudice.

## ARGUMENT

## I.    JUDGMENT ON THE PLEADINGS STANDARD OF REVIEW

In a judgment on the pleadings under Fed. R. Civ. P. 12(c), a court applies the same

standard as that applicable in a motion under Fed. R. Civ. P. 12(b)(6).  *See Sheppard v. Beerman*,

18 F.3d 147, 150 (2d Cir. 1994).  A complaint should be dismissed where it fails to plead

"enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*,

127 S. Ct. 1955, 1974 (2007).  "[A] plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right

to relief above the speculative level . . . ."  *Id*. at 1964-65 (internal quotation marks omitted).

Where a plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible,

[his] complaint must be dismissed."  *Id*. at 1974.  In assessing the legal sufficiency of a claim, a

court need not accept legal conclusions or characterizations contained in the complaint.  *See*

*Achtman v. Kirby, Mcinerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006).

In reviewing a motion under Fed. R. Civ. P. 12(c), a court may consider outside materials

either attached to the complaint or incorporated into the complaint by reference, as well as

materials upon which the complaint heavily relies, without converting the motion into a motion

---

[2] ERISA § 210(b)(1) is mirrored in Section 414(a)(1) of the Internal Revenue Code ("Code").  *See* I.R.C.
§ 414(a)(1).

for summary judgment. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir. 1991). Here, Defendants submit to the Court the governing plan documents of the plans at issue in this action as exhibits to the Declaration of Robert Nacron ("Nacron Decl.").

To survive a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) (including lack of standing), "the plaintiff bears the burden of supporting [his jurisdictional] allegations by competent proof." *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942); *see also Chayoon v. Chao*, 355 F.3d 141, 143 (2d Cir. 2004). Courts will not credit conclusory allegations or conclusions of law, and "argumentative inferences favorable to the pleader will not be drawn." *Leyse v. Domino's Pizza LLC*, No. 04 Civ. 2411, 2004 WL 1900328, at *1 (S.D.N.Y. Aug. 24, 2004) (citation omitted). Additionally, when deciding a motion under Fed. R. Civ. P. 12(b)(1), a court is "free to consider materials extrinsic to the complaint" to resolve factual issues. *See Moser v. Pollin*, 294 F.3d 335, 339 (2d Cir. 2002).

## II.     PLAINTIFFS LACK STANDING UNDER ERISA

ERISA's civil enforcement scheme is set forth in ERISA § 502(a), 29 U.S.C. § 1132(a), which specifically authorizes claims by a participant, beneficiary, or fiduciary of an employee benefit plan. *See* 29 U.S.C. §§ 1132(a)(1)-(3).[3] If a plaintiff does not fit within the definition of these specifically enumerated parties, he does not have standing under ERISA to assert his claims. *See, e.g., Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27 (1983) ("ERISA carefully enumerates the parties entitled to seek relief under [§ 502(a)(3)]; it does not provide anyone other than participants, beneficiaries, or fiduciaries with an express cause of action."); *Connecticut v. Physicians Health Servs. of Conn., Inc.*, 287 F.3d 110, 112 (2d Cir. 2002) ("[P]arties other than those explicitly named therein – plan participants, beneficiaries, and

---

[3] ERISA § 502(a) also authorizes suits by the Secretary of Labor or a State in certain circumstances. *See* 29 U.S.C. § 1132(a).

fiduciaries – may not bring suit."). If a plaintiff lacks standing, the court lacks subject matter jurisdiction to hear his claim, which must be dismissed. *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care*, 433 F.3d 181, 198 (2d Cir. 2005) (without standing, "a federal court has no subject matter jurisdiction to hear the merits" of a claim).

Here, Plaintiffs acknowledge that they left C&L and PW prior to satisfying the vesting requirements of the pension plans in which they participated during their employment with those firms. (Compl. ¶ 23.) They do not allege that they are, were, or ever will be employed by PwC. Nevertheless, Plaintiffs contend that they are current "participants" in their two former plans, as well as in the two PwC-sponsored successor plans. (*Id.* ¶¶ 6-8, 23.) Of course, the Court need not credit this legal conclusion. *See Halpert Enters. v. Harrison*, No. 06-civ-2331 (HB), 2007 U.S. Dist. LEXIS 9769, at *11 (S.D.N.Y. Feb. 14, 2007) ("[L]egal conclusions masquerading as factual conclusions" will not be accepted as true) (citation and quotation omitted); *see also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989) ("To say that a 'participant' is any person who claims to be one begs the question of who is a 'participant' and renders the definition set forth in [ERISA] superfluous."). Based on the facts pled in the Complaint, Plaintiffs clearly do not have any colorable claim to vested benefits under this Court's precedent.

ERISA defines "participant" as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan." ERISA § 3(7), 29 U.S.C. § 1002(7). The Supreme Court, in *Firestone*, further clarified the meaning of this provision as it applies to a "former employee," holding that the term "participant" includes "former employees who have . . . a reasonable expectation of returning to covered employment or who have a colorable claim to vested benefits." 489 U.S. at 117 (quoting *Saladino v. I.L.G.W.U. Nat'l Retirement Fund*, 754 F.2d 473, 476 (2d Cir. 1985)).

Plaintiffs do not allege that they have a reasonable expectation of returning to covered employment.  Therefore, they must have a "colorable claim to vested benefits" in order to establish standing.

To establish a "colorable claim to vested benefits" under the *Firestone* test, Plaintiffs must demonstrate that they have a "colorable claim that (1) [they] will prevail in a *suit for benefits*, or that (2) eligibility requirements will be fulfilled in the future."  *Firestone*, 489 U.S. 117-18 (emphasis added).  Plaintiffs expressly state that they are *not* asserting any claim for benefits under the terms of an ERISA plan through the cause of action provided in ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) (Compl. ¶ 30),[4] nor do they allege that they will become eligible for benefits in the future.  As this Court has held in a highly analogous case, a former employee who received a distribution of all benefits to which he is entitled under a plan at termination does not have a colorable claim to vested benefits, and thus does not have standing under ERISA.  *See In re J.P. Morgan Chase Cash Balance Litig.*, 242 F.R.D. 265, 271 (S.D.N.Y. 2007), *mot. for reconsideration denied*, No. 06-civ-732 (HB), 2007 U.S. Dist. LEXIS 54829 (S.D.N.Y. July 31, 2007).  The same result should apply here.

The plaintiffs in *J.P. Morgan* also claimed to be participants in a defined benefit pension plan.  Exactly like Plaintiffs here, they did not claim entitlement to benefits under the terms of the plan at issue, but rather argued that the terms of that plan "created an impermissible forfeiture of accrued benefits in violation of ERISA § 203(a)."  242 F.R.D. at 269.[5]  Because they were former employees who had received a lump sum payment of their benefits under the plan and

---

[4] Suits for benefits are properly brought under ERISA § 502(a)(1)(B), which authorizes a plan participant to bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).

[5] Here, Plaintiffs claim that the plans "do not recognize Plaintiffs' service for C&L or their service for PW as service for PwC [causing] Plaintiffs . . . to forfeit nonforfeitable accrued benefits in violation of . . . ERISA § 203."  (Compl. ¶ 4.)

could not claim that they were entitled to additional benefits under the plan's terms, the Court

concluded that they did not have a colorable claim to vested benefits. Consequently, "any relief

that [they] may be entitled to in the event Plaintiffs were to prevail would be a damage award,

not benefits, and thus, they fall without the statute and without standing." *Id*. at 271-72.

> The Court further stated:

>> Plaintiffs contend that Aldoroty and Schomaker are plan participants because
>> their lump sum payments were calculated under an illegal plan and thus, under
>> a reformed plan, they are entitled to additional benefits. Plaintiffs point to
>> miscalculation cases where courts have found that a former employee has
>> standing if their lump sum payment was *miscalculated under the terms of the
>> plan*, but that is not our case. There, the former employee was still "eligible to
>> receive benefits" under the plan because *calculation of benefits under the
>> terms of the plan was challenged*, not the plan itself.

*Id*. at 271 (emphasis added); *see also Kuntz v. Reese*, 785 F.2d 1410, 1411 (9th Cir. 1986) ("[A]s

former employees whose vested benefits under the plan have already been distributed in a lump

sum, [they] were not 'eligible to receive a benefit,' and were not likely to become eligible to

receive a benefit . . . . Because, if successful, the plaintiffs' claim would result in a damage

award, not in an increase of vested benefits, they are not plan participants.").[6]

Plaintiffs in this case are in an identical legal position as the *J.P. Morgan* plaintiffs in that

they have received all benefits to which they were entitled at the time of their termination of

employment with C&L and PW. Specifically, Plaintiffs here readily admit that, at the time of

their termination of employment from C&L and PW, they *had* no vested benefits under the C&L

Retirement Plan or the PW Retirement Plan. (Compl. ¶ 23 ("[N]either Plaintiff had sufficient

---

[6] *See also Dickerson v. Feldman*, 426 F. Supp. 2d 130, 135-36 (S.D.N.Y. 2006) (holding that plaintiff who received
a distribution to all benefits to which he was entitled under the plan lacked standing under ERISA); *Mitchell v.
Mobil Oil Corp.*, 896 F.2d 463, 474 (10th Cir. 1990) (noting that the definition of participant "excludes . . . former
employees who have received a lump-sum payment of all their vested benefits because 'these erstwhile participants
have already received the full extent of their benefits and are no longer eligible to receive future payments.'")
(citation omitted); *Joseph v. New Orleans Elec. Pension & Retirement Plan*, 754 F.2d 628, 630 (5th Cir. 1985)
("['Participant'] excludes retirees who have accepted the payment of everything due them in a lump sum, because
[they] have already received the full extent of their benefits and are no longer eligible to receive future payments.").

service with C&L or PW to become vested under the terms of the C&L Retirement Plan or the PW Retirement Plan").)  Like the *J.P. Morgan* plaintiffs, Plaintiffs here do not seek benefits under the plans' terms – indeed, they argue that exhaustion of the plans' remedies is "not required" because they raise "statutory claims involving the interpretation of ERISA" rather than an "interpretation of any plan."  (*Id.* ¶ 30.)  Therefore, Plaintiffs have received all benefits to which they were entitled – none – after they terminated their respective employment with C&L and PW.  Like the plaintiffs in *J.P. Morgan*, Plaintiffs here argue that "their [benefits] were calculated under an illegal plan and thus, under a reformed plan, they are entitled to additional benefits."  *J.P. Morgan*, 242 F.R.D. at 271.  As in *J.P. Morgan*, any relief to which Plaintiffs may be entitled if they were to prevail in this case would be an award of *damages*, not vested benefits.  *See id.*  Accordingly, under this Court's clear precedent, such an argument is simply insufficient to establish standing.

Because Plaintiffs are not "participants" within the meaning of ERISA § 3(7), they lack standing to assert their claims, and the Complaint should be dismissed with prejudice.

## III. THE SUCCESSOR EMPLOYER RULE DOES NOT SUPPORT PLAINTIFFS' CLAIM TO VESTED BENEFITS

Even if Plaintiffs have standing to assert their claim, the Complaint should be dismissed because Defendants did not violate ERISA §§ 210(b)(1) or 203(a).  As Plaintiffs acknowledge in their Complaint, their accrued benefits did not vest under either the C&L Retirement Plan or the PW Retirement Plan (Compl. ¶ 23), and they have long since forfeited these benefits.  Contrary to Plaintiffs' assertion, this forfeiture of their nonvested, accrued benefits is wholly permissible under ERISA.  The Successor Employer Rule of ERISA § 210(b)(1) does not apply to Plaintiffs because PwC was never their "employer," as required by § 210(b)(1).  Furthermore, even if § 210(b)(1) applies, it cannot be read to require that previously forfeited benefits be somehow

revived.

### A.    Plaintiffs' Non-Vested Accrued Benefits Were Properly Forfeited

ERISA's vesting requirements in ERISA § 203(a) provide that an accrued benefit

becomes "nonforfeitable" once it has vested.[7]  As the Second Circuit has said, "vested" benefits

refer to those accrued benefits that a participant "is entitled to keep."  *McDonald v. Pension Plan*

*of the NYSA-ILA Pension Trust Fund*, 320 F.3d 151, 156 (2d Cir. 2003).  ERISA § 203 requires

that accrued benefits become vested once a participant has met certain minimum standards.

However, accrued benefits that have not become vested may be forfeited by the plan's terms

without running afoul of ERISA.  *See DiGiacomo v. Teamsters Pension Trust Fund*, 420 F.3d

220, 229-30 (3d Cir. 2005) ("Prior to vesting, accrued benefits can be . . . forfeited under the

terms of a participant's plan."), *cert denied*, 547 U.S. 1092 (2006).

As discussed below and consistent with these basic principles, Plaintiffs' benefits accrued

under the C&L Retirement Plan and the PW Retirement Plan never became vested and were

forfeited under the terms of those plans and their successor plans.

### 1.    Plaintiffs' Non-Vested Accrued Benefits Were Properly Forfeited Under the C&L Retirement Plan and the PwC RBAP

At the time of Plaintiffs' employment with C&L, the governing C&L Retirement Plan set

forth the following vesting and forfeiture provisions:

> [A] Member whose employment with the Firm terminates after May 31,
> 1975 other than by retirement in accordance with Article III or by death
> shall forfeit all rights to any retirement income unless such termination
> occurs after he has
>
> > (i)    completed an aggregate of five years of Service and has a
> > combined age and number of years of Service equal to at least
> > 45, or

---

[7] ERISA defines "nonforfeitable" as "a claim obtained by a participant or his beneficiary to that part of an immediate or deferred benefit under a pension plan which arises from the participant's service, which is unconditional, and which is legally enforceable against the plan."  ERISA § 3(19), 29 U.S.C. § 1002(19).

(ii)    completed an aggregate of ten years of Service.

(C&L Retirement Plan, As Amended and Restated Effective October 1, 1984 (attached as Ex. A

to Nacron Decl.), § 4.6(a).)  At the time of their termination of employment with C&L, Plaintiffs

Frishberg and Wyatt had only 2½ and 3 years of service at C&L, respectively, and thus did not

satisfy the C&L Retirement Plan's vesting requirements.  (Compl. ¶¶ 20-23.)

Effective July 1, 1999, the C&L Retirement Plan merged with the PwC RBAP, and the

merged plan was renamed the PwC RBAP.  (PwC RBAP (attached as Ex. B to Nacron Decl.), at

1-2.)  The terms of the PwC RBAP confirm that Plaintiffs' unvested benefit under the C&L

Retirement Plan was forfeited.  Article 6.1(b) of the PwC RBAP provides the following with

respect to a participant's forfeiture of accrued benefits upon his termination of employment:

> If a Participant terminates from employment . . .  he or she shall be vested
> and have a nonforfeitable right to his or her Accrued Benefit after having
> completed five (5) Years of Service . . . .  Upon a participant's termination
> from employment with the Employer . . . . the Accrued Benefit of a
> Participant who is not vested and to which the Participant does not have a
> nonforfeitable right shall be forfeited as of the last business day of the
> second calendar month following the calendar month in which the
> Participant's termination from employment occurs or in which the
> Participant ceases to be active . . . .

(PwC RBAP § 6.1(b).)

In addition, Article 6.1 of the PwC RBAP provides that if a participant incurs 5 or more

consecutive 1-year breaks-in-service, any pre-break service will be recognized for vesting

purposes only if "(1) such Participant has any nonforfeitable benefit at the time of separation

from service; or (2) upon returning to service the number of consecutive 1-year Breaks in

Service is less than the number of Years of Service."  (*Id.* § 6.1)  Neither Plaintiff returned to

service with C&L or with a successor company.  Accordingly, any benefits accrued by Plaintiffs

under the terms of the C&L Retirement Plan were properly forfeited under its terms.

12

2.    **Plaintiffs' Non-Vested Accrued Benefits Were Properly Forfeited Under the PW Retirement Plan and the PwC Retirement Plan**

Plaintiffs have also forfeited their accrued, non-vested benefits under the PW Retirement Plan.  Article 7.1 of the PW Retirement Plan in effect at the time of Plaintiff Frishberg's termination of employment with PW in May 1991 provides the following with respect to vesting:

> The vesting rules set forth in Paragraph 7.2 shall be applicable to the determination of a Terminated Participant's benefits under Paragraph 5.5A provided, however, that the entire accrued benefit determined under that paragraph shall be forfeited if the Terminated Participant has not had at least five years of Vestable Service.

(PW Retirement Plan, As Amended to July 1, 1985 (attached as Ex. C to Nacron Decl.), § 7.1.) Article 7.1 of the PW Retirement Plan in effect at the time of Plaintiff Wyatt's departure from PW in July 1994 contains identical language with respect to vesting.  (PW Retirement Plan, As Amended and Restated Effective July 1, 1994 (attached as Ex. D to Nacron Decl.), § 7.1.)  At the time of their termination of employment with PW, Plaintiffs Frishberg and Wyatt had accumulated only 4 and 3 years of service, respectively, and thus their accrued benefits under the PW Retirement Plan did not vest.  (Compl.  ¶¶ 20-23.)

After the C&L and PW merger on July 1, 1998, the PW Retirement Plan was renamed the PwC Retirement Plan.  This successor plan provides Plaintiffs no relief.  Like the PW Retirement Plan, the PwC Retirement Plan sets forth a 5-year "cliff" vesting schedule, which provides that a participant's "entire accrued benefits . . . shall be forfeited if the Terminated Participant has not had at least five years of Vestable Service."  (PwC Retirement Plan (attached as Ex. E to Nacron Decl.), § 7.1.)  In addition, Article 7.6(A) of the PwC Retirement Plan provides that "[a]ny portion of a Participant's accrued benefit that is not vested shall be forfeited by him under the Plan . . . [a]s of the last day of the Plan Year in which the Participant first incurs five consecutive Break-in Service years . . . ."  (*Id.* § 7.6(A); *see also* 1994 PW Ret. Plan § 7.6(A) (same).)

Neither Plaintiff ever returned to service with PW or with a successor company. Accordingly, any benefits accrued by Plaintiffs under the terms of the PW Retirement Plan were properly forfeited under its terms.

**B.    The "Successor Employer Rule" Does Not Require Defendants to Retroactively Recognize Plaintiffs' Previously Forfeited Benefits With C&L and PW**

Plaintiffs base this entire action on their contention that the Successor Employer Rule under ERISA § 210(b)(1) requires Defendants to retroactively recognize and aggregate their C&L and PW service to enable them to meet the vesting requirements of the PwC RBAP and the PwC Retirement Plan, despite the fact that any benefits they previously accrued were never vested and have long been forfeited, and despite the fact that they never worked for the successor firm, PwC. For the reasons explained below, such a reading of ERISA is untenable, and their claims should be dismissed.

**1.    Section 210(b)(1) Does Not Apply Because PwC Was Never the Plaintiffs' Employer**

ERISA § 210 provides that "[f]or purposes of this part [of ERISA], [i]n any case in which the *employer* maintains a plan of a predecessor *employer*, service for such predecessor will be treated as service for the *employer*." 29 U.S.C. § 1060(b)(1); *see also* I.R.C. § 414(a)(1) (same) (emphasis added). Plaintiffs incorrectly interpret this provision as requiring *all* service for any predecessor entity to be treated as service under the plans of a successor entity. But ERISA § 210(b)(1) does not apply to Plaintiffs at all because PwC was never their "employer," as required by that section.

ERISA § 210(b)(1) requires, under some circumstances, that an employer recognize its employees' service with a predecessor employer. This was intended to ensure that employees who worked for companies that were sold or merged would not have their benefit expectations

14

denied by a requirement that they essentially begin a new term of service to satisfy the plan's

minimum vesting requirements.  However, as both Plaintiffs admit, PwC at no time was their

employer.  ERISA § 210(b)(1) therefore has no role in the current situation.

It is clear that Congress did not intend to expand the scope of ERISA § 210(b)(1) beyond

employers.  This can be demonstrated by comparing ERISA § 210(b)(1) to another successor

provision of ERISA, § 4069(b), 29 U.S.C. § 1369.  ERISA § 4069(b) imposes certain obligations

on successors under ERISA's plan termination provisions.  ERISA § 4069(b) applies in a

number of contexts, such as a change in identity (ERISA § 4069(b)(1)), a liquidation into a

parent corporation (ERISA § 4069(b)(2)), and a merger or similar transaction (ERISA

§ 4069(b)(3)).  Importantly, ERISA § 4069(b) is not limited to "employers."  In each case,

ERISA § 4069(b) applies to the successor of a "person."   Had Congress meant for ERISA

§ 210(b)(1) to impose obligations on an entity that was never the "employer," ERISA §

210(b)(1) could have stated that a "person" that maintains the plan of a predecessor must credit

service with the predecessor.  Limiting the scope of ERISA § 210(b)(1) to "employers" insures

that legitimate expectations of employees are satisfied, without unduly expanding the scope of

ERISA § 210(b)(1)[8] and without providing unfair windfalls to individuals who were never

employees of the successor employer.

Importantly, Plaintiffs had no reasonable expectation during their respective employment

with either C&L or PW that they had a vested right to their accrued benefits, and thus the main

purpose of ERISA's vesting requirement and the Successor Employer Rule – to ensure that

participants receive their expected, anticipated benefits – is already met.  *See Alessi v. Raybestos-*

*Manhattan Inc.*, 451 U.S. 504, 510 (1981) (noting that ERISA's vesting rules ensure that "if a

---

[8]  As discussed below, expanding the scope of ERISA § 210(b)(1) as Plaintiffs suggest would subject plans to
unknowable contingent liabilities.

worker has been promised a defined pension benefit upon retirement – and if he has fulfilled whatever conditions are required to obtain a vested benefit – . . . he actually receives it.").

### 2.    Section 210(b)(1) Does Not Revive Previously Forfeited Benefits

Even if ERISA § 210(b)(1) can be said to apply to an entity that was never Plaintiffs' employer, that section does not revive Plaintiffs' previously forfeited benefits.  Plaintiffs' incorrect interpretation of ERISA § 210(b)(1) requires that *all* service for any predecessor entity be treated as service, disregarding the application of accrual, vesting and forfeiture rules in the plans and in ERISA.  Thus, say Plaintiffs, their terms of service for C&L and for PW must be added together to determine whether they can meet the successor plans' five-year vesting provision.  Under Plaintiffs' interpretation, their non-vested, previously forfeited benefits not only magically reappear but also become vested and nonforfeitable.

The interpretation of ERISA § 210 that Plaintiffs suggest would effectively read out of ERISA (and of defined benefit pension plans) its vesting and forfeiture provisions, since it would require successor employers to recognize non-vested, accrued benefits earned under a predecessor plan that had long ago been permissibly forfeited.  Indeed, benefits could *never* be considered forfeited under Plaintiffs' reading because the plan sponsor might merge with another former employer of that participant some years in the future, requiring all previously forfeited service to be recognized under ERISA § 210(b)(1).  Since it could not be predicted which participants might be affected, plans would be required to preserve all data of unvested participants indefinitely, in the event that some unpredictable merger would occur.  Moreover, since the Second Circuit applies ERISA's vesting requirements to pre-ERISA service under certain circumstances, *see McDonald v, Pension Plan of the NYSA-ILA Pension Trust Fund*, 320 F.3d 151, 159 (2d Cir. 2003), even service earned prior to 1976 may be revived under Plaintiffs'

16

interpretation of ERISA § 210.  Such an interpretation is not supported by ERISA, its legislative history or regulations, nor does it make sense.  There is no reason why Congress would seek to abrogate well-established forfeiture and vesting rules in a plan when the plan is later maintained by a successor.  Indeed, such an interpretation would harshly penalize successor companies who chose to maintain the plans of their predecessors, versus simply terminating those plans.

Such a reading of ERISA § 210 would also wreck havoc on the actuarial calculations required of all defined benefit pension plans to ensure that they maintain proper funding levels. In a defined benefit plan such as the PwC Retirement Plan, the employer contributes assets into a pool of funds from which predetermined benefits are paid.  *See Shepley v. New Coleman Holdings Inc.*, 174 F.3d 65, 68 (2d Cir. 1999) (discussing funding requirements of defined benefit plans).  A special type of "enrolled actuary" licensed by the Department of Treasury must calculate the contributions required over time to yield those fixed payments.  Therefore, the actuary must possess certain data to ensure that his calculation is as precise as possible, including the amounts and dates on which each benefit will be paid.  *See Wachtell, Lipton, Rosen & Katz v. Commissioner*, 26 F.3d 291, 293 (2d Cir. 1994) (discussing actuarial requirements under ERISA); *see also* ERISA §§ 3041-42, 29 U.S.C. §§ 1241-42 (putting forth requirements for enrolled actuary).  Included among this information is the actuary's calculation of present values of nonforfeitable benefits for participants and beneficiaries and actuarial assumptions and techniques used in determining such values, *id.* § 103(d).  It is not clear how the annual certification could be created under Plaintiffs' reading of § 210, since it would be impossible to identify nonforfeitable benefits.  *All* benefits might properly be considered nonforfeitable, since ERISA § 210 would suddenly force their vesting if the plan sponsor should merge with another of the participants' former employers.

Thus, as a matter of statutory interpretation, ERISA § 210 should not be read as requiring the abrogation of ERISA's vesting and forfeiture provisions. *See*, *e.g.*, *Freytag v. Commissioner*, 501 U.S. 868, 877 (1991) ("Our cases consistently have expressed 'a deep reluctance to interpret a statutory provision so as to render superfluous other provisions in the same enactment.'") (quoting *Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552 (1990)); *Wright v. SEC*, 112 F.2d 89, 95 (2d Cir. 1940) ("Under the most elementary principles of statutory construction [a statutory provision] must be so interpreted, if possible, as to be consistent with other provisions of the statute."). This is evident in the provision itself. Whereas ERISA § 210(a) clearly begins with the clause "[n]otwithstanding any other provision of this part or part 3 . . .", indicating that its requirements are to be applied regardless of what ERISA's other funding and accrual provisions may require, ERISA § 210(b) contains no such proviso.

The terms of the C&L Retirement Plan and the PW Retirement Plan make clear that accrued benefits of non-vested participants are forfeited. The enrolled actuaries of those plans would thus not consider the plans to have any benefit obligation to either Wyatt or Frishberg, would not have included their benefits in the totals of the nonforfeitable obligations of the plans, and would not have calculated those benefits as part of the plan's funding obligations. Plaintiffs should not now be entitled to a windfall of unexpected and unpromised benefits as a result of an unpredictable merger between the two sponsors of those plans in July 1998. *See Litwin v. American Express Co.*, 838 F. Supp. 855, 859 (S.D.N.Y. 1993) ("When a litigant would give a statute a meaning that yields absurd results, that is a fair indication that the statute doesn't mean what that litigant has suggested.").

Accordingly, the Court should reject Plaintiffs' argument that their C&L and PW service should be retroactively recognized and aggregated for vesting purposes under the Successor

Employer Rule, and the Complaint should be dismissed in its entirety.

## IV.    PLAINTIFFS SEEK IMPERMISSIBLE MONEY DAMAGES

Even assuming that Plaintiffs have standing, the Complaint should be dismissed because they do not seek permissible relief under ERISA. Although Plaintiffs fail to identify the particular ERISA civil enforcement provision under which they bring this action, they assert that they "raise statutory claims involving the interpretation of ERISA." (Compl. ¶ 30.) Plaintiffs therefore are not bringing this action under ERISA § 502(a)(1)(B), which allows a participant to bring an action to recover benefits under the terms of a plan, but rather under ERISA § 502(a)(3). That section allows plan participants to bring an action "*to obtain other appropriate equitable relief* (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." 29 U.S.C. § 1132(a)(3) (emphasis added). As applied here, the Complaint should be dismissed because Plaintiffs' requested remedy – an award of additional benefits under the PwC RBAP and PW Retirement Plan which Defendants allegedly caused to be forfeited in violation of ERISA – does not constitute "equitable relief" under Supreme Court and Second Circuit law.

The Supreme Court has repeatedly interpreted the relief provisions of ERISA § 502(a)(3) narrowly, holding that "other appropriate equitable relief" excludes monetary relief and includes only those types of relief that were typically available in equity, such as injunction, mandamus, and restitution. *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002); *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255-56, 258-59 & n.8 (1993). Legal relief, such as the monetary "make whole" relief requested here, is therefore unavailable under ERISA. *Mertens*, 508 U.S. at 255. In *Great-West*, the Supreme Court further clarified that an order to pay money will constitute "equitable" relief only in very limited circumstances where it may be considered "equitable restitution" – that is, "to restore to the plaintiff particular funds or property in the

defendant's possession" that rightfully belong to the plaintiff. 534 U.S. at 214. On the other hand, an action seeking to establish personal liability against the defendant and requiring it to pay damages from its assets does *not* constitute "equitable relief." *Id.*; *accord Sereboff v. Mid Atl. Med. Servs.*, 126 S. Ct. 1869, 1874 (2006) (holding requested relief was equitable because it sought reimbursement through an equitable lien on a specifically identified fund and not on defendant's assets generally). Here, Plaintiffs do not seek to recover any specifically identifiable fund or property that they transferred to Defendants; they are simply seeking money damages. As the Supreme Court has emphasized, suits that seek to "compel the defendant to pay a sum of money to the plaintiff" are "[a]lmost invariably . . . suits for 'money damages' . . . since they seek no more than compensation for loss resulting from the defendant's breach of a legal duty." *Great-West*, 534 U.S. at 210.

Following this clear precedent, the Second Circuit has held on numerous occasions that requests to pay money damages, including requests to make a plaintiff whole for a defendant's alleged ERISA violation, are unavailable under ERISA § 502(a)(3). For example, in *Gerosa v. Savasta & Co.*, 329 F.3d 317 (2d Cir. 2003), the Second Circuit rejected plaintiffs' request for an "order directing 'defendants to reimburse the plaintiffs for the shortfall the Pension Fund will experience as a result of defendants' violation of their duties under ERISA.'" *Id.* at 321. The Second Circuit emphasized that ERISA § 502(a)(3) "permits money awards only in very limited circumstances[,]" and further that "[c]lassic compensatory and punitive damages are never included within 'other appropriate equitable relief.'" *Id.* (citations omitted). Similarly, in *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96 (2d Cir. 2005), the Second Circuit rejected plaintiffs' request for "restitution" of amounts that were allegedly overpaid for health care coverage as a result of defendants' breach of their fiduciary duties under ERISA. Citing *Great-West*, the

*Nechis* court held that only *equitable* restitution was a permissible form of relief under ERISA, as opposed to *legal* restitution. "Thus, a constructive trust or equitable lien is imposed when, 'in the eyes of equity,' a plaintiff is 'the true owner' of funds or property, and the 'money or property identified as belonging in good conscience to the plaintiff [can] clearly be traced back to particular funds or property in the defendant's possession.'" *Id.* at 103. Because the monies sought by the *Nechis* plaintiffs were not segregated in a separate account or otherwise specifically identifiable or traceable, the court "decline[d] . . . to perceive equitable clothing where the requested relief is nakedly contractual."[9] *Id.*

As held by this Court in *J.P. Morgan*, a claim by a non-vested participant for benefits which he argues were wrongly forfeited in violation of ERISA does not seek benefits under the plan's terms but rather seeks impermissible damages. *See J.P. Morgan*, 242 F.R.D. at 271 ("[A]ny relief that [plaintiffs] may be entitled to in the event Plaintiffs were to prevail [on their § 203 claim] would be a damage award, not benefits."). The same conclusion was reached by the Sixth Circuit in *Crosby v. Bowater Inc. Retirement Plan*, 382 F.3d 587, 596-97 (6th Cir. 2004), in which the plaintiff also claimed a § 203 violation. Following *Great-West*, that court concluded that the requested relief of additional benefits was not "equitable" because it did not seek the equitable restitution allowable in *Great-West*. Rather, it sought impermissible damages – the benefits plaintiff claimed he would have been entitled to had the defendants not violated ERISA § 203. Nor did the fact that the plaintiff alleged a statutory claim, as do Plaintiffs here,

---

[9] Similarly, numerous circuits have held that the value of benefits to which a plaintiff claims entitlement are not recoverable as "equitable relief" under ERISA § 502(a)(3). *See, e.g.*, *McLeod v. Oregon Lithoprint, Inc.*, 102 F.3d 376, 378 (9th Cir. 1996) (holding award of benefits that plaintiff would have been entitled to but for plaintiff's error in the enrollment process was compensatory damages and therefore not recoverable); *Calhoon v. TWA, Inc.*, 400 F.3d 593, 598 (8th Cir. 2005) (holding award of medical benefits that plaintiff alleges he would have been entitled to but for the fiduciary's breach of duty in incorrectly processing his application was not available relief); *Callery v. United States Life Ins. Co.*, 392 F.3d 401, 406 (10th Cir. 2004) (holding value of life insurance benefits allegedly misrepresented to plaintiff was not recoverable as equitable relief).

alter the court's analysis. "The statutory origin of Bowater's asserted obligation to pay Mr. Crosby an additional $ 5,249.08, with interest, does not mean that a breach of the obligation to pay is redressable through a suit in equity rather than an action at law." *Crosby*, 382 F.3d at 596.

Numerous courts in this Circuit have followed suit in finding that relief requested to compensate a plaintiff for a statutory violation was not equitable, including this Court. *See Fisher v. Penn Traffic Co.*, No. 06 Civ. 5848 (HB), 2007 U.S. Dist. LEXIS 10708, at *14 (S.D.N.Y. Feb. 16, 2007) (rejecting plaintiff's request to recover a lump sum benefit that he would have received but for the defendants' alleged statutory violation as a request for "monetary damages"); *Pelosi v. Schwab Capital Mkts.*, *L.P.*, 462 F. Supp. 2d 503, 513-14 (S.D.N.Y. 2006) (rejecting request for "proceeds that plaintiff would have received but for her late husband's employer's breach of fiduciary duty," concluding that such a "make whole" remedy had been foreclosed by the Supreme Court in *Great-West*); *Wharton v. Duke Realty, LLP*, 467 F. Supp. 2d 381, 392 (S.D.N.Y. 2006) (holding request to "recover the benefits [plaintiff] claims she is owed" does not constitute equitable relief under ERISA § 502(a)(3)).[10]

Nor can Plaintiffs' claim be saved by their vague, unspecified demand for "all other such relief to which Plaintiffs and the Class are or may be entitled under ERISA § 502(a) . . . or any other applicable law, whether or not specified herein." (Compl., "Prayer for Relief," ¶ C.) Courts have routinely held that such vague and unspecified requests for equitable relief are insufficient to defeat a motion to dismiss, since a court is unable to determine whether that relief

---

[10] *See also In re Marsh ERISA Litig.*, No. 04 Civ. 8157 (SWK), 2006 U.S. Dist. LEXIS 90631, at *11-14 (S.D.N.Y. Dec. 14, 2006) (holding lost benefits sustained by plan not recoverable as equitable relief under ERISA § 502(a)(3); *Shamoun v. Bd. of Trs., Liquor Salesmen's Union Local 2 Pension Fund*, No. 05-CV-5730 (SLT) (RER), 2007 U.S. Dist. LEXIS 62606, at *12-14 (E.D.N.Y. Aug. 23, 2007) (holding benefits lost due to defendants' alleged violation of ERISA's anti-cutback rules not recoverable as "equitable relief" under ERISA § 502(a)(3)); *Pancotti v. Boehringer Ingelheim Pharms., Inc.*, No. 3:06cv1674 (PCD), 2007 U.S. Dist. LEXIS 51464, at *11 (D. Conn. July 14, 2007) ("To grant Plaintiff the relief she seeks would be to order an injunction compelling the [defendants] to pay monetary damages [in the form of monthly benefit payments], which are unavailable under ERISA.").

may be awardable under the facts alleged.  *See*, *e.g.*, *Kishter v. Principal Life Ins. Co.*, 186 F. Supp. 2d 438, 446 (S.D.N.Y. 2002) (stating that despite the plaintiff's request for "such other . . . equitable relief as the Court deems appropriate," neither "plaintiff nor the court's own ingenuity" could suggest such a form of relief); *West v. AK Steel Corp. Ret. Accumulation Pension Plan*, 484 F.3d 395, 403 (6th Cir. 2007) (request for "unspecified 'other relief as may be deemed just and equitable'" is "insufficient to assert a proper equitable claim under § 502(a)(3).").

Here, Plaintiffs' claim is clearly one seeking money damages for the benefits they believe were improperly forfeited as a result of Defendants' alleged violation of ERISA.  This is precisely the type of "make whole" remedy that the Supreme Court has rejected as impermissible under ERISA § 502(a)(3).  Following *Mertens*, *Great-West*, *Nechis*, and *Gerosa*, Plaintiffs' requested relief is unavailable here, and the Complaint should thus be dismissed.

## V.    PLAINTIFFS' CLAIM IS TIME-BARRED

ERISA does not provide a statute of limitations for claims alleging a violation of ERISA §§ 203(a) or 210(b).  In the absence of a federal statute of limitations, courts apply the most analogous state statute of limitations.  *See Miles v. New York State Teamsters Conference Pension and Ret. Fund Employee Pension Benefit Plan*, 698 F.2d 593, 598 (2d Cir. 1983).  In *Campanella v. Mason Tenders' Dist. Council Pension Plan*, 299 F. Supp. 2d 274 (S.D.N.Y. 2004), this Court held that claims alleging a violation of any provision set forth in "Part Two of Subchapter I" of ERISA, which includes ERISA §§ 203(a) and 210(b), are governed by the six-year statute of limitations in N.Y. C.P.L.R. § 213.  *Id.* at 280.

Although the statute of limitations applicable to Plaintiffs' claim is derived from state law, "the court nevertheless looks to federal common law to determine the time at which the [plaintiffs'] federal claim accrues."  *Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir. 2007).  "A

federal court generally employs the 'discovery rule,' under which a plaintiff's cause of action accrues when he discovers, or with due diligence should have discovered, the injury that is the basis of the litigation." *Id.* (internal quotation marks and citation omitted). Consistent with the "discovery rule," "an ERISA claim accrues upon a clear repudiation by the plan that is known, or should be known, to the plaintiff – regardless of whether the plaintiff has filed a formal application for benefits." *Carey v. IBEW Local 363 Pension Plan*, 201 F.3d 44, 48 (2d Cir. 1999).

Based on the foregoing principles, Plaintiffs' claim is clearly timed-barred because they knew or should have known prior to August 14, 2001 – six years before the filing of the Complaint in this action – that Defendants did not consider them entitled to the pension benefits that they now seek. At the time Plaintiffs Frishberg and Wyatt left C&L in June 1986 and February 1991, respectively, each knew or should have known that he did not satisfy the five-year vesting requirement under the C&L Retirement Plan. Likewise, Plaintiffs Frishberg and Wyatt also knew or should have known at the time they left PW in May 1991 and July 1994, respectively, that they failed to satisfy the five-year vesting requirement under the PW Retirement Plan. After C&L and PW merged to form PwC in July 1998, which was well-known in the industry, Plaintiffs were aware or should have been aware of all material facts upon which they base now their claim – *i.e.*, that, because PwC is the successor to both C&L and PW as of July 1998, their respective years of service at C&L and PW should be combined after the merger of the two firms. For approximately three years after the formation of PwC in July 1998 – until August 14, 2001, six years prior to the filing of the Complaint – Defendants did not pay Plaintiffs any benefits from these plans, notwithstanding that, under Plaintiffs' argument, Defendants should have aggregated their C&L and PW service for purposes of vesting after the

24

merger of the two firms in July 1998.

Thus, it should have been patently obvious prior to August 14, 2001 that Defendants were not going to pay Plaintiffs any benefits under the plans at issue here. *See Schultz v. Texaco Inc.*, 127 F. Supp. 2d 443, 448 (S.D.N.Y. 2000) (holding that claim accrued when plaintiffs were removed from defendants' payroll and knew or should have known at that time that they would not receive the plan benefits sought); *Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516, 522 (3d Cir. 2007) (holding that claim accrued when defendants failed to pay plaintiff all benefits to which he alleged he was entitled, and that plaintiff should have been aware of the underpayment of benefits at that time). Accordingly, because Plaintiffs' claim is time-barred by the six-year statute of limitations, the Complaint should be dismissed in its entirety.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that their motion for judgment on the pleadings be granted, and that Plaintiffs' claims be dismissed with prejudice.

Dated:  October 24, 2007

   /s/ Karen M. Wahle                                  
Karen M. Wahle (KW 0716)
Robert M. Stern (RS 3005)
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
Tel:  (202) 383-5300
Fax:  (202) 383-5414

*Attorneys for Defendants*