# Exhibit A
# Part 2

# ARTICLE VIII

## Contributions

### 8.1    Firm Contributions

Subject to Article XI, the Firm intends to contribute and pay to the Trustee such amounts as are deemed necessary, on the basis of actuarial calculations, to carry out the purposes of the Plan.  Such contributions shall be made at such times and in such amounts as the Firm shall determine and shall be paid to and held in trust by the Trustee in accordance with the provisions of Article IX.  Except to the extent provided under applicable law, the Firm shall have no liability with respect to payments or benefits under the Plan and each person claiming benefits under the Plan shall look solely to the Trust Fund for such benefits.

### 8.2    Member Contributions

A Member shall not be required to make contributions. A Member is permitted to make contributions in accordance with Section 8.3 and Article XII.

### 8.3    Transfer Contributions

(a)  With the consent of the Committee, amounts may be transferred on behalf of a Member or Savings Member from other qualified retirement plans to the Plan, provided that the transfer will not jeopardize the qualified status of the Plan. The amounts transferred shall be set up in a separate account

-49-

for the Member. Such account shall be fully vested at all times.

8.4   No Duty of Inquiry

The Trustee shall be under no obligation to inquire into the correctness of the amounts contributed and paid over to the Trustee under the Plan, nor any duty to enforce payment of the contributions to be made.

Article IX

## Management of Assets of the Plan

### 9.1  Plan Assets Held In Trust

All amounts contributed by the Firm in accordance with Section 8.1, all amounts contributed by a Member or Savings Member pursuant to Section 8.3 or Article XII shall be paid to and held in trust by the Trustee under the terms of the Trust Agreement and shall comprise the Trust Fund. Except to the extent expressly provided in the Trust Agreement, the Trustee shall have exclusive authority to manage and control the Trust Fund. The Trust Agreement may provide procedures for the delegation of the management, acquisition and disposition of the Trust Fund and may subject all or part of the Trustee's authority to direction by a named person or entity.

### 9.2  Exclusive Benefit

Prior to the satisfaction of all liabilities under the Plan, no part of the corpus or income of the Trust Fund may be used or diverted to purposes other than for the exclusive benefit of Members, Savings Members and their Joint Annuitants, Beneficiaries, Spouses and Dependent Children under the Plan and for the payment of the expenses of the Plan. No person shall have any interest in or right to any part of the corpus or income of the Trust Fund except to the extent expressly provided in the Plan or the Trust Agreement.

### 9.3  Control and Management of Plan Assets

Except as provided in Section 10.2 and the Trust Agreement, the Firm shall have no responsibility with respect to control and management of the assets comprising the Trust Fund.

### 9.4  Funding Policy

The Committee shall establish a procedure for determining and reviewing the short and long term financial needs of the Plan and for communicating these needs to the Trustee. Such procedure shall provide for review of the short and long term financial needs of the Plan by the Committee at reasonable intervals, but not less often than once every twelve months.

## Article X

## Administration of the Plan

### 10.1  Establishment of the Retirement Committee

The Plan shall be operated and administered by the Retirement Committee, which shall be responsible for carrying out the provisions of the Plan. The Committee shall consist of at least three members who shall be appointed by the Executive Committee. Vacancies shall be filled in the same manner as appointments. Each person appointed a member of the Committee shall signify his acceptance by filing a written acceptance with the Secretary of the Committee. Any member of the Committee may be removed by action of the Executive Committee or may resign by delivering his written resignation to the Executive Committee and to the Secretary of the Committee.

### 10.2  Organization of the Committee

The Executive Committee shall appoint a Chairman of the Committee, who shall appoint a Secretary, who need not be a member of the Committee. The Committee may authorize one or more of its members or any agent to execute or deliver any instrument or make any payment in its behalf. The Committee may, with the consent of the Executive Committee, employ such counsel, accountants, actuaries, investment advisers, and other persons as may be required in carrying out the provisions of the Plan.

### 10.3   Meetings

The Committee shall hold meetings upon such notice, at such time, and at such place as it may determine.

### 10.4   Action by the Committee

A majority of the members of the Committee at the time in office shall constitute a quorum for the transaction of business.  All action taken by the Committee shall be (a) by vote of a majority of those present at a meeting, provided no fewer than two members are present, or (b) by written consent signed by all the members at the time in office if no meeting is held.

### 10.5   Expenses

No member of the Committee shall receive any compensation for his services as such, but the Firm may reimburse any member for any necessary expenses incurred.

### 10.6   Operation and Administration of the Plan

The Committee shall from time to time establish rules and procedures of uniform and nondiscriminatory application and effect for the administration of the Plan and the transaction of its business.  Except as otherwise expressly provided herein, the Committee shall have the exclusive right to interpret the Plan and to decide any matters arising in connection with the administration of the Plan.  Its decisions and records shall be conclusive

-54-

and binding upon the Firm, Members and all other persons having any interest under the Plan.

### 10.7  Accounts and Records of the Plan

The Committee shall maintain accounts showing the fiscal transactions of the Plan, and in connection therewith shall require the Trustee to submit any necessary reports and shall keep in convenient form such data as may be necessary for actuarial valuations of the assets and liabilities of the Plan.  The Committee shall prepare annually a report showing in reasonable detail the assets and liabilities of the Plan and giving a brief account of the operation of the Plan for the past year which shall be submitted to the Executive Committee. The Committee shall be responsible for compliance with all federal and state laws applicable to the Plan to the extent that the responsibility for compliance is placed upon the plan administrator by any such law and shall take such actions as are necessary to so comply.

### 10.8  Reliance on Professionals

The members of the Committee shall be entitled to rely upon all tables, valuations, certificates and reports furnished by any duly appointed actuary, upon all certificates and reports made by any duly appointed accountant, and upon all opinions given by any duly appointed legal counsel.  The members of the Committee shall be fully protected against any action or inaction taken or omitted in good faith in reliance

-55-

upon such tables, valuations, certificates, reports or opinions and any such action or inaction shall be conclusive upon each of them and upon all persons having any interest under the Plan.

10.9    Liability and Indemnification

The Committee shall operate and administer the Plan, and the Firm shall carry out all of its functions under the Plan, for the exclusive purpose of providing the benefits under the Plan (and for determining the reasonable expenses of the Plan) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.  Neither the Firm nor any member of the Committee shall be personally liable for any action or inaction with respect to any duty or responsibility imposed upon such person by the terms of the Plan unless such action or inaction is determined to be a breach of the standard of conduct expressed in this Section 10.9.  The Firm may indemnify each member of the Committee against any expenses which are reasonably incurred in connection with any legal action to which such person is a party by reason of his duties and responsibilities with respect to the Plan, regardless of any other rights to which any such person may be entitled as a matter of law.

### 10.10   Fiduciary Insurance

Subject to the approval of the Executive Committee, the Committee shall have the right to purchase such insurance as it deems necessary to protect the Plan and the Fund from loss due to any breach of fiduciary responsibility by any person. Any premiums due on such insurance shall be paid by the Firm. Nothing in this Section 10.10 shall prevent the Firm, at its own expense, from providing insurance to any person to cover potential liability of that person as a result of a breach of fiduciary responsibility.

### 10.11   Claims Procedures

If any person claims entitlement to benefits under the Plan and the Committee determines such person is not so entitled, the Committee shall notify the claimant in writing of its decision within 60 days of the claim. Notice of denial of a claim shall set forth in a manner calculated to be understood by the claimant the specific reason or reasons for the denial (including reference to specific Plan provisions) and an explanation of the Plan's claims procedure. The Committee shall establish and maintain a procedure whereby a person whose claim to benefits is denied may have a reasonable opportunity to appeal such denial to the Committee for a full and fair review. The claims procedure shall set forth reasonable time limits within which a claimant must request review and shall provide that the claimant or his duly authorized representative may request in writing all pertinent documents

-57-

and may submit issues and comments in writing. The claims
procedure shall also provide that a decision by the Committee
on the claimant's appeal shall be communicated to the claimant
not later than 60 days after the request for review by the
claimant.

## Article XI

## Amendment and Termination

**11.1    Amendment**

The Firm reserves the right at any time, and from time to time, to modify or amend in whole or in part any or all of the provisions of the Plan, subject to the conditions that:

(a)  no modifications or amendment may be made which shall deprive any Member, Savings Member or other person of any benefits already accrued to the extent such benefits  have been funded, except to the extent allowable by any applicable law and except that any modification or amendment may be made retroactive if and to the extent necessary to bring the Plan into conformity with the requirements of Section 401(a) or other applicable provisions of the Internal Revenue Code; and

(b)  prior to the satisfaction of all liabilities hereunder, no part of the funds of the Plan shall, by reason of any modification or amendment, be used for or diverted to purposes other than for the exclusive benefit of Members, Savings Members and their Joint Annuitants, Beneficiaries, Spouses and Dependent Children and the payment of expenses under the Plan.

11.2    Termination

The Firm may terminate the Plan at any time subject to the condition that, at any time prior to the satisfaction of all liabilities with respect to Members, Savings Members and their Joint Annuitants, Beneficiaries, Spouses and Dependent Children, no part of the Trust Fund shall, by reason of such termination, be at any time used for or diverted to purposes other than the exclusive benefit of such persons. Upon termination or partial termination of the Plan, the rights of all Members to benefits accrued under the Plan as of the date of its termination shall, except as provided in Section 11.6, become nonforfeitable to the extent then funded and the assets of the Trust Fund shall be allocated in accordance with Section 11.3 to all active and retired Members and Savings Members and to all other persons already receiving or entitled to receive benefits under the Plan.

11.3    Allocation of Assets Upon
        Termination of the Plan

Upon termination of the Plan, the Trust Fund shall be allocated as follows:

(a)  First, to that portion of each Member and Savings Members accrued benefit which is attributable to his contributions to the Plan.

(b)  Second, (i) to provide retirement and survivors' benefits, if applicable, to all persons for whom payment

-60-

of such benefits commenced at least three years prior
to the date of such termination; and (ii) to provide
those retirement benefits that would have been payable
to Members who could have retired three years prior to
the date of termination of the Plan if they had retired
at such time and if such retirement benefits commenced
immediately in the normal form payable under the Plan.
For determining the amount of any retirement or survivors'
benefit to be provided under this allocation category,
the terms of the Plan as in effect during any part of
the five year period ending on the date of termination of
the Plan which produce the lowest amount of benefit shall
be used, and no increases in the amounts of retirement
or survivors' benefits becoming effective after the later
of commencement of benefits and the beginning of the
three year period ending on the date of termination of
the Plan shall be taken into account.

(c)  Third, to the extent not already provided for
in (a) and (b) above, to provide retirement and survivors'
benefits up to the amounts guaranteed by the Pension
Benefit Guaranty Corporation under Title IV of the Employee
Retirement Income Security Act of 1974.  In determining
the retirement and survivors' benefits guaranteed by
the Pension Benefit Guaranty Corporation, the limitations
imposed by Sections 4022(b)(5) and 4022(b)(6) of the

Employee Retirement Income Security Act of 1974 (referring to benefits guaranteed under prior plan terminations and the "phase in" of guarantee coverage for substantial owners) shall not be taken into account.

(d)  Fourth, to the extent not already provided for in (a), (b) and (c) above, to provide all other nonforfeitable retirement and survivors' benefits under the Plan. (For the purposes of this subsection, the term "nonforfeitable" refers to benefits which are either in pay status or which would not be forfeited by a Member upon termination of his employment with the Firm and does not include benefits made nonforfeitable merely by reason of termination of the Plan.)

(e)  Fifth, to the extent not already provided for in (a) through (d) above, to provide all other retirement benefits under the Plan.

If the assets of the Trust Fund available for any of the above described allocation categories, after making provision in full for each of the preceding categories, are insufficient to make full provision for the members of such category, then except as otherwise provided with respect to allocation category (c), such assets shall be allocated pro rata among the members of such category on the basis of the present value, as of the date of termination of the Plan, of the retirement and survivors'

benefit of each member of the category.  If the assets of the Trust Fund, after making full provision for allocation categories (a) and (b), are insufficient to provide in full the benefits specified in category (c), the assets shall first be applied to provide in full the benefits determined under the Plan as in effect at the beginning of the five year period ending on the date of termination of the Plan and shall then be applied, successively, to provide in full the benefits determined under the Plan, as modified by each subsequent amendment to the Plan during such five year period.  If any such application of assets is insufficient to provide in full the benefits so determined, the remaining assets shall be allocated pro rata among the persons entitled to receive such assets, on the basis of the present value, as of the date of termination of the Plan, of the benefits to be paid to each such person.

Retirement benefits for which assets are allocated under this Section 11.3 but which would not become payable under the terms of the Plan until some later date may be provided by means of a trust or annuity contract which provides for deferral of payment.  Any benefits for which assets are allocated under this Section 11.3 may, in the discretion of the Committee, be provided by distribution in cash of the present value of the benefits to be provided, by distribution or purchase of annuity contracts or policies or by establishment of a trust or continuation of the trust established

-63-

pursuant to the Trust Agreement, or by any combination of the above; provided that any method of distribution of the assets allocated to provide benefits shall be subject to approval of the Pension Benefit Guaranty Corporation and compliance with any directions or instructions issued by it. In the event that any assets of the Trust Fund remain after all benefits under the Plan have been provided for in full, such remaining assets shall be returned to the Firm.

11.4    Partial Termination of Plan

In the event that the Plan is partially terminated either by:

(a)    a determination by the Executive Committee,

(b)    a determination made by the Internal Revenue Service or the Pension Benefit Guaranty Corporation at the request of the Firm or otherwise, or

(c)    a finding made by a court of law having jurisdiction,

the Committee shall direct that the assets held by the Trustee as of the date the partial termination is deemed to occur shall be allocated between those Members and Savings Members or their Beneficiaries, Joint Annuitants, Spouses or Dependent Children who continue to participate in the Plan and those

-64-

Members and Savings Members or their Beneficiaries, Joint
Annuitants, Spouses or Dependent Children who are excluded from
participation in the Plan by reason of the partial termination.

The assets held by the Trustee shall be allocated
between the two groups of such persons by determining the
amount applicable with respect to each Member and Savings Member
under the Plan as of the date of the partial termination of the
Plan as provided in Section 11.3.  The amount of retirement
income benefit to be used in making such allocation in the case
of a Member or Savings Member who has not retired shall be the
amount that would be payable if the Member had retired on such
date or, if he is not then eligible for retirement, the amount
that would be payable if he had terminated employment with
the Firm and had been credited with all benefits under the
Plan with respect to his Service to such date.

## 11.5  Pension Benefit Guaranty Corporation

Upon partial or complete termination of the Plan,
the Committee shall take all steps necessary to comply with
the requirements imposed upon plan administrators by Title IV
of the Employee Retirement Income Security Act of 1974 and
the terms of this Article XI shall be subordinated to any
directions and instructions given or any actions taken by
the Pension Benefit Guaranty Corporation pursuant to its
authority under Title IV and to any other decree issued in
accordance with the procedures set forth in Title IV.

11.6  **Limitations on Certain Members in the Event of Early Termination of the Plan**

(a)  The purpose of this Section 11.6 is to conform the Plan to the requirements of Section 1.401-4(c) of the Treasury Department Regulations in the event of early termination of the Plan.

For purposes of this Section 11.6:

"Commencement Date" means the Effective Date of the Plan and the effective date of any subsequent amendment to the Plan which has a substantial effect on contributions or benefits payable under the Plan.

"Unrestricted Benefits" at any time means benefits of the form provided under the Plan, including any cash payments available to a living Member and any survivors' benefits payable on behalf of a Member who dies after retirement, which have been provided by contributions not exceeding the greatest of the following three amounts:

(i)  the contributions (or funds attributable thereto) which would have been applied to provide benefits for the employee if the Plan as in effect immediately prior to the "Commencement

-66-

Date" had been continued in effect without change, giving effect to the limitations imposed by this Section  11.6;

(ii)  $20,000, or

(iii)  the sum of (i) the contributions (or funds attributable thereto) which would have been applied to provide benefits for the employee under the Plan as in effect immediately prior to the Commencement Date, if it had terminated immediately prior to such Commencement Date, and (2) an amount computed by multiplying the number of years for which the current costs of the Plan after the Commencement Date are met by (A) 20% of his annual compensation or (B) $10,000, whichever is smaller.

"Supplemental Retirement Income Payments" means any current payments to a retired Member sufficient, together with his Unrestricted Benefits, to bring the total current payments to him up to the full retirement benefits provided under the Plan.

(b)  The funds or benefits which any of the 25 highest paid employees as of the Commencement Date, including any such employees who are not Members at that time but may later become Members (but excluding

-67-

any Member whose annual retirement benefit will not exceed $1,500), may receive (including any Unrestricted Benefits but excluding any Supplemental Retirement payments he has already received up to that time)

(i)  if the Plan is discontinued within ten years after the Commencement Date, or

(ii)  during the first ten years after the Commencement Date, or

(iii)  after the first ten years after the Commencement Date if the full current costs of the Plan for the first ten years after the Commencement Date have not been funded shall not exceed his Unrestricted Benefits at that time.

(c)  The provisions of this Section 11.6 shall not restrict the payment of full retirement benefits provided under the Plan to any retired Member while the Plan is in full effect and its full current costs have been met or the full payment of any survivors' benefit on behalf of a Member who dies at any such time;  nor shall they prevent a lump sum distribution to any Member of the full retirement benefits provided under the Plan while the Plan is in full effect and its full current costs have been met, if an agreement ade-

quately securing the obligations thereunder is entered into between the Member and the Committee providing for the repayment of that part, if any, of the distributions which would otherwise have been restricted.

(d)  At such time as contributions are sufficient to meet the full current costs of the Plan, the excess of the retirement benefit payments otherwise payable over the actual retirement benefit payments made during the period that such full current costs had not been met, shall be paid in a lump sum to the retired Member, or, if he had died in the meantime, to his estate.

In the event that the limitations provided in this Section 11.6 are no longer necessary for the Plan to meet the requirements of Section 401(a) or other applicable provisions of the Internal Revenue Code, such limitations shall automatically become void without the necessity of amendment to the Plan.

Article XII

Voluntary Savings Program

All Savings Members, who have not terminated employment with the Firm, reached age 70 or become disabled within the meaning of Section 12.12, are permitted to make voluntary nondeductible contributions and/or voluntary deductible contributions to the Plan effective January 1, 1982 subject to the administrative procedures of the Committee and to the limits in Sections 12.1, 12.2, and 12.4.  Contributions made under this Article XII by the Savings Member shall have no effect on the contributions made to the Plan by the Firm.  Contributions made hereunder are in addition to, and shall have no effect on, any retirement income or other payments made in accordance with other Articles of the Plan.

## 12.1  Nondeductible Contributions With Respect to Current Plan Year

Any Savings Member shall be permitted to make nondeductible contributions in cash to the Plan, but not in excess of 10 percent of Plan Earnings for the Plan Year for which such Savings Member's nondeductible contributions are made.  Plan Earnings shall be pro-rated for each completed month for which a Savings Member is an active employee.  Such nondeductible contributions shall be paid over to the Trustee as soon as practicable in accordance with administrative procedures, to be held as part of the Trust Fund.

-70-

For purposes of Sections 12.1 and 12.2, and not for any other purposes of the Plan, Plan Earnings shall be determined without regard to the $100,000 limit described in Section 1.26, and shall include, for Partners and Principals, interest on capital.

## 12.2  Member's Nondeductible Contributions With Respect to Prior Plan Year

Notwithstanding any nondeductible contributions made pursuant to Section 12.1, any Savings Member may make non-deductible contributions in cash for each Plan Year or fraction thereof during which he was a Member of the Plan, provided, that all nondeductible contributions made by a Savings Member pursuant to this Article XII shall not exceed the sum of 10 percent of Plan Earnings with respect to all Plan Years or fractions thereof during which he was a Member or Savings Member, and shall not exceed the limits of Section 4.10.  Such nondeduc-tible contributions shall be paid over to the Trustee, as soon as practicable in accordance with administrative procedures, to be held as part of the Trust Fund.

The decision by a Savings Member to make nondeductible contributions pursuant to Sections 12.1 and 12.2, including the amount thereof and the percentage(s) allocated to the available investment funds described in Section 12.7 shall be communicated to the Committee on the form(s) prescribed by it, in such manner and at such times as the Committee shall determine.

-71-

**12.3**   Nondeductible Contribution Account

(a)   All nondeductible contributions received by the Trust Fund shall be credited to and held as a separate account for each such contributing Savings Member, each of which separate accounts shall be separately established and administered by the Committee, the assets of which account shall be invested and reinvested upon the instructions of the Savings Member in one of the investment funds described in Section 12.7.   All earnings, withdrawals, losses and other expenses attributable to assets held for each such separate account shall be reflected therein exclusively, in accordance with such accounting procedures as the Committee shall approve.   No assets of any other such separate account nor any general assets, earnings or losses of the Trust Fund shall be credited to or charged against any such separate account.

(b)   The value of each Savings Member's nondeductible contribution account shall be determined no less frequently than annually, and at such other times as the Committee, in agreement with  the Trustee, shall establish.

(c)   Each Savings Member shall have at all times a 100 percent nonforfeitable interest in his nondeductible contributions account.

(d)   A Savings Member's nondeductible contribution
made after the close of a particular Plan Year shall be
deemed credited to the Savings Member's nondeductible
contribution account for that prior Plan Year provided
that the Savings Member designates the contribution as
being an account of the Prior Year and actually makes
the contribution to the Plan no later than 30 days after
the close of the Plan Year.  Notwithstanding the previous
sentence, if a contribution made in accordance with the
provisions of this subsection would otherwise cause the
limitations described in subsection 4.10 to be exceeded
for the Savings Member in the prior Plan Year, then the
nondeductible contribution shall be credited to the Savings
Member's account in the year the contribution is made.

## 12.4   Deductible Contributions

Any Savings Member shall be permitted to make deducti-
ble contributions to the Plan, which contributions are intended
to meet the requirements described in Section 219 of the Internal
Revenue Code.  Such deductible contributions shall not exceed
the lesser of $2,000.00 or the Savings Member's Compensation
with respect to any calendar year.  Deductible contributions
shall be paid over to the Trustee, as soon as practicable
in accordance with administrative procedures, to be held as part
of the Trust Fund.

The decision by the Savings Member to make such deductible contributions, including the amount thereof, and the percentage(s) allocated to the available investment funds described in Section 12.7 shall be communicated to the Committee on the form(s) prescribed by it, in accordance with administrative procedures determined by the Committee, but no later than December 22 each year.

## 12.5   Deductible Contribution Account

(a)  All deductible contributions received by the Trust Fund shall be credited to and held as a separate account for each such contributing Savings Member, each of which separate accounts shall be separately established and administered by the Trustee, the assets of which account shall be invested and reinvested upon the instructions of the Savings Member in one of the investment funds described in Section 12.7.  All earnings, withdrawals, losses, and other expenses attributable to assets held for each such separate account shall be reflected therein exclusively, in accordance with such accounting procedures as the Committee shall approve.  No assets of any other such separate account nor any general assets, earnings or losses of the Trust Fund shall be credited to or charged against such separate account.

-74-

(b)  The value of each Savings Member's deductible contribution account shall be determined no less frequently than annually, and at such other times as the Committee, in agreement with the Trustee, shall establish.

(c)  Each Savings Member shall have at all times a 100 percent nonforfeitable interest in his deductible contribution account.

## 12.6  Payroll Deduction

The Firm may deduct each Savings Member's nondeductible contributions made pursuant to Section 12.1, and/or deductible contributions made pursuant to Section 12.4 from the compensation of such Savings Member on its payroll and shall pay the sum so deducted to the Trustee to be held as part of the Trust Fund.  Each Savings Member desiring to make nondeductible contributions and/or deductible contributions by payroll deductions, by signing the appropriate form within the time provided by the Committee, shall consent and agree to the payroll deductions as provided herein, shall authorize the Firm to make such deductions, and shall designate the percentage of such contributions allocated to the available investment funds described in Section 12.7.

A Savings Member making contributions through payroll deduction may cease, suspend, resume or change the terms of such contributions under the Plan at any time by notifying the Committee in accordance with applicable administrative procedures.

-75-

## 12.7   Investment of Savings Members' Contributions

Contributions made by a Savings Member pursuant to Section 12.1, 12.2, 12.4, and 12.6 shall be invested at the direction of such Savings Member from among the investment alternatives made available by the Committee.  The Savings Member shall designate in accordance with applicable administrative procedures the percentages of such contributions that are to be allocated to the various investment funds available. The minimum allocation percentage for any investment fund shall be 10 percent.  Different investment fund allocation percentages may be designated for nondeductible contributions and deductible contributions.

Changes in investment fund allocation percentages for future contributions made pursuant to Section 12.6 may be made at any time in accordance with applicable administrative procedures.

## · 12.8   Transfers Between Investment Funds

A Savings Member may transfer amounts between investment funds referred to in Section 12.7 once each month by making a request in accordance with applicable administrative procedures; provided, that transfers of amounts from a nondeductible contribution account to a deductible contribution account, or vice versa, can only be made in accordance with Section 12.9.

-76-

All such transfers shall be made on the basis of the market value of the investment fund shares at the time of transfer determined in accordance with uniform procedures established by the Committee and which is agreed to by the Trustee.

### 12.9  Transfers Between Nondeductible Contribution Accounts and Deductible Contribution Accounts

Not more frequently than once per calendar year, at such time and in the manner prescribed by the Committee, a Savings Member may transfer amounts between his nondeductible contribution account and his deductible contribution account subject to the following limits:

(a)  If there were no amounts in the Savings Member's deductible contribution account at the end of the previous calendar year, an amount not in excess of the current calendar year's contributions to that account, including interest or other earnings on those contributions, may be transferred, subject to Section 12.1 and 12.2, and 4.10, from deductible contribution account to nondeductible contribution account.

(b)  If there were amounts in the Savings Member's deductible contribution account at the end of the previous calendar year, an amount not in excess of the current calendar year's contributions to that account, but not including interest or other earnings on those contributions, may be transferred, subject to Sections 12.1,

12.2, and 4.10 from deductible contribution account to nondeductible contribution account.

(c)  An amount which, together with the current calendar year's contribution made pursuant to Section 12.4 does not exceed $2,000.00, and which does not exceed the total cumulative contributions (without regard to the interest or other earnings on those contributions) made pursuant to Sections 12.1 and 12.2, may be transferred from nondeductible contribution account to deductible contribution account.  Any nondeductible contributions transferred pursuant to this subsection (other than non-deductible contributions made during the current Plan Year) shall continue to be counted as having been made for purposes of the limitations in Sections 12.1, and 12.2.

In no event may the amount transferred exceed the Savings Member's account balance at the time of the transfer in the account from which he is transferring.

12.10  Withdrawals

A Savings Member who shall have made nondeductible contributions and/or deductible contributions may elect, with the consent of his Spouse in accordance with Section 5.3(b)(ii), at any time prior to termination of his employment or retirement to withdraw all or any portion of the amount standing to his credit in his nondeductible contribution account and/or deductible

-78-

contribution account by notifying the Committee in accordance with applicable administrative procedures. Provided, that if the entire account balance is not withdrawn, the minimum withdrawal shall be $200.00, with such limits separately determined for each Savings Member's nondeductible contribution account and deductible contribution account.

The Savings Member shall notify the Committee as to the portion of each withdrawal that is to be made from each of the various investment funds described in Section 12.7 in his separate accounts. If no such notice is given, the withdrawal shall be made proportionately from all of the investment funds within each separate account.

All withdrawals shall be distributed as soon as practicable following notice to the Committee, in all events within 90 days thereafter. Nondeductible contributions which have been withdrawn nevertheless shall continue to be counted as having been made for purposes of the limitations in Sections 12.1, and 12.2.

All withdrawals from a nondeductible contribution account made pursuant to the provisions of this section shall be deemed to be withdrawals of, and the return of, the actual amount of nondeductible contributions to the maximum extent thereof, and only thereafter shall any such withdrawals be deemed to constitute the withdrawal of interest or other earnings on those contributions.

**12.11**  <u>Termination of Employment</u>

Whenever a Savings Member ceases employment with the Firm for any reason other than retirement, death, or disability, the total amount standing to his credit in his deductible contribution account and his nondeductible contribution account, determined as of the end of the month following the month of termination, shall be distributed as soon as practicable to the Savings Member as a single sum.  If such a Provided, that the foregoing sentence shall not apply with respect to the Savings Member's nondeductible contribution account unless the written consent of the Savings Member (and, if applicable, written consent which meets the requirements of Section 5.3(b) from his Spouse) has been obtained.  If such consent has not been obtained, the total amount standing to a Savings Member's credit in his nondeductible contribution account shall be distributed in accordance with Article V no earlier than the date the Savings Member attains age 65.

**12.12**  <u>Disability or Retirement</u>

If a Savings Member retires from the Firm (within the meaning of Article III as it applies to a Member), or is disabled, his nondeductible contribution account shall be paid in accordance with Section 12.11, and his deductible contribution account shall be paid to him as a single sum, in installments or as an annuity, at such time and in such manner as he elects

-80-

(subject to Article 5.4).  The settlement option for such benefit need not be the same as the option chosen for retirement under the Plan.

For purposes of this paragraph, a Savings Member shall be deemed disabled if he qualifies for disability income benefits under the Firm's Long Term Disability Plan.

### 12.13  Death

If a Savings Member dies, the total amount standing to his credit in his nondeductible contribution account and/or deductible contribution account shall be distributed as a single sum, as soon as practicable, to his designated Beneficiary. Provided, however, that the Beneficiary of a Savings Member who is over age 55 at the time of his death, may elect (subject to Section 6.6) to receive payment in accordance with the terms of Section 12.12.  Provided, also that the nondeductible contribution account of such a married Savings Member shall be paid in accordance with Article VI.

Except as provided in the foregoing paragraph, the Savings Member shall have the unrestricted right to designate the Beneficiary to receive the benefits to which he is entitled hereunder, and to change any such designation.  Each such designation shall be evidenced by a written notice filed

with the Committee in accordance with applicable administrative procedures.  If no such notice is effective, then the Savings Member's estate shall be conclusively deemed to be the Beneficiary designated to receive such benefit.

ARTICLE XIII

TOP-HEAVY REQUIREMENTS

## 13.1   When Top-Heavy Provisions Are Operative

The Top-Heavy provisions of this Article XIII shall be operative for any Plan Year beginning after December 31, 1983 with respect to which the Plan is Top-Heavy and for such Plan Year shall supersede any Plan provisions failing to meet or exceed the requirements for Top-Heavy plans under Section 416 of the Internal Revenue Code.  In the event that Congress should provide by statute, or the Treasury Department or the Internal Revenue Service should provide by regulation or ruling, or it should be judicially or otherwise determined that the Top-Heavy provisions provided for in this Plan, or any part thereof, are not necessary in order for the Plan to meet the requirements for a qualified pension plan under the Code for a Plan Year, such provisions, or part thereof, shall become void and shall not apply for such Plan Year without the necessity of amendment to the Plan.

## 13.2   Top-Heavy Limitation on Annual Compensation

The annual Compensation of any Employee taken into account under the Plan for a Top-Heavy Plan Year shall not exceed $200,000 (or such larger amount as may from time to time be fixed by the Secretary of the Treasury or his delegate to reflect the statutory cost-of-living adjustment).

13.3   Top-Heavy Minimum Benefits

(a)   If the Plan is Top-Heavy for a Plan Year, the accrued benefit derived from Firm contributions of each Member credited with a year of Top-Heavy Service for such Plan Year shall not be less than a Top-Heavy minimum benefit which, when expressed as annual retirement income in the form of a single life annuity (with no ancillary benefits) beginning at the Member's Normal Retirement Date, equals the Member's average Compensation in his Testing Period multiplied by the lesser of --

(1)   Twenty percent (20%), or

(2)   Two percent (2%) multiplied by the Member's years of Top-Heavy Service.

(b)   The accrual of Top-Heavy minimum benefits shall apply notwithstanding that under other Plan provisions the Member would not otherwise be entitled to any accrual.

(c)   If for any Plan Year in which the Plan is Top-Heavy, but not Super Top-Heavy, the Firm maintains both a defined benefit plan and a defined contribution plan and the adjusted Internal Revenue Code Section 415 limits under Code Section 416(h)(1) would otherwise be exceeded, then, to meet the requirements of Code Section 416(h)(2) and to avoid the application of Code Section 416(h)(1), the twenty percent (20%) limit in Section 13.3(a)(1) above shall be

-84-

increased by one percent (1%) for each year this Section
13.3 applies, to a maximum increase of ten percent (10%),
and the two percent (2%) limit in Section 13.3(a)(2) above
shall be increased to three percent (3%).

(d)  The foregoing notwithstanding, no Top-Heavy
minimum benefit shall be provided under this Plan for any
Member with respect to any Plan Year for which the Member
is covered under another qualified plan of the Firm and is
receiving the Top-Heavy minimum benefits or contributions
required by Code Section 416 under such other plan.

13.4  <u>Top-Heavy Minimum Vesting</u>

If the Plan is Top-Heavy for a Plan Year, vesting in
retirement income under the Plan for such Plan Year shall be
determined in accordance with the following schedule:

| Years of<br>Vesting Service | Vested Percentage |
|---|---|
| Less than 2 | 0% |
| 2 | 20% |
| 3 | 40% |
| 4 | 60% |
| 5 | 80% |
| 6 or more | 100% |

13.5  <u>Top-Heavy Limitations on Benefits</u>

If the Plan is Top-Heavy or Super Top-Heavy for a
Plan Year, the limitations of Section 4.11 hereof shall be
applied as provided in this Section 13.5.

(a)  If the Plan is Top-Heavy, but not Super Top-Heavy, for a Plan year, Internal Revenue Code Section 416(h)(1) will not apply to the Plan and the limitations of Section 4.11 shall be applied according to their terms without any substitutions, if the requirements of Code Section 416(h)(2) are met pursuant to Section 13.3(c) hereof.

(b)  If (a) does not apply, then "1.0" shall be substituted for "1.25" in calculating the Member's defined benefit plan fraction and defined contribution plan fraction under Section 4.11.

13.6  Definitions

For purposes of this Article, the following terms have the following meanings:

(a)  Key Employee.  Any Partner, Principal or Employee or former Partner, Principal or Employee (and any Beneficiary of such an individual who, during the five Plan Years ending on the determination date for the Plan Year in question, was:

(1)  For Plan Years after September 30, 1985 an officer of the Firm having an annual Compensation greater than one hundred fifty percent (150%) of the amount in effect under Section 415(c)(1)(A) of the Internal Revenue Code.  Provided that no more than fifty (50) persons (or, if lesser, the greater of three (3) persons or ten percent (10%) of the Partners,

-86-

Principals and Employees of the Firm shall be treated as officers;

(2)  One of the ten (10) Partners, Principals, or Employees having annual Compensation of more than the limitation in effect under Section 415(c)(1)(A) of the Code and owning (or considered as owning within the meaning of Section 318 of the Code) the largest interests in the Firm (if two individuals have the same interest in the Firm, the individual having greater annual Compensation shall be treated as having a larger interest);

(3)  A person who, without application of the aggregation rules of subsections (b), (c) and (m) of Section 414 of the Code, owned (or was considered as owning within the meaning of Section 318 of the Code) more than five percent (5%) of the capital or profits interest of the Firm; or

(4)  A person who had annual Compensation from the Firm of more than one hundred fifty thousand dollars ($150,000) and who, without application of the aggregation rules of subsections (b), (c) and (m) of Section 414 of the Code, owned (or was considered as owning within the meaning of Section 318 of the Code) more than one percent (1%) of the capital or profits interest of the Firm.

-87-

(b)  Non-Key Employee.  Any Partner, Principal or Employee or former Partner, Principal or Employee (and any Beneficiary of such individual) who is not a Key Employee.

(c)  Super Top-Heavy.  The status of the Plan when the present value of accrued benefits for Key Employees exceeds ninety percent (90%) of the accrued benefits for all Members.  The determination shall be made in the same manner as for Top-Heavy.

(d)  Testing Period.  The period of consecutive years (not exceeding five (5)) during which the Member had the greatest aggregate annual Compensation, except that years beginning after the close of the last year in which the Plan is Top-Heavy shall not be taken into account.

(e)  Top-Heavy.  The status of the Plan when, as of the determination date with respect to a Plan Year commencing after December 31, 1982 --

(1)  If the Plan is not included in a required or permissive aggregation group, the present value of the accrued benefits for Key Employees under the Plan exceeds sixty percent (60%) of the present value of the accrued benefits for both Key and Non-Key Employees under the Plan, or

(2)  If the Plan is included in a required or permissive aggregation group, the sum of the present value of accrued benefits for Key Employees under all

-88-

defined benefit plans and all defined contribution plans included in such group exceeds sixty percent (60%) of a similar sum determined for both Key and Non-Key Employees.

For purposes of making the above Top-Heavy determination:

(1)  The determination date for a plan for a Plan Year shall be the last day of the preceding Plan Year.

(2)  A required aggregation group consists of:

(A)  The Plan; and

(B)  Other qualified plans required to be aggregated with the Plan under Section 416(g) of the Internal Revenue Code in testing for top-heaviness, to wit,

(i)  each qualified plan in which at least one Key Employee participates, and

(ii)  any other qualified plan which enables the Plan or a plan described in (B)(i) above to meet the requirements of Sections 401(a)(4) or 410 of the Code.

(3)  A permissive aggregation group consists of

(A)  The Plan;

-89-

(B)  Any plans required to be aggregated
with the Plan under (2)(b) above; and

(C)  Any other qualified plans permitted to
be aggregated with the Plan under Section 416(g)
of the Code in testing for top-heaviness, to wit,
any other such plan which, when considered as a
group with the Plan, and any plans required to
be aggregated with the Plan under (2)(B) above,
continue to meet the requirements of Sections
401(a)(4) and 410 of the Code, and which the
Committee in its discretion chooses to include
in the group.

(4)  Where more than one plan is involved in the
determination, the present value of accrued benefits
(including distributions to be included therein in
accordance with (10) below) shall be determined
separately for each plan as of its own determination
and shall then be aggregated as provided above.

(5)  The present value of accrued benefits under
a plan shall  include the present value of accrued
benefits derived from all contributions, including
Firm and Member (both voluntary and mandatory)
contributions, except for the present value derived
from tax deductible employee contributions which
shall not be taken into account.

(6)   The present value of accrued benefits under a plan shall be determined as of the plan's most recent valuation date that falls within or ends with the twelve (12) month period ending on the plan's determination date.  The valuation date of this Plan shall be the date used for computing Plan costs for minimum funding, regardless of whether a valuation is actually performed for a particular year.

(7)   The present value of a Member's accrued benefits under a defined contribution plan shall be the sum of the Member's account balance as of the relevant valuation date, plus an adjustment for contributions due as of the determination date.  In the case of a plan not subject to the minimum funding requirements Code Section 412, the adjustment is the amount of contributions, if any, actually made after the valuation date but on or before the determination date, except in the first plan year of the plan when the adjustment is the amount of contributions, if any, actually made after the valuation date but on or before the determination date, the adjustment shall also reflect the amount of any contributions whenever made that would be allocated as of a date not later than the determination date.  In the case of a plan subject to the minimum funding requirements

of Code Section 412, the adjustment is the amount of
contributions whenever made that would be allocated
as of a date not later than the determination date.

(8)  The present value of a Member's accrued
benefits under a defined benefit plan shall be based
upon reasonable interest and mortality assumptions
specified by the plan.  For this Plan the interest
and mortality rates used for purposes of these
Top-Heavy calculations shall be the same as set forth
in the definition of Section 1.3(a).

(10)  Generally, any accrued benefit transferred
or distributed in the five (5) year period ending on
a plan's determination date (except any such accrued
benefit otherwise included in the present value of
accrued benefits on the determination date) shall be
added back and included in the plan's present value
of accrued benefits as of the determination date.
This rule shall apply to distributions under a
terminated plan which, if it had not been terminated,
would have been required to be included in an aggre-
gation group.  It shall also apply to any unrelated
rollover or transfer (i.e. one initiated by the
Member and made to a plan maintained by another,
unrelated employer under Code Section 414(b), (c) or
(m)).  The plan accepting an unrelated rollover

or transfer shall not consider the rollover or transfer as part of its present value of accrued benefits. In the case of a related rollover or transfer (i.e. one not initiated by the Employee or made to a plan maintained by the same or related employer under Code Section 414(b), (c) or (m)), the rollover or transfer shall not be added back but shall be counted in the plan accepting the rollover or transfer.

(11) With respect to plan years beginning after December 31, 1984, the accrued benefit of all participants in a plan who have not received any Compensation from the Firm (other than benefits under the plan) at any time during the five (5) year period ending on the plan's determination date shall be disregarded.

(12) The Top-Heavy determination, including definition of Top-Heavy terms and application of the above rules and any other rules which may be necessay for the determination shall be made in accordance with Section 416 of the Code.

## Article XIV

## Miscellaneous Provisions

### 14.1   No Alienation of Benefits

No benefit payable under the Plan shall be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, or charge, and any action by way of anticipating, alienating, selling, transferring, assigning, pledging, encumbering, or charging the same shall be void and of no effect; nor shall any such benefit be in any manner liable for or subject to the debts, contracts, liabilities, engagements, or torts of the person entitled to such benefit, except as specifically provided herein.

### 14.2   No Right of Employment

The Plan shall not be construed as conferring any rights upon any person for a continuation of employment, nor as limiting in any way the right of the Firm to discharge any person or to treat him without regard to the effect which such treatment might have upon him as a Member under the Plan.

### 14.3   Incapacity of Payee

If any person entitled to receive any benefits from the Plan is, in the judgment of the Committee, legally, physically, or mentally incapable of personally receiving and receipting for any distribution, the Committee may instruct

the Trustee to make distribution to such other person, persons or institutions as, in the judgment of the Committee, are then maintaining or have custody of such distributee.

### 14.4   Identity of Payee

The determination of the Committee as to the identity of the proper payee of any benefit under the Plan and the amount of such benefit properly payable shall be conclusive, and payment in accordance with such determination shall constitute a complete discharge of all obligations on account of such benefit.

### 14.5   Failure to Locate Payee

In the event any amount shall become payable under the Plan to a person or the executor or administrator of any deceased person and if, after written notice from the Trustee mailed to such person's last known address as certified to the Trustee by the Committee, such person or such executor or administrator shall not have presented himself to the Trustee within two years after the mailing of such notice, the Trustee shall notify the Committee and the Committee shall instruct the Trustee to distribute such amount due to such person or such executor or administrator among one or more of the spouse and blood relatives of such person or such deceased person designated by the Committee.

### 14.6   Facility of Payment

Notwithstanding any provision of the Plan to the contrary, if the retirement income payable in accordance with the provisions of the Plan to any person results in a monthly installment of less than $25.00, the Committee in its discretion may convert payment of such retirement income to a quarterly, semi-annual or annual basis.

### 14.7   Merger of Plan

The Plan shall not be merged or consolidated in whole or in part with, nor shall any of its assets or liabilities be transferred to, any other plan unless each Member and Savings Member or his Beneficiary, Joint Annuitant, Spouse or Dependent Children would, if the resulting plan terminated immediately after the merger, consolidation or transfer, receive a benefit equal to or greater than the benefit which he would have been entitled to receive under the Plan if it had terminated immediately before the merger, consolidation or transfer.

### 12.8   Governing Law

Except as otherwise required by law, the Plan and all matters arising thereunder shall be governed by the laws of the State of New York.

## APPENDIX A

### Increase of Retirement Income for
### Retired or Terminated Members

1.  Effective on June 1, 1975, the amount of annual retirement income payable with respect to any Member whose Retirement Date was prior to June 1, 1968, shall be increased as follows according to the number of calendar months beginning on or after the earlier of such Member's Retirement Date or Normal Retirement Date and ending prior to January, 1975:

(a)  2/12 of 1% for each such calendar month prior to January, 1965,

(b)  3/12 of 1% for each such calendar month after December, 1964 but prior to January, 1970, and

(c)  4/12 of 1% for each such calendar month after December, 1969 but prior to January, 1975.

2.  Effective on June 1, 1975, the amount of annual retirement income payable with respect to any other Member whose Retirement Date was prior to June 1, 1975, shall be the greater of

(a)  3/4 of 1% of the first $6,600 and 1-1/4% of the remainder of such Member's Average Plan Earnings above $6,600, multiplied by his Credited Service divided by twelve, or

A-1

(b)  the amount payable without regard to this paragraph 2.

For purposes of this computation, "Average Plan Earnings" shall mean the average of the Member's Plan Earnings as of each June 1st on which he was a Member during the 60 months preceding his Retirement Date.

In the case of annual retirement income payable in any form other than a straight life annuity, the recomputed benefit under clause (a) of paragraph 2 shall be adjusted on the basis of Actuarial Equivalents to an equivalent benefit payable in such form.

In applying the preceding paragraph, Actuarial Equivalents shall be determined as if the ages of the Member, and, if applicable, any designated person under an optional form of retirement income, and the terms of payment of such optional form, were the same as they were as of the Member's Retirement Date, or the date retirement income first commenced, whichever is later.

3.  The amount of annual retirement income determined to be payable with respect to any Member described in paragraph 2 shall be increased in the manner set forth in paragraph 1.

A-2

4. In no event shall the application of paragraphs 1, 2 and 3 result in an increase of less than $180 in annual retirement income payable with respect to any Member to which they apply.

5. Effective on October 1, 1980, the amount of annual retirement income payable with respect to any Member whose Retirement Date was prior to October 1, 1980, or, any affected Member described in Section 7.2 who retires after October 1, 1980 and before March 1, 1983, including a Member whose retirement income is determined under paragraphs 1 and 2 of this Appendix, shall be increased 20%.

6. In no event shall the application of paragraph 5 result in an increase of less than $120 in annual retirement income.

7. Effective on October 1, 1982, the amount of annual retirement income payable with respect to any Member whose Retirement Date was after June 1, 1975 shall be increased to the extent application of Plan Section 4.3(a)(i)(B) would provide a higher benefit. For this purpose only, Prior Service Plan Earnings shall be considered the average of a Member's Plan Earnings determined in accordance with Section 1.26 for those of the last five Plan Years prior to his Retirement Date during which he was at any time a Member.

A-3

COOPERS & LYBRAND
RETIREMENT PLAN

Amendment Number One

1.    Amend Section 1.9 to add the following new paragraph at the end thereof:

For purposes of Section 4.3(a) only, Credited Service shall also include any Service completed by a Member after attaining age 21 and completing twelve months of Service which is not otherwise considered Credited Service under this Section 1.9. Provided, however, that the foregoing sentence shall not apply to Partners and Principals.

2.    Amend Section 1.28 to read as follows:

1.28 "Prior Service Plan Earnings"

The average of a Member's Plan Earnings determined in accordance with Section 1.26 for the most recent five Plan Years before October 1, 1986 during which he was at any time a Member.

3.    Amend Section 4.3 to read as follows:

4.3 Retirement Income at Normal and Deferred Retirement Dates

The annual retirement income referred to in Section 4.1(a) shall be the greater of:

(a)  the sum of:

(i)  the greater of (a) the amount which was accrued on behalf of the Member under the Plan as of September 30, 1986 under the provisions of Section 4.3 then in effect, or (b) 1% of the first $15,000 and 1-1/2% of the remainder of his Prior Service Plan Earnings, multiplied by his Credited Service prior to October 1, 1986 divided by twelve; and,

(ii) for the year beginning October 1, 1986 and for each subsequent Plan Year, 1% of the first $15,000 and 1-1/2% of the remainder of his Plan Earnings for such year multiplied by his Credited Service for such year divided by twelve; or

(b)  for Members who retire on or after a Retirement Date described in Article III, the sum of the annual retirement income determined under (a) above, plus the quantity of (i) - (ii) - (iii), where (i), (ii), and (iii) have the following meanings:

(i)  70 percent of Plan Earnings determined as of the most recent October 1 prior to the Member's retirement. Provided, that for purposes of this sub-paragraph only, Plan Earnings shall not exceed $25,000.  Provided further that the 70 percent described above shall be reduced for Members who have completed less than 25 years of Service at retirement, by multiplying said 70 percent by a fraction, the numerator of which is years of Service at retirement and the denominator of which is 25.

(ii)  the Member's annual retirement income determined under Section 4.3(a); and

(iii)  the Member's Social Security primary insurance amount payable at age 65 based on earnings up to the date of retirement and assuming no earnings thereafter.  With respect to periods for which the Member's actual earnings for Social Security purposes are not available, the Social Security Benefit shall be calculated on the assumption that the Member had earnings for Social Security purposes after 1951, or age 22 if later, and prior to his last date of hire or re-hire by the Firm which increased at the rate of six (6) percent each year to his earnings on such date of hire or re-hire; or

(c)  $6.00 multiplied by his Credited Service.


4.   Amend Section 4.4(ii) to read as follows:

"(ii) the sum of retirement income as determined under Section 4.4(ii) of the Plan as in effect on September 30, 1986; and for the year beginning October 1, 1986 and for each subsequent Plan Year, 1% of the first $15,000 and 1 1/2% of the remainder of his Plan Earnings for such year multiplied by his Credited Service for such year divided by twelve."

5.   Amend the first sentence of 4.6(b)(ii) to read as follows:

"(ii) a percentage of the amount computed as specified in Section 4.3(a) or 4.4, as in effect on the date of the Member's termination, which percentage is determined in accordance with the following table:"


6.   Amend Section 4.8 to read as follows:

"Retirement benefits of a Partner or Principal under the Plan shall not exceed the benefits provided under the Partners and Principals Agreement in effect at the time benefits are payable under the Plan."

7.   Amend Section 4.13 to read as follows:

4.13  "Cash-Out of Retirement Income"

Notwithstanding any provision of the Plan to the contrary,

(a)  if the present value, as of the date on which a Member
retires or terminates employment or membership, of the total
retirement income to which he is entitled is $3,500 or less,
determined in accordance with Section 1.3(b) and the Member
has not attained age 50 as of the date of his retirement or
termination of employment or membership, such retirement
income shall be paid to him in a lump sum upon his retire-
ment or termination of employment or membership.

(b)  if a Member retires or terminates employment or
membership after September 30, 1985 and (i) the present
value of the total retirement income to which he is entitled
as of such date is greater than $3,500 (calculated in
accordance with Section 1.3(b)) but less than 75 percent of
his Plan Earnings for the most recently completed Plan Year
and (ii) the Member has not attained age 50 as of the date
of his retirement or termination of employment or member-
ship, such Member may elect, with his Spouse's written
consent, which meets the requirements of Section 5.3(b)(ii),
to receive payment of the present value of the total amount
of his retirement income in a lump sum upon his termination
of employment or membership, provided that his election is
made before the later of his attainment of age 50 or the
90-day period following his date of termination.

(c)  Payment of a Member's retirement income in accordance
with this Section 4.13 shall effect a complete discharge of
all obligations under the Plan with respect to such Member,
except that if he makes the election provided for under
Section 4.13 and he is later re-employed by the Firm and
again becomes a Member, he shall be afforded an opportunity
to repay to the Plan, no later than the later of the end of
the 60 consecutive month period commencing on the date
described in Section 1.32(c), or two years after the date of
his re-employment, the total amount of such payment,
together with interest at the rate prescribed by Section
411(c)(2)(C) of the Internal Revenue Code from the date of
the payment, and upon so doing, his Credited Service with
respect to which the payment was made shall be reinstated.

8.   Amend Article VII by adding a new Section 7.3 which shall
read as follows:

"7.3 Effective on October 1, 1986 with respect to any member
who had retired prior to such date and on or after a Retirement
Date specified in Article III, the amount of annual retirement
income pay to such Member shall be increased by seven (7)
percent.