# Exhibit B
# Part 1

*RETIREMENT BENEFIT ACCUMULATION PLAN*
*FOR EMPLOYEES OF PRICEWATERHOUSECOOPERS LLP*

**As Amended and Restated**
**Effective July 1, 1995**

*RETIREMENT BENEFIT ACCUMULATION PLAN*
*FOR EMPLOYEES OF PRICEWATERHOUSECOOPERS LLP*

**TABLE OF CONTENTS**

**ARTICLE 1       PURPOSE AND APPLICABILITY OF PLAN** ...................................... 3
    1.1   Purpose of Plan .......................................................................... 3
    1.2   Applicability of Plan ................................................................... 3

**ARTICLE 2       DEFINITIONS** ................................................ 4
    2.1   Accrued Benefit ......................................................................... 4
    2.2   Actuarial Equivalent .................................................................. 4
    2.3   Actuary ...................................................................................... 4
    2.4   Adoption Agreement ................................................................. 4
    2.5   Administrative Committee .......................................................... 5
    2.6   Affiliated Employer ................................................................... 5
    2.7   Beneficiary ................................................................................. 5
    2.8   Benefit ....................................................................................... 6
    2.9   Break in Service ........................................................................ 6
    2.10  Code ........................................................................................... 6
    2.11  Compensation ............................................................................ 6
    2.12  Computation Period ................................................................... 8
    2.13  Deemed Account Balance .......................................................... 8
    2.14  Deemed Investment Experience ................................................ 9
    2.15  Deemed Payroll Period Allocation ........................................... 10
    2.16  Deemed Plan Interest Rate ........................................................ 14
    2.17  Director ...................................................................................... 15
    2.18  Earned Income .......................................................................... 15
    2.19  Effective Date ........................................................................... 16
    2.20  Eligible Employee ..................................................................... 16
    2.21  Employee ................................................................................... 16
    2.22  Employer ................................................................................... 18
    2.23  Employer Contributions ............................................................ 19
    2.24  Entry Date ................................................................................. 19
    2.25  ERISA ....................................................................................... 20
    2.26  Fiduciary ................................................................................... 20
    2.27  Firm ........................................................................................... 20
    2.28  Highly Compensated Employee ................................................ 20
    2.29  Hour of Service ......................................................................... 24
    2.30  Investment Manager .................................................................. 26
    2.31  Leased Employee ...................................................................... 26
    2.32  Normal Retirement Age ............................................................ 27
    2.33  Normal Retirement Benefit ....................................................... 27
    2.34  Participant ................................................................................. 27

2.35   Plan ........................................................................................... 27
2.36   Plan Administrator .................................................................. 27
2.37   Plan Year.................................................................................. 27
2.38   Policy Board............................................................................ 28
2.39   Qualified Joint and Survivor Annuity..................................... 28
2.40   Qualified Pre-Retirement Survivor Annuity ........................... 28
2.41   Spouse...................................................................................... 28
2.42   State.......................................................................................... 28
2.43   Trust ......................................................................................... 29
2.44   Trustee...................................................................................... 29
2.45   Valuation Date ......................................................................... 29
2.46   Year of Service......................................................................... 30

**ARTICLE 3       ELIGIBILITY AND YEARS OF SERVICE** ....................... 34
3.1   Eligibility Requirements .......................................................... 34
3.2   Cessation of Eligibility ............................................................ 34
3.3   Eligible Employees ................................................................... 34

**ARTICLE 4       CONTRIBUTIONS** ............................................................ 38
4.1   Employer Contributions............................................................ 38
4.2   Form of Employer Contributions.............................................. 38
4.3   No Participant Contributions .................................................... 38

**ARTICLE 5       RETIREMENT BENEFITS** ................................................. 39
5.1   Normal Retirement Benefit....................................................... 39
5.2   Payment of Benefits.................................................................. 41
5.3   Qualified Joint and Survivor Annuity....................................... 43
5.4   Optional Forms ......................................................................... 45
5.5   Method of Payment of Benefit.................................................. 46
5.6   Distribution Procedures ............................................................ 47
5.7   Death of the Participant ............................................................ 49
5.8   Designation of Beneficiary ....................................................... 51
5.9   Distribution Only Upon Written Instructions and Release for Payment ................. 53
5.10  Direct Rollover.......................................................................... 53
5.11  Distribution for Minor or Incompetent Beneficiary................. 55
5.12  Location of Participant or Beneficiary Unknown .................... 56

**ARTICLE 6       VESTING** ........................................................................... 57
6.1   Employer Contributions............................................................ 57
6.2   Amendments Affecting Benefits............................................... 59

**ARTICLE 7       LIMITATIONS ON BENEFITS** ......................................... 60
7.1   General Limit............................................................................. 60
7.2   Adjustment to Limits ................................................................ 60
7.3   Definitions................................................................................. 62
7.4   Definitions................................................................................. 67

**ARTICLE 8        PLAN LOANS** ................................................................................ 75
    8.1    Loans to Participants ..................................................................... 75

**ARTICLE 9        TOP-HEAVY** .................................................................................. 76
    9.1    Applicability of Top Heavy Rules .......................................... 76
    9.2    Top Heavy Status ......................................................................... 76
    9.3    Minimum Accrued Benefit ....................................................... 79
    9.4    Vesting Requirement and Schedule ...................................... 80
    9.5    Definitions ....................................................................................... 81

**ARTICLE 10       ADMINISTRATION** ..................................................................... 83
    10.1    Duties and Responsibilities of Fiduciaries;
          Allocation of Fiduciary Responsibility ................................. 83
    10.2    Powers and Responsibilities of the Plan
          Administrator ................................................................................. 83
    10.3    Allocation of Duties and Responsibilities .......................... 86
    10.4    Appointment of the Plan Administrator ............................. 86
    10.5    Expenses .......................................................................................... 87
    10.6    Claim Procedure .......................................................................... 87

**ARTICLE 11       TRUST FUND; POWERS, DUTIES AND IMMUNITIES OF
                  TRUSTEE** ..................................................................................... 90
    11.1    Receipt of Contributions by Trustee ..................................... 90
    11.2    Investment Responsibility ......................................................... 90
    11.3    Appointment of Investment Manager ................................. 90
    11.4    No Prohibited Transaction ....................................................... 90
    11.5    Duties of Trustee Concerning Contributions ................... 90
    11.6    Distribution of Benefits by the Trustee ............................... 91
    11.7    Contributions Held in Trust ..................................................... 91
    11.8    Investment of Trust Fund ......................................................... 92
    11.9    Powers and Duties of Trustee .................................................. 93
    11.10    Application of Trust Funds ....................................................... 96
    11.11    Litigation ......................................................................................... 96
    11.12    Accounting by Trustee ............................................................... 96
    11.13    Reliance on Written Instructions ............................................ 97
    11.14    Disputes ........................................................................................... 97
    11.15    Duties of Trustee Limited ......................................................... 97
    11.16    Notices to Trustee ....................................................................... 97
    11.17    Notices to Employer or Participants ..................................... 98
    11.18    Resignation, Removal and Appointment of Trustee ...... 98
    11.19    No Diversion of Trust ................................................................. 99

**ARTICLE 12       INDEMNIFICATION OF FIDUCIARIES** ......................... 100
    12.1    Rights To Indemnification ....................................................... 100
    12.2    Advancement of Expenses ....................................................... 100
    12.3    Determination of Right to Indemnity ................................. 101
    12.4    Other Rights .................................................................................. 102

**ARTICLE 13     PARTICIPATING EMPLOYERS** .......................................................103
    13.1  Adoption by Other Employers ...........................................................103
    13.2  Adoption of Plan and Trust by Affiliated
          Employer .........................................................................................103
    13.3  Designation of Agent .......................................................................103
    13.4  Amendment .......................................................................................104
    13.5  Discontinuance of Participation .......................................................104
    13.6  Plan Administrator's Authority ........................................................104

**ARTICLE 14     CHANGE IN EMPLOYMENT** .......................................................105
    14.1  Participant Transfer from Employer to Employer ...........................105
    14.2  Participant Transfer from Employer to Affiliated
          Non-Employer ..................................................................................105
    14.3  Employee Credit for Services With Affiliated Non-
          Employer .........................................................................................105

**ARTICLE 15     AMENDMENT, TERMINATION AND MERGER** .......................106
    15.1  Establishment of Plan ......................................................................106
    15.2  Power of Amendment .......................................................................106
    15.3  Failure of Plan to Qualify Upon Amendment ..................................106
    15.4  Termination ......................................................................................106
    15.5  Merger, Consolidation, or Transfer ..................................................108
    15.6  Limitation of Benefits ......................................................................108

**ARTICLE 16     MISCELLANEOUS** ......................................................................110
    16.1  Exclusive Benefit of Participants and
          Beneficiaries ....................................................................................110
    16.2  Nonguarantee of Employment .........................................................111
    16.3  Rights to Trust Assets ......................................................................111
    16.4  Nonalienation of Benefits ................................................................112
    16.5  Bonding ............................................................................................112
    16.6  Construction .....................................................................................113
    16.7  Discretionary Acts To Be Non-Discriminatory ...............................113
    16.8  Titles and Headings ..........................................................................113
    16.9  Counterparts .....................................................................................114
    16.10 USERRA .........................................................................................114

**APPENDICES**
    **APPENDIX A** .......................................................................................116
    **APPENDIX B** .......................................................................................118
    **APPENDIX C** .......................................................................................172
    **APPENDIX D** .......................................................................................174

### RETIREMENT BENEFIT ACCUMULATION PLAN
### FOR EMPLOYEES OF PRICEWATERHOUSECOOPERS LLP

AGREEMENT, effective, as of the first day of June 1954, by and between Coopers &
Lybrand LLP (the "Firm"), and, as of the first day of July 1994, by and between Price
Waterhouse LLP (the "Firm"), and, as of the first day of July 1998, by and between
PricewaterhouseCoopers LLP (the "Firm"), a partnership with its principal office in New York,
NY, and the Trustees.

### WITNESSETH

WHEREAS, effective as of the first day of June 1954, Coopers & Lybrand LLP adopted this
defined benefit pension plan, as the Coopers & Lybrand Retirement Plan (the "Plan"), and,
effective as of the first day of July 1998, PricewaterhouseCoopers LLP adopted this Plan, as the
Coopers & Lybrand Retirement Plan; and

WHEREAS, effective as of the first day of July 1994, Price Waterhouse LLP adopted a
defined benefit pension plan, as the Retirement Benefit Accumulation Plan for Employees of
Price Waterhouse LLP (the "PW Plan") and, effective as of the first day of July 1998,
PricewaterhouseCoopers LLP adopted the PW Plan, as the Retirement Benefit Accumulation
Plan for Employees of PricewaterhouseCoopers LLP (the "RBAP"); and

WHEREAS, effective as of the first day of July 1999, the RBAP was merged into this Plan

1

and this Plan was amended and restated to conform to the terms of the RBAP and renamed as the Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP; and

WHEREAS, it is intended that this Plan meet the requirements of Sections 401 and 501 of the Internal Revenue Code of 1986, as amended; and

WHEREAS, this Plan must be amended to reflect changes in the law and for other purposes.

NOW, THEREFORE, it is agreed that, effective as of the first day of July 1995, the Firm hereby amends and restates this Plan, to read as follows:

# ARTICLE 1

## PURPOSE AND APPLICABILITY OF PLAN

1.1  <u>Purpose of Plan</u>.  The purpose of the Plan shall be to provide benefits to Participants and their Beneficiaries upon retirement, death, and termination of employment, or in the case of a Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal when he ceases to be active, under the terms and conditions, and subject to the limitations, contained herein.

1.2  <u>Applicability of Plan</u>.  The provisions of the Plan shall apply only to persons employed by the Employer on and after its Effective Date or the effective date of any amendment hereto.

3

# ARTICLE 2

## DEFINITIONS

The following words and phrases when used herein shall have the meanings set forth below unless a different meaning is plainly required by the context.

2.1  Accrued Benefit.  For any Participant as of any date, the Participant's Deemed Account Balance credited to that date.

2.2  Actuarial Equivalent.  A benefit having the same present value as the benefit which it replaces using the Deemed Plan Interest Rate that is applicable for the Plan Year with respect to which such determination is made and the mortality table set forth in Rev. Rul. 95-6, or any successor table designated by the Commissioner of the Internal Revenue Service for purposes of Section 417(e) of the Code.  Effective for Benefit Commencement Dates on or after December 31, 2002, the mortality table set forth in Rev. Rul. 2001-62 shall replace the mortality table set forth in Rev. Rul. 95-6.

2.3  Actuary.  An individual enrolled by the Joint Board for the Enrollment of Actuaries who performs actuarial services and related computations for the Plan.

2.4  Adoption Agreement.  The form prescribed by the Firm pursuant to which an Affiliated Employer adopts the Plan.

4

2.5 <u>Administrative Committee</u>.  A committee consisting of not less than three nor more than six members to be appointed by and to serve at the pleasure of the Board of Partners and Principals (prior to July 1, 1998, the Policy Board).  Vacancies in the Administrative Committee shall be filled by the Board of Partners and Principals.

2.6 <u>Affiliated Employer</u>.  The Firm and any corporation which is a member of a controlled group of corporations (as defined in Section 414(b) of the Code) which includes the Firm; any trade or business (whether or not incorporated) which is under common control (as defined in Section 414(c) of the Code) with the Firm; any service organization (whether or not incorporated) which is a member of an affiliated service group (as defined in Section 414(m) of the Code) which includes the Firm; and any other entity required to be aggregated with the Firm pursuant to regulations under Section 414(o) of the Code.

2.7 <u>Beneficiary</u>.  A Participant's Spouse, or in the event that the Participant is not married or the Participant's Spouse has properly executed a Spousal Consent in accordance with Section 5.8(a), the person(s) or entity designated by the Participant in accordance with Section 5.8(b) to receive any Benefit payable under the Plan upon or after the Participant's death.  Effective as of August 1, 1997, after a Participant's death and prior to commencement of any distribution of benefits under the Plan, the Beneficiary designated by the Participant may disclaim receipt of such benefit in favor of another individual or entity, subject to receipt by, and such procedures for, such disclaimer as may be required

5

by the Administrative Committee.  Prior to accepting a disclaimer by a Beneficiary, the

Administrative Committee may require such additional documents or other items, or such

actions, as in its sole judgment it deems appropriate.  No disclaimer by a Beneficiary may

result in a distribution of benefits to the individual or entity in whose favor such disclaimer

is made in a form that could not have been elected by the Participant had the Participant

designated such individual as his or her beneficiary instead of the Beneficiary.

2.8  Benefit.  The vested and nonforfeitable interest of a Participant in his or her

Accrued Benefit, as determined under Article 6.

2.9  Break in Service.  A Computation Period during which a Participant does not

complete more than five hundred (500) Hours of Service.

2.10  Code.  The Internal Revenue Code of 1986, as amended from time to time, or any

successor statute.

2.11  Compensation.

(a)  For purposes of a Deemed Payroll Period Allocation under the Plan based on

Compensation, Compensation shall include the remuneration for services rendered which

is paid by the Employer to or for an Employee during a Plan Year in which the Employee

is a Participant in the Plan which is includible in income for Federal income tax purposes

(Form W-2 income); provided, however, that Compensation shall not include any of the

following items (even if includible in gross income):  reimbursements or other expense

6

allowances, fringe benefits (cash and noncash), moving expenses, deferred compensation (other than any pre-tax contributions made, as permitted by Section 401(k) of the Code, to the Savings Plan for Employees and Partners of PricewaterhouseCoopers LLP and the Savings Plan for Employees of PricewaterhouseCoopers LLP), sign-on and referral bonuses, and welfare benefits. Compensation shall include wages, salary, overtime, commissions, bonuses (other than sign-on and referral bonuses), and severance pay, and other amounts received (without regard to whether an amount is paid in cash) for personal services actually rendered in the course of employment with the Employer, and any other amounts not currently includible in income under Section 125 of the Code pursuant to a salary reduction agreement, and any qualified transportation benefit not currently includable in income under Section 132(f)(4) of the Code. For a Participant who is on a LINT, LMIP, or LTIP leave of absence, Compensation shall be his or her United States home-office annual salary. Compensation for a self-employed individual shall be equal to his or her Earned Income. Compensation shall be determined based on the period the Employee is a Participant in the Plan. For Plan Years ending prior to July 1, 1997, in determining the Compensation of an Employee, the rules of Section 414(q)(6) of the Code shall apply, except that in applying such rules, the term "family" shall include only the Spouse of the Employee and any lineal descendants of the Employee who have not attained age nineteen (19) before the close of the Plan Year.

(b)  For purposes of the limit on benefits under Section 415 of the Code, Compensation shall be as defined under Section 7.3(g) of the Plan.

(c)  The maximum amount of Compensation that may be taken into account for any purpose is $150,000, as adjusted by the Secretary of the Treasury to reflect cost of

7

living increases. For Plan Years beginning after January 1, 2002, the maximum amount of Compensation that may be taken into account for any purpose is $200,000, as adjusted by the Secretary of the Treasury to reflect cost of living increases.

2.12 <u>Computation Period</u>. The twelve consecutive month period commencing each October 1 and ending the immediately following September 30.

2.13 <u>Deemed Account Balance</u>. For each Participant, the Participant's Deemed Payroll Period Allocations to date, as increased or decreased to reflect his or her Deemed Investment Experience in accordance with the following:

(a) On any day of the Plan Year other than on a Valuation Date, the value of a Participant's Deemed Account Balance shall equal its value (following the application of Section 2.13(b)) on the immediately preceding Valuation Date; and

(b) On each Valuation Date, the value of a Participant's Deemed Account Balance shall equal its value as adjusted on the immediately preceding Valuation Date increased or decreased to reflect his or her Deemed Investment Experience since the immediately preceding Valuation Date; provided, however, that if a Participant has received distribution(s) under the Plan, his or her Deemed Account Balance shall be decreased by the amount of any such distribution(s) since the immediately preceding Valuation Date prior to increasing or decreasing the Participant's Deemed Account Balance by his or her Deemed Investment Experience; and, further provided, that at such time as the payment of a Participant's Benefit in the form of an annuity commences, his or her Deemed Account Balance shall be reduced to zero.

8

"Deemed Account Balance" as used herein is only for recordkeeping purposes and it does not signify an individual account, and no Plan contributions are allocated for the benefit of any individual Participant's Deemed Account Balance. The Deemed Account Balance is a recordkeeping entry maintained by the Plan. For purposes of distributing a Participant's (other than a Partner's or Principal's) Benefit, his Deemed Account Balance shall be not less than $7,000 (reduced by any amount previously distributed with respect to the Participant and by the lump sum present value equivalent of the Participant's annual retirement income, if any, under Appendix B), provided that he was an active Participant (designated by Employment Status Code A, and excluding inactive Participants designated by Employment Status Codes P or L) in the Plan (1) on July 1, 2000, and (2) on March 7, 2002, other than a Participant employed by the Employer on March 7, 2002 in connection with PricewaterhouseCoopers Consulting (Line of Service Code USA05) or certain units of Business Process Outsourcing (Company Code BAM). The preceding sentence shall not affect in any way whatsoever the determination, under Article 6 of the Plan, whether a Participant has a vested and nonforfeitable right to his Accrued Benefit.

2.14 <u>Deemed Investment Experience</u>.

(a) An increase or decrease to a Participant's Deemed Account Balance in accordance with his or her investment experience election from among the choices prescribed by the Administrative Committee. An investment experience election shall be made by a Participant to the Plan Administrator in writing (or telephonically, or in any other form approved by the Plan Administrator), subject to such rules and procedures as the Plan Administrator shall prescribe and apply in a nondiscriminatory manner. In the absence of such investment experience election, the Plan Administrator shall increase or

decrease a Participant's Deemed Account Balance at the rate earned by the money market mutual fund that is among the investment experience choices prescribed by the Administrative Committee.  Each Participant's Deemed Account Balance shall be adjusted to reflect his or her Deemed Investment Experience in the same manner as if the Deemed Account Balance were actually invested pursuant to the Participant's investment experience election and as if each Deemed Payroll Period Allocation were actually an allocation made to an account for the Participant.

(b)  Form of Election.  An investment experience election shall be made by a Participant to the Plan Administrator in writing on a form prescribed by the Plan Administrator (or telephonically, or in any other form approved by the Plan Administrator).  Such form shall provide an acknowledgment by the Participant that he or she is solely responsible for any and all adjustments to his or her Deemed Account Balance as a consequence of his or her investment experience election.  Any investment experience election shall remain in effect as prescribed by rules established by the Plan Administrator. Upon acceptance, the Plan Administrator shall provide the Participant with written confirmation (or telephonically, or in any other form approved by the Plan Administrator) of the Participant's investment experience election.

(c)  Frequency of Election.  Each Participant shall be permitted to change his or her direction of future Deemed Investment Experience under his or her Deemed Account Balance or to reallocate the amounts credited to his or her Deemed Account Balance among the available choices under the Plan as of each Valuation Date.


2.15 Deemed Payroll Period Allocation.  For Participants other than Partners or

Principals, an amount equal to five percent (5%) of the Compensation paid to a Participant on a monthly, semimonthly, biweekly, weekly, or other periodic basis in accordance with the Participant's payroll period, except that a Participant who is a Director shall have an amount equal to seven percent (7%) of the Compensation paid to such Participant substituted for five percent (5%).  For the Plan Year ending June 30, 1995, for Participants other than Partners or Principals, an amount equal to three percent (3%) of Compensation for Participants other than Directors and five percent (5%) of Compensation for Directors shall be the Deemed Payroll Period Allocation in accordance with the Participant's payroll period and the balance of two percent (2%) shall be a Deemed Payroll Period Allocation on or before June 30, 1995 for any Participant who received a Deemed Payroll Period Allocation in accordance with his or her payroll period during such Plan Year.  For Plan Years beginning after June 30, 1995 and ending prior to July 1, 1997, a Director shall be allocated 0, except for a Director who is a Participant pursuant to Section 3.3(7).  For Participants who are Partners or Principals:  for Plan Years ending prior to July 1, 1998, an amount equal to the product of the Share Ratio for the Plan Year and the Unadjusted Allocation; and, for Plan Years beginning after June 30, 1998, an amount equal to the Unadjusted Allocation including for Plan Years beginning on and after July 1, 2001 Limited Equity Partners and Limited Equity Principals.  For the Plan Year ending June 30, 1995, no Deemed Payroll Period Allocation shall be made for a Partner or Principal who ceased to be an Employee prior to June 1, 1995.  For the Plan Year beginning July 1, 1999 and ending June 30, 2000, a Partner or Principal who (1) ceases to be active prior to October 1, 1999, and (2) was a partner or principal of Coopers & Lybrand L.L.P. on June 30, 1998 shall have no Deemed Payroll Period Allocations for such Plan Year.  For the

Plan Year beginning July 1, 2002, no Deemed Payroll Period Allocation shall be made for a Participant who is a Partner or Principal if, prior to July 1, 2002, such Participant is on the list of Partners and Principals who are anticipated to cease to be active with the Employer during such Plan Year in connection with the disposition by the Employer of its PricewaterhouseCoopers Consulting business; provided, however, that if such Participant (A) terminates his employment with such Consulting business (or its successor) within thirty days of an initial public offering of shares in such Consulting business (or its successor) and (B) thereupon commences receipt of benefits under the Partner Retirement Plan, then a Deemed Payroll Period Allocation shall be made for such Plan Year as of such date that such participant terminates his employment with such Consulting business (or its successor). If a Participant, who is on the list of Partners and Principals who are anticipated to cease to be active with the Employer, does not cease to be active with the Employer in connection with such disposition, then his Deemed Payroll Period Allocation for such Plan Year shall be made as of the later of July 1, 2002 and the date of an initial public offering of shares in such Consulting business (or its successor). For the Plan Year ending June 30, 1996, a Partner or Principal's Deemed Payroll Period Allocation shall be made as of such dates as are paid, and in the proportion that the Deemed Payroll Period Allocation for the Plan Year bears to, the end of year distributions that the Partner or Principal receives for the fiscal year of the Employer ending June 30, 1996. For Plan Years ending June 30, 1997 and June 30, 1998, a Partner or Principal's Deemed Payroll Period Allocation shall be made as of August 31 following the last day of such Plan Year, and for Plan Years thereafter, the Deemed Payroll Period Allocation shall be made not later than July 15 following the last day of a Plan Year. For Plan Years ending prior to July 1,

12

1999, the Deemed Payroll Period Allocation otherwise described in this Section 2.15 shall be reduced for a Participant who is a Partner or Principal, to the extent necessary, so that the Earned Income of the Partner or Principal shall not be less than the maximum amount of compensation that may be taken into account under Section 401(a)(17) of the Code for the Plan Year for which a Deemed Payroll Period Allocation is made. Prior to April 1, 2000, in the case of a Partner or Principal who ceases to be active prior to July 15 following a Plan Year (August 31 for the Plan Years ending June 30, 1997 and June 30, 1998), any remaining Deemed Payroll Period Allocation with respect to such Plan Year shall be made as of the last day of the calendar month in which the Partner or Principal ceases to be active. After March 31, 2000, any remaining Deemed Payroll Period Allocation for a Plan Year for a Partner or Principal who ceases to be active and must maintain independence from the Employer, under any standard imposed by any international, federal or state regulatory agency or professional association, shall be made for such Partner or Principal on the date of his withdrawal from the Employer. In the case of a Partner or Principal who ceases to be active during a Plan Year (other than in a situation where independence must be maintained), any remaining Deemed Payroll Period Allocation with respect to such Plan Year shall be made upon the earlier of (A) the last business day of the month following the month during which the Partner or Principal retires or his settlement check is issued by the Employer, or (B) such date Deemed Payroll Period Allocations are made for Partners and Principals who did not cease to be active during that Plan Year. For Plan Years beginning on or after July 1, 1997 and prior to July 1, 2001, the Deemed Payroll Period Allocation for a Participant who is a Limited Equity Partner or Limited Equity Principal shall be an amount equal to ten percent (10%) of the

Compensation paid to such Participant as if such Compensation for a Plan Year were paid on a monthly basis. For Plan Years beginning on or after July 1 1997, an Employee (who is a Partner or Principal or who is engaged as an Employee pending confirmation as a Partner or Principal) who has not previously been an eligible employee under another plan of the Employer (including a terminated plan) shall make a one-time irrevocable election, at the time the Employee first satisfies the eligibility requirements under any plan of the Employer, whether to (1) not be a Participant in the Plan, (2) have a Hypothetical Accrual determined under Section 7.4(e)(i) of the Plan, or (3) have a Hypothetical Accrual determined under Section 7.4(e)(ii) of the Plan. A Deemed Payroll Period Allocation for a Participant who is a Partner or Principal shall be limited to such Partner's or Principal's Earned Income, as described in Section 404(a)(8)(C) of the Code (including for any Plan Year for which a deduction is not taken by the Employer under Section 404 of the Code). No Deemed Payroll Period Allocation shall be made for an individual for any period after such individual's Accrued Benefit is distributed and rolled over by or on behalf of such individual to the Retirement Plan for Employees of PricewaterhouseCoopers LLP pursuant to Section 6.3D of such Plan.

2.16 Deemed Plan Interest Rate. The annual rate of interest for an annuity commencement date in a Plan Year equal to the interest rate on 30-year Treasury securities, as specified by the Commissioner of the Internal Revenue Service, for the month of May immediately preceding such Plan Year. Effective July 1, 2001 and Plan Years thereafter, the annual rate of interest for an annuity commencement date in a Plan Year equal to the interest rate on 30-year Treasury Securities, as specified by the Commissioner of the Internal Revenue Service, for the month of February immediately preceding such Plan

Year. However, only for the Plan Year commencing July 1, 2001, the Deemed Plan Interest Rate shall be equal to the rate specified for February 2001 or May 2001, whichever produces the largest Benefit.

2.17 Director. A client-service Employee who has a job code of 23, 26 (Managing Director Part-time Salaried), 27 (Managing Director Hourly), 41, 42, 44, 45, 46, 47, 48, 49 or 50 (Client Service Director), and effective July 1, 1997 a client-service Employee who has a job code of 7A, 7B, 7C, 7D, 7E, 7F, 7G, 7H, or 7J, and effective July 1, 1999 a client-service Employee who has a job code of C25 (which is equivalent to legacy Coopers & Lybrand L.L.P. staff classes 9225 or 25), or a practice-support Employee who has a a job code of 24 (with a pay grade of 15, 16, 17 or 18).

2.18 Earned Income. Net earnings from self-employment to the extent such earnings constitute compensation for personal services actually rendered to the Employer's business (except as otherwise required by Section 401(c)(2) of the Code), determined without regard to items not included in gross income and the deductions allowable to such items. Net earnings from self-employment are reduced by contributions to this Plan and any other qualified plan to the extent deductible under Section 404 of the Code, and by the deduction allowed by Section 164(f) of the Code (allowing a deduction for the self-employment tax). Effective only for the Plan Year commencing July 1, 1998 and ending June 30, 1999, references in Section 2.15 of the Plan to Earned Income and in Section 3.3(9) to self-employment income shall be read as referring to "financial statement income for the fiscal year ending June 30, 1999".

2.19 Effective Date. July 1, 1994. For an Affiliated Employer, other than the Firm, the effective date set forth in its Adoption Agreement.

2.20 Eligible Employee. Any Employee who meets the requirements of Section 3.3.

2.21 Employee. Any individual employed by the Employer. Employees shall also include:

(a)    Controlled Groups, etc. An individual employed by an Affiliated Employer shall be considered an Employee of the Employer.

(b)    Leased Employees. Any Leased Employee shall be considered an Employee. Contributions or benefits provided to such Leased Employee by the leasing organization for services rendered for the Employer shall be considered made by the Employer.

(c)    Partners. Any individual reported as a Partner on the Employer's Federal income tax return shall be considered an Employee for purposes of this Plan. Partner shall also include partner-equivalent employees of an incorporated Employer. Effective July 1, 1998 and thereafter, any individual who (1) has signed the Partners and Principals Agreement dated July 1, 1998 between the Firm and the Partners and Principals and who is designated as a Partner of the Firm; (2) is admitted as a Partner of the Firm; or, (3) signed the Restated Agreement with respect to Price Waterhouse LLP dated as of January 15, 1997 as a Limited Equity Partner (as that term is defined in the Restated Agreement) shall be considered an Employee for purposes of this Plan.

16

(d) <u>Principals</u>. Any individual who (1) on his behalf has signed the Agreement, made as of July 1, 1979, between the Firm and the Principals (as that term is defined in that Agreement), as such Agreement may from time to time be amended, or (2) who prior to July 1, 1979 signed an Agreement with Principal shall be considered an Employee for purposes of this Plan. Effective July 1, 1998 and thereafter, any individual who (1) has signed the Partners and Principals Agreement dated July 1, 1998 between the Firm and the Partners and Principals and who is designated as a Principal of the Firm; (2) is admitted as a Principal of the Firm; or, (3) signed the Restated Agreement with respect to Price Waterhouse LLP dated as of January 15, 1997 as a Limited Equity Principal (as that term is defined in the Restated Agreement) shall be considered an Employee for purposes of this Plan.

(e) <u>Limited Equity Partner</u>. Any individual who has signed the Restated Agreement with respect to Price Waterhouse LLP dated as of January 15, 1997, as such Agreement may be amended from time to time (the "Restated Agreement") as a Limited Equity Partner (as that term is defined in the Restated Agreement) shall be considered an Employee for purposes of this Plan. Limited Equity Partner shall also include a Limited Equity Partner who is on a LPIP leave of absence. After June 30, 1998, this subsection (e) is deleted.

(f) <u>Limited Equity Principal</u>. Any individual who has signed the Restated Agreement as a Limited Equity Principal (as the term is defined in the Restated Agreement) shall be considered an Employee for purposes of this Plan. Limited Equity Principal shall also include a Limited Equity Principal who is on a LPIP leave of absence. After June 30, 1998, this subsection (f) is deleted.

2.22 Employer. The Firm and each Affiliated Employer which adopts the Plan by entering into an Adoption Agreement. The Employer shall also include any successor to an Affiliated Employer whether by merger, purchase of assets, or otherwise, which, with the consent of the Firm, enters into an Adoption Agreement. The Employer shall include any successor to the Firm, whether by merger, purchase of assets, or otherwise, which adopts the Plan. When used with reference to an Employee or Participant, the term shall mean the Employer employing the Employee or Participant. For purposes of satisfying the vesting requirements of Section 6.1, an individual's Hours of Service with Continental Bank Corporation, Cyprus Amax, Cytrol Incorporated, effective July 1, 1996 TIG Insurance Company and prior related employers and McKenna & Company, effective November 1, 1996 The Rogers Alliance, Inc., effective January 1, 1998 Westbrook Partners LLC, and effective July 1, 1998 Applied Decision Analysis, Inc. shall be considered Hours of Service with the Employer based upon the equivalencies set forth in Section 2530.200b-3(e) of the Department of Labor Regulations. For purposes of satisfying the vesting requirements under the Plan, Hours of Service for employment: on or after July 1, 1997 and prior to July 1, 1998 for any Price Waterhouse firm listed under "European Area" in Schedule 1 to the Cooperation Agreement dated As Of September 30, 1997, among certain Price Waterhouse firms (as such Schedule may be amended from time to time), whether as a "Firm", "Specified Subsidiary" or "Connected Firm" as defined therein (collectively, the "PWE Firms"; and collectively with the Firm and all its Affiliated Employers, the "PW Firms"); and, on or after January 1, 1998 and prior to July 1, 1998 for Price Waterhouse Canada and Price Waterhouse Australasia shall be credited to a

Participant (regardless of whether such employment occurred before the Participant became an Employee or after the Participant ceased to be an Employee) for the Computation Period in which the employment occurs on the basis of 95 Hours of Service for each semimonthly payroll period for which at least one Hour of Service would be entitled to be credited.  For purposes of satisfying the vesting requirements under the Plan, Hours of Service shall include employment with a Member Firm, Network Firm or Relevant Entity of the PricewaterhouseCoopers Global Network on or after July 1, 1998, regardless of whether such employment occurred before the Participant became an Employee or after the Participant ceased to be an Employee.  Such Hours of Service shall be credited for the computation period in which the employment occurs on the basis of 95 Hours of Service for each semimonthly payroll period for which at least one Hour of Service would be entitled to be credited.  Effective July 1, 1998, for Employees with an Hour of Service on or after July 1, 1998, for purposes of satisfying the vesting requirements under the Plan, an individual's Hours of Service shall include any Hours that were credited: (1) under the Plan prior to the transfer of its sponsorship from Price Waterhouse LLP to PricewaterhouseCoopers LLP; and, (2) by Coopers & Lybrand L.L.P. prior to July 1, 1998, according to Section 2.46.

2.23 <u>Employer Contributions</u>.  Contributions made by the Employer under the Plan.

2.24 <u>Entry Date</u>.  The date on which an Eligible Employee enters the Plan.  For each Plan Year the Entry Dates are the first day of each calendar month during the Plan Year. Effective for the Plan Year beginning July 1, 1999 and Plan Years thereafter, however, the

Entry Date for an individual who is directly engaged by the Employer as a Partner or Principal after September 1st (i.e., without having previously been an Employee during the Plan Year that contains such September 1st) shall be July 1st of the next Plan Year.

2.25 ERISA.  The Employee Retirement Income Security Act of 1974, as amended from time to time, or any successor statute.

2.26 Fiduciary

(a)  Any person who exercises any discretionary authority or discretionary control respecting management or disposition of the Trust or any Plan assets.

(b)  Any person who renders investment advice for a fee or other compensation, direct or indirect, with respect to any monies or other property of the Plan or has any authority or responsibility to do so.

(c)  Any person who has any discretionary authority or discretionary responsibility for the administration of the Plan including, but not limited to, the Trustee, the Plan Administrator and any Employer.

2.27 Firm.  The United States firm of Price Waterhouse LLP with its principal office in New York, NY.  Effective July 1, 1998, the United States firm of PricewaterhouseCoopers LLP with its principal office in New York, NY.

2.28 Highly Compensated Employee.  For Plan Years beginning prior to July 1, 1997, an Employee who performs service for the Employer during the determination year, and

who during the look-back year: (i) received compensation from the Employer in excess of $50,000 (as adjusted pursuant to section 415(d) of the Code) or (ii) was an officer of the Employer and received compensation during such year that is greater than 50 percent of the dollar limitation in effect under section 415(b)(1)(A) of the Code. The term Highly Compensated Employee also includes: (i) Employees who are both described in the preceding sentence if the determination year is substituted for the look-back year and the Employee is one of the 100 Employees who received the most compensation from the Employer during the determination year; and (ii) Employees who are 5 percent owners at any time during the look-back year or determination year. The determination year shall be the Plan Year. The look-back year shall be the twelve-month period immediately preceding the determination year, or, if the Employer elects, pursuant to Section 1.414(q)-1T, Q&A-14(b), of the Income Tax Regulations, the look-back year calculation for a determination year shall be made on the basis of the calendar year ending with or within the applicable determination year. No more than a total of fifty (50) persons (or, if lesser, the greater of three (3) persons or ten percent (10%) of persons employed by the Employer), excluding those persons who may be excluded in determining the top-paid group, shall be treated as officers for a year. If no officer has satisfied the applicable compensation requirement during either a determination year or a look-back year, the highest paid officer for such year shall be treated as a Highly Compensated Employee. Compensation shall mean compensation within the meaning of Section 415(c)(3) of the Code plus any salary reduction contributions to a cafeteria plan under Section 125 of the Code and any salary deferral contributions that are excludable from income under Section 402(e)(3) and (h)(1)(B) of the Code. The Employer shall mean the Employer and any

corporation which is a member of a controlled group of corporations (as defined in Section 414(b) of the Code) which includes the Employer; any trade or business (whether or not incorporated) which is under common control (as defined in Section 414(c) of the Code) with the Employer; and any service organization (whether or not incorporated) which is a member of an affiliated service group (as defined in Section 414(m) of the Code) which includes the Employer; and any other entity required to be aggregated with the Employer pursuant to regulations under Section 414(o) of the Code.  If an Employee is, during a determination year or look-back year, a family member of either a 5-percent owner or a Highly Compensated Employee who is one of the 10 most highly compensated Employees ranked on the basis of compensation paid by the Employer during such year, then the family member and the 5-percent owner or top-ten Highly Compensated Employee shall be aggregated.  In such case the family member and 5-percent owner or top-ten Highly Compensated Employee shall be treated as a single employee receiving compensation and Plan contributions or benefits equal to the sum of such compensation and contribution or benefit of the family member and 5-percent owner or top-ten Highly Compensated Employee.  For this purpose, family member includes the spouse, lineal ascendants and descendants of the employee and the spouses of such lineal ascendants and descendants.

For Plan Years beginning after June 30, 1997, an Employee who: (a) was a 5-percent owner of any of the Affiliated Employers at any time during the Plan Year or the preceding Plan Year, or (b) for the preceding Plan Year had compensation from the Affiliated Employers in excess of $80,000 and, if the Firm so elects, was in the top-paid group for the preceding Plan Year.  The $80,000 amount is adjusted at the same time and in the same manner as under Section 415(d) of the Code, except that the base period is the calendar

quarter ending September 30, 1996. In determining whether an Employee is a Highly Compensated Employee for the Plan Year ending on June 30, 1998, this amendment to the Plan is treated as having been in effect for the Plan Year ending on June 30, 1997. For "determination years" of the Plan ending June 30, 2001 and thereafter, the determination of who is a Highly Compensated Employee shall be made with reference to the calendar year beginning within the "look-back year" in accordance with Notice 97-45. For purposes of determining if an Employee was a 5-percent owner, such Employee shall be a 5-percent owner if the Employee was a 5-percent owner within the meaning of Section 416(i)(1)(A)(iii) of the Code. For purposes of determining if an Employee is in the top-paid group for a preceding Plan Year, such group consists of the top twenty percent (20%) of Employees when ranked on the basis of compensation for such Plan Year. For purposes of determining the compensation of an Employee for the Plan Year ending June 30, 1998, compensation shall mean compensation within the meaning set forth in Section 415(c)(3) of the Code paid or made available to the Employee for the Plan Year, but including amounts that would be excluded from an Employee's gross income under a plan described in Sections 125, 401(k), or 403(b) of the Code. For Plan Years beginning after June 30, 1998, compensation shall mean compensation within the meaning set forth in Section 415(c)(3) of the Code paid or made available to the Employee for the Plan Year.

A Highly Compensated Former Employee is determined based on the rules applicable to determining Highly Compensated Employee status as in effect for that determination year, in accordance with Section 1.414(q)-1T, A-4 of the Temporary Income Tax Regulations and Notice 97-45.

2.29 Hour of Service.

(a)  Duties Performed.  Each hour for which an Employee is paid, directly or indirectly, or entitled to payment, for the performance of duties for any Affiliated Employer. These hours shall be credited to the Employee only for the Computation Period or Periods in which the duties are performed in an amount determined from the Employer's "time sheet" records, including any rounding practice used for such records.

(b)  No Duties Performed.  Each hour for which an Employee is paid, directly or indirectly, or entitled to payment, by any Affiliated Employer on account of a period of time during which no duties are performed (irrespective of whether the employment relationship has terminated) due to vacation, holiday, illness, incapacity (including short-term disability), layoff, jury duty, military duty, or leave of absence.  No more than five hundred one (501) Hours of Service shall be credited under this paragraph to an Employee on account of any single, continuous period during which the Employee performs no duties (whether or not such period occurs in a single Computation Period) and no credit shall be given for hours for which no duties are performed but for which payment by any Affiliated Employer is made or due under a plan maintained solely for the purpose of complying with applicable workers' compensation, unemployment compensation, or disability insurance laws or where payment solely reimburses an Employee for medical or medically related expenses incurred by the Employee.  Hours under this paragraph will be calculated and credited pursuant to Section 2530.200b-2 of the Department of Labor Regulations which are incorporated herein by this reference.

(c)  Back Pay.  Each hour for which back pay, irrespective of mitigation of damages, is either awarded or agreed to by any Affiliated Employer.  The same Hours of

24

Service shall not be credited both under paragraph (a) or paragraph (b), as the case may be, and under this paragraph (c). These hours shall be credited to the Employee for the Computation Period or periods to which the award or agreement pertains rather than the Computation Period in which the award, agreement, or payment is made.

(d)    Leave of Absence.  Hours of Service shall also include an uncompensated authorized leave of absence (including for a foreign tour of duty or for LLTD leave), or military leave while the Employee's reemployment rights are protected by law or such additional or other periods as granted by any Affiliated Employer as military leave (credited on the basis of forty (40) Hours of Service per each week or eight (8) Hours of Service per working day), provided the Employee returns to employment within ninety (90) days of the end of his or her military leave.

(e)    Leased Employees.  Hours of Service will also be credited for services rendered to any Affiliated Employers by a Leased Employee who is treated as an Employee.

(f)    Maternity/Paternity Leave.  Hours of Service shall also include absence from work for maternity or paternity reasons.  During this absence, the Employee shall be credited with the Hours of Service which would have been credited but for the absence, or, if such hours cannot be determined, with eight hours per day.  An absence from work for maternity or paternity reasons means an absence:

(1)    by reason of the pregnancy of the Employee,

(2)    by reason of the birth of a child of the Employee,

(3)    by reason of the placement of a child with the Employee in connection with adoption, or

(4)    for purposes of caring for such a child for a period immediately following

such birth or placement.

2.30 <u>Investment Manager</u>. The individual or entity appointed by the Trustee to manage the investment of all or a portion of the Trust. The Investment Manager may be any person, firm or corporation that is a registered investment advisor under the Investment Advisors Act of 1940, a bank, or an insurance company, and

     (a)   Who has the power to manage, acquire, or dispose of Plan assets, and

     (b)   Who acknowledges in writing his or her fiduciary responsibility to the Plan.

2.31 <u>Leased Employee</u>. Any individual who is not otherwise employed by an Affiliated Employer but who, pursuant to an agreement between an Affiliated Employer and any other person, has performed services for any of the Affiliated Employers (or for any of the Affiliated Employers and related persons (as determined in accordance with Section 414(n) of the Code)) on a substantially full-time basis for a period of at least one year and such services are of a type historically performed by employees in the Affiliated Employer's business field. For Plan Years beginning July 1, 1997 and thereafter, any individual who is not otherwise employed by an Affiliated Employer but who, pursuant to an agreement between an Affiliated Employer and any other person, has performed services for any of the Affiliated Employers (or for any of the Affiliated Employers and related persons (as determined in accordance with Section 414(n) of the Code)) on a substantially full-time basis for a period of at least one year and such services are under the primary direction and control of an Affiliated Employer. The determination of whether a person is a Leased Employee will be made pursuant to the rules and regulations under Section 414(n) of the

Code.

2.32 <u>Normal Retirement Age</u>.  The earlier of the date a Participant attains age 65 or completes five (5) Years of Service.

2.33 <u>Normal Retirement Benefit</u>.  A single life annuity for the life of a Participant payable at the later of the Participant's attained age or Normal Retirement Age, as set forth in Article 5 of the Plan.

2.34 <u>Participant</u>.  A person who has met the eligibility requirements of Article 3 and whose Benefit hereunder has not been completely distributed.

2.35 <u>Plan</u>.  The Retirement Benefit Accumulation Plan for Employees of Price Waterhouse LLP and, effective July 1, 1998, The Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP, as set forth in this Plan document, and as it may be amended from time to time.  Plan should also be read as referring, where applicable, to the Trust established in Article 11 hereof.

2.36 <u>Plan Administrator</u>.  The persons or entity designated by the Firm to administer the Plan pursuant to Section 10.4.

2.37 <u>Plan Year</u>.  The twelve (12) consecutive month period commencing each July 1 and ending the immediately following June 30.

27

2.38 <u>Policy Board</u>.  The Policy Board of the Firm.  Effective July 1, 1998, "Policy Board" is substituted and replaced by "Board of Partners and Principals", meaning the Board of Partners and Principals of the Firm.

2.39 <u>Qualified Joint and Survivor Annuity</u>.  An annuity for the life of the Participant, with a survivor annuity for the life of the Participant's Spouse which is fifty percent (50%) of the amount of the annuity payable during the joint lives of the Participant and his or her Spouse, which is equal to the Actuarial Equivalent of the Participant's Benefit.

2.40 <u>Qualified Pre-Retirement Survivor Annuity</u>.  An annuity for the life of the Participant's Surviving Spouse effective upon the death of a Participant, under which payments are equal to the amount which would be payable as an annuity that is the Actuarial Equivalent of the Participant's Deemed Account Balance at the Participant's death.  In no event shall such amount be less than the amount required by Sections 401(a)(11) and 417 of the Code.

2.41 <u>Spouse</u>.  The Spouse of the Participant or an individual who was the Spouse of the Participant at the date of death of the Participant (the "Surviving Spouse").  A former Spouse, other than a Surviving Spouse, will be treated as the Spouse to the extent provided under a qualified domestic relations order as described in Section 414(p) of the Code.

2.42 <u>State</u>.  The state in which is located the principal office of the Firm.

2.43 <u>Trust</u>. The Trust established in Article 11 of this Plan agreement, as it may be amended from time to time, consisting of all cash, securities, or other property received by the Trustee as contributions under the Plan and all securities or other property purchased or acquired therewith or therefrom, together with any increase, or accumulation thereon, and income therefrom, less distributions, payments or expenditures therefrom and losses thereon, all as authorized herein.

2.44 <u>Trustee</u>. Marsha R. Cohen, Roger C. Hindman, Peter K. Kelly, Richard R. Kilgust, Wendy L. Kornreich, Robert C. Morris Jr., Robert P. Sullivan, Randal S. Vallen, Brett D. Yacker, and any additional or successor Trustee or Trustees so designated. For convenience, the Trustee or Trustees are referred to herein in the singular and by the pronoun "it".

2.45 <u>Valuation Date</u>. Each day during the Plan Year that shares are traded on a national stock exchange. As of each Valuation Date, the Administrative Committee shall adjust a Participant's Deemed Account Balance for the period then ended to reflect his or her Deemed Investment Experience. The value of each Participant's Deemed Account Balance shall be based upon units or shares. Thereafter, when the Participant's Deemed Account Balance is credited with a Deemed Payroll Period Allocation or earnings pursuant to his or her Deemed Investment Experience, the value of such credit shall be used to accumulate units or shares and be added to such Participant's Deemed Account Balance. When any distributions, transfers, or losses as a consequence of Deemed Investment Experience are charged against

the Participant's Deemed Account Balance, the number of units or shares equal in value to the amount charged shall be deducted from the outstanding accumulation of units of shares. Notwithstanding any other provision of the Plan to the contrary, December 30, 1999 and December 31, 1999 shall not be a Valuation Date for any purpose under the Plan even if on such day shares are traded on a national stock exchange. Requests for reallocation of existing Deemed Account Balances among the various Deemed Investment Experience options or any fund-to-fund transfer under the Plan received after 4:00 pm eastern time on December 29, 1999 shall be valued at the close of business on January 3, 2000. Requests for distributions received by the Plan administrator prior to 4:00 pm eastern time on December 29, 1999 shall be valued at that day's closing prices rather than December 31, 1999, and requests for distributions received after 4:00 pm eastern time on December 29, 1999 shall be valued at the close of business on January 31, 2000.

2.46 <u>Year of Service</u>. For purposes of determining a Participant's nonforfeitable benefit (as defined in Article 6), a Computation Period during which an Employee is credited with at least one thousand (1,000) Hours of Service. Years of Service before age seventeen (17) are not considered. For purposes of determining a Participant's Accrued Benefit, a credit used to determine such Benefit. Effective July 1, 1998, for purposes of the application of section 1.410(a)-7(f) of the Income Tax Regulations to the crediting of Years of Service under this Plan, the date of transfer from the elapsed time method of crediting service under the Coopers & Lybrand Retirement Plan or the Kwasha Lipton Retirement Plan to the method based upon computation periods under this Plan shall be April 1, 1999. Any Years of Service credited under this Plan prior to October 1, 1998 to an Employee who was also

employed by Coopers & Lybrand L.L.P. prior to July 1, 1998 shall be added to his Years

of Service determined at April 1, 1999 under the rule stated in the immediately preceding

sentence. For the Computation Period from October 1, 1998 through September 30, 1999,

Hours of Service for an Employee: (1) covered under this Plan at March 31, 1999 shall be

determined based upon his actual Hours of Service as determined from the Employer's

"time sheet" records; or (2) covered under the Coopers & Lybrand L.L.P. Retirement Plan

or the Kwasha Lipton Retirement Plan at March 31, 1999 shall be determined by applying

the equivalency of 95 Hours of Service for each semimonthly payroll period for which

such Employee would be required to be credited with a least one Hour of Service until such

time during that Computation Period that actual Hours of Service for such Employee can

be recorded on "time sheets". For purposes of crediting Years of Service under the Plan to

an Employee hired by the Employer on August 2, 1999 from Equifax, Inc.: (1) such

Employee's completed anniversaries of employment with Equifax, Inc. as of August 1,

1999 shall be treated as Years of Service under the Plan; and (2) for the Computation

Period from October 1, 1998 through September 30, 1999, Hours of Service shall be

determined by applying the equivalency of 95 Hours of Service for each semimonthly

payroll period from the semimonthly payroll period that includes October 1, 1998 through

the semimonthly payroll period that includes August 2, 1999 and by using actual Hours of

Service thereafter. For purposes of crediting Years of Service under the Plan to an

Employee hired by the Employer on November 27, 1999, December 13, 1999, December

17, 1999, December 27, 1999, January 3, 2000, January 4, 2000, January 10, 2000, January

24, 2000, February 4, 2000, February 21, 2000, March 1, 2000, April 1, 2000, April 15,

2000, May 16, 2000, June 1, 2000, June 26, 2000, August 1, 2000, August 5, 2000, August

31

12, 2000, September 2, 2000, September 18, 2000, September 25, 2000, November 16,
2000, January 1, 2001, May 1, 2001, May 16, 2001, July 11, 2001, or August 1, 2001 from
BP Amoco Corporation: (1) such Employee's completed anniversaries of employment
with BP Amoco Corporation as of November 26, 1999 or such subsequent date of hire
shall be treated as Years of Service under the Plan; and (2) for the Computation Period
from October 1, 1999 through September 30, 2000, Hours of Service shall be determined
by applying the equivalency of 95 Hours of Service for each semimonthly payroll period
from the semimonthly payroll period that includes October 1, 1999 through the
semimonthly payroll period that includes November 27, 1999 or such subsequent date of
hire and by using actual Hours of Service thereafter.  For purposes of crediting Years of
Service under the Plan to an Employee hired by the Employer on December 1, 2000,
January 29, 2001, April 2, 2001, May 1, 2001, May 29, 2001, June 4, 2001, July 1, 2001,
August 1, 2001, or September 5, 2001 from Vastar Resources, Inc.: (1) such Employee's
completed anniversaries of employment with Vastar Resources, Inc. as of December 1,
2000 or such subsequent date of hire shall be treated as Years of Service under the Plan;
and (2) for the Computation Period from October 1, 2000 through September 30, 2001,
Hours of Service shall be determined by applying the equivalency of 95 Hours of Service
for each semi-monthly payroll period from the semi-monthly payroll period that includes
October 1, 2000 through the semimonthly payroll period that includes December 1, 2000
or such subsequent date of hire and by using actual Hours of Service thereafter.  For the
purpose of crediting Years of Service under the Plan to an Employee hired by the
Employer on March 1, 2001 or May 3, 2001 from the Australian Department of Finance
and Administration: (1) such Employee's completed anniversaries of employment with the

32

Australian Department of Finance and Administration as of March 1, 2001 or May 3, 2001 shall be treated as Years of Service under the Plan; and (2) for the Computation Period from October 1, 2000 through September 30, 2001, Hours of Service shall be determined by applying the equivalency of 95 Hours of Service for each semi-monthly payroll period from the semi-monthly payroll period that includes October 1, 2000 through the semi-monthly payroll period that includes March 1, 2001 or May 3, 2001 and by using actual Hours of Service thereafter; provided, however, that such Employee must be credited with two Years of Service with the Employer for the Computation Periods ending September 30, 2001 and September 30, 2002, and if such Employee is not credited with two Years of Service for the Computation Periods ending September 30, 2001 and September 30, 2002, then such Employee's Hours of Service shall be measured only from his or her actual date of hire by the Employer and such Employee will not be credited with any Years of Service or Hours of Service pursuant to clauses (1) and (2) above.

# ARTICLE 3

## ELIGIBILITY AND YEARS OF SERVICE

3.1  Eligibility Requirements.  Each Eligible Employee shall become a Participant on the Entry Date coincident with or next following the date he becomes an Eligible Employee provided that the Eligible Employee is employed by the Employer as of such Entry Date.

3.2  Cessation of Eligibility.  An Eligible Employee who ceases to be an Eligible Employee and again becomes an Eligible Employee shall become a Participant on the Entry Date coincident with or next following the date he subsequently becomes an Eligible Employee, provided that the Eligible Employee is employed by the Employer as of such Entry Date.

3.3  Eligible Employees.  Eligible Employees consist of Employees other than Employees who are (1) Leased Employees, (2) on leaves of absence for foreign tours of duty even if their compensation during such leaves of absence is subject to Federal income tax, other than LINT, LMIP, LTIP and LPIP leaves of absence, (3) temporary foreign exchange employees, (4) temporary faculty from United States universities, (5) temporary student interns, (6) temporary office staff, (7) for Plan Years beginning on or after July 1, 1995 and ending prior to July 1, 1997, Directors, other than a Director who is not an eligible employee under the Profit Sharing Plan For Partners Of Price Waterhouse LLP, (8) included in a unit of employees covered by an agreement which the Secretary of Labor finds to be a collective bargaining agreement between employee representatives and one or more employers, if there

34

is evidence that retirement benefits were the subject of good faith bargaining between such employee representatives and such employer or employers, (9) left intentionally blank, or (10) a Partner or Principal who has been designated by the Board of Partners and Principals as permanently no longer eligible for the Plan on account of incapacity. An incapacity designation shall be made by the Board of Partners and Principals upon application of a Partner or Principal only if there exists an immediate and heavy financial need of the Partner or Principal that prevents the Partner or Principal from making his or her allocable contribution to the Plan for a Plan Year on account of both: (1) "negative disposable income" that is likely to endure for at least three years; and (2) "insufficient net assets". For this purpose, "negative disposable income" means that the Partner or Principal's income from all sources is less than the Partner or Principal's living expenses, assuming such Partner or Principal were a Participant in the Plan. A Partner or Principal's income shall be determined by taking into consideration the income of his or her spouse, if any, from all sources, unless there is pending litigation for a divorce or separation. For this purpose, "insufficient net assets" means that the Partner or Principal's assets are inadequate to meet either the "total assets" or the "cash convertible test". To meet the "total assets test", a Partner or Principal must demonstrate that his or her assets net of any liabilities are less than the sum of (a) expenses taken into account in the determination of "negative disposable income" and (b) his or her allocable contribution that would otherwise be made to the Plan for the Plan Year. The condition of "insufficient net assets", as demonstrated by the "total assets test", must be likely to endure for at least one year. To meet the "cash convertible test", a Partner or Principal must demonstrate that his or her marketable assets net of any liabilities are less than the amount of his or her allocable contribution that would otherwise be made to the Plan for

the Plan Year. For purposes of both the "total assets test" and the "cash convertible test": (1) assets under qualified retirement plans, and nonqualified plans where benefits are not distributable, are excluded from the assets taken into consideration; (2) net assets of a Partner or Principal are determined after taking into consideration net assets of his or her spouse, if any, unless there is a pending court proceeding for divorce or separation; (3) liabilities taken into consideration are any liability of a Partner or Principal, or his or her spouse, if any, that would be enforceable against the Partner or Principal, or his or her spouse, in a Federal or state court. The Board of Partners and Principals may designate a Partner or Principal as permanently no longer eligible for the Plan on account of incapacity regardless of whether the immediate and heavy financial need resulting in such incapacity was foreseeable and/or voluntarily incurred. The Board of Partners and Principals shall designate a Partner or Principal as permanently no longer eligible for the Plan on account of incapacity only upon obtaining complete and suitable documentation of the immediate and heavy financial need from the Partner or Principal. The Board of Partners and Principals shall review all requests for incapacity designations and representations in support thereof and shall grant only those requests which comply with this Subsection unless it has knowledge or reason to know any representation(s) in support thereof to be false. (11) Effective July 1, 1994, any individual classified as an independent contractor by the Employer for whom a Form 1099 is required to be issued under the Code, or any corporation or other entity classified as an independent contractor by the Employer for which a Form 1099 is not required to be issued under the Code, shall not be considered an Employee for purposes of this Plan. An individual, corporation or other entity classified as an independent contractor by the Employer shall not be considered an Eligible Employee for purposes of this Plan during the period the

individual, corporation or other entity is so classified even if such individual, corporation or other entity is later retroactively reclassified as a common-law employee of the Employer during all or any part of such period pursuant to applicable law or otherwise.

(12) Effective July 1, 1998 through June 30, 1999: (A) Partners and Principals of PricewaterhouseCoopers LLP who were also partners or principals of Coopers & Lybrand L.L.P. on June 30, 1998; notwithstanding the foregoing, a Principal of PricewaterhouseCoopers LLP who was previously a principal of Applied Decision Analysis, Inc. shall be an Eligible Employee notwithstanding that he/she may have been a principal or employee of Coopers & Lybrand L.L.P. on June 30, 1998, and (B) Employees of PricewaterhouseCoopers LLP who were also employees of Coopers & Lybrand L.L.P. on June 30, 1998.

## ARTICLE 4

## CONTRIBUTIONS

4.1  <u>Employer Contributions</u>.  The Employer shall make Employer Contributions for each Plan Year in such amounts as are determined by the Actuary as necessary to fund the Plan in accordance with the funding policy established by the Administrative Committee and the minimum funding standards of Section 412 of the Code and the requirements of ERISA, unless the Secretary of the Treasury shall waive the Employer Contribution for a particular Plan Year due to business hardship.

4.2  <u>Form of Employer Contributions</u>.  All Employer Contributions to the Trust for any Plan Year shall be made in cash either in one lump sum or in installments.

4.3  <u>No Participant Contributions</u>.  The Plan shall neither require nor accept contributions from a Participant, and the Plan shall not accept contributions that are rolled over from another qualified plan of an employer or an Individual Retirement Account.

## ARTICLE 5

## RETIREMENT BENEFITS

5.1  Normal Retirement Benefit.  A Participant's Normal Retirement Benefit shall be an amount equal to the Actuarial Equivalent (calculated by projecting the Deemed Account Balance to Normal Retirement Age using the Deemed Plan Interest Rate) of his or her Deemed Account Balance.

(a)  Eligibility for Normal Retirement Benefit.  A Participant shall be eligible for a Normal Retirement Benefit upon termination of employment from the Employer, or in the case of a Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal when he ceases to be active, with a nonforfeitable right to his or her Accrued Benefit, as determined under Article 6 of the Plan.  For purposes of this Plan, a Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal ceases to be active when he ceases to perform significant services for the Employer as a Partner, Principal, Limited Equity Partner or Limited Equity Principal under the Agreement or Restated Agreement described in Section 2.21 of the Plan (without regard to such individual's status under the income tax laws).

Effective for Participants who attain age 70 ½ after December 31, 1998, the Normal Retirement Benefit that is paid upon a Participant's termination of employment, or in the case of a Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal after he ceases to be active, after the Participant attains age 70 ½ shall be the Actuarial Equivalent of the Normal Retirement Benefit that would have been paid to the Participant at age 70 ½ had he then terminated employment or ceased to be active.  For

purposes of this Section, an Actuarial Equivalent shall be the product of (1) the Normal Retirement Benefit at age 70 1/2, (2) Deemed Investment Experience, and (3) a fraction, the numerator of which is the value of a life annuity of $1 commencing on April 1 following the calendar year in which the Participant attains age 70 1/2, and the denominator of which is the value of such a life commencing on the Valuation Date for the Participant's request for a distribution upon his termination of employment.

On or after July 1, 1997 and prior to July 1, 1998, a transfer, leave of absence, appointment, secundment, or any other arrangement with the same result, from any PW Firm to another PW Firm shall not be considered a termination of employment from the Employer, or in the case of a Partner or Principal or Limited Equity Partner or Limited Equity Principal ceasing to be active. Effective July 1, 1998, a transfer, leave of absence, appointment, secundment, or any other arrangement with the same result, from any Member Firm, Network Firm or Relevant Entity of the PricewaterhouseCoopers Global Network to another Member Firm, Network Firm or Relevant Entity of the PricewaterhouseCoopers Global Network shall neither be considered a termination of employment from the Employer, nor be considered ceasing to be active.

(b) <u>Payment of Normal Retirement Benefit</u>. Subject to Section 5.3, a Participant's Normal Retirement Benefit shall be paid in monthly payments equal to one twelfth (1/12th) of the annual Normal Retirement Benefit. Effective for Participants who attain age 70 ½ after December 31, 1998 and prior to January 1, 2002, a Participant's Normal Retirement Benefit shall commence to be paid not later than the first day of April of the calendar year following the later of the calendar year during which the Participant attains age 70½, or the Participant terminates employment or in the case of a Participant who is a Partner, Principal,

Limited Equity Partner or Limited Equity Principal he ceases to be active. For Participants

who attain age 70 1/2 after December 31, 2001, the Participant's Normal Retirement Benefit

must be distributed, or distribution must commence, no later than April 1 of the calendar year

following the calendar year in which the Participant attains age 70 1/2 even though the

Participant may still be employed by the Employer or not ceased to be active, and such

distribution shall be increased each following December 31 to take into account the

Participant's Accrued Benefit not distributed as of such December 31.

    5.2  <u>Payment of Benefits</u>.  Prior to July 1, 1999, for purposes of a distribution under the

Plan, the value of a Participant's Benefit shall be its value as of the Valuation Date occurring

on the 20th day of the second following calendar month after the calendar month during

which a Participant provides the Plan Administrator with a request for a distribution of his or

her Benefit (or in the case where a Participant's Benefit does not exceed $5,000 ($3,500 prior

to July 1, 1998) during which termination of a Participant's employment occurs, or a

Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal

ceases to be active), unless the 20th day of the second following calendar month is a day on

which shares are not traded on a national stock exchange, in which case it shall be the

Valuation Date occurring on the first day before the 20th day on which shares are traded on a

national stock exchange.  Effective on and after July 1, 1999, for purposes of a distribution

under the Plan of:  (1) a Benefit in excess of $5,000, the value of a Participant's Benefit

shall be its value as of the Valuation Date occurring on the last business day of the calendar

month during which the Participant provides the Plan Administrator with a request for a

distribution of his or her Benefit if the request is received by the Plan Administrator by the

twentieth (20th) day of such month; provided, however, that a request for a distribution which is provided to the Plan Administrator during the same calendar month in which a Participant's termination of employment occurs (or in which a Partner, Principal, Limited Equity Partner, or Limited Equity Principal ceases to be active) shall result in such Participant's Benefit being valued on the Valuation Date occurring on the last business day of the next calendar month if the request is received by the Plan Administrator by the twentieth (20th) day of the month in which the Participant's termination of employment occurs (or in which a Partner, Principal, Limited Equity Partner, or Limited Equity Principal ceases to be active); and (2) a Benefit that is $5,000 or less, the value of a Participant's Benefit shall be its value as of the Valuation Date occurring on the last business day of the second calendar month following the calendar month in which a Participant's termination of employment occurs (or in which a Partner, Principal, Limited Equity Partner, or Limited Equity Principal ceases to be active). If the last business day of any calendar month is a day on which shares are not traded on a national stock exchange, the Valuation Date shall be the first day on which shares are traded on a national stock exchange before the last business day. A Participant's Benefit shall be paid as soon as practicable following its Valuation Date. Any Deemed Payroll Period Allocation made to the Participant's Deemed Account Balance subsequent to the initial distribution, shall be distributed as soon as practicable following the date of such Deemed Payroll Allocation. All distributions hereunder shall be made in a consistent and uniform manner with regard to timeliness of distribution. Notwithstanding any other provision of the Plan to the contrary, a Participant's request for a distribution will be valued as of the Valuation Date occurring on the next business day following receipt of the request for the distribution

when such request is made to comply with an independence standard imposed by any international, federal or state regulatory agency or professional association.

5.3 Qualified Joint and Survivor Annuity.

(a) A married Participant's Benefit shall be paid in the form of a Qualified Joint and Survivor Annuity unless the Participant elects an optional form of Benefit pursuant to a Qualified Election, as defined in Subsection (b), not earlier than ninety (90) days or less than thirty (30) days before the date that Benefit payments would commence.

(b) A Qualified Election is an election of an optional form of Benefit by a married Participant to which his or her Spouse consents in a writing witnessed by a Plan representative or a notary public. A Qualified Election constitutes a waiver of the Qualified Joint and Survivor Annuity. A Participant may make a Qualified Election not to have his or her Benefit paid in the form of a Qualified Joint and Survivor Annuity and may elect an alternative form of payment not earlier than ninety (90) days or less than thirty (30) days before the date on which Benefits are scheduled to commence. The Benefit commencement date for a distribution in a form other than a Qualified Joint and Survivor Annuity may be less than thirty (30) days after receipt of the written explanation described in Section 5.3(c) provided: (a) the Participant has been provided with information that clearly indicates that the Participant has at least thirty (30) days to consider whether to waive the Qualified Joint and Survivor Annuity and to elect (with Spousal Consent) a form of distribution other than a Qualified Joint and Survivor Annuity; (b) the Participant is permitted to revoke any affirmative distribution election at least until the Benefit commencement date or, if later, at any time prior to the expiration of the seven day period that begins the day after the

43

explanation of the Qualified Joint and Survivor Annuity is provided to the Participant; and (c) the Benefit commencement date is a date after the date that the written explanation was provided to the Participant. In order to be effective, any such election to have Benefits paid in a form other than a Qualified Joint and Survivor Annuity shall be consented to by the Spouse (or the Spouse's legal guardian if the Spouse is legally incompetent) in writing whereby the Spouse:

    (1)  consents not to receive the Qualified Joint and Survivor Annuity; and

    (2)  consents to the specific optional form elected by the Participant.

The instrument shall contain the signed acknowledgment by such Spouse of the effect of such election.

Spousal consent to such election shall not be required if the Participant establishes to the satisfaction of a Plan representative that such written consent may not be obtained because:

    (1)  there is no Spouse;

    (2)  the Spouse cannot be located;

    (3)  the Participant furnishes a court order to the Administrative Committee establishing that the Participant is legally separated or has been abandoned (within the meaning of local law), unless a qualified domestic relations order pertaining to such Participant provides that the Spouse's consent must be obtained; and

    (4)  there exist such other circumstances as the Secretary of the Treasury may by regulations prescribe.

Any consent necessary under this provision shall be valid only with respect to the Spouse who signed such consent (or the designated Spouse in the event that it is established that the consent of the Spouse may not be obtained) and such consent shall be irrevocable. A

Participant may revoke any prior election without the consent of his or her Spouse at any time prior to the commencement of benefits, in which case benefits shall be paid in the form of a Qualified Joint and Survivor Annuity, unless an alternative election is duly made with the appropriate Spousal consent.

(c)    The Administrative Committee shall provide to each Participant within a reasonable period prior to the commencement of benefits a written explanation of:

(1)    the terms and conditions of the Qualified Joint and Survivor Annuity;

(2)    the Participant's right to make, and the effect of, an election to waive the Qualified Joint and Survivor Annuity form of benefit;

(3)    the rights of a Participant's Spouse; and

(4)    the right to make, and the effect of, a revocation of a previous election to waive the Qualified Joint and Survivor annuity.

5.4    Optional Forms.  In lieu of the form of Benefit set forth in Sections 5.1 or 5.3, the Participant may elect, subject to the rules of Subsection 5.3(b), if applicable, one of the following forms of Benefit.

(a)    Specified Distribution.  Upon attainment of Normal Retirement Age, a Participant who is (i) a Partner or Principal, or (ii) a Non-Highly Compensated client-service Employee may receive a distribution of all or any portion of his or her Accrued Benefit in any form available under the Plan.  This form of distribution shall not be available to a Highly Compensated client-service Employee or any practice-support Employee.  This form of distribution shall not be available to any Participant who was a participant in the Coopers & Lybrand Retirement Plan or the Kwasha Lipton Retirement Plan prior to July 1,

45

1999.

(b) <u>Lump Sum Payment</u>. A single lump sum cash payment to the Participant upon his or her termination of employment, or in the case of a Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal when he ceases to be active, or upon the Participant's death to his or her Beneficiary. This is the only form of distribution available to a Beneficiary who is not the Participant's Spouse. The amount of any lump sum payment to a Participant or Beneficiary shall not be less than the Actuarial Equivalent of the Participant's Normal Retirement Benefit. A Participant who is required to cease receiving his Benefit in any form permitted under the Plan in order to comply with an independence standard imposed by any international, federal or state regulatory agency or professional association may receive a single lump sum payment that is not less than the Actuarial Equivalent of the undistributed portion of the Participant's Normal Retirement Benefit.

(c) <u>Single Life Annuity</u>. An annuity with equal monthly installments payable to the Participant for his or her lifetime. This is the automatic form of Benefit for a single Participant, unless such Participant elects another form. The amount of the annuity is the Actuarial Equivalent of the Participant's Deemed Account Balance.

5.5 <u>Method of Payment of Benefit</u>. The Administrative Committee, in its sole discretion, may provide for the payment of Benefits under this Article by the Trustee through the purchase of annuity contracts from an insurer, or through direct cash payments from the Trust to the Participant or Beneficiary. Any annuity contract purchased from an insurer which is distributed to a Participant or Beneficiary must be nontransferable in the hands of the Participant or Beneficiary. Neither the Administrative Committee, Employer or the

Trustee, nor their successors, shall be responsible for the failure on the part of the insurer to make payments provided by any such annuity contract, which is distributed to a Participant or Beneficiary.

5.6    Distribution Procedures.  Distribution of a Participant's Benefit shall be made as follows:

(a)    Participant's Benefit Does Not Exceed $5,000.  The Benefit payable to a Participant or Beneficiary shall be distributed in a lump sum upon the Participant's termination of employment, or in the case of a Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal when he ceases to be active, provided that the Actuarial Equivalent value of his or her Benefit does not exceed $5,000 ($3,500 prior to July 1, 1998), and the nonvested portion of the Participant's Accrued Benefit will be forfeited.  Such distribution shall not require consent of the Participant or his or her Spouse. If the Participant's vested Benefit is zero, the Participant shall be deemed to have received a distribution of such Benefit.  If a Participant receives a distribution under this Section 5.6(a) and the Participant resumes employment, or in the case of a Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal again becomes active, and is covered under the Plan, the Participant's Accrued Benefit will be restored to the amount on the date of the distribution (including all optional forms of benefit) if the Participant repays to the Plan the full amount of the distribution before the earlier of five (5) years after the first date on which the Participant is subsequently re-employed by the Employer, or in the case of a Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal when he again becomes active, or the date the Participant incurs five (5) consecutive 1-year

47

Breaks in Service following the date of the distribution. If a Participant is deemed to receive a distribution of zero and the Participant resumes employment, or in the case of a Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal again becomes active, and is covered under this Plan before the date the Participant incurs 5 consecutive 1-year Breaks in Service, upon the re-employment of such Participant, or in the case of a Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal when he again becomes active, the Participant's Accrued Benefit will be restored to the amount on the date of such deemed distribution. Any Accrued Benefit that is restored under this Section shall have Deemed Investment Experience credited to or subtracted from it at the rate earned by the money market mutual fund that is among the investment experience choices prescribed by the Administrative Committee for the period from the forfeiture to the restoration.

(b) <u>Participant's Benefit Exceeds $5,000</u>. The Benefit payable to a Participant shall be distributed to the Participant upon the Participant's termination of employment, or in the case of a Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal when he ceases to be active, at his or her election, and the election of his or her Spouse, if applicable, provided that the Benefit exceeds $5,000 ($3,500 prior to July 1, 1998), and the nonvested portion of the Participant's Accrued Benefit will be forfeited. If a Participant receives a distribution and the Participant resumes employment, or in the case of a Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal again becomes active, and is covered under the Plan, the Participant's Accrued Benefit will be restored to the amount on the date of the distribution if the Participant repays to the Plan the full amount of the distribution before the earlier of five (5) years after the first date on which

48

the Participant is subsequently re-employed by the Employer, or in the case of a Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal when he again becomes active, or the date the Participant incurs five (5) consecutive 1-year Breaks in Service following the date of the distribution. Any Accrued Benefit that is restored under this Section shall have Deemed Investment Experience credited to or subtracted from it at the rate earned by the money market mutual fund that is among the investment experience choices prescribed by the Administrative Committee for the period from the forfeiture to the restoration.

(c)  Required Distribution. Unless the Participant otherwise elects, distribution of his or her Benefit shall commence no later than the 60th day after the close of the Plan Year in which the latest of the following events occurs:

(1)  the Participant's attainment of age sixty-five (65) or if earlier, Normal Retirement Age; or

(2)  the 10th anniversary of the Participant's commencement of participation in the Plan; or

(3)  the Participant's termination of employment with the Employer, or in the case of a Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal when he ceases to be active.

5.7  Death of the Participant. If the Participant dies after distribution of his Benefit has begun in a form described in Section 2.39, the remaining portion of such interest will continue to be distributed at least as rapidly as under the form of distribution being used prior to the Participant's death. If the Participant dies before distribution of his Benefit has begun, and the Participant's Beneficiary is the Participant's surviving Spouse, the date

49

distributions are required to begin (A) in the form of a Qualified Preretirement Survivor Annuity shall not be earlier than the later of (i) December 31 of the calendar year immediately following the calendar year in which the Participant died and (ii) December 31 of the calendar year in which the Participant would have attained age 70½, subject to Section 5.6(a), or (B) in the form of a lump sum, which is the Actuarial Equivalent of the Participant's Deemed Account Balance, shall not be earlier than the later of (i) December 31 of the calendar year which contains the fifth anniversary of the date of death of the Participant and (ii) December 31 of the calendar year in which the Participant would have attained age 70½. If the Participant dies before distribution of his Benefit has begun, and the Participant's Beneficiary is not the Participant's surviving Spouse, distribution shall be by December 31 of the calendar year containing the fifth anniversary of the Participant's death.

If the Participant has not made an election pursuant to Section 5.6(b) by the time of his death, the Participant's Beneficiary must elect the method of distribution no later than the earlier of (1) December 31 of the calendar year in which distributions would be required to begin under this Section 5.7, or (2) December 31 of the calendar year which contains the fifth anniversary of the date of death of the Participant. If the Participant has no Beneficiary, or if the Beneficiary does not elect a method of distribution, distribution of the Participant's entire interest must be completed by December 31 of the calendar year containing the fifth anniversary of the Participant's death.

(a) <u>Proof of Death</u>. The Plan Administrator may require such proper proof of death and such evidence of the right of any person to receive payment of the value of the Benefit of a deceased Participant as the Plan Administrator may deem desirable. The Plan

Administrator's determination of death and of the right of any person to receive payment shall be conclusive.

    (b)  <u>Waiver of QPSA</u>.  A waiver of the Qualified Preretirement Survivor Annuity and designation of a non-Spouse beneficiary may occur within the "Election Period".  For this purpose, the "Election Period" shall mean the period beginning on the first day on which the Participant commences participation and ending on the Participant's death.  The Plan Administrator shall provide each Participant with a written explanation of the Qualified Preretirement Survivor Annuity that is comparable to the written explanation described in Section 5.3 of the Plan.

    5.8  <u>Designation of Beneficiary</u>.  The Beneficiary of the benefit payable upon the death of a Participant shall be the Participant's Spouse.  Except, however, the Participant may designate a Beneficiary other than his or her Spouse if:

        (1)  the Spouse has executed a Spousal Consent, or

        (2)  the Participant has no Spouse, or

        (3)  the Spouse cannot be located.

    (a)  <u>Spousal Consent</u>.

        (1)  No designation of a primary Beneficiary other than the Participant's Spouse by a married Participant shall be effective unless

            (A)  the Spouse (or the Spouse's legal guardian if the Spouse is legally incompetent) executes a written instrument, during the election period described in Section 5.7(b), whereby such Spouse consents not to receive such Benefit and consents to the specific Beneficiary or Beneficiaries designated by the Participant; and

(B) the instrument acknowledges the effect of such election to which the Spouse's consent is being given and the signature of the Spouse on such election is witnessed by a notary public or a representative of the Plan.

(b) <u>Designation</u>. A Participant may designate from time to time any person or persons (who may be designated contingently or successively and may be an entity other than a natural person) as his or her Beneficiary who will be entitled to receive any undistributed amounts of the Participant's Benefit under the Plan at the time of the Participant's death. Any Beneficiary designation by a Participant shall be made in writing in the manner prescribed by the Plan Administrator during the Participant's lifetime. A Participant may change or revoke his or her Beneficiary designation at any time in the manner prescribed by the Plan Administrator. A Participant may revoke a designation of a Beneficiary other than his or her Spouse, or designate his or her Spouse as Beneficiary, without Spousal Consent. Any Beneficiary designation shall be ineffective if the Participant marries or remarries before distribution of Benefits payable upon the Participant's death begins. If the designated Beneficiary (or each of the designated Beneficiaries) predeceases the Participant, the Participant's Beneficiary designation shall be ineffective with respect to such Beneficiary.

(c) <u>No Beneficiary Designated</u>. If no Beneficiary designations are in effect at the time of the Participant's death, his or her Benefit shall be paid as follows:

(1) to his or her surviving Spouse, or, if there be none;

(2) to his or her natural or adopted children, or, if there be none;

(3) to his or her estate;

and if payable to more than one person in a class, all persons in that class shall share equally. Similarly, if the designated Beneficiary survives the Participant but dies before receiving the

52

entire Benefit otherwise payable (and he or she is not survived by a secondary Beneficiary, or the second Beneficiary also dies), the remainder shall be paid in a lump sum to the heir or heirs of the last surviving designated Beneficiary in accordance with priorities (1) through (3) above.

   5.9   <u>Distribution Only Upon Written Instructions and Release for Payment</u>.  All distributions under the Plan shall be made by the Trustee only upon receipt of written instructions furnished by the Administrative Committee setting forth the name and address of the recipient, and the amount and manner of distribution.  In making any such distribution, the Trustee shall be fully entitled to rely on the instructions furnished by the Administrative Committee, and shall be under no duty to make any inquiry or investigation with respect thereto.  Any payment to any Participant, Participant's legal representative or guardian, or Beneficiary, in accordance with the provisions of this Plan and Trust, shall, to the extent thereof, be in full satisfaction of all claims hereunder against the Trustee, Employer, and Plan Administrator.  The Trustee or Plan Administrator may require such Participant, legal representative or guardian, or Beneficiary, as a condition precedent to such payment, to execute a receipt and release thereof in such form as shall be determined by the Trustee or Plan Administrator.

   5.10   <u>Direct Rollover</u>.

      (a)   <u>General Application</u>

         Notwithstanding any provision of the Plan to the contrary that would otherwise limit a distributee's election under this Section 5.10, a distributee may elect, at the time and in the manner prescribed by the Plan Administrator to have any portion of an eligible rollover

distribution paid directly to an eligible retirement plan specified by the distributee in a direct rollover.

    (b)  <u>Definitions</u>.

       (1)  <u>Eligible rollover distribution</u>:  An eligible rollover distribution is any distribution of all or any portion of the balance to the credit of the distributee, except that an eligible rollover distribution does not include:  any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the distributee or the joint lives (or joint life expectancies) of the distributee and the distributee's designated beneficiary, or for a specified period of ten years or more; any distribution to the extent such distribution is required under Section 401(a)(9) of the Code; and the portion of any distribution that is not includible in gross income (determined without regard to the exclusion for net unrealized appreciation with respect to employer securities); and, effective January 1, 1999, any hardship distribution described in Section 401(k)(2)(B)(i)(IV), 403(b)(7) or 403(b)(11) of the Code. For distributions made after December 31, 2001, an eligible rollover distribution may include the portion of any distribution that is not includable in gross income (determined without regard to the exclusion for net unrealized appreciation with respect to employer securities).

       (2)  <u>Eligible retirement plan</u>:  An eligible retirement plan is an individual retirement account described in Section 408(a) of the Code, an individual retirement annuity described in Section 408(b) of the Code, an annuity plan described in Section 403(a) of the Code, or a qualified trust described in Section 401(a) of the Code, that accepts the distributee's eligible rollover distribution.  In the case of an eligible rollover distribution to the surviving spouse, for distributions made prior to January 1, 2002, an eligible retirement

plan is an individual retirement account or individual retirement annuity, and for distributions
made after December 31, 2001, an eligible retirement plan shall also include a qualified trust
described in Section 401(a) of the Code.  For distributions made after December 31, 2001, an
eligible retirement plan with respect to that portion of an eligible rollover distribution that is
not includable in gross income  (determined without regard to the exclusion for net
unrealized appreciation with respect to employer securities) shall be a qualified trust under
section 401(a) of the Code which is a defined contribution plan and which separately
accounts for amounts so transferred (including separately accounting for the portion of such
distribution which is includable in gross income and the portion of such distribution which is
not so includable), an individual retirement account described in section 408(a) of the Code,
or an individual retirement annuity described in section 408(b) of the Code.

     (3)  <u>Distributee</u>:  A distributee includes a Participant or former Participant.  In
addition, the Participant's or former Participant's surviving spouse and the Participant's or
former Participant's spouse or former spouse who is the alternate payee under a qualified
domestic relations order, as defined in Section 414(p) of the Code, are distributees with
regard to the interest of the spouse or former spouse.

     (4)  <u>Direct rollover</u>:  A direct rollover is a payment by the Plan to the eligible
retirement plan specified by the distributee.

    5.11  <u>Distribution for Minor or Incompetent Beneficiary</u>.  In the event any amount is
distributable to a minor or to any person who, in the judgment of the Plan Administrator or
the Trustee, is incapable of making proper disposition thereof, such payment shall be made
for the benefit of such minor or such incompetent in any of the following ways as the Plan

Administrator, in its sole discretion, shall determine:

> (a)  to the legal representative of such minor or such person;
>
> (b)  to anyone with whom such minor or such person resides;
>
> (c)  directly to such minor or such person; or
>
> (d)  in discharge of such minor's or such person's bills.

The Trustee may make such payments without the intervention of any guardian or fiduciary, and without obligation to require bond, or to see to the further application of such payments. Any such payment shall fully discharge the Trustee, Employer, Plan Administrator and the Plan from further liability on account thereof.


5.12  Location of Participant or Beneficiary Unknown.  In the event that all, or any portion, of the distribution payable to a Participant or his or her Beneficiary hereunder shall remain unpaid solely by reason of the inability of the Plan Administrator, after sending a certified letter, return receipt requested, to the last known address, and after further diligent effort, to ascertain the whereabouts of such Participant or his or her Beneficiary, the amount so payable shall be paid to a passbook account, money market account, or similar interest-bearing account, established by the Plan Administrator, and remain in such account until such time as the Participant or Beneficiary makes a claim for such distribution, which shall be payable in accordance with the terms of the Plan.  Reasonable expenses incurred in the attempt to locate such Participant or Beneficiary in excess of expenses ordinarily incurred in locating Participants or Beneficiaries (as determined by the Plan Administrator) shall be charged against the Benefit of such Participant or Beneficiary.

## ARTICLE 6

## VESTING

6.1 <u>Employer Contributions</u>. A Participant's Accrued Benefit shall be vested and nonforfeitable as follows.

(a) <u>Nonforfeitable Benefit at Normal Retirement Age or Death</u>. A Participant who is employed by the Employer on attainment of Normal Retirement Age or the date of his or her death shall be fully vested and have a nonforfeitable right to his or her Accrued Benefit.

(b) <u>Nonforfeitable Benefit Upon Termination of Employment</u>. If a Participant terminates from employment, or in the case of a Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal when he ceases to be active, with the Employer other than by reason of death, he or she shall be vested and have a nonforfeitable right to his or her Accrued Benefit after having completed five (5) Years of Service. Notwithstanding the preceding sentence, a Participant who was employed by the Employer on June 30, 1999 and was earning benefits under the Kwasha Lipton Retirement Plan on that date shall be vested and have a nonforfeitable right upon termination of employment, or in the case of a Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal when he ceases to be active, other than by reason of death, as follows:

| Completed Years of Service | Vested Percentage |
|---|---|
| Less than 3 | 0% |
| 3 | 20% |
| 4 | 40% |
| 5 or more | 100% |

Upon a Participant's termination from employment with the Employer, or in the case of a Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal when he ceases to be active, other than by reason of death, the Accrued Benefit of a Participant who is not vested and to which the Participant does not have a nonforfeitable right shall be forfeited as of the last business day of the second calendar month following the calendar month in which the Participant's termination from employment occurs or in which the Participant ceases to be active; provided, however, that in the case of a Participant who must maintain independence from the Employer his Accrued Benefit shall be forfeited as of the date of his final Deemed Payroll Period Allocation.

For purposes of this Section 6.1, Hours of Service shall include Hours of Service prior to the Effective Date. Prior to July 1, 1999, in the case of a Participant who has incurred a 1-year Break in Service, Years of Service before such Break are not taken into account until the Participant has completed a Year of Service after such Break in Service. In the case of a Participant who has 5 or more consecutive 1-year Breaks in Service, such Participant's pre-Break service will count in determining the Participant's nonforfeitable benefit that accrues after the Break only if either:

*amendment done to delete this sentence*

(1) such Participant has any nonforfeitable benefit at the time of separation from service; or