# Exhibit B
# Part 2

(2)  upon returning to service the number of consecutive 1-year Breaks in Service is less than the number of Years of Service.

6.2  Amendments Affecting Benefits.

(a)  Reduction in Benefits.  No amendment to the Plan shall decrease a Participant's Accrued Benefit.  No amendment to the Plan shall have the effect of decreasing a Participant's nonforfeitable percentage determined without regard to such amendment as of the later of the date such amendment is adopted or the date it becomes effective.

(b)  Change in Vesting Schedule.  If the Plan's vesting schedule is amended, or the Plan is amended in any way that directly or indirectly affects the computation of a Participant's nonforfeitable percentage, each Participant with at least three (3) Years of Service with the Employer may elect, within a reasonable period after the adoption of the amendment, to have the nonforfeitable percentage computed under the Plan without regard to such amendment.  The Participant's election may be made at any time during the period ending on the latest of:

(1)  sixty (60) days after the amendment is adopted;

(2)  sixty (60) days after the amendment becomes effective; or

(3)  sixty (60) days after the Participant is issued written notice of the amendment by the Employer or the Plan Administrator.

59

## ARTICLE 7

## LIMITATIONS ON BENEFITS

7.1 <u>General Limit</u>. No benefit shall be paid under this Plan, to the extent that the sum of (i) the Equivalent Life Annuity for such benefit, (ii) the Prior Benefit Amount, and (iii) the Equivalent Life Annuity of the Unpaid Benefit Amount exceeds the least of (A) the Defined Benefit Dollar Limit, (B) the Percentage Limit or (C) the Combined Limit.

7.2 <u>Adjustment to Limits</u>.

(a) <u>Adjustment for Early Retirement</u>. If a Participant's Benefit Commencement Date is before the Participant's Social Security Retirement Age, the Defined Benefit Dollar Limit shall be adjusted as follows:

(i) Where the Benefit Commencement Date is prior to the Social Security Retirement Age but not prior to age 62, the Defined Benefit Dollar Limit shall be reduced by 5/9 of 1% for each month prior up to the Social Security Retirement Date up to 36 months and by 5/12 of 1% for each month prior to the Social Security Retirement Date in excess of 36 months. Effective for Benefit Commencement Dates on or after January 1, 2002, the Defined Benefit Dollar Limit shall not be reduced for Benefit Commencement Dates on or after the attainment of age 62.

(ii) Where the Benefit Commencement Date is prior to age 62, the Defined Benefit Dollar Limit shall be the (A) times (((B) times (C)) divided by (D)), where:

(A) is the Defined Benefit Dollar Limit at age 62, determined in accordance with (a) above;

(B)  is the present value of a $1 life annuity at age 62 using the GATT Rates and Factors at the Benefit Commencement Date;

(C)  is the present value factor of $1 using the interest rate described in the GATT Rates and Factors and assuming no mortality for the period between the Benefit Commencement Date and the date the Participant attains age 62; and

(D)  is the present value of a $1 life annuity at the Participant's Benefit Commencement Date using the GATT Rates and Factors.  Provided, however, that for Benefit Commencement Dates on or after January 1, 2000 and prior to age 62, the Defined Benefit Dollar Limit shall never be greater than (A) multiplied by the applicable fraction set forth in Column B of Section 4(b) of Appendix B and divided by 82%.

(b)  <u>Adjustment for Late Retirement.</u>  If a Participant's Benefit Commencement Date is after the Participant's Social Security Retirement Age, the Defined Benefit Dollar Limit shall be (i) times (((ii) times (iii)) divided by (iv)), where:

(i)  Is the Defined Benefit Dollar Limit for a Participant at Social Security Retirement Age;

(ii)  Is the present value of a $1 life annuity at the Participant's Social Security Retirement Age using the lesser of (A) five percent (5%) or (B) the interest rate designated in Section 2.16 of the Plan at the Benefit Commencement Date;

(iii) Is the present value factor of $1 using the interest rate described in the GATT Rates and Factors and assuming no mortality for the period between the Participant's Social Security Retirement Date and his or her Benefit Commencement Date; and

(iv)  Is the present value of a $1 life annuity at the Participant's Benefit

61

Commencement Date using the GATT Rates and Factors. Provided, however, if the Participant's Benefit Commencement Date is on or after January 1, 2000 and after Social Security Retirement Age, the Defined Benefit Dollar Limit shall not be greater than (i) actuarially increased in accordance with Section 10(b) of Appendix B.

(c)  Adjustment of Limitation for Years of Participation. If the Participant has completed fewer than 120 months of active participation (within the meaning of Section 415(b)(5) of the Code) under any defined benefit plan maintained by the Employer, the Defined Benefit Dollar Limit shall be multiplied by a fraction whose numerator is the total months of active participation and whose denominator is 120.

(d)  Adjustment of Limitation for Years of Service. If the Participant has fewer than 120 months of service (within the meaning of Section 415(b)(5) of the Code), the Percentage Limit shall be multiplied by a fraction whose numerator is the total months of service and whose denominator is 120.

7.3  Definitions. For purposes of this Article 7 the following definitions shall apply:

(a)  Average Three Year 415 Pay. The average 415 Compensation for the three consecutive years of service with the Employer that produces the highest average.

(b)  Benefit Commencement Date. The date as of which any benefit is payable under this Plan.

(c)  Combined Limit. Effective for Limitation Years beginning prior to January 1, 2000, the lesser of (i) and (ii), where:

(i)  Is the product of (A) times (B) times (C) times (D), where:

(A) is 1.00 minus the Defined Contribution Fraction,

(B) is 1.25,

(C) is the lesser of 1.00 or the service fraction calculated under Section 7.2(d), and

(D) is the Defined Benefit Dollar Limit (determined without regard to Section 7.2(c)); and

(ii) Is the product of (A) times (B) times (C), where

(A) is 1.00 minus the Defined Contribution Fraction,

(B) is 1.40, and

(C) is the Percentage Limit (including adjustments described in Section 7.2(d)).

(d) <u>Defined Benefit Dollar Limit.</u> $90,000 or such higher amount promulgated by the Commissioner of Internal Revenue to reflect inflation. Any increase in the Defined Benefit Dollar Limit shall apply to Limitation Years ending within the calendar year of the date of the adjustment of such limit. Effective for Benefit Commencement Dates on or after January 1, 2002, and for purposes of Sections 7.1 and 7.2 only, the Defined Benefit Dollar Limit shall be $160,000 or such higher amount promulgated by the Commissioner of Internal Revenue to reflect inflation. For purposes of Section 7.4(g), the Defined Benefit Dollar Limit up to $140,000 shall continue to be defined by the first sentence of this Section 7.3(d).

(e) <u>Defined Contribution Fraction.</u> A fraction whose numerator is the sum of annual additions to defined contribution plans (within the meaning of Section 415(c)(2) of the Code) and whose denominator is the sum for each Limitation Year of the lesser of (i) the product of (A) 1.25 times (B) the limit described in Section 415(c)(1)(A) of the Code for such

Limitation Year and (ii) the product of (C) 1.4 and (D) the limit described in Section 415(c)(1)(B) of the Code for such Limitation Year.

(f)  Equivalent Life Annuity.  A life annuity calculated in accordance with this Section 7.3(f), which, except as provided in (iii) below, is determined as of the Benefit Commencement Date as of which a benefit actually paid is payable under the Plan.

(i)  If a Participant's benefit is payable in the form of a single-life annuity or a Qualified Joint and Survivor Annuity, the Equivalent Life Annuity shall be the annuity actually provided to the Participant.

(ii)  For Benefit Commencement Dates prior to January 1, 2000, if a Participant's benefit is payable in any form other than a single-life annuity or a Qualified Joint and Survivor Annuity, the Equivalent Life Annuity shall equal a single-life annuity, payable at the Benefit Commencement Date, that is the Actuarial Equivalent of the actual benefit being paid, based on the GATT Rates and Factors in effect as of such Benefit Commencement Date.  For Benefit Commencement Dates on or after January 1, 2000, if a Participant's benefit is payable as a lump sum, the Equivalent Life Annuity shall equal a single-life annuity, payable at the Benefit Commencement Date, that is the Actuarial Equivalent of the lump sum based on the applicable interest rate and mortality table specified in Section 2.2 of the Plan.  Also for Benefit Commencement Dates on or after January 1, 2000, if a Participant's benefit is payable in a form described in Section 9(a) through 9(f) of Appendix B, the Equivalent Life Annuity shall equal a single-life annuity, payable at the Benefit Commencement Date, that is the Actuarial Equivalent of the actual benefit being paid based on (1) the factors specified in Section 12(a)(i) of Appendix B, (2) the factors specified in Section 12(a)(ii) of Appendix B or (3) five percent (5%) interest and the mortality table

specified in Section 2.2 of the Plan, whichever produces the largest Equivalent Life Annuity.

(iii) If a Participant's Benefit Commencement Date under any other defined benefit plan maintained by the Employer occurred prior to July 1, 1995, the Equivalent Life Annuity shall be determined as of July 1, 1995. Such adjustment shall be accomplished (A) first by increasing the amount of the benefit for the period from the prior Benefit Commencement Date through July 1, 1995 (using the interest rate described in the GATT Rates and Factors as of July 1, 1995, and assuming no mortality for such period) and next by converting the increased benefit to an Equivalent Life Annuity, based on the GATT Rates and Factors in effect on July 1, 1995.

(g) 415 Compensation. In the case of a common-law employee, 415 Compensation is W-2 taxable earnings. In the case of a Partner or Principal, 415 Compensation is total earned income, less the sum of contributions to each of the Profit Sharing Plan For Partners Of PricewaterhouseCoopers LLP, the Savings Plan For Employees And Partners of PricewaterhouseCoopers LLP, and this Plan, plus the deduction allowed by Section 164(f) of the Code (allowing a deduction for the self-employment tax). For limitation years beginning after December 31, 1997, 415 Compensation shall include any elective deferral (as defined in Section 402(g)(3) of the Code), and any amount which is contributed or deferred by the Employer at the election of the Participant and which is not includable in gross income of the Participant by reason of Section 125 or 457 of the Code. For limitation years beginning on and after January 1, 2001, 415 Compensation shall include elective amounts that are not includable in the gross income of the Participant by reason of Section 132(f)(4) of the Code.

(h) GATT Rates and Factors.

(i)    The mortality table designated in Section 2.2 of the Plan, and

(ii)    The greater of (A) five percent (5%) or (B) the interest rate designated in Section 2.16 of the Plan.

(i)    <u>Limitation Year</u>.  The calendar year.

(j)    <u>Percentage Limit</u>. One hundred percent (100%) of the Participant's Average Three-Year 415 Pay.

(k)    <u>Prior Benefit Amount</u>.  If, prior to any Benefit Commencement Date, a Participant has received a distribution from this Plan or any other defined benefit plan maintained by the Employer on a prior Benefit Commencement Date, the Prior Benefit Amount shall equal the product of (i) x (ii) x (iii), where:

(i) Is the lesser of:

(A)  the Defined Benefit Dollar Limit (determined without regard to Section 7.2(c)), or

(B)  the Percentage Limit (determined without regard to Section 7.2(d)),

determined in each case as of the current Benefit Commencement Date (but disregarding increases in the Defined Benefit Dollar Limit to reflect increases for inflation since the actual prior Benefit Commencement Date);

(ii)  Is the adjustment for years of participation described in Section 7.2(c) as of the current Benefit Commencement Date; and

(iii) Is the Prior Distribution Ratio.

(l)    <u>Prior Distribution Ratio</u>.  The quotient of (i) divided by (ii), where:

(i)   Is the Equivalent Life Annuity of the amount distributed on such prior Benefit Commencement Date; and

(ii)   Is the lesser of:

(A)  the Defined Benefit Dollar Limit (determined without regard to Section 7.2(c)), or

(B)  the Percentage Limit (determined without regard to Section 7.2(d)),

determined in each case as of the prior Benefit Commencement Date. In the event the prior Benefit Commencement Date occurred before July 1, 1995, the Defined Benefit Dollar Limit and the Percentage Limit shall be determined as of July 1, 1995, but the Defined Benefit Dollar Limit shall not be adjusted to reflect increases for inflation since the actual prior Benefit Commencement Date.

(m) <u>Unpaid Benefit Amount</u>. If as of any Benefit Commencement Date, a Participant has any benefit in any defined benefit plan maintained by the Employer or an Affiliated Employer, which benefit has not commenced as of the Benefit Commencement Date, the Unpaid Benefit Amount shall be the benefit payable under such plan as of the Benefit Commencement Date, payable in the form of a lump-sum payment based on the GATT Rates and Factors as of the Benefit Commencement Date.

7.4   <u>Definitions</u>.  For purposes of Section 2.15 the following definitions apply:

(a)   <u>Calculation Age</u>.  Lesser of age nearest birthdate as of the first day of the Plan Year or age 62.

(b) <u>Calculation Assumptions</u>. 8% interest, as specified, and the mortality table in Rev. Rul. 95-6 with no changes for successive mortality tables.

(c) <u>Calculation Equivalence Factor</u>. A factor equal to the product of (i) multiplied by (ii), divided by (iii), where:

(i) Is the discount factor from age 62 to the Calculation Age based upon 5% interest,

(ii) Is the Immediate Annuity Factor at age 62 at 5% interest, and

(iii) Is the Immediate Annuity Factor at the Calculation Age at 5%. interest.

(d) <u>Fiscal Year 1995</u>. The fiscal year ended June 30, 1995.

(e) <u>Hypothetical Accrual</u>.

(i) In the case of a Partner or Principal whose birthdate is on or before June 30, 1950, the Hypothetical Accrual is the least of (a), (b) and (c), where:

(a) Is 1/10 of the Hypothetical Dollar Limit. Notwithstanding the foregoing, for Plan Years ending June 30, 1996 and June 30, 1997, this Section 7.4(e)(i)(a) shall be 17.5% of the Hypothetical Dollar Limit. Notwithstanding the foregoing, effective only for Plan Years ending June 30, 1998 and June 30, 1999, with respect to Partners and Principals who were partners or principals of Price Waterhouse LLP on June 30, 1998, this Section 7.4(e)(i)(a) shall be 17.5% of the Hypothetical Dollar limit. Notwithstanding the foregoing, effective for the Plan Year ending June 30, 1999, with respect only to Partners and Principals who were not (1) partners or principals of Price Waterhouse LLP on June 30, 1998, (2) previously principals of Applied Decision Analysis, Inc., and (3) partners or principals of Coopers & Lybrand L.L.P. on June 30, 1998, this Section 7.4(e)(i)(a) shall be 17.5% of the Hypothetical Dollar Limit. Notwithstanding the foregoing, effective for the

Plan Year beginning July 1, 1999 and Plan Years thereafter, this Section 7.4(e)(i)(a) shall be 17.5% of the Hypothetical Dollar Limit. Notwithstanding the foregoing, effective for the Plan Year beginning July 1, 2000 and Plan Years thereafter, this Section 7.4(e)(i)(a) shall be 10% of the Hypothetical Dollar Limit for a Partner or Principal who becomes a Partner or Principal on or after July 1, 1998 after having been an employee of the Employer for not less than one year immediately prior to becoming a Partner or Principal.

(b) Is the maximum additional accrual so that the sum of such accrual and the result of the Accrued Benefit divided by the Calculation Equivalence Factor further divided by the Immediate Annuity Factor at 8% interest at the Calculation Age does not exceed the Hypothetical Dollar Limit multiplied by the fraction calculated in 7.2(c) as of the last day of the Plan Year, and

(c) Is the maximum additional accrual so that the sum of such accrual and the result of the Accrued Benefit divided by the Calculation Equivalence Factor further divided by the Immediate Annuity Factor at 8% interest at the Calculation Age does not exceed the Hypothetical Combined Limit as of the last day of the Plan Year. Notwithstanding the foregoing, effective for Plan Years ending on or after June 30, 1997, this Section 7.4(e)(i)(c) is deleted and left intentionally blank.

(ii) In the case of a Partner or Principal whose birthdate is later than June 30, 1950, the Hypothetical Accrual is the least of (a), (b) and (c), where:

(a) Is the Hypothetical Dollar Limit divided by the greater of ten and the number of years from the Partner's or Principal's age nearest birthdate on the beginning of the first year such Partner or Principal participates in the Plan to age 60. Notwithstanding the foregoing, for Plan Years ending June 30, 1996 and June 30, 1997, this Section 7.4(e)(ii)(a)

shall be 10% of the Hypothetical Dollar Limit. Notwithstanding the foregoing, effective only

for Plan Years ending June 30, 1998 and June 30, 1999, with respect to Partners and

Principals who were partners or principals of Price Waterhouse LLP on June 30, 1998, this

Section 7.4(e)(ii)(a) shall be 17.5% of the Hypothetical Dollar Limit. Notwithstanding the

foregoing, effective for the Plan Year ending June 30, 1999, with respect only to Principals of

PricewaterhouseCoopers LLP who were previously principals of Applied Decision Analysis,

Inc., all such Principals shall be deemed to have a birthdate later than June 30, 1950, and this

Section 7.4(e)(ii)(a) shall be 10% of the Hypothetical Dollar Limit. Notwithstanding the

foregoing, effective for the Plan Year ending June 30, 1999, with respect only to Partners and

Principals who were not (1) partners or principals of Price Waterhouse LLP on June 30,

1998, (2) previously principals of Applied Decision Analysis, Inc., and (3) partners or

principals of Coopers & Lybrand L.L.P. on June 30, 1998, this Section 7.4(e)(ii)(a) shall be

10% of the Hypothetical Dollar Limit. Notwithstanding the foregoing, effective for the Plan

Year beginning July 1, 1999 and Plan Years thereafter, this Section 7.4(e)(ii)(a) is the

percentage of the Hypothetical Dollar Limit determined under Section 7.4(e)(i)(a), as if such

Partner or Principal's birthdate was on or before June 30, 1950. Notwithstanding the

foregoing, effective for the Plan Year beginning July 1, 2000 and Plan Years thereafter, this

Section 7.4(e)(ii)(a) shall be 10% of the Hypothetical Dollar Limit for a Partner or Principal

who becomes a Partner or Principal on or after July 1, 1998 after having been an employee of

the Employer for not less than one year immediately prior to becoming a Partner or Principal.

  (b)  Is the maximum additional accrual so that the sum of such accrual and

the result of the Accrued Benefit divided by the Calculation Equivalence Factor further

divided by the Immediate Annuity Factor at the Calculation Age at 8% interest does not

exceed the Hypothetical Dollar Limit multiplied by a fraction calculated as of the last day of

the Plan Year, the numerator of which is the number of years of active participation under

any defined benefit plan maintained by the Employer and the sum of (1) the denominator of

which is the greater of ten and the number of years from the Partner's or Principal's age

nearest birthdate on the beginning of the first year such Partner or Principal participates in the

Plan to age 60, and (2) the number of years of participation in other defined benefit plans on

the date the Partner or Principal participates in the Plan. Notwithstanding the foregoing, for

Plan Years ending June 30, 1996 and June 30, 1997, this Section 7.4(e)(ii)(b) shall be the

maximum additional accrual so that the sum of such accrual and the result of the Accrued

Benefit divided by the Calculation Equivalence Factor further divided by the Immediate

Annuity Factor at 8% interest at the Calculation Age does not exceed the Hypothetical Dollar

Limit multiplied by the fraction calculated in Section 7.2(c) as of the last day of the Plan

Year. Notwithstanding the foregoing, effective only for Plan Years ending June 30, 1998 and

June 30, 1999, with respect to Partners and Principals who were partners or principals of

Price Waterhouse LLP on June 30, 1998, this Section 7.4(e)(ii)(b) shall be the maximum

additional accrual so that the sum of such accrual and the result of the Accrued Benefit

divided by the Calculation Equivalence Factor further divided by the Immediate Annuity

Factor at 8% interest at the Calculation Age does not exceed the Hypothetical Dollar Limit

multiplied by the fraction calculated in Section 7.2(c) as of the last day of the Plan Year.

Notwithstanding the foregoing, effective for the Plan Year ending June 30, 1999, with respect

only to Principals of PricewaterhouseCoopers LLP who were previously principals of

Applied Decision Analysis, Inc., all such Principals shall be deemed to have a birthdate later

than June 30, 1950, and this Section 7.4(e)(ii)(b) shall be the maximum additional accrual so

that the sum of such accrual and the result of the Accrued Benefit divided by the Calculation Equivalence Factor further divided by the Immediate Annuity Factor at 8% interest at the Calculation Age does not exceed the Hypothetical Dollar Limit multiplied by the fraction calculated in Section 7.2(c) as of the last day of the Plan Year. Notwithstanding the foregoing, effective for the Plan Year ending June 30, 1999, with respect only to Partners and Principals who were not (1) partners or principals of Price Waterhouse LLP on June 30, 1998, (2) previously principals of Applied Decision Analysis, Inc., and (3) partners or principals of Coopers & Lybrand L.L.P. on June 30, 1998, this Section 7.4(e)(ii)(b) shall be the maximum additional accrual so that the sum of such accrual and the result of the Accrued Benefit divided by the Calculation Equivalence factor further divided by the Immediate Annuity Factor at 8% interest at the Calculation Age does not exceed the Hypothetical Dollar Limit multiplied by the fraction calculated in Section 7.2(c) as of the last day of the Plan Year. Notwithstanding the foregoing, effective for the Plan Year beginning July 1, 1999 and Plan Years thereafter, this Section 7.4(e)(ii)(b) is deleted, and the maximum additional accrual is determined under Section 7.4(e)(i)(b), as if such Partner's or Principal's birthdate was on or before June 30, 1950, and

(c)    the amount defined in (e)(i)(c) above. Notwithstanding the foregoing, effective for Plan Years ending on or after June 30, 1997, this Section 7.4(e)(ii)(c) is deleted and left intentionally blank.

(f)    Hypothetical Combined Limit.  The limit in Section 7.3(c)(i) where the Defined Benefit Dollar Limit in Section 7.3(c)(i)(D) is the Hypothetical Dollar Limit, and the Defined Contribution Fraction is the greater of the amount calculated as of the last day of the Plan Year and two-tenths (.2).

(g)  Hypothetical Dollar Limit.  The Hypothetical Dollar Limit is the product of (i) and (ii), where:

(i)  Is the difference of (a) minus (b), where (a) is the product of the Defined Benefit Dollar Limit (as defined in the first sentence of Section 7.3(d)) at Social Security Retirement Age and the Social Security Reduction Factor at age 65 and (b) is the Other DB Adjustment, and

(ii)  Is a fraction whose numerator is the Social Security Reduction Factor at age 62 and whose denominator is the Social Security Reduction Factor at age 65.

(h)  Immediate Annuity Factor.  Present value factor for a life annuity using Calculation Assumptions at interest, as specified.

(i)  Other DB Adjustment.  The equivalent annual life annuity payable at age 65 of amounts paid from the Plan or from any other defined benefit plans, or accrued in any other defined benefit plans.

(j)  Share Ratio for a Plan Year.  A fraction not to exceed 1 where the numerator is the Total Cash Distribution made to the Partners and Principals in the Fiscal Year coincided with the Plan Year divided by the number of shares held by Active Partners and Principals in such Fiscal Year and whose denominator is the Total Cash Distribution made to all Partners and Principals in Fiscal Year 1995 divided by the number of shares held in Fiscal Year 1995 by Active Partners and Principals.

(k)  Social Security Reduction Factor.  The Social Security Reduction Factor is the reduction factor defined under (after June 30, 2002, defined in the first sentence of ) Section 7.2(a)(i).

(l)  Total Cash Distribution.  The sum of all gross earnings for all Partners and

Principals.

(m) <u>Unadjusted Allocation</u>. For Plan Years beginning prior to July 1, 1999, the product of (i) multiplied by (ii) multiplied by (iii) multiplied by (iv), where:

(i)   Is the Hypothetical Accrual,

(ii)  Is the Calculation Equivalence Factor at the Calculation Age,

(iii) Is the Immediate Annuity Factor at 8% interest at the Calculation Age, and

(iv)  Is a fraction the numerator of which is the sum of the months during which a Partner or Principal is active and not on a medical leave of absence and the denominator of which is twelve (12). For Plan Years beginning after June 30, 1999, the product of (i) multiplied by (ii) multiplied by (iii) multiplied, where:

(i)   Is the Hypothetical Accrual,

(ii)  Is the Calculation Equivalence Factor at the Calculation Age,

(iii) Is the Immediate Annuity Factor at 8% interest at the Calculation Age.

74

# ARTICLE 8

## PLAN LOANS

8.1  <u>Loans to Participants</u>.  Loans to a Participant from his or her Deemed Account Balance are not permitted.

## ARTICLE 9

## TOP-HEAVY

9.1  <u>Applicability of Top Heavy Rules</u>.  If the Plan is or becomes a Top Heavy Plan, the provisions of this Article 9 shall apply and shall supersede all other conflicting provisions of the Plan during any Plan Year in which the Plan is Top Heavy.

9.2  <u>Top Heavy Status</u>.

(a)  <u>Determination</u>.  The Plan shall be a Top Heavy Plan if any of the following conditions exist:

(1)  If the top heavy ratio for the Plan exceeds sixty percent (60%) and the Plan is not part of any required aggregation group or permissive aggregation group of plans.

(2)  If the Plan is part of a required aggregation group of plans but not part of a permissive aggregation group and the top heavy ratio for the group of plans exceeds sixty percent (60%).

(3)  If the Plan is part of a required aggregation group and part of a permissive aggregation group of plans and the top heavy ratio for the permissive aggregation group exceeds sixty percent (60%).

Solely for the purpose of determining if the Plan, or any other plan included in a required aggregation group of which the Plan is a part, is top heavy (within the meaning of Section 416(g) of the Code) the accrued benefit of an Employee other than a key employee (within the meaning of Section 416(i)(1) of the Code) shall be determined under (a) the method, if any, that uniformly applies for accrual purposes under all plans maintained by the Affiliated

76

Employers, or (b) if there is no such method, as if such benefit accrued not more rapidly than the slowest accrual rate permitted under the fractional accrual rate of Section 411(b)(1)(C) of the Code.

    (b)  <u>Top Heavy Ratio</u>.  The top heavy ratio shall be determined as follows:

    (1)  If the Employer sponsors one or more defined benefit plans (including any simplified employee pension plans) and the Employer has never maintained any defined contribution plans which have covered or could cover a Participant in the Plan, the top heavy ratio shall be a fraction, the numerator of which is the sum of the present value of accrued benefits of all Key Employees as of the determination date (including any part of any accrued benefit distributed during the five (5) year period ending on the determination date), and the denominator of which is the sum of the present value of all accrued benefits (including any part of any accrued benefit distributed in the five (5) year period ending on the determination date) of all Participants as of the determination date, determined in accordance with Section 416 of the Code and the regulations thereunder.

    (2)  If the Employer sponsors one or more defined benefit plans (including any simplified employee pension plan) and the Employer sponsors or has sponsored one or more defined contribution plans which have covered or could cover a Participant, the top heavy ratio is a fraction, the numerator of which is the sum of (A) the present value of accrued benefits for all Key Employees under the defined benefit plans determined under Paragraph (1), above, and (B) the sum of the account balances of all Key Employees under the aggregated defined contribution plans for all Key Employees as of the determination date(s), and the denominator of which is the sum of (i) the present value of accrued benefits of all participants under the aggregated defined benefit plans determined under (1), above, and (ii)

the sum of the account balances of all participants under the aggregated defined contribution plans, determined in accordance with Section 416 of the Code and the regulations thereunder. Both the numerator and the denominator of the top heavy ratio shall be adjusted for any distribution of an account balance or accrued benefit made in the five (5) year period ending on the determination date.

(3)  The account balances and accrued benefits of a Participant who was formerly a Key Employee but who is not a Key Employee during the current Plan Year shall be disregarded in calculating the numerator and denominator of the top heavy ratio.

(4)  The account balances and accrued benefits of a Key Employee who has not performed any services for the Employer at any time during the five year period ending on the determination date shall not be taken into account in determining the top heavy ratio.

(5)  In calculating the top heavy ratio, the valuation date for determining the value of account balances and the present value of accrued benefits shall be the most recent accounting date that occurs within or ends with the twelve (12) month period ending on the determination date, except as provided in Section 416 of the Code and the regulations thereunder for the first and second plan years of a defined benefit plan. When aggregating plans, the value of account balances and accrued benefits shall be calculated with reference to the determination dates occurring within the same calendar year.

(6)  Any deductible contributions made by Participants shall not be included in computing the top heavy ratio. The extent to which distributions, rollovers, and trustee-to-trustee transfers are taken into account in determining the top heavy ratio shall be determined pursuant to Section 416 of the Code and the regulations thereunder.

9.3   Minimum Accrued Benefit.

(a)   Minimum Accrual.   Notwithstanding any other provision in this Plan except as provided in Subsections (c) and (d) below, for any Plan Year in which the Plan is Top Heavy, each Participant who is not a Key Employee and has completed 1,000 Hours of Service shall accrue a benefit (to be provided solely by Employer Contributions and expressed as a life annuity commencing at Normal Retirement Date) of not less than two percent (2%) of his or her highest average compensation for the five (5) consecutive years for which the Participant had the highest compensation.   The minimum accrual of a Participant who remains employed with the Employer following his Normal Retirement Date shall be nonforfeitable.   The minimum accrual is determined without regard to any Social Security contribution.   The minimum accrual applies even though under other Plan provisions the Participant would not otherwise be entitled to receive an accrual, or would have received a lesser accrual for the year because (1) the non-Key Employee fails to make mandatory contributions to the Plan or (2) the non-Key Employee's Compensation is less than a stated amount.

(b)   Top Heavy Compensation.   For purposes of computing the minimum accrued benefit, Top Heavy compensation shall include either (1) all compensation, as such term is defined for Section 415 purposes, (2) all wages subject to tax under Section 3101(a) of the Code without the dollar limitation of Section 3121(a) of the Code or (3) W-2 wages for the calendar year ending with or within the Plan Year.

(c)   Limit on Accruals.   No additional benefit shall be accrued pursuant to Subsection (a) above, to the extent that the total accruals on behalf of the Participant attributable to Employer Contributions will provide a benefit expressed as a life annuity commencing at Normal Retirement Date that equals or exceeds twenty percent (20%) of the

Participant's highest average compensation for the five (5) consecutive years for which the Participant had the highest compensation.

(d)  Coverage by Other Plans.  The provisions in Subsection (a), above, shall not apply to any Participant to the extent that the Participant is covered under any other plan or plans sponsored by the Employer and the minimum allocation or benefit requirement applicable to this Top Heavy Plan will be met in the other plan or plans.  It is intended that the Top Heavy minimum accruals will be provided under this Plan.

9.4  Vesting Requirement and Schedule.  Notwithstanding the provisions of Article 6, for any Plan Year during which the Plan is a Top Heavy Plan, the following vesting schedule shall be applicable if it would produce a greater vesting percentage for a Participant than that prescribed by Article 6:

| Years of Vesting Service | Percent Vested |
|---|---|
| Less than 3 Years | 0% |
| 3 or more Years | 100% |

In the event the Plan ceases to be a Top Heavy Plan, the vesting percentage for a Participant who has completed three (3) Years of Service shall be determined from the foregoing vesting schedule or the provisions set forth in Article 6, whichever produces the greater vested interest.  If a Participant had not completed five (5) Years of Service prior to January 1, 1989, his vested interest shall be equal to the greater of (a) or (b) below.

(a)  Is the product of the vesting percentage from the vesting schedule above and the Participant's Accrued Benefit as of the last day of the most recent Plan Year during which the Plan was a Top Heavy Plan, and

(b)  Is the Participant's vested interest determined under the provisions of Article 6.

9.5  <u>Definitions</u>.  The following words and phrases shall have the meanings set forth below for purposes of this Article 9:

(a)  <u>Determination Date</u>:  The last day of the first Plan Year, and for subsequent Plan Years, the last day of the preceding Plan Year.

(b)  <u>Key Employee</u>:  Any Employee or former Employee, and Beneficiaries of such Employee, who at any time during the Plan Year or any of the four preceding Plan Years was:

(1)  An officer of the Employer with Compensation that exceeds fifty percent (50%) of the dollar limitation in Section 415(b)(1)(A) of the Code in effect for such Plan Year,

(2)  One of the ten (10) Employees owning (or considered to own under Section 318 of the Code) the largest interests in the Employer, provided the Employee's Compensation from the  Employer for the Plan Year exceeds the maximum dollar limitation in effect under Section 415(c)(1)(A) of the Code for the Plan Year,

(3)  An Employee owning at least a five percent (5%) interest in the Employer, or

(4)  An Employee with Compensation from the Employer of more than $150,000 for the Plan Year who is a one percent (1%) owner of the Employer.

81

The determination of who is a Key Employee shall be made in accordance with Section 416(i)(1) of the Code and the regulations thereunder.

(c)  Non-Key Employee:  Any Employee other than a Key Employee.

(d)  Permissive Aggregation Group:  The required aggregation group of plans sponsored by the Employer, plus any other plan or plans of the Employer which would continue to satisfy the requirements of Sections 401(a)(4) and 410 of the Code when considered as a group with the required aggregation group.

(e)  Present Value Factors:  For purposes of determining the present value for this Article 9, the following factors shall be used:  the mortality table specified in Section 2.2 of the Plan, and five percent (5%) interest per annum.

(f)  Required Aggregation Group:  Each qualified plan sponsored by the Employer in which at least one Key Employee participates, and any other qualified plan sponsored by the Employer which enables a plan in which a Key Employee participates to meet the requirements of Section 401(a)(4) or 410 of the Code.

(g)  Valuation Date: The most recent accounting date that occurs within or ends with the twelve (12) month period ending on the determination date, except as provided in Section 416 of the Code and the regulations thereunder for the first and second plan years of a defined benefit plan.

## ARTICLE 10

## ADMINISTRATION

10.1 Duties and Responsibilities of Fiduciaries; Allocation of Fiduciary Responsibility.

A Fiduciary with respect to the Plan shall have only those specific powers, duties, responsibilities, and obligations as are explicitly given him or her under this Plan and Trust. In general, the Employer shall have the sole responsibility for making contributions to the Plan. The Board of Partners and Principals shall have sole responsibility for appointing the Trustee and the Plan Administrator. The Plan Administrator shall have the sole responsibility for the administration of the Plan, as more fully described in Section 10.2. It is intended that each Fiduciary shall be responsible only for the proper exercise of his or her own powers, duties, responsibilities, and obligations under this Plan and Trust, and shall not be responsible for any act or failure to act of another Fiduciary. A Fiduciary may serve in more than one Fiduciary capacity with respect to the Plan.

10.2 Powers and Responsibilities of the Plan Administrator.

(a) Administration of the Plan. The Plan Administrator shall have full and complete discretionary authority and all powers necessary to administer the Plan, including, but not limited to, the power to construe and interpret the Plan documents; to decide all questions relating to an individual's eligibility to participate in the Plan; to determine the amount, manner, and timing of any distribution of benefits under the Plan; to resolve any claim for benefits in accordance with Section 10.7; and to appoint or employ advisors, including Investment Advisers, consultants and legal counsel, to render advice with respect to

any of the Plan Administrator's responsibilities under the Plan. It is intended that the discretion of the Plan Administrator be subject to the abuse of discretion standard set forth in Firestone Tire & Rubber Co. v. Bruch, 109 S. Ct. 948 (1989) Any construction, interpretation, or application of the Plan by the Plan Administrator shall be final, conclusive, and binding upon all persons. All actions by the Plan Administrator shall be taken pursuant to uniform standards applied to all persons similarly situated. The Plan Administrator shall have no power to add to, subtract from, or modify any of the terms of the Plan, or to change or add to any benefits provided by the Plan, or to waive or fail to apply any requirements of eligibility for a benefit under the Plan.

(b) <u>Records and Reports</u>. The Plan Administrator shall be responsible for maintaining sufficient records to reflect the Computation Periods in which an Employee is credited with one or more Years of Service for purposes of determining his or her vested benefit under the Plan, and the Compensation of each Participant for purposes of determining the Deemed Payroll Period Allocations on behalf of the Participant under the Plan. The Plan Administrator shall be responsible for submitting all required reports and notifications relating to the Plan to Participants or their Beneficiaries, the Internal Revenue Service, the Department of Labor, and the Pension Benefit Guaranty Corporation.

(c) <u>Furnishing Trustee with Instructions</u>. The Plan Administrator shall be responsible for furnishing the Trustee with written instructions regarding all contributions to the Trust, and all distributions to Participants. The Plan Administrator shall also advise the Trustee regarding projected liquidity needs of the Plan so that the Trustee may better exercise its investment discretion. In addition, the Plan Administrator shall be responsible for furnishing the Trustee with any further information respecting the Plan which the Trustee

84

may request for the performance of its duties or for the purpose of making any returns to the Internal Revenue Service, Department of Labor or the Pension Benefit Guaranty Corporation, as may be required of the Trustee.

(d) Rules and Decisions. The Plan Administrator may adopt such rules as it deems necessary, desirable, or appropriate in the administration of the Plan. All rules and decisions of the Plan Administrator shall be applied uniformly and consistently to all Participants in similar circumstances. When making a determination or calculation, the Plan Administrator shall be entitled to rely upon information furnished by a Participant or Beneficiary, the Employer, the legal counsel of the Employer, the Actuary or the Trustee.

(e) Application and Forms for Benefits. The Plan Administrator may require a Participant or Beneficiary to complete and file with it an application for a Benefit, and to furnish all pertinent information requested by it. The Plan Administrator may rely upon all such information so furnished to it, including the Participant's or Beneficiary's current mailing address.

(f) Participant Advice. The Plan Administrator shall have no responsibility to advise, counsel and assist any Participant regarding his or her rights, benefits or elections available under the Plan.

(g) Mergers. Notwithstanding any other provision of this Plan to the contrary, in the case of any provision of this Plan which the Plan Administrator is incapable of administering with respect to a group of Participants as a consequence of the merger of this Plan into the Coopers & Lybrand L.L.P. Retirement Plan (the "C&L Plan") effective as of July 1, 1999, the Plan Administrator shall administer this Plan with respect to such group of Participants according to: (1) the terms of such provision in the C&L Plan for former

participants in the C&L Plan, or (2) the terms of such provision in this Plan prior to any amendments made in connection with such merger until such time as the Plan Administrator is capable of administering such provision.

10.3 <u>Allocation of Duties and Responsibilities</u>. The Plan Administrator may allocate among its members or employees any of its duties and responsibilities not already allocated under the Plan or may designate persons other than its members or employees to carry out any of the Plan Administrator's duties and responsibilities under the Plan. If a person other than an Employee of the Employer is so designated, such person must acknowledge in writing his or her acceptance of the duties and responsibilities allocated to him.

10.4 <u>Appointment of the Plan Administrator</u>. The Plan Administrator shall be the Administrative Committee, which shall be charged with the full power and the responsibility for administering the Plan in all its details. The members of the Administrative Committee shall elect a Chairman from among the Administrative Committee and a Secretary who may, but need not, be one of the members of the Administrative Committee. If no Administrative Committee has been appointed by the Board of Partners and Principals, or if the person(s) designated as the Administrative Committee by the Board of Partners and Principals is not serving as such for any reason, the Firm shall be deemed to be the Plan Administrator of the Plan. The Plan Administrator may be removed by the Board of Partners and Principals, or may resign by giving notice in writing to the Board of Partners and Principals, and in the event of the removal, resignation, or death, or other termination of service by the Plan Administrator, the Board of Partners and Principals shall, as soon as practicable, appoint a

successor Plan Administrator, such successor thereafter to have all of the rights, privileges, duties, and obligations of the predecessor Plan Administrator.

10.5 Expenses. The Trust shall pay all expenses authorized or incurred by the Plan Administrator in the administration of the Plan except to the extent such expenses are paid by the Firm. Such expenses shall include Trustee's fees and expenses and expenses related to the duties of the Plan Administrator, including but not limited to fees of accountants, counsel and other specialists. No compensation shall be paid to a Fiduciary who is an Employee of an Affiliated Employer.

10.6 Claim Procedure.

(a) Filing a Claim. Any Participant under the Plan may file a written claim for a benefit with the Plan Administrator or with a person named by the Plan Administrator to receive claims under the Plan.

(b) Notice of Denial of Claim. In the event of a denial or limitation of any benefit due to or requested by any Participant (or his Beneficiary) under the Plan, the Participant shall be given a written notification containing specific reasons for the denial of his or her benefit. The written notification shall contain specific reference to the pertinent Plan provisions on which the denial is based. In addition, the written notification shall contain a description of any additional material or information necessary for the Participant to perfect a claim, and an explanation of why such material or information is necessary. The written notification shall further provide appropriate information as to the steps to be taken if the Participant wishes to submit his or her claim for review. The written notification shall be

given to a Participant within ninety (90) days after receipt of his or her claim by the Plan

Administrator unless special circumstances require an extension of time, not to exceed ninety

(90) days from the end of the initial 90-day period, for processing the claim.  If such an

extension of time for processing is required, written notice of the extension shall be furnished

to the Participant prior to the termination of said initial 90-day period, and such notice shall

indicate the special circumstances which make the extension appropriate and the date by

which the Plan Administrator expects to render the final decision.

     (c)  <u>Right of Review</u>.  In the event of a denial or limitation of his or her claim, the

Participant or his or her duly authorized representative shall be permitted to review pertinent

documents and to submit to the Plan Administrator issues and comments in writing.  In

addition, the Participant or his or her duly authorized representative may make a written

request for a full and fair review of his or her claim and its denial by the Plan Administrator;

provided, however that such written request must be received by the Plan Administrator

within sixty (60) days after receipt by the claimant of written notification of the denial or

limitation of the claim.  The 60-day requirement may be waived by the Plan Administrator in

appropriate cases.

     (d)  <u>Decision on Review</u>.  A decision shall be rendered by the Plan Administrator

within sixty (60) days after the receipt of the request for review, provided that where special

circumstances require an extension of time for processing the decision, it may be postponed

on written notice to the Participant (prior to the expiration of the initial 60-day period) for an

additional sixty (60) days, but in no event shall the decision be rendered more than one

hundred twenty (120) days after the receipt of such request for review.  Any decision by the

Plan Administrator shall be furnished to the Participant in writing and shall set forth the

specific reasons for the decision and the specific Plan provisions on which the decision is based.  Any decision by the Plan Administrator shall be final, conclusive, and binding on the Participant and all persons.

(e)    Court Action.  No Participant (or his or her Beneficiary) shall have the right to seek judicial review of a denial of benefits, or to bring any action in any court to enforce a claim for benefits, prior to filing a claim for benefits and exhausting his or her rights to review under this Section.

## ARTICLE 11

## TRUST FUND; POWERS, DUTIES AND IMMUNITIES OF TRUSTEE

11.1    Receipt of Contributions by Trustee.  All contributions to the Trust that are received by the Trustee, together with any earnings thereon, shall be held, managed and administered by the Trustee in accordance with the terms and conditions of this Plan and Trust.

11.2    Investment Responsibility.  Selection of the investments in which the assets of the Trust are to be invested shall be the responsibility of the Trustee, or an Investment Manager if appointed by the Trustee or Plan Administrator.  The Trustee shall be subject to the proper directions of the Firm or the Plan Administrator given in accordance with the terms of the Plan and ERISA.

11.3    Appointment of Investment Manager.  The Trustee may appoint or remove one or more Investment Managers to manage the investment of all or a portion of the Trust.

11.4    No Prohibited Transaction.  Nothing contained in this Article shall allow, permit or authorize any transaction or investment which would constitute a prohibited transaction within the meaning of Section 4975 of the Code or within the meaning of ERISA.

11.5    Duties of Trustee Concerning Contributions.  The Trustee shall hold all contributions, and the income and proceeds derived therefrom, and be accountable to the

Employer therefor, but the Trustee shall have no duty to see that contributions received by it comply with the provisions of the Plan, nor shall the Trustee be obliged or privileged to enforce collection of any contribution from the Employer. The Trustee shall have no liability or responsibility for determining whether or to what extent any contribution is deductible by the Firm for Federal income tax purposes. The Trustee shall have no liability to make any distribution or payment of any kind unless sufficient funds shall be available to it in its capacity as Trustee hereunder. The Trustee shall be responsible for only such monies as are received by it in its capacity as Trustee hereunder.

11.6    Distribution of Benefits by the Trustee. Distribution of Benefits under the Plan shall be made to a Participant or Beneficiary at such time as the Plan Administrator may direct in writing. The Trustee shall be fully protected in making distributions in accordance with such written instructions and shall have no responsibility to see to the application of such distributions or to ascertain whether such distributions comply with the terms of the Plan. The Trustee shall have no duty to make recommendations concerning action to be taken under the Plan, or to question the propriety of any action it is directed to take under the Plan by the Plan Administrator.

11.7    Contributions Held in Trust. All funds received by the Trustee under the provisions of the Plan, and the income and proceeds derived therefrom, shall be held by the Trustee, in trust, for the exclusive purpose of providing benefits to Participants and Beneficiaries and defraying reasonable expenses of administering the Plan. No person shall have any interest in or right to funds held by the Trustee or any part thereof except as

91

specifically provided for in the Plan.

11.8    Investment of Trust Fund.

(a)    Investment Vehicles.  The Trustee shall invest and reinvest the principal and income of the Trust and keep the Trust invested in accordance with the funding policy established by the Firm.  In so investing the Trust, the Trustee shall invest and reinvest, without distinction between principal and income, in such securities or in such property, real or personal, wherever situated, as the Trustee shall deem advisable, including, but not limited to, stocks (whether common or preferred), bonds, debentures, mortgages and other evidences of indebtedness or ownership, or common trust funds, or in a mutual fund or group annuities with legal reserve life insurance companies.

(b)    Pooled Funds.  Effective July 1, 1998, the Trustee may engage in any transaction with (1) a common or collective trust or pooled investment fund maintained by a bank or trust company (whether or not such bank or trust company is a "party in interest", as defined in Section 3(14) of ERISA), which provides for the pooling of the assets of plans that are qualified under Section 401(a) and exempt from tax under Section 501(a) of the Code, and any assets of the Plan deposited with such trust or fund shall be held and invested pursuant to the terms of such trust or fund, which are hereby incorporated herein by reference and made a part of this Trust,  or (2) a pooled investment fund of an insurance company (whether or not such insurance company is a "party in interest") authorized to do business in a state.

(c)    Restrictions.  In making such investments the Trustee shall not be restricted to securities or other property of the character authorized or required by applicable law from

92

time to time for trust investments, other than the requirements of ERISA. All contributions paid to the Trustee under the Plan shall be held and administered by the Trustee as a single Trust. The Trustee shall not be required to segregate and invest separately any part of the Trust representing interests of individual Participants.

(d)  Foreign Investment.  No investments shall be made in any assets the indicia of ownership of which is outside the jurisdiction of the District Courts of the United States.

(e)  Separate Investment.  No Participant or Beneficiary shall have any authority or control whatsoever over the investment of the Trust.

11.9    Powers and Duties of Trustee.  The Trustee shall have all the powers necessary to carry out the provisions hereunder. In amplification, but not in limitation, of such powers the Trustee shall have the following powers and immunities and be subject to the following duties:

(a)  Holding and Application of Trust.  The Trustee shall receive all contributions under the Plan, and all other amounts received pursuant thereto, and apply them as set forth herein. The Trustee shall have the custody of and safely keep all cash, securities, property and investments received or purchased in accordance with the terms hereof.

(b)  Sale, Exchange, Conveyance and Transfer of Property.  The Trustee may sell or exchange any property or asset of the Trust at public or private sale, with or without advertisement, upon terms acceptable to the Trustee and in such manner as the Trustee may deem wise and proper. The proceeds of any such sale or exchange may be reinvested as provided hereunder. The purchaser of any such property from the Trustee shall not be required to look to the application of the proceeds of any such sale or exchange by the

93

Trustee.

(c)  <u>Borrowing and Pledging Trust Assets</u>.  The Trustee shall have full power to mortgage, pledge, lease, or otherwise dispose of the property of the Trust without securing any order of court therefor, without advertisement, and to execute any instruments containing any provisions which the Trustee may deem proper in order to carry out such actions.  Any lease so made by the Trustee shall be binding, notwithstanding the fact the term of the lease may extend beyond the termination of the Trust.  The Trustee shall have the power to borrow money (other than from itself) upon terms agreeable to the Trustee, and to repay any debts so created.

(d)  <u>Exercise of Owner's Rights</u>.  The Trustee may participate in the reorganization, recapitalization, merger, or consolidation of any corporation in which the Trustee may own stock or securities and may deposit such stock or other securities in any voting trust or, protective committee or trustee or with the depositories, designated thereby, and may exercise any subscription rights or conversion privileges, and generally may exercise any of the powers of any owner with respect to any stock or other securities or property comprising the Trust.  The Trustee may vote or refrain from voting any shares of stock or securities which the Trustee may own from time to time, provided, that in the case of any stock or securities issued by a corporation directly or indirectly controlling, controlled by, or under common control with, the Trustee, or by the Employer, the Trustee shall vote such shares only under written direction of the Plan Administrator.

(e)  <u>Retention of Cash</u>.  The Trustee may retain cash and keep unproductive of income such funds as from time to time it may deem advisable.  The Trustee shall not be required to pay interest on any cash in its hands pending investment.

(f)   Registration of Investments.  The Trustee may hold stocks, bonds or other securities in its own name as Trustee, with or without the designation of the Trust, or in the name of a nominee selected by it for that purpose, and may deposit securities with a depository trust company, but the Trustee shall nevertheless be obligated to account for all securities received by it as a part of the Trust, notwithstanding the name in which the same may be held.

(g)   Settlement of Claims and Debts and Action Without Court Approval.  With the consent of the Firm, the Trustee may settle, compromise or submit to arbitration any claims, debts, or damages due or owing to or from the Trust.  At no time during the administration of this Trust shall the Trustee be required to obtain any court approval of any act required of it in connection with the performance of its duties or in the performance of any acts required of it in the administration of its duties as Trustee.  The Trustee shall have full authority to exercise its judgment in all matters and at all times without court approval of such decisions, provided, that if any application to, or proceeding or action in, the courts is made, only the Firm and the Trustee shall be the necessary parties, and, unless otherwise required by law, no Participant or Beneficiary or other person having an interest in the Trust shall be entitled to any notice of service of process.  Any judgment entered in such proceeding or action shall be conclusive upon all persons claiming an interest under the Trust.

(h)   Consultation With, and Employment of, Agents and Counsel.  The Trustee may consult with legal counsel (who may be counsel to the Employer) concerning any question which may arise with reference to its duties under this Trust, and the opinion of such counsel shall be full and complete protection in respect to any action taken or suffered by the Trustee hereunder in good faith and in accordance with the opinion of such counsel.  The Trustee

may employ such counsel, accountants, and other agents as it shall deem advisable in the performance of its duties under this Trust.

(i)  General Powers.  The Trustee shall have the power to do any and all other acts and things necessary, proper or advisable to effectuate the purposes of the Trust for the exclusive benefit of the Participants and their Beneficiaries.

11.10    Application of Trust Funds.  No person dealing with the Employer shall be bound to see to the application of any money or property paid or delivered to the Trustee or to inquire into the validity or propriety, under the Plan or otherwise, of any transaction of any nature made or entered into by the Employer.

11.11    Litigation.  The Firm, in its discretion, may sue or defend any suit or legal proceeding by or against the Plan, and may compromise, submit to arbitration or settle any such suit or legal proceeding, or any claim, debt, damage, or undertaking due to, or owing from, the Plan, provided, however, the Firm need take no action unless in its opinion there are sufficient funds available for the expense thereof or adequate provision is made for its indemnification.

11.12    Accounting by Trustee.  The Trustee shall keep accurate and detailed records of the Trust, receipts and disbursements, and other transactions hereunder, and all accounts, books and records relating thereto shall be open to inspection and audit at all reasonable times by any person or persons designated by the Firm.  Within ninety (90) days following the close of each Plan Year, the Trustee shall file with the Firm a written report setting forth

all receipts, disbursements and other transactions effected by it during such Plan Year, including the fair market value of the Trust, with a report of the income earned on the Trust for such Plan Year. Within ninety (90) days after the removal or resignation of the Trustee, a similar written report shall be filed by the Trustee with the Firm covering the period since the end of the Plan Year preceding the date of such removal or resignation. The information required by such written reports may be in the form of quarterly or semi-annual accounts, which taken together reflect the information required by such reports.

11.13    Reliance on Written Instructions. The Trustee shall be fully protected in acting upon any letter, paper, document or other writing believed by the Trustee to be genuine and to have been signed or presented by the proper person or persons.

11.14    Disputes. In the event that any dispute shall arise as to the persons to whom payment of any funds or delivery of any assets shall be made by the Trustee, the Trustee may withhold such payment or delivery until such dispute shall have been determined by a court of competent jurisdiction or shall have been settled by the parties.

11.15    Duties of Trustee Limited. The Trustee shall have the exclusive responsibility for the management and control of the investment of contributions under the Plan. Its other duties and responsibilities are limited to those specifically stated in this Plan and no other or further duties or responsibilities shall be implied.

11.16    Notices to Trustee. All notices to the Trustee hereunder shall be mailed or

delivered to the Trustee, and the Trustee shall be responsible only for such notices as are actually received by it.

11.17    Notices to Employer or Participants. The Trustee shall be fully protected in presenting any notice hereunder to the Employer or the Plan Administrator by mailing such notice to the Employer or Plan Administrator at the last known address provided by such Employer or Plan Administrator, and in presenting any notice or distributing any Benefit to a Participant or Beneficiary by mailing it to such Participant or Beneficiary at the latest address, if any, which may have been furnished it, or by mailing it in care of the Employer, as above provided.

11.18    Resignation, Removal and Appointment of Trustee. The Trustee may resign at any time by giving sixty (60) days written notice to the Board of Partners and Principals of its intention to do so. Upon such resignation becoming effective, the Trustee shall render to the Firm an account of its proceedings as Trustee since the date of its most recent accounting, if any, and shall transfer and assign all of its interest as Trustee in the assets of the Trust to the remaining or successor Trustee. The Board of Partners and Principals may, and in the event that the Trustee so resigning is the sole Trustee shall, appoint a successor Trustee to fill the vacancy created by any such resignation, and the Trustee so appointed to fill any such vacancy shall have the powers herein conferred upon the original Trustee. The Board of Partners and Principals may, upon written notice, remove any Trustee. The procedure, with respect to accounting and the appointment of a successor Trustee, upon such removal shall be the same as in the case of a resignation. The Board of Partners and Principals may in its

98

discretion designate one or more additional persons to act as Trustee hereunder, and in such event such additional person or persons shall have the same powers and duties as the other Trustee then serving.

11.19    No Diversion of Trust.  The Trust shall be received, held in trust, and disbursed by the Trustee in accordance with the provisions of the Plan.  No part of the Trust shall be used for, or diverted to purposes other than, the exclusive benefit of Participants and Beneficiaries and for the payment of the reasonable expenses of administering the Plan.  No person shall have any interest in or right to the Trust or any part thereof except as specifically provided for in the Plan.

# ARTICLE 12

## INDEMNIFICATION OF FIDUCIARIES

12.1    Rights To Indemnification.  The Employer shall indemnify each partner or

principal, officer, or employee of the Employer who is, or is threatened to be made, a party to

any threatened or pending action or proceeding, whether civil, criminal, administrative or

investigative, including actions by or in the right of the Employer, by reason of the fact that

such partner or principal, officer, or employee is or was serving at the request of the

Employer as a Fiduciary with regard to the Plan, against expenses (including attorneys' fees),

claims, fines, judgments, taxes, causes of action or liability and amounts paid in settlement,

actually and reasonably incurred by him or her in connection with such action or proceeding,

unless such expense, claim, fine, judgment, taxes, cause of action, liability or amount arose

from his or her gross negligence, fraud or willful breach of his or her fiduciary

responsibilities under ERISA, except, that with respect to an action by or in the right of the

Employer, indemnification shall be made only against expenses (including attorneys' fees).

12.2    Advancement of Expenses.  The Employer shall advance all expenses

(including attorneys' fees) incurred by any partner or principal, officer or employee described

in Section 12.1, in defending a civil, criminal, administrative or investigative action, suit or

proceeding pending the final disposition of such action, suit or proceeding unless the

Employer determines that under the circumstances of the individual case the person by his or

her conduct is not entitled to indemnification under Section 12.1 because of his or her gross

negligence, fraud or willful breach of his or her fiduciary responsibilities, upon receipt of an

undertaking, with such security as the Employer may reasonably require, by or on behalf of the partner or principal, officer or employee to repay such amounts unless it shall ultimately be determined that he or she is entitled to be indemnified by the Employer as authorized by this Article.

12.3    Determination of Right to Indemnity.  To the extent that any partner or principal, officer, or employee has been successful on the merits or otherwise in the defense of the action, suit or proceeding, or in defense of any claim, issue or matter therein, referred to in Section 12.1, he or she shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by him in connection therewith and if he was advanced expenses as provided in Section 12.2, his or her undertaking shall be canceled by the Employer.  If any action, suit or proceeding shall terminate by judgment or order adverse to the partner or principal, officer or employee, or settlement, conviction or upon a plea of nolo contendere or its equivalent, the Employer, in the same manner provided in Section 12.2 with reference to advancement of expenses, shall (unless ordered by a court to make indemnification) make a determination whether indemnification of the partner or principal, officer, or employee is not proper in the circumstances because he or she has been guilty of gross negligence, fraud or willful breach of his or her fiduciary responsibilities and, if it is determined that the person is so entitled to indemnification, then he or she shall be indemnified against expenses (including attorneys' fees) claims, fines, judgments, taxes, causes of action or liability and amounts paid in settlement, actually and reasonably incurred by him or her in connection with such action or proceeding and, if he or she was advanced expenses as provided in Section 12.2, his or her undertaking shall be canceled.  The

termination of any action or proceeding by adverse judgment or order, conviction, settlement or plea of nolo contendere or the equivalent, shall not, of itself, create a presumption that the partner or principal, officer, or employee was guilty of gross negligence, fraud or willful breach of his or her fiduciary responsibilities.

12.4    Other Rights.  The indemnification provided by this Article shall not be deemed exclusive of any other rights to which any partner or principal, officer, or employee may be entitled, and shall continue as to a person who has ceased to be a partner or principal, officer or Employee and shall inure to the benefit of the personal representative, heirs and legatees of such a person.

## ARTICLE 13

## PARTICIPATING EMPLOYERS

13.1    Adoption by Other Employers.  Anything contained herein to the contrary

notwithstanding, with the consent of the Policy Board (effective July 1, 1998, the Board of

Partners and Principals; and, effective December 14, 2001, the Finance Committee of the

Board of Partners and Principals) any employer may adopt this Plan and all of the provisions

hereof, and participate herein and be known as an Employer, by properly executing an

adoption agreement evidencing said intent and will of said other employer.

13.2    Adoption of Plan and Trust by Affiliated Employer.  The Policy Board

(effective July 1, 1998, the Board of Partners and Principals; and, effective December 14,

2001, the Finance Committee of the Board of Partners and Principals may designate any

Affiliated Employer to become an Employer.  Any Affiliated Employer so designated may

adopt the Plan, and become an Employer hereunder, by executing an Adoption Agreement.

Such Affiliated Employer shall become an Employer hereunder as of an effective date

provided in the Adoption Agreement, and shall be subject to the terms and provisions of the

Plan and Trust, with such variations as shall be set forth in the Adoption Agreement.  An

Affiliated Employer may limit its adoption of the Plan to one or more of its groups of

employees, divisions, locations, or operations.

13.3    Designation of Agent.  Each Employer shall be deemed to be a party to this

Plan; provided, however, that with respect to all of its relations with the Trustee and Plan

Administrator for the purpose of this Plan, each Employer shall be deemed to have designated irrevocably the Firm as its agent. Unless the context of the Plan clearly indicates the contrary, the word "Employer" shall be deemed to include each Employer as related to its adoption of the Plan.

13.4    Amendment.  Amendment of this Plan shall only be by the written action of the Policy Board (effective July 1, 1998, the Board of Partners and Principals; and, effective December 14, 2001, the Finance Committee of the Board of Partners and Principals).

13.5    Discontinuance of Participation.  Any Employer shall be permitted to discontinue or revoke its participation in the Plan. At the time of any such discontinuance or revocation, satisfactory evidence thereof and of any applicable conditions imposed shall be delivered to the Trustee. The Trustee may thereafter transfer, deliver, and assign Trust assets allocable to the Participants of such Employer to such new trustee as shall have been designated by such Employer, in the event that it has established a separate retirement plan for its Employees. If no successor is designated, the Trustee shall retain such assets for the Employees of said Employer.

13.6    Plan Administrator's Authority.  The Plan Administrator shall have authority to make any and all necessary rules or regulations, binding upon all Employers and all Participants, to effectuate the purpose of this Article.

## ARTICLE 14

## CHANGE IN EMPLOYMENT

14.1     Participant Transfer from Employer to Employer.  A Participant who transfers employment from one Employer to another Employer shall not be considered as terminating his or her employment with an Employer and shall continue to be a Participant in this Plan without interruption and shall receive credit for his or her total Hours of Service with all Employers.

14.2     Participant Transfer from Employer to Affiliated Non-Employer.  A Participant who transfers employment to an Affiliated Employer who has not adopted this Plan shall not be considered as terminating his or her participation in the Plan.  Nonetheless, no further Deemed Payroll Period Allocations shall be made on behalf of such a Participant.  When such a Participant's employment is terminated with the Affiliated Employer, his or her Benefit shall be determined as though such event occurred while he was employed by an Employer.

14.3     Employee Credit for Services With Affiliated Non-Employer.  An Employee who transfers employment from an Affiliated Employer who has not adopted this Plan to an Employer shall receive credit for his or her Hours of Service with such Affiliated Employer for the purpose of vesting in his or her Accrued Benefit under the Plan.  A Participant who retransfers his or her employment to an Employer after transferring from an Employer to an Affiliated Employer who has not adopted this Plan shall again become an active Participant upon his or her re-employment by an Employer.

# ARTICLE 15

## AMENDMENT, TERMINATION AND MERGER

15.1    Establishment of Plan.  The Plan shall be effective on the Effective Date.

15.2    Power of Amendment.  The Firm reserves the right at any time to amend or discontinue the Plan or the Trust by action of its Policy Board (effective July 1, 1998, the Board of Partners and Principals; and, effective December 14, 2001 the Finance Committee of the Board of Partners and Principals).  No such amendment may:

(a)   violate the exclusive benefit limitations of Section 16.1(a);

(b)   violate the anti-cutback rules of Section 6.2, except for reductions permitted under Section 412(c)(8) of the Code; or

(c)   change any of the rights, duties and powers of the Trustee without the Trustee's written consent.

15.3    Failure of Plan to Qualify Upon Amendment.  If any amendment to the Plan should be determined not to meet the qualification requirements under Section 401(a) of the Code, then such amendment shall be null and void and no Participant or Beneficiary shall have any rights whatsoever created by such amendment, and the rights of a Participant or Beneficiary shall be determined under the Plan prior to such amendment.

15.4    Termination.  The Firm may terminate the Plan at any time subject to the condition that, at any time prior to the satisfaction of all liabilities with respect to Participants

and their Beneficiaries, no part of the Trust shall, by reason of such termination, be at any time used for or diverted to purposes other than the exclusive benefit of such persons. Upon termination or partial termination of the Plan, the rights of all affected Participants to benefits accrued under the Plan as of the date of such termination or partial termination shall, except as provided in Section 15.6, become nonforfeitable to the extent then funded, and the assets of the Trust shall be allocated to all active and retired Participants and to all other persons already receiving or entitled to receive benefits under the Plan, as follows:

(a)  The amount of the Trust shall be determined and, after providing for expenses incident to termination and liquidation, the remaining assets thereof shall be allocated for the purpose of paying benefits proportionately among each of the priority groups described below in the following order of precedence, as set forth in Section 4044 of ERISA:

(1)  To provide benefits to retired Participants and Beneficiaries who began receiving benefits at least three (3) years before the Plan's termination (including those benefits which would have been received for at least three (3) years if the Participant had retired that long ago), based on Plan provisions in effect five (5) years prior to termination during which period such benefit would be the least, provided that the lowest benefit in pay status during a three-year period shall be considered the benefit in pay status for such period;

(2)  To provide all other Accrued Benefits guaranteed by Federal law (or which would be so guaranteed but for Section 4022(b)(5) or 4022B(a) of ERISA);

(3)  To provide all other vested Accrued Benefits (determined before application of this Section);

(4)  To provide all remaining non-vested Accrued Benefits.

(b)  If the assets available for allocation under any priority group (other than as

provided in priority groups (3) and (4)) are insufficient to satisfy in full the Accrued Benefits of all Participants and Beneficiaries, the assets shall be allocated pro rata among such Participants and Beneficiaries on the basis of the Actuarial Equivalent single-sum value of their respective benefits (as of the termination date). The foregoing payments, and payments in the event that assets are insufficient to pay the Accrued Benefits provided in priority groups (3) and (4), will be paid in accordance with regulations prescribed by the Pension Benefit Guaranty Corporation. The allocation of assets upon termination of the Plan will be carried out in such a manner as to preserve the qualification of the Plan under Section 401(a) of the Code.

15.5    Merger, Consolidation, or Transfer. There shall be no merger or consolidation of the Plan with, or transfer of assets or liabilities of the Plan to, any other plan of deferred compensation maintained or to be established for the benefit of all or some of the Participants of the Plan, unless each Participant would (if either this Plan or such other plan then terminated) receive a benefit immediately after the merger, consolidation or transfer which is equal to or greater than the benefit the Participant would have been entitled to receive immediately before the merger, consolidation, or transfer (if this Plan had then terminated).

15.6    Limitation of Benefits. The limitations described in this Section apply for Plan Years beginning on or after January 1, 1994 in the event of a termination of the Plan or a distribution to a Participant described herein.

(a)    Plan Termination. In the event of a termination of the Plan, the benefit of any Highly Compensated active or former Employee is limited to a benefit that is

108

nondiscriminatory under Section 401(a)(4) of the Code.

(b)    Limitation of Benefits.  The benefits distributed to any of the twenty-five (25) Highly Compensated Employees or Highly Compensated former Employees who have the greatest Compensation from the Employer in the current or any prior Plan Year are restricted such that the annual payments are no greater than an amount equal to the payment that would be made on behalf of the Employee under a single life annuity that is the Actuarial Equivalent of the sum of the Employee's Accrued Benefit and the Employee's other benefits under the Plan (other than a Social Security supplement) and the amount of the payments that the Employee is entitled to receive under a Social Security supplement, if any.

The preceding paragraph shall not apply if:  (1) after payment to or on behalf of an Employee of benefits payable, as determined without the application of the limitations described in the preceding paragraph, the value of Plan assets equals or exceeds one hundred and ten percent (110%) of the value of current liabilities, as defined in Section 412(e)(7) of the Code, or (2) the value of the benefits payable to or on behalf of the Employee, as determined without the application of the limitations described in the preceding paragraph, is less than one percent (1%) of the value of current liabilities before distribution, or (3) the value of the benefits payable to or on behalf of the Employee, as determined without the application of the limitations described in the preceding paragraph, does not exceed the amount described in Section 411(a)(11)(A) of the Code, or (4) the Plan requires adequate security to guarantee any repayment of benefits under the circumstances and upon the terms described in Rev. Rul. 92-76, 1992-38 I.R.B. 5.

ARTICLE 16

MISCELLANEOUS

16.1    Exclusive Benefit of Participants and Beneficiaries.

(a)    Exclusive Benefit.  All assets of the Trust shall be retained for the exclusive benefit of Participants and their Beneficiaries, and shall be used only to pay benefits to such persons or to pay the fees and expenses of the Trust; provided, however, that in the event of the termination of the Plan, and after all fixed and contingent liabilities have been satisfied and upon compliance with Sections 4041 and 4044 of ERISA, any remaining funds attributable to contributions by the Firm shall revert to the Firm.

(b)    Return of Employer Contributions.  To the extent permitted or required by ERISA and the Code, contributions to the Trust under this Plan are subject to the following conditions:

(1)    If a contribution or any part thereof is made to the Trust by the Employer under a mistake of fact, such contribution or part thereof shall be returned to the Employer within one year after the date the contribution is made;

(2)    This Plan is intended to comply with the provisions of Section 401 and Section 501(a) of the Code.  In the event the Plan fails to initially achieve qualification under said Sections of the Code, the Plan shall be null and void as of the Effective Date.  Such failure shall be deemed to have occurred upon receipt of a written final determination from the Internal Revenue Service so stating, unless the Firm elects to appeal such determination, in which event such failure shall be deemed to have occurred upon the entry of a final judgment which is not appealed.  Upon termination pursuant to the provisions of this Section

110

16.1(b)(2), Employer Contributions shall be returned to the Employer.

(3)   Contributions to the Trust are specifically conditioned on their deductibility under the Code and, to the extent a deduction is disallowed for any such contribution, such amount shall be returned to the Employer within one year after the date of the disallowance of the deduction.

(4)   For return of an Employer Contribution pursuant to Section 16.1(b)(1) or (b)(3), anything in this Section 16.1 to the contrary notwithstanding, (1) no earnings on an Employer Contribution shall be returned to the Employer and losses on the Contribution shall reduce the amount to be returned, and (2) no return of an Employer Contribution shall be made to the extent that a Participant's Accrued Benefit would be reduced to less than his Accrued Benefit would be had the Contribution to be returned not been made.

16.2    <u>Nonguarantee of Employment</u>.  Nothing contained in this Plan shall be construed as a contract of employment between the Employer and any Employee, or as a right of any Employee to be continued in the employment of the Employer, or as a limitation of the right of the Employer to discharge any of its Employees, with or without cause.

16.3    <u>Rights to Trust Assets</u>.  No Employee, Participant, or Beneficiary shall have any right to, or interest in, any assets of the Trust upon termination of employment, or in the case of a Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal when he ceases to be active, or otherwise, except as provided under the Plan.  All payments of benefits under the Plan shall be made solely out of the assets of the Trust.

111

16.4    Nonalienation of Benefits.  Benefits payable under the Plan shall not be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, charge, garnishment, execution, or levy of any kind, voluntary or involuntary; provided, however, that the Trustee shall not be hereby precluded from complying with a qualified domestic relations order described in Section 414(p) of the Code, or any domestic relations order entered before January 1, 1985.  Any attempt to anticipate, alienate, sell, transfer, assign, pledge, encumber, charge, or otherwise dispose of any right to benefits payable hereunder shall be void.  The Trust shall not in any manner be liable for, or subject to, the debts, contracts, liabilities, engagements, or torts of any person entitled to benefit hereunder. Notwithstanding the preceding sentences, effective August 5, 1997, a Participant's Benefit may be reduced, as provided for in Section 401(a)(13)(c) of the Code.

16.5    Bonding.  Every Fiduciary, except a bank or an insurance company, unless exempted by ERISA and the regulations thereunder, shall be bonded in an amount not less than ten percent (10%) of the amount of the funds such Fiduciary handles; provided, however, that the minimum bond shall be $1,000 and a maximum bond, $500,000.  The amount of funds handled shall be determined at the beginning of each Plan Year by the amount of funds handled by such person, group or class to be covered and their predecessor, if any, during the preceding Plan Year, of if there is no preceding Plan Year, then by the amount of the funds to be handled during the then current year.  The bond shall provide protection to the Plan against any loss by reason of acts of fraud or dishonesty by the Fiduciary alone or in complicity with others.  The surety shall be a corporate surety company (as such term is used in Section 412(a)(2) of ERISA), and the bond shall be in a form

approved by the Secretary of Labor. Notwithstanding anything in this Plan to the contrary, the cost of such bonds shall be an expense of and may, at the election of the Plan Administrator, be paid from the Trust or by the Employer.

16.6    Construction.

(a)    State Law. The Plan shall be construed and enforced according to the laws of the State, and all provisions hereunder shall be administered according to the laws thereof, except to the extent preempted by ERISA.

(b)    Interpretation. It is intended that the Plan meet the requirements of ERISA and the Code and the Plan shall be interpreted and construed, wherever possible, to comply with the terms of ERISA, the Code, and regulations and rulings issued thereunder.

(c)    Language. Any words herein used in the masculine or neuter shall read and by construed in the feminine, masculine or neuter where they would so apply. Words in the singular shall be read and construed as though used in the plural in all cases where they would so apply.

16.7    Discretionary Acts To Be Non-Discriminatory. Any discretionary acts taken under the Plan by the Plan Administrator, the Employer or the Trustee shall be uniform in their nature, and shall be applicable to all Participants, Beneficiaries and Employees similarly situated, and no discretionary act shall be taken which is discriminatory under the Code.

16.8    Titles and Headings. Titles of Articles and headings to Sections are inserted for convenience of reference only and, in the event of any conflict, the text of the Plan, rather

113

than such titles and headings, shall control.

16.9    <u>Counterparts.</u>  This document evidencing the Plan and any amendments thereto may be executed in one or more counterparts each of which shall be deemed to constitute an original and all of which together shall constitute a single Plan document.

16.10    <u>USERRA.</u>  Notwithstanding any provision of this Plan to the contrary, contributions, benefits and service credit with respect to qualified military service will be provided in accordance with Section 414(u) of the Code, effective for reemployment on or after December 12, 1994.

IN WITNESS WHEREOF, the Firm and the Trustees have caused this Plan to be executed on

the dates indicated below to be effective as of the dates stated above.

PricewaterhouseCoopers LLP

By: _____    5/4/02
    John F. Carter          Date
    U.S. Partner Affairs Leader

TRUSTEE                          TRUSTEE

_____  _____    _____  _____
Marsha R. Cohen        Date      Roger C. Hindman        Date


TRUSTEE                          TRUSTEE

_____  _____    _____  _____
Peter K. Kelly         Date      Richard R. Kilgust      Date


TRUSTEE                          TRUSTEE

_____  _____    _____  _____
Wendy L. Kornreich     Date      Robert C. Morris Jr.    Date


TRUSTEE                          TRUSTEE

_____  _____    _____  _____
Robert P. Sullivan     Date      Randal S. Vallen        Date


TRUSTEE

_____  _____
Brett D. Yacker        Date

g:\cbs\draft\nscron\pw plans\pwc employee rbap 20010801

115

IN WITNESS WHEREOF, the Firm and the Trustees have caused this Plan to be executed on

the dates indicated below to be effective as of the dates stated above.


PricewaterhouseCoopers LLP

By:_____    _____
    John F. Carter    Date
    U.S. Partner Affairs Leader

TRUSTEE _____    TRUSTEE _____

_____ 5/08/02    _____    _____
Marsha R. Cohen    Date    Roger C. Hindman    Date


TRUSTEE    TRUSTEE

_____    _____    _____    _____
Peter K. Kelly    Date    Richard R. Kilgust    Date


TRUSTEE    TRUSTEE

_____    _____    _____    _____
Wendy L. Kornreich    Date    Robert C. Morris Jr.    Date


TRUSTEE    TRUSTEE

_____    _____    _____    _____
Robert P. Sullivan    Date    Randal S. Vallen    Date


TRUSTEE

_____    _____
Brett D. Yacker    Date

g:\ebs\draft\nacron\pw plans\pwc employee rbsp 20010801

115

IN WITNESS WHEREOF, the Firm and the Trustees have caused this Plan to be executed on the dates indicated below to be effective as of the dates stated above.

PricewaterhouseCoopers LLP

By:_____    _____
    John F. Carter    Date
    U.S. Partner Affairs Leader

TRUSTEE                              TRUSTEE

_____    _____    _____    _____
Marsha R. Cohen    Date    Roger C. Hindman    Date

TRUSTEE    *Peter K Kelly*  5-9-02    TRUSTEE

_____    Date    _____    _____
Peter K. Kelly                       Richard R. Kilgust    Date

TRUSTEE                              TRUSTEE

_____    _____    _____    _____
Wendy L. Kornreich    Date    Robert C. Morris Jr.    Date

TRUSTEE                              TRUSTEE

_____    _____    _____    _____
Robert P. Sullivan    Date    Randal S. Vallen    Date

TRUSTEE

_____    _____
Brett D. Yacker    Date

g:\ebs\draft\nacron\pw plans\pwc employee rbap 20010801

115

IN WITNESS WHEREOF, the Firm and the Trustees have caused this Plan to be executed on the dates indicated below to be effective as of the dates stated above.

PricewaterhouseCoopers LLP

By: _____          _____
    John F. Carter            Date
    U.S. Partner Affairs Leader

TRUSTEE                              TRUSTEE

_____     _____     _____     _____
Marsha R. Cohen            Date         Roger C. Hindman           Date

TRUSTEE                                 TRUSTEE

_____     _____     _____     _____
Peter K. Kelly             Date         Richard R. Kilgust         Date

TRUSTEE                                 TRUSTEE

_Wendy L. Kornreich_  _5/9/02_          _____     _____
Wendy L. Kornreich         Date         Robert C. Morris Jr.       Date

TRUSTEE                                 TRUSTEE

_____     _____     _____     _____
Robert P. Sullivan         Date         Randal S. Vallen           Date

TRUSTEE

_____     _____
Brett D. Yacker            Date

g:\obs\draft\nacron\pw plans\pwc employee rbap 20010801

115

IN WITNESS WHEREOF, the Firm and the Trustees have caused this Plan to be executed on

the dates indicated below to be effective as of the dates stated above.


PricewaterhouseCoopers LLP

By:_____        _____
John F. Carter                                        Date
U.S. Partner Affairs Leader

TRUSTEE                                          TRUSTEE

_____  _____   _____  _____
Marsha R. Cohen                Date        Roger C. Hindman             Date

TRUSTEE                                          TRUSTEE

_____  _____   _____  _____
Peter K. Kelly                    Date        Richard R. Kilgust            Date

TRUSTEE                                          TRUSTEE

_____  _____   _____  _____
Wendy L. Kornreich            Date        Robert C. Morris Jr.           Date

TRUSTEE                                          TRUSTEE

_____  _____   _____  _____
Robert P. Sullivan     5/10/02    Date        Randal S. Vallen              Date

TRUSTEE

_____  _____
Brett D. Yacker                   Date

g:\cbs\draft\nacron\pw plans\pwc employee rbap 20010801

115

IN WITNESS WHEREOF, the Firm and the Trustees have caused this Plan to be executed on the dates indicated below to be effective as of the dates stated above.

PricewaterhouseCoopers LLP

By:_____     _____
      John F. Carter     Date
      U.S. Partner Affairs Leader

TRUSTEE                                    TRUSTEE

_____     _____        _____     _____
Marsha R. Cohen          Date          Roger C. Hindman          Date

TRUSTEE                                    TRUSTEE

_____     _____        _____     _____
Peter K. Kelly           Date          Richard R. Kilgust        Date

TRUSTEE                                    TRUSTEE

_____     _____        _____     _____
Wendy L. Kornreich       Date          Robert C. Morris Jr.      Date

TRUSTEE                                    TRUSTEE

_____     _____        _____     _____
Robert P. Sullivan       Date          Randal S. Vallen          Date

TRUSTEE

_____     _____
Brett D. Yacker          Date

g:\ebs\draft\nacromcy plans\pwc employee rbap 20010801

115

IN WITNESS WHEREOF, the Firm and the Trustees have caused this Plan to be executed on the dates indicated below to be effective as of the dates stated above.

PricewaterhouseCoopers LLP

By: _____    _____
    John F. Carter                  Date
    U.S. Partner Affairs Leader

TRUSTEE                              TRUSTEE

_____    _____       _____    _____
Marsha R. Cohen      Date           Roger C. Hindman      Date

TRUSTEE                              TRUSTEE

_____    _____       _____    _____
Peter K. Kelly       Date           Richard R. Kilgust    Date

TRUSTEE                              TRUSTEE

_____    _____       _____    _____
Wendy L. Kornreich   Date           Robert C. Morris Jr.  Date

TRUSTEE                              TRUSTEE

_____    _____       _____    _____
Robert P. Sullivan   Date           Randal S. Vallen      Date

TRUSTEE

_____    _____
Brett D. Yacker      Date

g:\ebs\draft\nacron\pw plans\pwc employee rbap 20010801

115