# Exhibit B
# Part 3

IN WITNESS WHEREOF, the Firm and the Trustees have caused this Plan to be executed on

the dates indicated below to be effective as of the dates stated above.

PricewaterhouseCoopers LLP

By:_____    _____
    John F. Carter                Date
    U.S. Partner Affairs Leader

TRUSTEE                              TRUSTEE

_____    _____    _____    _____
Marsha R. Cohen      Date      Roger C. Hindman      Date

TRUSTEE                              TRUSTEE

_____    _____    _____    5/14/02
Peter K. Kelly       Date      Richard R. Kilgust      Date

TRUSTEE                              TRUSTEE

_____    _____    _____    _____
Wendy L. Kornreich   Date      Robert C. Morris Jr.   Date

TRUSTEE                              TRUSTEE

_____    _____    _____    _____
Robert P. Sullivan   Date      Randal S. Vallen      Date

TRUSTEE

_____    _____
Brett D. Yacker      Date

g:\ebs\draft\nacron\pw plans\pwc employee rbap 20010801

115

IN WITNESS WHEREOF, the Firm and the Trustees have caused this Plan to be executed on the dates indicated below to be effective as of the dates stated above.

PricewaterhouseCoopers LLP

By: _____        _____
            John F. Carter                         Date
            U.S. Partner Affairs Leader

TRUSTEE                              TRUSTEE

_____  _____          _____  _____
Marsha R. Cohen    Date              Roger C. Hindman    Date

TRUSTEE                              TRUSTEE

_____  _____          _____  _____
Peter K. Kelly     Date              Richard R. Kilgust  Date

TRUSTEE                              TRUSTEE

_____  _____          _____  _____
Wendy L. Kornreich  Date             Robert C. Morris Jr.  5/9/02
                                                            Date

TRUSTEE                              TRUSTEE

_____  _____          _____  _____
Robert P. Sullivan  Date             Randal S. Vallen    Date

TRUSTEE

_____  _____
Brett D. Yacker    Date

g:\ebs\draft\nacron\pw plans\pwc employee rbap 20010801

115

IN WITNESS WHEREOF, the Firm and the Trustees have caused this Plan to be executed on

the dates indicated below to be effective as of the dates stated above.


PricewaterhouseCoopers LLP

By: _____    _____

      John F. Carter                             Date

      U.S. Partner Affairs Leader

TRUSTEE                                                TRUSTEE


_____    _____    _____    _____

Marsha R. Cohen                   Date                Roger C. Hindman                 Date


TRUSTEE                                                TRUSTEE


_____    _____    _____    _____

Peter K. Kelly                        Date                Richard R. Kilgust                 Date


TRUSTEE                                                TRUSTEE


_____    _____    _____    _____

Wendy L. Kornreich               Date                Robert C. Morris Jr.               Date


TRUSTEE                                                TRUSTEE

                                                        _Randal S Vallen_    5/13/02

_____    _____    _____    _____

Robert P. Sullivan                 Date                Randal S. Vallen                  Date


TRUSTEE


_____    _____

Brett D. Yacker                     Date

g:\ebs\draft\nscron\pw plans\pwc employee rhap 20010801


115

## Appendix A

1999 Cost of Living Adjustment

The periodic benefit of any Member (or surviving spouse or beneficiary of such Member) who was a participant (or beneficiary) in the Coopers & Lybrand Retirement Plan on June 30, 1999 and who is receiving periodic benefits under the terms of that Plan on July 1, 1999, and who retired or otherwise terminated as an Employee from the Firm shall be increased, effective as of July 1, 1999, in accordance with the following schedule:

| Annuity Starting Date | Percent Increase |
|---|---|
| Before October 1, 1993 | 6.9% |
| After September 30, 1993 but before October 1, 1994 | 5.5% |
| After September 30, 1994 but before October 1, 1995 | 4.0% |
| After September 30, 1995 but before June 30, 1996 | 2.6% |
| After June 30, 1996 but before January 1, 1997 | 2.0% |
| After December 31, 1996 but before July 1, 1997 | 1.4% |
| After June 30, 1997 but before January 1, 1998 | 1.1% |
| After December 31, 1997 but before July 1, 1998 | 0.5% |
| After June 30, 1998 | 0.0% |

Members (or spouses or beneficiaries of Members) who received a lump sum cashout of their benefit as of July 1, 1999 or who had deferred payment of their benefits to a date which is after July 1, 1999 shall not be eligible for this Cost of Living Adjustment.

# APPENDIX B

## Special Provisions Applicable to Participants who were Members of the

## Coopers & Lybrand Retirement Plan

Notwithstanding any other provision of the Plan to the contrary, this Appendix shall apply to any Participant who was a Member of the Coopers & Lybrand Retirement Plan (the "C&L Retirement Plan") on July 1, 1998 (a "C&L Participant"). Where not inconsistent with the provisions of this Appendix, the provisions of the Plan shall also apply to C&L Participants.

1.    <u>Normal Retirement Benefit of a C&L Participant other than a Partner or Principal</u>. The annual retirement income of a C&L Participant who is not a Partner or Principal as of the date he terminates employment with the Employer shall be the greater of (a), (b), (c) or (d) of this Section 1. However, a C&L Participant who was not actively employed by Coopers & Lybrand LLP ("C&L") on June 30, 1998 and by the Firm on July 1, 1998 shall only be entitled to a benefit under Section 1(d) of this Appendix.

      (a)    (i)    For C&L Participants not described in (ii) below, the sum of:

           (A)    the greater of (1) the annual retirement income accrued by the C&L Participant as of September 30, 1993 or (2) in the case of an individual who was an active Employee of C&L on September 30, 1993, 1% of the first $21,000 and 1-1/2% of the remainder of his Prior Service Plan Earnings, multiplied by his Credited Service prior to October 1, 1993, divided by 12; and,

           (B)    for the Plan Year beginning October 1, 1993 and for each subsequent Plan Year, 1% of the first $21,000 and 1-1/2% of the remainder of his Plan Earnings for each Plan Year multiplied by his Credited Service for such Plan Year, divided by 12.-

        (ii)    For any C&L Participant who (1) was an Employee of, and actively employed by, the Employer on June 30, 1999 and was accruing benefits in the C&L Retirement Plan on that date, and (2) was an Employee of, and actively employed by, the Employer on November 1, 1999 and was accruing benefits under the Plan on that date, the sum of:

(A)    the greater of (1) the annual retirement income which had accrued on behalf of the C&L Participant as of June 30, 1998, or (2)  1% of the first $21,000 and 1-1/2% of the remainder of his Prior Service Plan Earnings, multiplied by his Credited Service prior to July 1, 1998 and divided by 12. For purposes of this Section 1(a)(ii)(A) only, Prior Service Plan Earnings is the average of a C&L Participant's Plan Earnings for the three consecutive calendar years ending prior to July 1, 1999 during which he was at any time a C&L Participant. For purposes of this Section 1(a)(ii)(A) only, a C&L Participant's Plan Earnings for a calendar year shall be the greater of (1) his compensation as reported in Box 1 of his Form W-2 for the calendar year, plus any salary reduction contributions made to a plan described in section 125 or 401(k) of the Code, but not including taxable fringe benefits, moving allowances, tax equalization payments, long term disability benefits, taxable premiums to group term life insurance plans, or job referral bonuses, or (2) his most recent rate of pay as of the October 1 immediately preceding such calendar year. Additionally, Plan Earnings for a calendar year shall not exceed the limit set by Section 401(a)(17) of the Code as in effect prior to the enactment of The Economic Growth and Tax Relief Reconciliation Act of 2001.; and

(B)    for service after June 30, 1998, 1% of the first $21,000 and 1-1/2% of the remainder of his Plan Earnings multiplied by his Credited Service for each Plan Year, divided by 12.

(b)    for C&L Participants who terminate employment with the Employer on or after an Early Retirement Date described in Section 12(g) of this Appendix, the sum of the annual retirement income determined under (a) above and the result of (i) minus (ii) minus (iii), where (i), (ii), and (iii) mean:

(i)    70 percent of Plan Earnings determined at the time of the C&L Participant's termination of employment. For this purpose only, Plan Earnings shall not exceed $25,000. For a C&L Participant who has completed less than 25 years of Service as of his termination of employment, 70 percent of Plan Earnings shall be multiplied by a fraction, the numerator of which is Service at termination of employment (divided by 12) and the denominator of which is 25.

    (ii)     the C&L Participant's annual retirement income determined under Section 1(a) of this Appendix.

    (iii)    the C&L Participant's Social Security primary insurance amount payable at age 65 based on earnings up to the date of his termination of employment and assuming no earnings thereafter. With respect to periods for which the C&L Participant's actual earnings for Social Security purposes are not available, the Social Security primary insurance amount shall be calculated on the assumption that the C&L Participant had earnings for Social Security purposes after 1951, or age 22 if later, and prior to his last date of hire or re-hire by the Employer which increased at the rate of six (6) percent per calendar year.

(c)    $6.00 multiplied by his Credited Service.

(d)    the sum of:

    (i)     the annual retirement income which had accrued on behalf of the C&L Participant under the C&L Retirement Plan as of June 30, 1998, as determined in accordance with Sections 1(a)(i) and (ii), (b) or (c) of this Appendix, and

    (ii)    (A) for the period beginning July 1, 1998 and ending June 30, 1999, the Actuarial Equivalent of the amount credited to such C&L Participant's Deemed Account Balance, as described in Section 12(b) of this Appendix. For this purpose, Actuarial Equivalence shall be determined under Section 12(a)(ii) of this Appendix, plus

           (B) for the period beginning July 1, 1999, the Actuarial Equivalent of the Deemed Account Balance as described in Section 5.1 of the Plan based on Deemed Payroll Period Allocations for such period.

2.    <u>Retirement Income of a C&L Participant who is a Partner or Principal.</u> Notwithstanding any other provision of the Plan to the contrary, the annual retirement income of a C&L Participant who is a Partner or Principal as of the date he ceases to be active shall be the sum of:

    (a)    In the case of a Partner or Principal directly admitted or promoted prior to July 1, 1998:

(i)     the annual retirement income which had accrued on behalf of the C&L Participant through June 30, 1999 as determined in accordance with Sections 1(a)(i) of this Appendix plus,

(ii)    for the period beginning July 1, 1999, the Actuarial Equivalent of the Deemed Account Balance as described in Section 5.1 of the Plan based on Deemed Payroll Period Allocations for such period.

(b)     In the case of an Employee promoted to Partner or Principal after June 30, 1998:

(i)     the annual retirement income which had accrued on behalf of the C&L Participant through his promotion date as determined in accordance with Section 1 of this Appendix plus,

(ii)    for the period beginning on his promotion date, the Actuarial Equivalent of the Deemed Account Balance as described in Section 5.1 of the Plan based on Deemed Payroll Period Allocations for such period.

(c)     In the case of any Partner or Principal who was a participant in the Coopers & Lybrand Target Benefit Plan or in an individual defined benefit plan sponsored by Coopers & Lybrand LLP, the retirement income determined under Sections 2(a)(i) of this Appendix shall be reduced by the annuitized value of such C&L Participant's account balance in the Coopers & Lybrand Target Benefit Plan and by the annuitized value of the assets distributed from the individual defined benefit plan upon termination of such plan. The annuitized value shall be determined using an interest rate of 6% per year, and the 1971 Group Annuity Mortality Table for Males with a one year setback.

3.    <u>Entitlement to Benefit</u>. Notwithstanding any other provision of the Plan to the contrary, a C&L Participant's retirement income accrued under Sections 1(a), (b), (c), (d)(i) and 2(a)(i), b(i) of this Appendix shall be subject to the following conditions:

(a)     If a C&L Participant's employment with the Employer is terminated, or in the case of a Partner or Principal he ceases to be active, following the date on which the C&L Participant has attained the age of 65 and completed at least sixty months of Service, he shall be fully vested in and entitled to receive annual retirement income determined under Sections 1 or 2 of this Appendix. In the case of termination or ceasing to be active at a Deferred

Retirement Date, payments shall be subject to the provisions of Section 10 of this Appendix.

(b)     If a C&L Participant's employment with the Employer is terminated, or in the case of a Partner or Principal he ceases to be active, on an Early Retirement Date, he shall be fully vested in and entitled to receive annual retirement income determined under Section 4 of this Appendix.

(c)     If a C&L Participant otherwise terminates employment or ceases to be active, he shall be entitled to receive annual retirement income, if any, as determined under Section 5 of this Appendix.

(d)     Notwithstanding any other provision in this Appendix to the contrary, effective for benefit payments first commencing after June 1, 2001, the benefit commencement date shall be the applicable Valuation Date described in Section 5.2 of the Plan. Further, effective July 1, 2001, any reference in this Appendix to the date a C&L Participant has attained age 65 and completed at least sixty months of Service shall instead be a reference to the later of the date the C&L Participant has attained age 65 and the 5th anniversary of the date his Plan participation commenced.

(e)     Notwithstanding any other provision of the Plan to the contrary, the periodic adjustment to the Defined Benefit Dollar Limit to reflect inflation described in Section 7.3(d) of the Plan (and first effective for the 2000 and prior Limitation Years) shall apply to the portion of the retirement income of any C&L Participant that is determined under Section 1(d)(i) or Section 2(a)(i) of this Appendix (but only to such portion), provided that the C&L Participant is in annuity pay status when the adjustment becomes effective. Periodic adjustments to the Defined Benefit Dollar Limit to reflect inflation that are first effective for the 2001 and subsequent Limitation Years shall not apply to any portion of the retirement income of any C&L Participant who is in pay status when the adjustment becomes effective.

(f)     Notwithstanding any other provision of the Plan to the contrary, a C&L Participant's annual retirement income under this Appendix shall be offset by the Actuarial Equivalent (as determined under Section 12(a)(ii) of this Appendix) of the lump sum benefit payable from any retirement plan that is qualified under section 1165(a) of the Puerto Rico Internal Revenue Code of 1994, as amended (other than a benefit funded with employee pre- or post-tax or employer matching contributions) to the extent such benefit is attributable to service taken into account under this Appendix.

4.     <u>Retirement Income at Early Retirement Date.</u>  Notwithstanding any other provision of the Plan to the contrary, a C&L Participant who terminates employment or ceases to be active on an Early Retirement Date may receive retirement income accrued under Sections 1 or 2 of this Appendix, subject to the following conditions:

(a)     Commencing on the first day of the calendar month beginning with or next following the date on which the C&L Participant has attained the age of 65 and completed at least sixty months of Service (or any subsequent date prior to the April 1 of the calendar year following the calendar year during which attainment of age 70 ½ occurs as described in Section 10(c) of this Appendix), the retirement income accrued by him pursuant to Sections 1 or 2 of this Appendix, as applicable, based on Credited Service as of his Early Retirement Date; or

(b)     Commencing on his Early Retirement Date, or on the first day of any month thereafter, as selected by the C&L Participant, the retirement income accrued by him pursuant to Sections 1 or 2 of this Appendix (but prior to the application of Section 2(c) of this Appendix), as applicable, based on his Credited Service as of his Early Retirement Date.  The portion of the C&L Participant's retirement income determined under Sections 1(a),(b), (c), (d)(i) or 2(a)(i), (b)(i) of this Appendix shall be multiplied by the fraction in Column A if the C&L Participant has completed at least 360 months of Service (as defined in Section 12(p) of this Appendix) as of his Early Retirement Date, or by the fraction in Column B if the C&L Participant has completed fewer than 360 months of Service as of his Early Retirement Date.  Months of Service for this purpose shall be determined without regard to any service prior to July 1, 1998 with Price Waterhouse LLP.

| Age at Commencement of Benefits | Column A Percentage* | Column B Percentage* |
|---|---|---|
| 53 | 54% | 42% |
| 54 | 58% | 46% |
| 55 | 62% | 50% |
| 56 | 66% | 54% |
| 57 | 70% | 58% |
| 58 | 76% | 62% |
| 59 | 82% | 66% |
| 60 | 88% | 70% |
| 61 | 94% | 76% |

123

| | | |
|---|---|---|
| 62 | 100% | 82% |
| 63 | 100% | 88% |
| 64 | 100% | 94% |
| 65 | 100% | 100% |

*Interpolate for non-integer ages

(c)    In the case of any Partner or Principal who was a participant in the Coopers & Lybrand Target Benefit Plan or in an individual defined benefit plan sponsored by Coopers & Lybrand LLP, the retirement income determined under Section 4(b) of this Appendix shall be further reduced by the amount determined under Section 2(c) of this Appendix, but calculated as of his benefit commencement date

5.    Retirement Income Upon Other Termination of Employment.  For purposes of determining vesting service under this Section 5, Years of Service prior to April 1, 1999 shall be determined as specified in Section 12(p) of this Appendix.  Years of Service after March 31, 1999 shall be determined as specified in Sections 2.46 and 6.1 of the Plan.  For C&L Participants who terminate employment or cease to be active after June 30, 1999, the Break in Service rules described in Section 6.1 of the Plan will apply.

Notwithstanding any other provision of the Plan to the contrary, a C&L Participant who terminates employment or ceases to be active prior to his Early Retirement Date shall be entitled to receive retirement income determined under Sections 1 or 2 of this Appendix, subject to the following conditions.

A C&L Participant who terminates employment or ceases to be active after September 30, 1989 and who has completed five Years of Service shall be fully vested and shall have a nonforfeitable right to receive all accrued retirement income.

A C&L Participant who terminated employment or ceased to be active, prior to October 1, 1989 and who had completed ten Years of Service or had completed an aggregate of five Years of Service and had a combined age and number of Years of Service equal to at least 45, shall be vested in accrued retirement income in accordance with the following table:

| Years of Service Equal or Exceed | AND | Sum of Age and Years of Service Equals or Exceeds | Percentage |
|---|---|---|---|

124

| | | |
|---|---|---|
| 5 | 45 | 50% |
| 6 | 47 | 60% |
| 7 | 49 | 70% |
| 8 | 51 | 80% |
| 9 | 53 | 90% |
| 10 | 55 | 100% |
| or | | |
| 10 | (no age requirement) | 50% plus 10% for each Year of Service in excess of ten |

Notwithstanding the foregoing, a C&L Participant shall be fully vested in the portion of his retirement income that accrues after June 30, 1998 upon his attainment of age 65 while employed by the Employer.

If a C&L Participant terminates employment with the Employer, or in the case of a Partner or Principal ceases to be active, before his Early Retirement Date for reasons other than death, he shall be entitled to receive one of the following:

(a)    commencing on the first day of the calendar month beginning with or next following the date on which the C&L Participant has attained the age of 65 and completed at least sixty months of Service (or any subsequent date prior to the April 1 of the calendar year following the calendar year during which attainment of age 70 ½ occurs as described in Section 10(c) of this Appendix), his vested retirement income determined under Sections 1 or 2 of this Appendix, based on Credited Service as of his termination of employment, or in the case of a Partner or Principal his ceasing to be active, or

(b)    commencing on the first day of any month coincident with or following his 53rd birthday, his vested retirement income determined under Sections 1 or 2 of this Appendix, based on Credited Service as of his termination of employment, or in the case of a Partner or Principal his ceasing to be active. The portion of the C&L Participant's retirement income determined under Sections 1(a),(b), (c), (d)(i) or 2 (a)(i) and (b)(i) of this Appendix shall be reduced in accordance with the factors set forth in Column B of the table in Section 4, of this Appendix, based on the C&L Participant's age on the date on which the payment will begin, or

125

(c)    In the case of a C&L Participant entitled to receive all or a portion of his vested accrued retirement income in a lump sum in accordance with Section 8 of this Appendix prior to attaining age 53, the Actuarial Equivalent of the amount of accrued retirement income payable in a lump sum commencing in any month following termination of employment, or in the case of a Partner or Principal commencing in any month following the date he ceases to be active  Such amount shall be payable in a form specified in Sections 5.3 or 5.4 of the Plan, or, for payments commencing on or after July 1, 2001, in any form specified in Section 9 of this Appendix.  Actuarial Equivalence for this purpose shall be determined under Section 12(a)(ii) of this Appendix.  This Section 5(c) of this Appendix is not applicable where Section 8(e) of this Appendix is applicable.

A C&L Participant who terminates employment, or in the case of a Partner or Principal he ceases to be active, with the Employer after September 30, 1989 and who fails to complete five Years of Service shall not be entitled to receive retirement income under the Plan, except as provided above.

6.    <u>Retirement Income of Acquired Employees</u>.  Where the portion of an Acquired Employee's retirement income attributable to the period of his employment with his Acquired Firm would be greater, if computed under the terms of a retirement plan which was maintained by such Acquired Firm, than if determined under Sections 1 or 2 of this Appendix, his retirement income shall be determined under Section 14 of this Appendix.

7.    <u>Limitation on Partners' and Principals' Benefits</u>.  The accrued retirement income of a C&L Participant who was a Partner or Principal who ceased to be active prior to July 1, 1999 shall not exceed the greater of the benefit provided under the Partners and Principals Agreement (the "Agreement"), or the retirement income accrued under the C&L Retirement Plan as of the date the Partner or Principal was last an Employee.  For purposes of this Section 7, (i) the retirement income of a Partner or Principal under the C&L Retirement Plan shall be his benefit payable in the form of a single life annuity payable on the first day of the calendar month beginning with or next following the date on which he has attained the age of 65 and completed at least sixty months of Service; and (ii) the benefit provided to a Partner or Principal under the Agreement shall be determined prior to any reduction taken under the Agreement pursuant to Sections 8.4(a) or 8.9 thereof (or such applicable sections of any successor agreement) and shall be the benefit payable to such Partner or Principal at age 65, regardless of such Partner's or Principal's actual age at the time benefits are payable under this Plan.  If a Partner or Principal's retirement income under the Plan as determined pursuant to this Section 7 does not exceed the greater

126

of the benefit provided under the Agreement in effect at the time benefits are payable under the Plan, or the retirement income accrued under the C&L Retirement Plan as of the date such Partner or Principal was last an Employee, his retirement income shall be payable in accordance with the provisions of Sections 2 or 4 of this Appendix, as applicable. If a Partner or Principal's retirement income under the Plan does exceed the greater of the benefit provided under the Agreement on June 30, 1999, or the retirement income accrued under the C&L Retirement Plan as of the date such Partner or Principal was last an Employee, his retirement income shall be equal to such lesser amount, and such lesser amount shall be payable in accordance with the provisions of Sections 2 or 4 of this Appendix, as applicable (except that Sections 2(c) or 4(c) of this Appendix shall not again be applied to reduce such benefit).

8.    <u>Cash-Out of Retirement Income</u>.  To the extent that a C&L Participant's retirement income is determined under Sections 1(a), (b), (c) or (d)(i) or 2(a)(i) or (b)(i) of this Appendix, a lump sum payment shall be calculated as the present value of vested accrued retirement income payable at the first day of the calendar month beginning or next following the date the C&L Participant attains the age of 65 and completes 60 months of Service in the Plan, calculated using the assumptions of Section 12(a)(ii) of this Appendix.  To the extent the C&L Participant's retirement income is determined under Sections 1(d)(ii) or 2(a)(ii) or (b)(ii) of this Appendix,  a lump sum payment shall equal his Deemed Account Balance.

Notwithstanding any provision of the Plan or this Appendix to the contrary,

(a)    For C&L Participants who retired or terminated employment, or in the case of a Partner or Principal who ceased to be active, before July 1, 1999:

(i)    A lump sum distribution for retirement income accrued prior to October 1, 1995 may be elected by the C&L Participant upon termination of employment, or in the case of a Partner or Principal upon ceasing to be active, with the Employer if and only if the present value of the C&L Participant's entire retirement income is less than 75% of his Plan Earnings for the most recently completed Plan Year;

(ii)    A lump sum distribution for retirement income accrued after September 30, 1995 and prior to July 1, 1998 may be elected by the C&L Participant upon termination of employment, or in the case of a Partner or Principal upon ceasing to be active, with the Employer if and only if the present value of the C&L Participant's entire

127

retirement income is less than 75% of his Plan Earnings for the most recently completed Plan Year and the present value of the C&L Participant's retirement income earned after September 30, 1995 and prior to July 1, 1998 is less than $10,000.

(iii)    A lump sum distribution for retirement income accrued after June 30, 1998 may be elected by the C&L Participant upon termination of employment, or in the case of a Partner or Principal upon ceasing to be active, with the Employer with respect to benefits accrued after June 30, 1998. The portion of any such lump sum distribution attributable to retirement income that accrued after June 30, 1998 while the C&L Participant was an Employee shall be equal to the greater of the present value of the amount that accrued after June 30, 1998 while an Employee under Section 1(a), (b), or (c) calculated using the assumptions described in Section 12(a)(ii) or the Amount Credited to the C&L Participant's Deemed Account Balance under Section 12(b) of this Appendix plus any Deemed Payroll Period Allocations after June 30, 1999 while an Employee increased or decreased to reflect Deemed Investment Experience.

(b)    If a C&L Participant terminates employment or ceases to be active on or after July 1, 1999, such C&L Participant may elect to receive the total amount of his retirement income in a lump sum. The portion of any such lump sum attributable to retirement income that accrued after June 30, 1998 while the C&L Participant was an Employee shall be equal to the greater of the present value of the amount that accrued after June 30, 1998 while an Employee under Section 1(a), (b), or (c) calculated using the assumptions described in Section 12(a)(ii) or the Amount Credited to the C&L Participant's Deemed Account Balance under Section 12(b) of this Appendix plus any Deemed Payroll Period Allocations after June 30, 1999 while an Employee increased or decreased to reflect Deemed Investment Experience.

(c)    Effective for benefit commencement dates on or after July 1, 2001, Section 8(b) of this Appendix shall also apply to C&L Participants who terminated as Employees prior to July 1, 1999.

(d)    If a C&L Participant is eligible to receive a lump sum payment under Sections 8(a),(b) or (c) of this Appendix, he may elect instead to receive an optional form of payment beginning on the date he could receive a lump sum as provided in Sections 5 and 9 of this Appendix.

(e)     If the lump sum value of a terminated C&L Participant's, or a ceased to be active Partner or Principal's, vested accrued retirement income is $5,000 or less, the benefit shall be paid in accordance with Section 5.6(a) of the Plan.

(f)     If a C&L Participant is required to establish independence from the Firm as a result of standards imposed by any regulatory agency or professional association, and does not receive a distribution under Section 8 of this Appendix, such C&L Participant shall receive his retirement income, determined in accordance with Section 1 or 2 of this Appendix, as applicable, in the form of a lump sum distribution or in the form of an annuity purchased from an insurance company, as he may elect. Any such annuity shall preserve all optional forms of benefit and all benefits, rights and features available to the C&L Participant under the terms of the Plan.

9.     Optional Forms of Benefit. A married C&L Participant's retirement income shall be paid in the form of a Qualified Joint and Survivor Annuity, and an unmarried C&L Participant's retirement income shall be paid in the form of a Life Annuity, unless the C&L Participant elects an optional form of benefit described below, pursuant to a Qualified Election as defined in Section 5.3(b) of the Plan.

For benefits determined under Sections 1(a), (b), (c), (d)(i) or 2(a)(i) or (b)(i) of this Appendix, the Qualified Joint and Survivor Annuity and optional forms of benefit shall be the Actuarial Equivalent of a single life annuity as determined under Section 12(a)(i) of this Appendix. For benefits determined under Sections 1(d)(ii) or 2(a)(ii) or (b)(ii) of this Appendix, the Qualified Joint and Survivor Annuity and optional forms of benefit shall be the Actuarial Equivalent of the Deemed Account Balance as determined under Section 12(a)(ii) of this Appendix. The portion of the Qualified Joint and Survivor Annuity and each optional form of benefit attributable to retirement income that accrued after June 30, 1998 while the C&L Participant was an Employee shall be the greater of the amount attributable to retirement income determined under Section 1(a), (b) or (c) that accrued after June 30, 1998 while an Employee or the amount attributable to retirement income determined under Section 1(d)(ii) that accrued after June 30, 1998 while an Employee.

Notwithstanding the provisions of Section 5.4 of the Plan, upon commencement of benefits after attaining age 53, a C&L Participant may elect one of the forms of benefit described below, in which event the amount to be paid will be the Actuarial Equivalent of the amount of annual retirement income determined under Section 1 or 2 of this Appendix.

As described in Section 5(c) of this Appendix, and except as provided in Section 8(e) of this Appendix, for benefit commencement dates on or after July 1, 2001, the forms of benefit described below shall also be available to C&L Participants upon commencement of benefits prior to attaining age 53. The Qualified Joint and Survivor Annuity and optional forms of benefit first commencing prior to age 53 shall be calculated in the manner described in Section 5(c) of this Appendix.

The optional forms of payment are:

(a)     monthly payments to the C&L Participant for life and, after his death, to any Joint Annuitant designated by him, for so long as such person lives, in an amount equal to 50%, 66-2/3%, 70%, 75% or 100%, as the C&L Participant may elect, of the monthly amounts paid to him;

(b)     monthly payments to the C&L Participant for life and, if he dies before 120 payments have been made, to the Beneficiary designated by him until an aggregate of 120 payments have been made.

(c)     monthly payments to the C&L Participant for life and, if he dies before 60 payments have been made, to the Beneficiary designated by him until an aggregate of 60 payments have been made.

(d)     monthly payments to the C&L Participant for life and, if he dies before 180 payments have been made, to the Beneficiary designated by him until an aggregate of 180 payments have been made. In no event may the payments exceed the life expectancy of the C&L Participant at the time payments commence.

(e)     A C&L Participant who retires on an Early Retirement Date and elects to have his retirement income commence prior to the earliest date on which he is eligible to receive old age benefits under the Social Security Act may, in addition, elect to receive increased amounts for the period prior to such date and reduced amounts thereafter, providing, insofar as practicable, a level annual retirement income from the Plan and Social Security. Monthly payments under this Section 9(e) of this Appendix shall be the Actuarial Equivalent (as described in Section 12(a)(i) of this Appendix) of any annuity form otherwise available under this Appendix.

(f)     If the Joint Annuitant designated by a C&L Participant who has elected a form of payment described in Section 9(a) of this Appendix above dies before payments to the C&L Participant have commenced, the election shall be ineffective and the C&L Participant may within 30 days of the death of

the Joint Annuitant amend his election to designate a new Joint Annuitant. If the Beneficiary designated by a C&L Participant who has elected the form of payment described in Sections 9(b), (c) or (d) of this Appendix dies at any time prior to the C&L Participant's death, the C&L Participant shall designate a new Beneficiary.

10. <u>Delayed Commencement of Benefits</u>. A C&L Participant's retirement income determined under Sections 1 or 2 of this Appendix shall be subject to the following conditions:

(a) If a terminated Employee, or a Partner or Principal who ceased to be active, is re-employed while receiving annuity payments under the plan, benefit payments will continue on an uninterrupted basis for the period of re-employment. Moreover, any terminated Employee, or any Partner or Principal who ceased to be active, who is re-employed as an Employee will accrue additional retirement income for the period of re-employment under Sections 1 or 2 of this Appendix.

(b) Effective December 1, 1999, a C&L Participant who remains employed by the Employer after the first day of the calendar month beginning with or next following the date on which the C&L Participant has attained the age of 65 and completed at least sixty months of Service will continue accruing benefits under Sections 1 or 2 of this Appendix. The portion of the benefit accrued under Sections 1(a),(b),(c),(d)(i) or 2(a)(i) and (b)(i) of this Appendix shall be actuarially increased based on the assumptions in Section 12(a)(i) to reflect delayed commencement past the first day of such calendar month based on the C&L Participant's age at his annuity starting date, as follows:

| Age | Factor* |
|-----|---------|
| 65 | 1.00000 |
| 66 | 1.11261 |
| 67 | 1.24190 |
| 68 | 1.39098 |
| 69 | 1.56366 |
| 70 | 1.76464 |
| 71 | 1.99970 |
| 72 | 2.27597 |

* Interpolate for non-integer ages.

131

Additional accruals under Sections 1(a),(b),(c),(d)(i) or 2(a)(i) and (b)(i) of this Appendix after the first day of the calendar month beginning with or next following the date on which the C&L Participant has attained the age of 65 and completed at least sixty months of Service shall be offset by the value of the increase for delayed commencement described above.

(c)    A vested C&L Participant who terminates employment, or in the case of a Partner or Principal ceases to be active, for reasons other than death may defer the receipt of his retirement benefit until the first day of the calendar month beginning or next following the date on which the C&L Participant has attained age 65 and completed at least sixty months of Service. Effective April 1, 2000, such a C&L Participant shall be eligible to defer the receipt of his retirement income to a date which is no later than the April 1 of the calendar year following the year in which he attains age 70-1/2. In the event such deferral is elected, the portion of the retirement benefit accrued under Sections 1(a),(b),(c), (d)(i) or 2 (a)(i) and (b)(i) of this Appendix shall be increased for delayed commencement after the first day of the calendar month beginning with or next following the date on which the C&L Participant has attained the age of 65 and completed at least sixty months of Service, based on the C&L Participant's age at the benefit commencement date and the factors described in Section 10(b) of this Appendix.

(d)    For C&L Participants who attained age 70 ½ prior to 2000, the required benefit commencement date was April 1 of the calendar year following the calendar year in which the C&L Participant attained age 70 ½. For C&L Participants who attain age 70 ½ after December 31, 1999, retirement benefits shall commence in the manner described in Section 5.1(b) of the Plan.

11.    <u>Pre-retirement Death Benefits.</u>

(a)    Notwithstanding the provisions of Article 5 of the Plan, death benefits attributable to a C&L Participant's retirement income determined under Sections 1 or 2 of this Appendix based on service prior to July 1, 1998 are payable only as follows:

(i)    Except as provided in Section 9 of this Appendix or Article 5 of the Plan, no benefits shall be payable under the Plan as the result of a C&L Participant's death after the date the payment of retirement income to the C&L Participant has commenced.

132

(ii) In the case of a C&L Participant who is vested, in accordance with Section 5 of this Appendix, at the time of death, his Spouse shall receive monthly payments for life equal to those such Spouse would have received:

(A) in the case of a C&L Participant who dies after his Early Retirement Date, if the C&L Participant had retired on the day before his death and had designated the Spouse as the Joint Annuitant to receive payments at the rate of 50% of the payments paid to him under a Qualified Joint and Survivor Annuity.

(B) in the case of a C&L Participant who dies prior to his Early Retirement Date, and who has terminated employment, or in the case of a Partner or Principal he has ceased to be active, prior to his death,

(1) if the C&L Participant survived to his Early Retirement Date,

(2) commenced benefit payments on the Early Retirement Date and designated the Spouse as the Joint Annuitant to receive payments at the rate of 50% of the payments paid to him under a Qualified Joint and Survivor Annuity, and

(3) died on the day after his Early Retirement Date.

(C) in the case of a C&L Participant who dies prior to his Early Retirement Date while employed by the Employer,

(1) if the C&L Participant had separated from service on the date of his death,

(2) survived to his Early Retirement Date,

(3) commenced benefit payments on the Early Retirement Date and designated the Spouse as the Joint Annuitant to receive payments at the rate of 50% of the payments paid to him under a Qualified Joint and Survivor Annuity, and

133

(4)      died on the day after his Early Retirement Date.

(D)      Death benefits described in Section 11(a)(ii)(A) of this Appendix shall commence as of the first day of the month following the C&L Participant's death. Death benefits described in Sections 11(a)(ii)(B) and (C) of this Appendix shall commence no later than the date the C&L Participant would have attained Early Retirement Date; provided, however, that the surviving Spouse may elect to commence receiving the Actuarial Equivalent (based on Section 12(a)(i) of this Appendix) of the benefit available at the C&L Participant's Early Retirement Date as of the first day of the month following the C&L Participant's death. Effective for death benefit payments commencing on or after July 1, 2001, the surviving Spouse may elect a lump sum payment of death benefits described in Section 11(a)(ii) of this Appendix based on the assumptions of Section 12(a)(ii) of this Appendix.

(iii)      In the case of a vested C&L Participant who dies while employed by the Employer on or after his Early Retirement Date and who was unmarried at the time of his death, each Dependent Child of such C&L Participant shall receive a payment each month for so long as such child is a Dependent Child, but in no event for more than ten years, in an amount equal to (A) the amount he would have received if the C&L Participant had retired on the first day of the month following his death and had designated him as the Beneficiary under the form of payment described in Section 9(b) of this Appendix, divided by (B) the number of Dependent Children of the C&L Participant who are entitled to receive payment for that month. Payments hereunder shall be made directly to each Dependent Child unless the Administrative Committee determines that such payment should be made to another person. For purposes of this Section 11, "Dependent Child" means a C&L Participant's child who is under age 21 and unmarried.

(iv)      If a C&L Participant dies while employed by the Employer on or after his Early Retirement Date, and he was unmarried and had no Dependent Children at the time of his death, no person shall receive any payment for any benefits accrued prior to July 1, 1998 under Sections 1 or 2 of this Appendix.

(b)     Notwithstanding the foregoing, death benefits attributable to a C&L Participant's retirement income determined under Sections 1 or 2 of this Appendix based on service after June 30, 1998 shall be payable as described below.

    (i)     For this purpose, the amount of the preretirement death benefit attributable to retirement income that accrued after June 30, 1998 while a C&L Participant was an Employee shall be the greater of (A) or (B):

        (A)     the applicable survivor benefit described in Section 11(a) of this Appendix attributable to retirement income that accrued while an Employee after June 30, 1998 under Sections 1(a), (b), (c), payable as described in Section 11(a) of this Appendix, or,

        (B)     the entire amount accrued after June 30, 1998 while an Employee under Sections 1(d)(ii) of this Appendix, payable as described in Sections 5.7 and 5.8 of the Plan.

    (ii)     The amount of the preretirement death benefit attributable to retirement income that accrued after June 30, 1998 while a C&L Participant was a Partner or Principal shall be the sum of (A) plus (B):

        (A)     the applicable survivor benefit described in Section 11(a) of this Appendix attributable to retirement income accrued after June 30, 1998 under Sections 2(a)(i) and (b)(i) , payable as described in Section 11(a) of this Appendix, plus,

        (B)     the entire amount accrued after June 30, 1998 under Sections 2(a)(ii) and (b)(ii) of this Appendix, payable as described in Sections 5.7 and 5.8 of the Plan.

For purposes of Sections 11(a)(ii) and (iii) of this Appendix, all retirement income accrued after June 30, 1998 shall be treated as fully vested at death.

12.     <u>Definitions</u>.  For purposes of this Appendix, the following definitions shall apply:

(a)     "Actuarial Equivalent or Equivalence" means a benefit determined to be of equivalent value to another benefit, on the basis of the following actuarial tables and assumptions:

135

    (i)        For optional forms of payment except lump sum cashouts or except as specified in Sections 5 and 9 of this Appendix

        (A)    <u>Interest</u>: 6% per annum compounded annually, and

        (B)    <u>Mortality</u>: 1971 Group Annuity Male Mortality Table, with a one-year age setback for C&L Participants and a five-year age setback for joint annuitants.

    (ii)      For lump sum cashouts

        (A)    <u>Interest</u>: The annual rate on 30-year Treasury Securities for the second month preceding the first day of the Plan Year, provided, however, that (i) for the period beginning July 1, 1999 and ending September 30, 1999, the interest rate shall not be greater than the annual rate on 30-year Treasury securities for August, 1998 and (ii) for the period beginning October 1, 1999 and ending June 30, 2000, the interest rate shall not be greater than the annual rate on 30-year Treasury securities for August 1999. Effective July 1, 2001, the Deemed Plan Interest Rate for the Plan Year described in Section 2.16 of the Plan.

        (B)    <u>Mortality</u>: The applicable mortality table prescribed by the Commissioner of the Internal Revenue Service, as described in Section 2.2 of the Plan. Effective for Benefit Commencement Dates on or after December 31, 2002, the mortality table set forth in Rev. Rul. 2001-62.

(b)    "Amount Credited to a C&L Participant's Deemed Account Balance" means, for the period from July 1, 1998 through June 30, 1999 for each C&L Participant who is not a Partner or Principal, five percent (5%) of his Plan Earnings paid on a monthly basis, as increased by his Deemed Investment Experience.

(c)    "Beneficiary" means the person designated by a C&L Participant to receive a benefit under the Plan, other than pursuant to a joint and survivor annuity, in the event of the C&L Participant's death.

(d)    "Credited Service" means the number of months of Service of a C&L Participant from his earliest date of participation in the Plan, excluding any Service: (a) as an ineligible Employee, Partner or Principal; (b) under

Section 12(p)(2)(ii) hereof to the extent it is based on an absence of more than one year (unless credit for such Service is allowed by the Administrative Committee under uniform and nondiscriminatory rules); (c) described in Section 12(p)(4) hereof; (d) arising from the application of Section 12(p)(5) hereof; (e) described in Section 12(p)(7) hereof; or (f) with respect to which payment has been made under Section 8 of this Appendix unless the amount has been repaid in full. Credited Service shall not include service as a partner or employee of an Acquired Firm prior to the date such Acquired Firm became part of Coopers & Lybrand LLP except as provided in Section 14 of this Appendix. Credited Service shall not include service as a Partner or Employee of Price Waterhouse LLP.

(e)     "Deemed Investment Experience" means, for purposes of Section 12(e) of this Appendix only, an increase to the Amount Credited to a C&L Participant's Deemed Account Balance as defined in Section 12(b) of this Appendix. For purposes of crediting interest to the Amount Credited to a C&L Participant's Deemed Account Balance during the twelve month period beginning July 1 of each year, the 30 year Treasury rate for the month of May immediately preceding such period shall be used. Effective July 1, 2001, the Deemed Plan Interest Rate for the Plan Year described in Section 2.16 of the Plan shall be used to credit interest to the Deemed Account Balance.

(f)     "Deferred Retirement Date" means the first day of any calendar month beginning with or next following the termination of a C&L Participant's employment, or in the case of a Partner or Principal his ceasing to be active, after the first day of the calendar month beginning with or next following the date on which the C&L Participant has attained the age of 65 and completed at least sixty months of Service.

(g)     "Early Retirement Date" means the first day of any calendar month prior to the first day of the calendar month beginning with or next following the date on which the C&L Participant would attain the age of 65 and which falls on or after the date when he has attained the age of 53 (age 55 with respect to C&L Participants who terminated or ceased to be active prior to July 1, 1997 and first commenced benefit payments prior to July 1, 2001) and completed at least sixty months of Service.

(h)     "Employee" means any individual other than a Partner or a Principal.

(i)    "Firm" means Coopers & Lybrand LLP, a registered limited liability partnership under the laws of the State of Delaware and effective July 1, 1998, the United States firm of PricewaterhouseCoopers LLP.

(j)    "Joint Annuitant" means the person designated by a C&L Participant to receive a benefit under the Plan, in the event of the C&L Participant's death, under a joint and survivor annuity.

(k)    "Long Term Disability Plan" means the long term disability plan established by the Employer.

(l)    "Plan Earnings" for purposes of Sections 1(a), (b), (c), (d)(i), (d)(ii)(A) and 2(a)(i) and (b)(i) of this Appendix means,

    (1)    for Plan Years beginning on or after October 1, 1989 and before October 1, 1994,

        (i)    in the case of a C&L Participant other than a Partner or Principal, such Participant's basic annual rate of pay from the Employer as of the first full pay period of such Plan Year; or

        (ii)    in the case of a Partner or Principal, the net earnings of a Partner from self-employment with the Employer and the net earnings of a Principal from employment with the Employer for the calendar year ending within such Plan Year. Such net earnings of a Partner and Principal shall include (A) draw or salary not greater than $15,000 and (B) profit shares allocated to him. Net earnings means draw and taxable profit shares.

        If a C&L Participant other than a Partner or Principal was not employed by the Employer during the first full pay period occurring during a Plan Year, his basic annual rate of pay shall be his rate of pay as of the first subsequent date or pay period within such year or Plan Year.

        If a C&L Participant other than a Partner or Principal was absent without pay during the first full pay period of a Plan Year, his Plan Earnings shall be his rate of pay as of the most recent date or pay period prior to the Plan Year in which he was absent.

(2)    for Plan Years beginning on or after October 1, 1994,

    (i)    in the case of a C&L Participant other than a Partner or Principal, his compensation from the Employer as reported in Box 1 of his Form W-2 for the calendar year ending within such Plan Year, plus any salary reduction contributions made to a plan described in section 125 or 401(k) of the Code, but not including taxable fringe benefits, moving allowances, tax equalization payments, long term disability benefits, taxable group term life, or job referral bonuses; or

    (ii)    in the case of a Partner or Principal, the net earnings of a Partner from self-employment with the Employer and the net earnings of a Principal from employment with the Employer for the calendar year ending within such Plan Year, plus any elective contributions made to a plan described in section 401(k) of the Code, but not including taxable fringe benefits, moving allowances, tax equalization payments, long term disability benefits, taxable group term life, or job referral bonuses.  Net earnings means draw and taxable profit shares.

Except for purposes of Section 1(d)(ii)(A) of this Appendix, in the case of a C&L Participant who did not receive compensation for the full calendar year ending in his first Plan Year of participation, the Form W-2 compensation of a C&L Participant other than a Partner or Principal, or the net earnings of a Partner or Principal, shall be determined on the basis of the next following calendar year.  In the case of a C&L Participant who has no compensation for the calendar year ending in a Plan Year after his first Plan Year of participation, the Form W-2 compensation of a C&L Participant other than a Partner or Principal, or net earnings of a Partner or Principal, shall be determined on the basis of the next following calendar year.  Notwithstanding the foregoing, if a C&L Participant other than a Partner or Principal is absent without pay at any time in the calendar year ending in a Plan Year, his Plan Earnings for such Plan Year shall be the greater of his most recent rate of pay as of the beginning of the current Plan Year, or his unannualized compensation for the last calendar year in which he was credited with Plan Earnings.  If the compensation reported on Form W-2 for a C&L Participant other than a Partner or Principal, or net earnings of a Partner or Principal, represents a period of Service that is less than the full calendar year, such compensation or net earnings shall be annualized.

The Plan Earnings of an Acquired Employee shall be his Plan Earnings determined in accordance with this Section 12(l) but substituting the phrase "from an Acquired Firm" for the phrase "from the Employer" with respect to periods prior to the acquisition of such Acquired Firm.

For Plan Years beginning on or after October 1, 1989, Plan Earnings for any year shall not exceed $200,000, indexed in accordance with Section 401(a)(17) of the Code. For Plan Years beginning on or after October 1, 1994, the $200,000 in the preceding sentence shall be replaced by $150,000. For Plan Years beginning on and after July 1, 2002, the $150,000 in the preceding sentence shall be replaced by $200,000.

For purposes of Sections 1(d)(ii)(B) and 2(a)(ii) and (b)(ii) of this Appendix, Plan Earnings are defined in Sections 2.11 and 2.18 of the Plan.

(m)    "Plan Year" means the twelve-month period beginning October 1 and ending the next succeeding September 30; provided, however, that effective October 1, 1998, the Plan Year shall be the period beginning October 1, 1998 and ending June 30, 1999; and thereafter the Plan Year shall be the twelve-month period beginning July 1 and ending the next succeeding June 30.

(n)    "Prior Service Plan Earnings" means the average of a C&L Participant's Plan Earnings during the most recent three Plan Years prior to an update date during which he was at any time a C&L Participant.

(o)    "Retirement Date" means a C&L Participant's actual date of retirement.

(p)    For purposes of this Appendix only, a "Year of Service" means 12 months of Service, and "Service" means:

(1)    Except as otherwise provided in this Section 12(p), the number of months during which a C&L Participant is employed by, or is a Partner or Principal of, the Firm. Any period of employment or service with Coopers & Lybrand, Coopers & Lybrand LLP, Price Waterhouse LLP, Coopers & Lybrand Global Employment Company, the Coopers & Lybrand Securities LLC or PricewaterhouseCoopers LLP shall be deemed employment or service with the Employer for purposes of determining Service. A C&L Participant will be granted a full month of Service if he is employed by the Employer one or more days in a month.

140

(2)     Service shall <u>include</u> a period of absence:

    (i)     for reason of disability during which a C&L Participant receives benefits under the Long Term Disability Plan of the Employer, or

    (ii)     for any reason which has been approved by the Employer pursuant to a uniform and nondiscriminatory policy, or

    (iii)     of one year or less for any other reason.

(3)     A C&L Participant who does not return to active employment with the Employer by the end of the period of absence described in Sections 12(p)(2)(i), (ii) or (iii) of this Appendix or by the first anniversary of the commencement of absence, whichever is later, shall be deemed to have terminated his employment, or in the case of a Partner or Principal ceased to be active, as of such date, unless his employment has terminated, or in the case of a Partner or Principal he has ceased to be active, in the interim by reason of death, discharge, quit or retirement.

(4)     In the event that a C&L Participant terminates employment, or in the case of a Partner or Principal he ceases to be active, and is re-employed before the first anniversary of his termination date, or in the case of a Partner or Principal the date he ceases to be active, the intervening period shall constitute Service.

(5)     Any period of employment with an affiliated partnership or corporation (other than an Acquired Firm) which is a member of a group of trades or businesses which are under "common control" with the Employer within the meaning of Code Section 414(c), or which is a member of an affiliated service group with the Employer within the meaning of Code Section 414(m), shall be deemed employment with the Employer for purposes of determining Service.

(6)     Any period of employment of an Acquired Employee with an Acquired Firm shall be deemed employment with the Employer for purposes of determining Service, except as otherwise provided in Section 14 of this Appendix.  For purposes of this Appendix, an "Acquired Employee" means any owner, partner or employee of an Acquired Firm who is classified as an Employee, and an "Acquired

141

Firm" means any entity of which the stock, business or assets were acquired by Coopers & Lybrand LLP or which became part of Coopers & Lybrand LLP. Effective October 1, 1989, an Acquired Firm shall not include an entity acquired through the purchase of assets unless Coopers & Lybrand LLP adopted a qualified plan maintained by the entity prior to the asset purchase, or unless specifically provided otherwise in this Appendix.

All service as a Partner or Principal of the Employer or of an Acquired Firm shall constitute Service, except as provided in Section 14 of this Appendix.

(7) Any period of service as a Leased Employee shall be deemed employment with the Employer only for purposes of participation and vesting.

13. <u>Increase of Retirement Income for Retired or Terminated C&L Participants</u>

(a) <u>1975 Update</u>

(1) Effective on June 1, 1975, the amount of annual retirement income payable with respect to any C&L Participant whose Retirement Date was prior to June 1, 1968, shall be increased as follows according to the number of calendar months beginning on or after the earlier of such C&L Participant's Retirement Date or the first day of the calendar month beginning with or next following the date on which the C&L Participant has attained the age of 65 and completed at least sixty months of Service and ending prior to January, 1975:

(i) 2/12 of 1% for each such calendar month prior to January, 1965,

(ii) 3/12 of 1% for each such calendar month after December, 1964 but prior to January, 1970, and

(iii) 4/12 of 1% for each such calendar month after December, 1969 but prior to January, 1975.

(2) Effective on June 1, 1975, the amount of annual retirement income payable with respect to any other C&L Participant whose Retirement Date was prior to June 1, 1975, shall be the greater of

    (i) 3/4 of 1% of the first $6,600 and 1-1/4% of the remainder of such C&L Participant's Average Plan Earnings above $6,600, multiplied by his Credited Service divided by twelve, or

    (ii) the amount payable without regard to this Section 13(a)(2) of this Appendix.

For purposes of this computation, "Average Plan Earnings" shall mean the average of the C&L Participant's Plan Earnings as of each June 1st on which he was a C&L Participant during the 60 months preceding his Retirement Date.

In the case of annual retirement income payable in any form other than a straight life annuity, the recomputed benefit under Section 13(a)(2)(i) of this Appendix shall be adjusted on the basis of Actuarial Equivalents to an equivalent benefit payable in such form.

In applying the preceding paragraph, Actuarial Equivalents shall be determined as if the ages of the C&L Participant, and, if applicable, any designated person under an optional form of retirement income, and the terms of payment of such optional form, were the same as they were as of the C&L Participant's Retirement Date, or the date retirement income first commenced, whichever is later.

(3) The amount of annual retirement income determined to be payable with respect to any C&L Participant described in Section 13(a)(1) of this Appendix shall be increased in the manner set forth this Section 13(a)(2) of this Appendix.

(4) In no event shall the application of Sections 13(a)(1), (2) and (3) of this Appendix result in an increase of less than $180 in annual retirement income payable with respect to any C&L Participant to which they apply.

(b) <u>1980 Update</u>

Effective on October 1, 1980, the amount of annual retirement income payable with respect to any C&L Participant whose Retirement Date was prior to October 1, 1980, or, any C&L Participant who retires after October 1, 1980 and before March 1, 1983, including a C&L Participant whose retirement income is determined under Section 13(a) of this Appendix shall be increased 20%.

In no event shall the application of this Section 13(b) result in an increase of less than $120 in annual retirement income.

(c)    <u>1982 Update</u>

Effective on October 1, 1982, the amount of annual retirement income payable with respect to any C&L Participant whose Retirement Date was after June 1, 1975 but before October 1, 1982, shall be increased to the extent the following formula would provide a higher benefit: 3/4 of 1% of the first $11,000 and the 1-1/2% of the remainder of his Prior Service Plan Earnings, multiplied by Credited Service prior to October 1, 1982. For this purpose only, Prior Service Plan Earnings shall be considered the average of a C&L Participant's Plan Earnings for whose of the last five Plan Years prior to his Retirement Date during which he was at any time a C&L Participant.

(d)    <u>1986 Update</u>

Effective on October 1, 1986 with respect to any C&L Participant who had retired prior to such date and on or after a Retirement Date specified in Section 3 of this Appendix, the amount of annual retirement income pay to such C&L Participant shall be increased by seven (7) percent. The preceding sentence shall not apply to any C&L Participant who was a Partner or Principal immediately before his Retirement Date.

(e)    <u>1988 Update</u>

With respect to any "retired partner", Credited Service shall be determined in the same manner as it would have been determined if the retired partner had been an Employee as of his Retirement Date and Plan Earnings shall be limited only to the extent required by Section 416 of the Code. The resulting benefit shall be reduced by the annuitized value of the retired partner's account balance in the Coopers & Lybrand Target Benefit Plan determined as of January 1, 1988. The annuitized value of such account balance shall be determined using 1971 Group Annuity Mortality Table

144

(Male) without projection, set back for 6 years for Joint Annuitants, and an interest rate of 6% per year. For purposes of this Section 13(e), the term "retired partner" means any Partner or Principal who retired from the Firm before October 1, 1987, other than any former managing Partner or Chairman of the Firm who retired after September 30, 1970.

(f)    1994 Update

The benefit of any C&L Participant or Beneficiary who is receiving benefits from the Plan on January 1, 1994, and who retired or otherwise terminated or withdrew from the Firm on or after his Early Retirement Date shall be increased in accordance with the following schedule:

| Date of Retirement, Termination or Withdrawal | Percent Increase |
|---|---|
| Before October 1, 1986 | 16% |
| After September 30, 1986 but before October 1, 1987 | 14% |
| After September 30, 1987 but before October 1, 1988 | 12% |
| After September 30, 1988 but before October 1, 1989 | 10% |
| After September 30, 1989 but before October 1, 1990 | 8% |
| After September 30, 1990 but before October 1, 1991 | 6% |
| After September 30, 1991 but before October 1, 1992 | 4% |
| After September 30, 1992 but before October 1, 1993 | 2% |
| After September 30, 1993 | 0% |

The foregoing increase shall apply to benefits payable on or after January 1, 1994 for employees and January 1, 1996 for partners.

(g)    1999 Cost of Living Adjustment

The periodic benefit of any C&L Participant (or surviving spouse or Beneficiary of such C&L Participant) who is a participant (or Beneficiary) in the C&L Retirement Plan on June 30, 1999 and who is receiving periodic benefits from that plan on July 1, 1999, and who retired or otherwise terminated as an Employee from an Employer shall be increased, effective as of July 1, 1999, in accordance with the following schedule:

| Annuity Starting Date | Percent Increase |
|---|---|

| | |
|---|---|
| Before October 1, 1993 | 6.9% |
| After September 30, 1993 but before October 1, 1994 | 5.5% |
| After September 30, 1994 but before October 1, 1995 | 4.0% |
| After September 30, 1995 but before July 1, 1996 | 2.6% |
| After June 30, 1996 but before January 1, 1997 | 2.0% |
| After December 31, 1996 but before July 1, 1997 | 1.4% |
| After June 30, 1997 but before January 1, 1998 | 1.1% |
| After December 31, 1997 but before July 1, 1998 | 0.5% |
| After June 30, 1998 | 0.0% |

C&L Participants (or spouses or Beneficiaries of C&L Participants) who received a lump sum cashout of their benefit as of July 1, 1999 or who had deferred payment of their benefits to a date that is after July 1, 1999 shall not be eligible for this Cost of Living Adjustment.

(h)    Special One-Time Increase in Retirement Income for Certain Retired C&L Participants.

The monthly retirement income payable with respect to retired C&L Participants who were Employees and who had attained age 65 as of July 1, 1999 and retired prior to such date on or after fifty-five (55) with 5 Years of Service shall be increased $60 beginning July 1, 1999.

14.    <u>Special Provisions Applicable to Acquired Employees</u>

(a)    <u>Applicable to Former Employees of Joseph Froggatt & Co., Inc.</u>

(1)    <u>Date of Acquisition</u>: July 21, 1972

(2)    <u>Definitions</u>:

(a)    "Froggatt" means Joseph Froggatt & Co., Inc.

(b)    "Froggatt Employee" means any regular employee of Froggatt who on July 21, 1972 became a Regular Employee (as such term was defined in the plan).

(c)    "Froggatt Plan" means the Employees' Retirement and Benefit Plan of Joseph Froggatt & Co., Inc. as in effect on July 20, 1972.

(3)    <u>Amount of Annual Retirement Income</u>:

Notwithstanding anything in this Appendix or Plan to the contrary, the amount of annual retirement income computed in accordance with Section 1 of this Appendix with respect to a Froggatt Employee which is based on Service prior to July 21, 1972 shall be the greater of:

(a)    the amount of retirement annuity credited under the Froggatt Plan with respect to such period; and

(b)    the amount of annual retirement income computed with respect to such period in accordance with Section 1 of this Appendix.

(4)    <u>Benefits Upon Termination of Employment</u>:

Anything in this Appendix or Plan to the contrary notwithstanding, in the event a Froggatt Employee's employment with the Employer terminates prior to the earliest date on which he could retire in accordance with Section 3 of this Appendix, the annual amount of retirement income to which he is entitled, commencing on the first day of the calendar month beginning with or next following the date on which the C&L Participant has attained the age of 65 and

147

completed at least sixty months of Service, shall not be less than the Actuarial Equivalent of his "Vested Rights" as set forth in Article II, Sections 5(1) and (2) of the Froggatt Plan.

(5)    Payment of Benefits to Certain Former Employees of Froggatt:

Any benefits that would have been payable currently or in the future under the Froggatt Plan, if it continued in effective after July 20, 1972, with respect to persons who did not become Employees of the Employer shall be paid from the Plan in accordance with the terms and provisions of the Froggatt Plan as in effect on July 20, 1972; provided, however, that effective on July 1, 1975, retirement benefits payable with respect to any such person shall be increased in accordance with the provisions of this Section 14(a) hereof as though he were a Participant.

(b)    Special Provisions Applicable to Former Employees of Daniels, Turnbull & Freeman

(1)    Date of Acquisition: July 1, 1973

(2)    Definitions:

(a)    "DT&F" means Daniels, Turnbull & Freeman.

(b)    "DT&F Plan" means the Daniels, Turnbull & Freeman Employees Pension Trust as adopted effective October 1, 1966 and as amended subsequent thereto.

(c)    "DT&F Employee" means any employee of DT&F who became an Employee as of June 1, 1973.

(3)    Amount of Annual Retirement Income:

Notwithstanding anything in Appendix or Plan to the contrary, the portion of the annual retirement income of a DT&F Employee computed in accordance with Section 1 of this Appendix which is based on Service prior to June 1, 1973 shall not be less than the Actuarial Equivalent of the normal retirement benefit accrued by such DT&F Employee under Section 4.1 of the DT&F Plan as of June 1, 1973.

148

(c)    Special Provisions Applicable to Former Partners and Employees of Siskin, Shapiro & Company

    (1)    Date of Acquisition: October 1, 1982

    (2)    Definition:

        (a)    "SS & Co." means Siskin, Shapiro & Company.

        (b)    "SS & Co. Employee" means any employee of SS & Co. who became an Employee as of October 1, 1982.

        (c)    "SS & Co. Partner" means any partner of SS & Co. who became a Partner as of October 1, 1982.

        (d)    "SS & Co. Plan" means the Siskin, Shapiro & Company HR-10 Plan.

        (e)    "SS & Co. Plan Balance" means the individual account balance of each employee in the SS & Co. Plan, as of the date the accounts are transferred to the Plan.

        (f)    "Plan Account" means the separate account established for each SS & Co. Employee under the Plan, and transferred to the Coopers & Lybrand Multi-Investment Accumulation Plan ("MAP") effective October 1, 1989.

    (3)    Transfer of SS & Co. Plan Assets:

        (a)    All assets of the SS & Co. Plan attributable to the SS & Co. Employees shall be transferred to the Trustee of the Plan as soon as practicable after October 1, 1982. Such assets shall be credited to each SS & Co. Employee's Plan Account in an amount equal to the market value of such account including any accrued contributions and investment income on the transfer date. The balance of each SS & Co. Employee's Plan Account shall be invested and reinvested upon the instructions of the Employee in one of the investment funds in accordance with the provisions of MAP. All earnings, losses and other expenses attributable to assets held for each such Plan Account shall be reflected therein exclusively, in accordance with such accounting procedures as the

Committee shall approve. No assets of any other such Plan Account nor any general assets, earnings or losses of the Trust Fund shall be credited to or charged against any such separate account.

(b)    The value of each SS & Co. Employee's Plan Account established in accordance with Section 14(c)(3)(a) of this Appendix shall be determined no less frequently than annually, and at such other times as the Administrative Committee, in agreement with the Trustee of MAP, shall establish.

(c)    The withdrawal provisions of MAP shall not be applicable to the Plan Accounts established in accordance with this Section 14(c)(3), and distribution of Plan Accounts shall be governed solely by the terms of this Section 14(c)(3).

(4)    <u>Annual Retirement Income of SS & Co. Employees</u>

Notwithstanding anything in this Appendix or Plan to the contrary, the annual retirement income of an SS & Co. Employee shall be the sum of (a) and (b) below:

(a)    The annual retirement income determined under Section 1 of this Appendix for such Employee offset by the annual retirement income for life commencing on the first day of the calendar month beginning with or next following the date on which the C&L Participant has attained the age of 65 and completed at least sixty months of Service which is the actuarial equivalent of such employee's SS & Co. Plan Balance.

(b)    The annual retirement income for life commencing on the first day of the calendar month beginning with or next following the date on which the C&L Participant has attained the age of 65 and completed at least sixty months of Service which is the actuarial equivalent of the Single Sum Payment of the Plan Account as determined in Section 14(c)(6) of this Appendix. For purposes of determining the vested amount of an SS & Co. Employee's retirement income, such Employee shall have at all times a 100% percent non-

forfeitable interest in the benefit described in this Section 14(c)(4)(b).

The basis for actuarial equivalent in this Section 14(c)(4) shall be as follows:

Mortality: 1971 Group Annuity mortality Table (Male) without projection, set back 6 years of Females.

Interest: 6% per annum, compounded annually.

(5)    Annual Retirement Income of SS & Co. Partners

Notwithstanding anything in this Appendix to the contrary, for purposes of determining the annual retirement income under Section 2 of this Appendix, Service with SS & Co. Partner shall not be included in determining Credited Service, but shall constitute Service for purposes of determining eligibility and vesting.

(6)    Single Sum Payment of Plan Account

In lieu of the benefit described in Section 14(c)(4)(b) of this Appendix, the SS & Co. Employee may elect at the time of his retirement or other termination of employment to receive a Single Sum Payment of his Plan Account. An SS & Co. Employee's Single Sum Payment shall be the greater of:

(a)    the value of such Employee's SS & Co. Plan Balance increased by interest at 6% per annum, compounded annually to retirement or other termination of employment; or

(b)    the balance to the credit to the SS & Co. Employee is his Plan Account as of the Employee's retirement or other termination of employment.

Such amount will be paid in a single sum to the Employee, as soon as practicable after his retirement or other termination of employment; provided, however, that if the SS & Co. Employee elects a Single Sum Payment of his Plan Account, the annual retirement income of such Employee shall be limited to the benefit described Section 14(c)(4)(a) of this Appendix.

Any Single Sum Payment on or after October 1, 1989, shall be made from MAP, rather than from the Plan.

(7)    Death Benefits

If an SS & Co. Employee dies before the commencement of retirement income payments, his Beneficiary shall receive a Single Sum Payment equal to his Plan Account as determined in accordance Section 14(c)(6) of this Appendix, plus any benefits payable in accordance with Section 11 of this Appendix based on retirement benefits defined under Section 14(c)(4)(a) of this Appendix.

If an SS & Co. Employee dies after the commencement of retirement income payments, his Beneficiary shall receive any benefits payable in accordance with the Employee's election under Section 9 of this Appendix.

(8)    Cash-Out of Retirement Income

When an election is made by an SS & Co. Employee under Section 14(c)(6) of this Appendix, total retirement income for purposes of the Plan includes only the annual retirement income described in Section 14(c)(4)(a) of this Appendix, and not the retirement benefit described in Section 14(c)(4)(b) of this Appendix.

(d)    Special Provisions Applicable to Former Partners and Employees of Shaye, Lutz, Schwartz & King, P.C.

(1)    Date of Acquisition: October 1, 1982.

(2)    Definitions:

(a)    "SLSK" means Shaye, Lutz, Schwartz & King, P.C.

(b)    "SLSK Employee" means any employee or shareholder of SLSK who became an employee as of October 1, 1982.

(c)    "SLSK Plan" means the Shaye, Lutz, Schwartz & King, P.C. Pension Plan.

(3)    Amount of Annual Retirement Income:

152

Notwithstanding anything in this Appendix or Plan to the contrary, for purposes of determining the annual retirement income under Section 1 of this Appendix, except as noted in Section 14(d)(4) of this Appendix, Credited Service for an SLSK Employee (other than Ira Rosen) shall not include service with SLSK, but for an SLSK Employee (including Ira Rosen) such service shall constitute Service for purposes of determining eligibility and vesting.

(4)    Transfer of SLSK Plan Assets:

As soon as practicable after the acquisition date, each of Virginia Keating, Anna Thompson, Elizabeth Turner and Harold Dornburg will be given the option to elect to have the portion of assets of the SLSK plan attributable to their accrued benefits transferred to the Plan. Any such individual electing to transfer such amounts to the Plan shall have service with SLSK included in the determination of Credited Service for the purpose of calculating annual retirement income under Section 1 of this Appendix.

(e)    Special Provisions Applicable to Former Partners and Employees of J.B. Friedman & Co.

(1)    Date of Acquisition: December 1, 1982.

(2)    Definitions:

(a)    "JBFCo." means J.B. Friedman & Company

(b)    "JBFCo. Employee" means any employee or partner of JBFCo. who became an Employee as of, October 1, 1982.

(3)    Amount of Annual Retirement Income:

Notwithstanding anything in this Appendix or Plan to the contrary, Service for a JBFCo. Employee shall not include service with JBFCo.

(f)    Special Provisions Applicable to Former Partners and Employees of Katz, Zuckerman

(1)    Date of Acquisition: September 1, 1980.

153

(2)     Definitions:

(a)     "KZ" means Katz, Zuckerman & Co.

(b)     "KZ Employee" means any employee or partner of KZ who became an Employee on September 1, 1990.

(3)     Amount of Annual Retirement Income

Notwithstanding anything in this Appendix or Plan to the contrary, Service (but not Credited Service) for a KZ Employee shall include service with KZ before September 1, 1990.

(g)     Special Provisions Applicable to Former Employees of Matsumoto and Yamada Accountancy Corporation

(1)     Date of Acquisition: July 1, 1983.

(2)     Definitions:

(a)     "MYAC" means Matsumoto and Yamada Accountancy Corporation.

(3)     Amount of Annual Retirement Income

Notwithstanding anything in this Appendix or Plan to the contrary, Fujima Matsumoto shall not be eligible to participate in the Plan, and the Plan Earnings of George Yamada shall be the amounts described in Section 10 of the merger agreement between MYAC and the Firm dated June 29, 1983.

(h)     Special Provisions Applicable to Former Employees of Ford, Hickman, Gibbs & Massinger Accountants, Incorporated

(1)     Date of Acquisition: August 1, 1983.

(2)     Definitions:

(a)     "FHGM" means Ford, Hickman, Gibbs & Massinger Accountants, Incorporated.

154

    (b)    "FHGM Employee" means any employee or partner of FHGM who became an Employee on August 1, 1983.

(3)    <u>Amount of Annual Retirement Income</u>

Notwithstanding anything in this Appendix or Plan to the contrary, Mr. David H. Gibbs shall not be eligible to participate in or accrue benefits under the Plan. Also, for FHGM Employees, Plan Earnings and Service shall not include earnings and service with FHGM, except that service with FHGM shall constitute service under the Plan for purposes of participation.

(i)    <u>Special Provisions Applicable to Former Partners and Employees of Utterback, Duncan, Carameros & Curlin</u>

(1)    <u>Date of Acquisition</u>: August 1, 1983.

(2)    <u>Definitions</u>:

    (a)    "UDCC" means Utterback, Duncan, Carameros & Curlin Accountants, Incorporated.

    (b)    "UDCC Employee" means any employee or partner of UDCC who became an Employee on August 1, 1983.

    (c)    "UDCC Partner" means any partner of UDCC who became a Partner on August 1, 1983.

(3)    <u>Amount of Annual Retirement Income</u>

Notwithstanding anything in this Appendix or Plan to the contrary, Service for an UDCC Employee or UDCC Partner shall not include any period prior to August 1, 1983, and Plan Earnings for a UDCC Employee and UDCC Partner shall not include earnings prior to August 1, 1983. In addition, with respect to UDCC Partners, Plan Earnings shall not include payments pursuant to Section 9 of the merger agreement between UDCC and the Firm dated July 1983.

(j)    <u>Special Provisions Applicable to Former Partners and Employees of Sorkin, Thayer & Co.</u>

(1)    <u>Date of Acquisition</u>: December 1, 1983.

(2)    Definitions:

    (a)    "STC" means Sorkin, Thayer & Co.

    (b)    "STC Partner" means any partner of STC who became a Partner as of December 1, 1983.

(3)    Amount of Annual Retirement Income

Notwithstanding anything in this Appendix or Plan to the contrary, for purposes of determining eligibility, vesting and the computation of annual retirement income under Section 2 of this Appendix, Service and Plan Earnings for an STC Partner shall include the service and compensation amounts described in Attachments C and E to the Agreement dated November 30, 1983 between the Firm and STC with respect to periods prior to December 1, 1983. Notwithstanding anything in this Appendix or Plan to the contrary with respect to Acquired Employees, eligibility to participate in the Plan shall be restricted pursuant to Attachment D to the Agreement dated November 30, 1983 between the Firm and STC.

(k)    Special Provisions Applicable to Former Employees and Partners of Trott & Company

(1)    Date of Acquisition: May 1, 1984.

(2)    Definitions:

    (a)    "TCO" means Trott & Company.

    (b)    "TCO Employees" means any employee of TCO who became an Employee as of May 1, 1984.

(3)    Amount of Annual Retirement Income

Notwithstanding anything in this Appendix or Plan to the contrary, Plan Earnings and Service for a TCO Employee shall not include earnings and service with TCO.

(l)    Special Provisions Applicable to Former Employees of Turigliatto, Collins, Bitner & Palm, P.C.

    (1)    <u>Date of Acquisition</u>: December 1, 1984.

    (2)    <u>Definitions</u>:

        (a)    "TCBP" means Turigliatto, Collins, Bitner & Palm, P.C.

        (b)    "TCBP Employee" means any employee of TCBP who became an Employee as of December 1, 1984.

        (c)    "TCBP Partner" means any employee or partner of TCBP who became a Partner as of December 1, 1984.

    (3)    <u>Amount of Annual Retirement Income</u>

Notwithstanding anything in this Appendix or Plan to the contrary, Plan Earnings and Service for TCBP Employees and TCBP Partners shall not include earnings or service with TCBP.

(m)    <u>Special Provisions Applicable to Former Employees of SysteCon, Inc.</u>

    (1)    <u>Date of Acquisition</u>: December 1, 1984.

    (2)    <u>Definitions</u>:

        (a)    "SI" means SysteCon, Inc.

        (b)    "SI Employee" means any employee of SI who became an Employee as of December 1, 1984.

        (c)    "SI Principal" means any employee of SI who became a Partner or Principal as of December 1, 1984.

    (3)    <u>Amount of Annual Retirement Income</u>

Notwithstanding anything in this Appendix or Plan to the contrary, Service and Plan Earnings for an SI Employee and SI Principals shall not include service and earnings prior to December 1, 1984.

(n)    <u>Special Provisions Applicable to Former Employees of Gottfried Consultants, Inc.</u>

    (1)    <u>Date of Acquisition</u>: February 1, 1985.

(2)    Definitions:

    (a)    "GCI" means Gottfried Consultants, Inc.

    (b)    "GCI Employee" means any employee of GCI who became an Employee as of February 1, 1985.

    (c)    "GCI Principal" means any employee of GCI who became a Principal as of February 1, 1985.

(3)    Amount of Annual Retirement Income

Notwithstanding anything in this Appendix or Plan to the contrary, Service (but not Credited Service) for a GCI Employee and GCI Principal shall include service with GCI from June 1, 1964 to February 1, 1985.

(o)    Special Provisions Applicable to Former Employees of Hanson, Raun & Hanson.

(1)    Date of Acquisition: December 1, 1981.

(2)    Definitions:

    (a)    "HRH" means Hanson, Raun & Hanson.

    (b)    "HRH Employee" means any employee or partner of HRH who became an Employee as of December 1, 1981.

(3)    Amount of Annual Retirement Income

Notwithstanding anything in this Appendix or Plan to the contrary, Service for an HRH Employee shall not include service with HRH.

(p)    Special Provisions Applicable to Former Employees of Charles Mihaylo Accountancy Corporation

(1)    Date of Acquisition: October 1, 1984.

(2)    Definitions:

    (a)    "MAC" means Charles Mihaylo Accountancy Corporation.

      (b)     "MAC Employee" means any employee of MAC who became an Employee on August 1, 1983.

  (3)    Amount of Annual Retirement Income

Notwithstanding anything in this Appendix or Plan to the contrary, Service for a MAC Employee shall not include any period prior to October 1, 1984, and Plan Earnings for a MAC Employee shall not include earnings prior to October 1, 1984.

(q)    Special Provisions Applicable to Cox, Wacker and Vogel

  (1)    Date of Acquisition: December 1, 1985.

  (2)    Definitions:

      (a)     "CAWV Partner" means Albert Cox, John Wacker, and James Vogel, former partners of Cox, Armstrong, Wacker Vogel & Co., who became Partners on December 1, 1985.

  (3)    Amount of Annual Retirement Income

Notwithstanding anything in this Appendix or Plan to the contrary, Service for a CAWV Partner shall not include any period prior to December 1, 1985, and Plan Earnings for a CAWV Partner shall not include earnings prior to December 1, 1985.

(r)    Special Provisions Applicable to Former Partners and Employees of Robinson & Company

  (1)    Date of Acquisition: January 1, 1986.

  (2)    Definitions:

      (a)     "R&C" means Robinson & Company.

      (b)     "R&C Employee" means any employee or partner of R&C who became an Employee as of January 1, 1986.

  (3)    Amount of Annual Retirement Income

Notwithstanding anything in this Appendix or Plan to the contrary, Plan Earnings and Service for R&C Employees shall not include earnings and service with R&C.

(s)     Special Provisions Applicable to Former Partners and Employees of Colley, Trumbower & Howell

    (1)     Date of Acquisition: December 1, 1986.

    (2)     Definitions:

        (a)     "CT&H" means Colley, Trumbower & Howell.

        (b)     "CT&H Partners" means any partner of CT&H who become a Partner as of December 1, 1986.

        (c)     "CT&H Employees" means any employee of CT&H who became an Employee on December 1, 1986.

    (3)     Amount of Annual Retirement Income

Notwithstanding anything in this Appendix or Plan to the contrary, Plan Earnings and Service for CT&H Employees shall include earnings and service with CT&H before December 1, 1986. Notwithstanding anything in the Plan to the contrary, Plan Earnings and Service for CT&H Partners shall not include earnings or service with CT&H before December 1, 1986.

(t)     Special Provisions Applicable to Former Partners and Employees of Daughtrey & Company

    (1)     Date of Acquisition: December 1, 1984.

    (2)     Definitions:

        (a)     "D&C" means Daughtrey & Company.

        (b)     "D&C Employees" means employees of D&C.

    (3)     Amount of Annual Retirement Income

Notwithstanding anything in this Appendix or Plan to the contrary, Plan Earnings and Service for D&C Employees shall not include earnings or service with D&C prior to December 1, 1984.

(u)    Special Provisions Applicable to Former Employees of Herman Smith Associates

   (1)    Date of Acquisition: February 1, 1988.

   (2)    Definitions:

      (a)    "HSA" means Herman Smith Associates.

      (b)    "HSA Employee" means any employee or partner of HSA who became an Employee as of February 1, 1988.

      (c)    "HSA Principal" means any partner or principal of HSA who became a Principal as of February 1, 1988.

   (3)    Amount of Annual Retirement Income

   Notwithstanding anything in this Appendix or Plan to the contrary, for purposes of benefit accrual under the Plan Service and Plan Earnings for an HSA Employee and HSA Principal shall not include service and earnings with HSA.  Also, the compensation amounts described in Section 4.5 of the merger agreement between HSA and the Firm dated January 29, 1988 shall not be included as Plan Earnings for the HSA Principals.

(v)    Special Provisions Applicable to Former Employees of Tyler, Ellis, Tuffly & Co.

   (1)    Date of Acquisition: December 1, 1988

   (2)    Definitions:

      (a)    "TET&C" means Tyler, Ellis, Tuffly & Co.

      (b)    "TET&C Employee" means any employee of TET&C who became an Employee on December 1, 1988.

   (3)    Amount of Annual Retirement Income

Notwithstanding anything in this Appendix or Plan to the contrary, Service for a TET&C Employee shall not include any period prior to December 1, 1988, and Plan Earnings for a TET&C Employee shall not include earnings prior to December 1, 1988.

(w)    Special Provisions Applicable to Former Partners and Employees of Gelfand, Rennert & Feldman

    (1)    Date of Acquisition: December 1, 1989

    (2)    Definitions:

        (a)    "GRF" means Gelfand, Rennert & Feldman.

        (b)    "GRF Employee" means any employee or partner of GRF who became an Employee as of December 1, 1989.

        (c)    "GRF Partner" means any employee or Partner of GRF who became a Partner or Principal as of December 31, 1989.

    (3)    Eligibility

Each GRF Employee shall be treated as a new Employee as of December 31, 1989, and shall participate in the Plan upon satisfaction of its eligibility provisions.

Each GRF Partner shall be treated as a new Partner on December 1, 1989 and shall be eligible to participate in the Plan upon satisfaction of its eligibility provisions.

    (4)    Amount of Annual Retirement Income

Notwithstanding anything in this Appendix or Plan to the contrary, Plan Earnings and Service for GRF Employees and GRF Partners shall not include earnings and service with GRF prior to December 1, 1989.

(x)    Special Provisions Applicable to Former Employees of Computer Assistance, Inc.

Employees of Computer Assistance, Inc. became employees of the Firm on April 1, 1989 in connection with the Firm's purchase of the assets of Computer Assistance, Inc., but were not initially eligible to participate in the Plan.

Effective January 1, 1994, salaried employees of the Computer Assistance division (also known as the Solutions through Technology group) of the Firm shall become C&L Participants of the Plan, and shall be credited with Service for periods of employment with Computer Assistance, Inc. and with the Computer Assistance division of the Firm. Credited Service shall be determined as if employment with Computer Assistance, Inc. were employment with the Firm, and as if employees of the Computer Assistance division were never an excluded class of employees.

Plan Earnings shall include compensation paid by Computer Assistance, Inc. and by the Computer Assistance division of the Firm.

(y)    Special Provisions Applicable to Former Employees of Harbridge House

    (1)    Date of Acquisition: October 1, 1993

    (2)    Definitions:

        (a)    "HH" means Harbridge House.

        (b)    "HH Employee" means any employee of HH who became an Employee on October 1, 1993.

    (3)    Amount of Annual Retirement Income

    Notwithstanding anything in this Appendix or Plan to the contrary, Service (but not Credited Service) for an HH Employee shall include service with HH before October 1, 1993.

(z)    Special Provisions Applicable to Employees of Manufacturers' Appraisal Company

    (1)    Date of Acquisition:  September 1, 1994

    (2)    Definitions:

        (a)    "MAC" means Manufacturers' Appraisal Company and any entity under common control (a defined in Section 414(b) or (c) of the Code) with  Manufacturers Appraisal Company.

163

(b)    "MAC Employee" means any employee of MAC who became an Employee on September 1, 1994.

(c)    "MAC Partner" means any employee or partner of MAC who became a Partner or Principal on September 1, 1994.

(3)    <u>Amount of Annual Retirement Income</u>

Notwithstanding anything in this Appendix or Plan to the contrary, Service for a MAC Employee or MAC Partner shall not include service with MAC before September 1, 1994.

(aa)    <u>Special Provisions Applicable to Employees of Coppi Associates, Inc.</u>

(1)    <u>Date of Acquisition</u>:  March 1, 1995

(2)    <u>Definitions</u>:

(a)    "Coppi" means Coppi Associates, Inc. and any entity under common control (a defined in Section 414(b) or (c) of the Code) with Coppi Associates, Inc.

(b)    "Coppi Employee" means any employee of Coppi who became an Employee on March 1, 1995.

(c)    "Coppi Partner" means any employee or partner of Coppi who became a Partner or Principal on March 1, 1995.

(3)    <u>Amount of Annual Retirement Income</u>

Notwithstanding anything in this Appendix or Plan to the contrary, Service (but not Credited Service) for a Coppi Employee or Coppi Partner shall include service with Coppi before March 1, 1995.

(bb)    <u>Special Provisions Applicable to Employees of L. W. Ellwood & Company.</u>

(1)    <u>Date of Acquisition</u>:  October 31, 1996

(2)    <u>Definitions</u>:

(a)    "Ellwood" means L. W. Ellwood & Company, Inc. and any entity under common control (a defined in Section 414(b) or (c) of the Code) with L. W. Ellwood & Company, Inc..

(b)    "Ellwood Employee" means any employee of Ellwood who became an Employee on October 31, 1996.

(c)    "Ellwood Partner" means any employee or partner of Ellwood who became a Partner or Principal on October 31, 1996.

(3)    <u>Amount of Annual Retirement Income</u>

Notwithstanding anything in this Appendix or Plan to the contrary, Service (but not Credited Service) for an Ellwood Employee or Ellwood Partner shall include service with Ellwood before October 31, 1996.

(cc)    <u>Special Provisions Applicable to Employees of Compo Consulting Group, Inc.</u>

(1)    <u>Date of Acquisition</u>:  December 31, 1996

(2)    <u>Definitions</u>:

(a)    "Compo" means Compo Consulting Group, Inc. and any entity under common control (a defined in Section 414(b) or (c) of the Code) with  Compo Consulting Group, Inc.

(b)    "Compo Employee" means any employee of Compo who became an Employee on December 31, 1996.

(c)    "Compo Partner" means any employee or partner of  Compo who became a Partner or Principal on December 31, 1996.

(3)    <u>Amount of Annual Retirement Income</u>

Notwithstanding anything in this Appendix or Plan to the contrary, Service (but not Credited Service) for a Compo Employee or Compo Partner shall include service with Compo before December 31, 1996.

(dd)    Participation By Affiliated Employers

Name of Affiliated Employer        Effective Date of Plan Participation

Coopers & Lybrand Global Services (U.S.), Inc.        January 1, 1997

Coopers & Lybrand Securities L.L.C.        January 1, 1998

(ee)    Special Provisions Applicable to Former Employees of Kwasha Lipton and Kwasha Lipton, L.L.C. Formerly working at Kwasha Lipton

All employees of Kwasha Lipton (the assets and business of which was acquired by the Firm on January 24, 1997) and participants of Kwasha Lipton, L.L.C. who were employed at Kwasha Lipton on January 24, 1997, and employees and participants who received employment letters from Kwasha Lipton on or before January 24, 1997 but began work at Kwasha Lipton within 30 days after January 24, 1997, shall be eligible to participate in the Kwasha Lipton Retirement Plan (the "KL Plan") (and shall not be treated as C&L Participants for purposes of this Appendix), subject to the terms and conditions of the KL Plan, until the date the KL Plan is merged into this Plan. All other employees hired at the former Kwasha Lipton operations who were hired after January 24, 1997, including former employees of Kwasha Lipton rehired after January 24, 1997, shall be eligible to participate in this Plan (and shall not be eligible to participate in the KL Plan), and, with respect to such employees, a period of employment or service with Kwasha Lipton or with Kwasha Lipton, L.L.C. working at Kwasha Lipton shall be deemed employment with the Firm for purposes of determining Service hereunder; provided, however, that such an individual's Service under this Plan shall not be less than his service under the KL Plan.

(ff)    Special Provisions Applicable to Employees of Property Tax Specialists, Inc. and Storage Tax Specialists, Inc.

(1)    Date of Acquisition:  April 22, 1997

(2)    Definitions:

(a)    "PTS"  and "STP" means Property Tax Specialists, Inc. and Storage Tax Specialists, Inc.. and any entity under common control (a defined in Section 414(b) or (c) of the Code) with Property Tax Specialists, Inc. and Storage Tax Specialists, Inc..

166

      (b)    "PTS or STP Employee" means any employee of PTS or STP who became an Employee on April 22, 1997.

      (c)    "PTS or STP Partner" means any employee or partner of PTS or STP who became a Partner or Principal on April 22, 1997.

    (3)    <u>Amount of Annual Retirement Income</u>

Notwithstanding anything in this Appendix or Plan to the contrary, Service for an PTS or STP Employee or PTS or STP Partner shall not include service with PTS or STP before April 22, 1997.

  (gg)   <u>Special Provisions Applicable to Employees of Autofacts, Inc.</u>

    (1)    <u>Date of Acquisition</u>:  May 1, 1997

    (2)    <u>Definitions</u>:

      (a)    "Autofacts" means Autofacts, Inc. and any entity under common control (a defined in Section 414(b) or (c) of the Code) with Autofacts, Inc.

      (b)    "Autofacts Employee" means any employee of Autofacts who became an Employee on May 1, 1997.

      (c)    "Autofacts Partner" means any employee or partner of Autofacts who became a Partner or Principal on May 1, 1997

    (3)    <u>Amount of Annual Retirement Income</u>

Notwithstanding anything in this Appendix or Plan to the contrary, Service (but not Credited Service) for an Autofacts Employee or Autofacts Partner shall include service with Autofacts before May 1, 1997.

  (hh)   <u>Special Provisions Applicable to Employees of Applied Business Systems, Inc.</u>

    (1)    <u>Date of Acquisition</u>:  June 1, 1998

    (2)    <u>Definitions</u>:

(a)   "ABS" means Applied Business Systems, Inc. and any entity under common control (a defined in Section 414(b) or (c) of the Code) with Applied Business Systems, Inc.

(b)   "ABS Employee" means any employee of ABS who became an Employee on June 1, 1998.

(c)   "ABS Partner" means any employee or partner of ABS who became a Partner or Principal on June 1, 1998.

(3)   <u>Amount of Annual Retirement Income</u>

Notwithstanding anything in this Appendix or Plan to the contrary, Service for an ABS Employee or ABS Partner shall not include service with ABS before June 1, 1998.

(ii)   <u>Special Provisions Applicable to Employees of Shattuck Hammond Partners Inc.</u>.

(1)   <u>Date of Acquisition</u>:  April 2, 1998

(2)   <u>Definitions</u>:

(a)   "SHP" means Shattuck Hammond Partners, Inc. and any entity under common control (a defined in Section 414(b) or (c) of the Code) with Shattuck Hammond Partners, Inc.

(b)   "SHP Employee" means any employee of SHP who became an Employee on April 2, 1998.

(c)   "SHP Partner" means any employee or partner of SHP who became a Partner or Principal on April 2, 1998.

(3)   <u>Amount of Annual Retirement Income</u>

Notwithstanding anything in this Appendix or Plan to the contrary, Service for an SHP Employee or SHP Partner shall not include service with SHP before April 2, 1998.

(jj)   <u>Special Provisions Applicable to Employees of Leatherwood & Ward</u>

(1)   <u>Date of Acquisition:  January 1, 1974</u>

(2)    Definitions:

    (a)    "L&W" means Leatherwood & Ward and any entity under common control (a defined in Section 414(b) or (c) of the Code) with Leatherwood & Ward.

    (b)    "L&W Employee" means any employee of L&W who became an Employee on January 1, 1974

    (c)    "L&W Partner" means any employee or partner of L&W who became a Partner or Principal on January 1, 1974.

(3)    Amount of Annual Retirement Income

Notwithstanding anything in this Appendix or Plan to the contrary, Service and Credited Service for a L&W Employee or L&W Partner shall include service with L&W before January 1, 1974.

(kk)    Special Provisions Applicable to Herzinger, Porter, Addison & Blind

(1)    Date of Acquisition: May 1, 1974

(2)    Definitions:

    (a)    "HPA&B" means Herzinger, Porter, Addison & Blind and any entity under common control (a defined in Section 414(b) or (c) of the Code) with Herzinger, Porter, Addison & Blind.

    (b)    "HPA&B Employee" means any employee of HPA&B who became an Employee on May 1, 1974

    (c)    "HPA&B Partner" means any employee or partner of HPA&B who became a Partner or Principal on May 1, 1974.

(3)    Amount of Annual Retirement Income

Notwithstanding anything in this Appendix or Plan to the contrary, Service and Credited Service for a HPA&B Employee or HPA&B Partner shall include service with HPA&B before May 1, 1974.

(ll)    Special Provisions Applicable to Durham, Martin, Jenkins & Co.

    (1)    Date of Acquisition:  August 1, 1990

    (2)    Definitions:

        (a)    "DMJ" means Durham, Martin Jenkins & Co. and any entity under common control (a defined in Section 414(b) or (c) of the Code) with Durham, Martin Jenkins & Co..

        (b)    "DMJ Employee" means any employee of DMJ who became an Employee on August 1, 1990

        (c)    "DMJ Partner" means any employee or partner of DMJ who became a Partner or Principal on August 1, 1990.

    (3)    Amount of Annual Retirement Income

Notwithstanding anything in this Appendix or Plan to the contrary, Service and Credited Service for a DMJ Employee or HPA&B Partner shall include service with DMJ before August 1, 1990.

(mm)    Special Provisions Applicable to Hildenbrand & Tulin

    (1)    Date of Acquisition:  December 7, 1988

    (2)    Definitions:

        (a)    "H&T" means Hildenbrand & Tulin and any entity under common control (a defined in Section 414(b) or (c) of the Code) with Hildenbrand & Tulin.

        (b)    "H&T Employee" means any employee of H&T who became an Employee on December 7, 1988.

        (c)    "H&T Partner" means any employee or partner of H&T who became a Partner or Principal on December 7, 1988.

    (3)    Amount of Annual Retirement Income

Notwithstanding anything in this Appendix or Plan to the contrary, Service for an H&T Employee or H&T Partner shall not include service with H&T before December 7, 1988.

(nn)  <u>Special Provisions Applicable to Utterback, Duncan, Carameros & Curlin.</u>

  (1)  <u>Date of Acquisition:</u>  August 1, 1983

  (2)  <u>Definitions:</u>

    (a)  "UDC&C" means Utterback, Duncan, Carameros & Curlin and any entity under common control (a defined in Section 414(b) or (c) of the Code) with Utterback, Duncan, Carameros & Curlin

    (b)  " UDC&C Employee" means any employee of UDC&C who became an Employee on August 1, 1983.

    (c)  " UDC&C Partner" means any employee or partner of UDC&C who became a Partner or Principal on August 1, 1983.

  (3)  <u>Amount of Annual Retirement Income</u>

  Notwithstanding anything in this Appendix or Plan to the contrary, Service for an UDC&C Employee or UDC&C Partner shall not include service with UDC&C before August 1, 1983.

# APPENDIX C

## Special Provisions Applicable to Participants who are CVC Participants

Notwithstanding any other provision of the Plan to the contrary, the provisions of this Appendix C shall apply to any Participant (a "CVC Participant") who terminated employment from, or ceased to be active with, the Firm and commenced employment with The McGraw-Hill Companies, Inc. in connection with the Agreement For The Purchase And Sale Of Assets By And Between The McGraw-Hill Companies, Inc. As Buyer And PricewaterhouseCoopers LLP As Seller, dated as of August 2, 2001. Unless modified in this Appendix C, the general provisions of the Plan shall apply to a CVC Participant.

1. For purposes of Section 2.29 of the Plan, an Hour of Service of a CVC Participant shall include continuous and uninterrupted employment of the CVC Participant by The McGraw-Hill Companies, Inc. that commenced immediately upon the CVC Participant's termination of employment from, or ceasing to be active with, the Firm to the CVC Participant's termination of employment from The McGraw-Hill Companies, Inc. 95 Hours of Service shall be credited to a CVC Participant for each semimonthly payroll period of the Firm during any part of which the CVC Participant is employed by The McGraw-Hill Companies.

2. For purposes of Section 5.6(a) of the Plan and Section 8(e) of Appendix B to the Plan, upon a CVC Participant's termination of employment from, or ceasing to be active with, the Firm, a Benefit that does not then exceed $5,000 shall be distributed to the CVC Participant without a requirement for the consent of the CVC Participant or his Spouse, but if the CVC Participant's vested amount is zero he shall not be deemed to receive a distribution of such vested amount. Upon a CVC Participant's termination of employment from The McGraw-Hill Companies, Inc., a Benefit that does not then exceed $5,000 shall be distributed to the CVC Participant without a requirement for the consent of the CVC Participant or his Spouse, and if the CVC Participant's vested amount is zero he shall be deemed to receive a distribution of such vested amount.

3. For purposes of Section 6.1(b) of the Plan, a 1-Year Break in Service of a CVC Participant shall not include a Year of Service that is credited to the CVC Participant after the application of Section 1 of this Appendix C.

4. For purposes of Appendix B to the Plan, continuous and uninterrupted employment of a C&L Participant, who is also a CVC Participant, by The McGraw-Hill Companies, Inc., that commenced immediately upon his termination of employment from the Firm in connection with the CVC Transaction, to his termination of employment from The McGraw-Hill Companies, Inc. shall be considered employment by the Firm for the purposes of determining whether the C&L Participant:

   1. Is employed by the Firm upon his attainment of age 53,

172

2.  Has at least sixty months of Service (as determined under Section 12(p)(1) of Appendix B) for the determination of a C&L Participant's Early Retirement Date under Section 12(g) of Appendix B, and

3.  Has at least 360 months of Service (as determined under Section 12(p)(1) of Appendix B) for the requirement described in the second sentence of Section 4(b) of Appendix B;

provided, however, that if the C&L Participant's Benefit is distributed prior to the earlier of his termination of employment from The McGraw-Hill Companies, Inc. or April 1 following the calendar year during which he attains age 70 1/2, then his age and Service shall be determined without regard to any such employment by The McGraw-Hill Companies, Inc. The C&L Participant will be credited with a full month of Service if he is employed by The McGraw-Hill Companies, Inc. for at least one day in a month. The amount of the annual retirement income of the CVC Participant shall be determined without regard to his employment (other than as provided for by this Section 4) with, and compensation paid by, The McGraw-Hill Companies, Inc.

5.  For purposes of this Appendix C, The McGraw-Hill Companies, Inc. shall include all corporations that are members of the controlled group of corporations (within the meaning of Section 414(b) of the Code) of which The McGraw-Hill Companies, Inc. is a member, and any trade or business (whether or not incorporated) which is under common control (within the meaning of Section 414(c) of the Code) with The McGraw-Hill Companies, Inc.

**APPENDIX D**

**Special Provisions Applicable to Participants who are Unifi Participants**

Notwithstanding any other provision of the Plan to the contrary, the provisions of this Appendix D shall apply to any Participant (a "Unifi Participant") who terminated employment from, or ceased to be active with, the Firm and commenced employment with Buck Consultants, Inc. in connection with the Asset Purchase Agreement by and between Buck Consultants, Inc., Buyer, PricewaterhouseCoopers LLP, Seller, and UNIFI Network, LLC dated as of November 28, 2001. Unless modified in this Appendix D, the general provisions of the Plan shall apply to a Unifi Participant.

1. For purposes of Section 2.29 of the Plan, an Hour of Service of a Unifi Participant shall include continuous and uninterrupted employment of the Unifi Participant by Buck Consultants, Inc. that commenced immediately upon the Unifi Participant's termination of employment from, or ceasing to be active with, the Firm to the earlier of the Unifi Participant's termination of employment from Buck Consultants, Inc. or distribution to the Unifi Participant of his Benefit (or any portion thereof) under the Plan. 95 Hours of Service shall be credited to a Unifi Participant for each semimonthly payroll period of the Firm during any part of which the Unifi Participant is employed by Buck Consultants, Inc.

2. For purposes of Section 5.6(a) of the Plan and Section 8(e) of Appendix B to the Plan, upon a Unifi Participant's termination of employment from, or ceasing to be active with, the Firm, a 100% vested Benefit that does not then exceed $5,000 shall be distributed to the Unifi Participant as soon as practical, without a requirement for the consent of the Unifi Participant or his Spouse, but if the Unifi Participant's vested amount is zero he shall not be deemed to receive a distribution of such vested amount. Upon a Unifi Participant's termination of employment from Buck Consultants, Inc., a Benefit that does not then exceed $5,000 shall be distributed to the Unifi Participant without a requirement for the consent of the Unifi Participant or his Spouse, and if the Unifi Participant's vested amount is zero he shall be deemed to receive a distribution of such vested amount.

3. For purposes of Section 6.1(b) of the Plan, a 1-Year Break in Service of a Unifi Participant shall not include a Year of Service that is credited to the Unifi Participant after the application of Section 1 of this Appendix D.

4. For purposes of Appendix B to the Plan, continuous and uninterrupted employment of a C&L Participant, who is also a Unifi Participant, by Buck Consultants, Inc., that commenced immediately upon his termination of employment from the Firm in connection with the Unifi Transaction, to his termination of employment from Buck Consultants, Inc. shall be considered employment by the Firm for the purposes of determining whether the C&L Participant:

    1. Is employed by the Firm upon his attainment of age 53,

2.  Has at least sixty months of Service (as determined under Section 12(p)(1) of Appendix B) for the determination of a C&L Participant's Early Retirement Date under Section 12(g) of Appendix B, and

3.  Has at least 360 months of Service (as determined under Section 12(p)(1) of Appendix B) for the requirement described in the second sentence of Section 4(b) of Appendix B;

provided, however, that if the C&L Participant's Benefit is distributed prior to the earlier of his termination of employment from Buck Consultants, Inc. or April 1 following the calendar year during which he attains age 70 1/2, then his age and Service shall be determined without regard to any such employment by Buck Consultants, Inc. The C&L Participant will be credited with a full month of Service if he is employed by Buck Consultants, Inc. for at least one day in a month. The amount of the annual retirement income of the Unifi Participant shall be determined without regard to his employment (other than as provided for by this Section 4) with, and compensation paid by, Buck Consultants, Inc.

5.  For purposes of this Appendix D, Buck Consultants, Inc. shall include all corporations that are members of the controlled group of corporations (within the meaning of Section 414(b) of the Code) of which Buck Consultants, Inc. is a member, and any trade or business (whether or not incorporated) which is under common control (within the meaning of Section 414(c) of the Code) with Buck Consultants, Inc.