# Exhibit C

RETIREMENT PLAN FOR EMPLOYEES

OF

PRICE WATERHOUSE


EFFECTIVE JULY 1, 1975
(As amended to July 1, 1985)

RETIREMENT PLAN FOR EMPLOYEES

OF

PRICE WATERHOUSE

ARTICLE ONE

Purpose of Plan

1.1   This Plan is designed to provide retirement benefits for eligible Employees other than Partners and Principals of the Firm.

ARTICLE TWO

Definitions

2.1   As used in this Plan the following terms shall have the respective meaning hereinafter set forth:

| | |
|---|---|
| Act: | Employee Retirement Income Security Act of 1974 (ERISA) and as it may be amended from time to time. |
| Actuarially Equivalent: | An amount determined by applying the UP-1984 mortality table and an interest rate determined as of the first day of each Plan Year which is equal to that particular interest rate used by the Pension Benefit Guaranty Corporation as of each such first day which, pursuant to regulations promulgated under Code Sections 411(a) (11) or 417(e), satisfies the requirements of those Code sections. |
| Annual Retirement Benefit: | The amount determined pursuant to Article Five on which benefits under the Plan are based. |
| Annuitant: | Any person who as or shall have retired after reaching Normal Retirement Age, and who shall have been a Participant during the Plan Year preceding his Normal Retirement Date. |

| | |
|---|---|
| Average Final Compensation: | The average of a Participant's annual Compensation for his five highest paid years out of the last ten Plan Years during which he was a Participant, each of which began prior to his Normal Retirement Age, (no age limit before July 1, 1979), or if he was a Participant for less than ten years, such lesser period. In the case of a disabled Participant who continues to accrue Credited Service under Paragraph 4.4, Average Final Compensation shall be determined in the manner stated above by reference to his last period of active Employment. |
| Break-in-Service: | Any Plan Year during which an Employee has not more than 500 hours of Employment. |
| Committee: | The Advisory Committee described in Article Eight and at the time acting. |
| Compensation: | The amount of compensation paid to a Participant during the Plan Year by the Employing Firm which would be subject to tax under Sec. 3101(a) of the Internal Revenue Code without the dollar limitation of Sec. 3121(a)(1) of the Code, but including sick pay and excluding the following elements: |

(i)     imputed income under Sec. 79 of the Code (relating to group life insurance coverage);

(ii)    reimbursed expenses, including but not limited to moving expenses and educational expenses,

(iii)   temporary cost-of-living allowances relating to tours of duty in offices other than the office to which the Participant is permanently attached;

(iv)    special prizes and awards for literary contests and similar activities; and

(v)     termination settlements in excess of regular compensation (including payments for accrued vacation).

| | |
|---|---|
| Credited Service: | Any Plan Year beginning prior to a Participant's Normal Retirement Age (no age limit before July 1, 1979) in which a Participant has at least 1,000 hours of Employment except as otherwise provided in: |

Paragraph 4.3, relating to Employment prior to a Break-in-Service, and

Paragraph 6.6, relating to distribution of benefits as a lump-sum payment.

2

DAP: The Deferred Annuity Plan Based on Profits, as in effect from July 1, 1955 through May 31, 1974.

Early Annuitant: Any person with at least 30 years of Credited Service who shall have terminated his Employment prior to his Normal Retirement Age for any reason other than death.

Employee: An Employee of any of the Employing Firms, excluding Principals.

Employing Firm: The Firm and each other firm (1) one or more of the partners of which shall be a partner of the Firm, (2) which the Firm shall designate as an Employing Firm and (3) which shall adopt the Plan.

Employment: Service as an Employee with any of the Employing Firms. However, if during any year an Employee is employed by two or more Employing Firms for a total of 1,000 hours or more each, he shall be deemed to have completed only one year of service. Leaves of absence with the advance written approval of the Employing Firm shall be deemed to be Employment. For Plan Years beginning after 1984, a maternity or paternity leave of absence, as described in (iv) below, shall be deemed to be Employment. Employment shall not be deemed to be interrupted by a period of disability as defined in Paragraph 4.4, or by service in the Armed Forces of the United States, if the Employee shall return within the period within which his right to reemployment shall be protected by a Federal law then in effect. The periods of such leaves of absence, disability or service in the Armed Forces shall be included in determining Credited Service and Vestable Service. In all matters relating to Employment determinations, all Employees in similar circumstances shall be treated alike. An hour of Employment shall be:

(i) Each hour for which an Employee is paid, or entitled to payment, for the performance of duties for an Employing Firm during the Plan Year;

(ii) Each hour for which an Employee is paid, or entitled to payment, by an Employing Firm on account of a period of time during which no duties are performed (irrespective of whether employment has terminated) due to vacation, holiday, illness, incapacity (including disability), military duty or leave of absence, except that no more than 501

3

hours of service are to be credited under this paragraph to an Employee on account of any single continuous period when no duties are performed (whether or not such period occurs in a single Plan Year);

(iii)  Each hour for which back pay, irrespective of mitigation of damages, is either awarded or agreed to by an Employing Firm, except that the same hour shall not be credited under either paragraph (i) or (ii) and under this paragraph (iii).

(iv)  A "maternity or paternity leave of absence" shall mean, for Plan Years beginning after 1984, an absence from work for any period by reason of the Employee's pregnancy, birth of the Employee's child, placement of a child with the Employee in connection with the adoption of such child, or any absence for the purpose of caring for such child for a period immediately following such birth or placement. For this purpose, hours of Employment shall be credited for the Plan Year in which the absence from work begins, only if credit therefore is necessary to prevent the Employee from incurring a Break-in-Service, or, in any other case, in the immediately following Plan Year. The hours of Employment credited for a "maternity or paternity leave of absence" shall be those which would normally have been credited but for such absence, or, in any case in which the Committee is unable to determine such hours normally credited, eight(8) hours of Employment per day. The total hours of Employment required to be credited for a "maternity or paternity leave of absence" shall not exceed 501.

Hours of Employment shall be computed in accordance with paragraphs (b) and (c) of Section 2530.200b-2 of the Department of Labor Regulations.

Enrolled Actuaries:    The actuaries enrolled by the Joint Board for the Enrollment of Actuaries as provided by the Act who shall be engaged by the Committee.

Fiduciary:    A "fiduciary" as defined in Section 3(21) of the Act (or any successor statutory provision).

4

| | |
|---|---|
| Firm: | The firm of Price Waterhouse in the United States with its principal office in New York, N.Y. and all successors to such firm. |
| Normal Retirement Date: | The first of the month coinciding with or following the attainment of Normal Retirement Age. |
| Normal Retirement Age: | The 65th birthday of a Participant. |
| Notice to the Committee: | Written notice on a form provided for the particular purpose by the Committee which is properly completed and executed by the party giving such notice and which is delivered to the Committee. |
| Participant: | Any Employee of any of the Employing Firms who at the particular time shall be a Participant in accordance with the provision of Article Four. |
| Plan: | This Retirement Plan for Employees of Price Waterhouse and as it shall be amended from time to time. |
| Plan Year: | The twelve-month period beginning July 1, 1975 and each subsequent twelve-month period beginning with July 1. |
| Policy Board: | The Policy Board of the Firm. |
| Postponed Retirement Date: | The first day of the calendar month following any month in which a person who remains as an Employee after his Normal Retirement Date shall retire. |
| Predecessor Plan: | The Pension Plan for Employees of Price Waterhouse as in effect from June 1, 1974 through June 30, 1975. |
| Primary Social Security Benefit: | The amount of the old age benefit which an Employee would be entitled to receive at age 65 under the Federal Social Security Act as in effect on the date of termination of his Employment or the end of the Plan Year in which age 65 is attained, whichever is earlier. |
| Principal: | An Employee of the firm who has signed an Agreement with Principal. |
| Social Security Offset Base: | The Primary Social Security Benefit computed on the assumption that, except as provided in Paragraph 5.5, after retirement or other severance of Employment an Annuitant or Early Annuitant will have no income which would be treated as wages for purposes of the Social Security Act. |

5

Surviving Spouse:   A spouse to whom a Participant, Annuitant, Early Annuitant or Terminated Participant was married for at least one year as of the date of his death.

Terminated Participant:   A former Employee other than an Annuitant or Early Annuitant who is entitled to benefits under the Plan as provided in Articles Five through Seven.

Termination Benefit:   The Annual Retirement Benefit to which a Terminated Participant would be entitled under Paragraph 5.5A, determined without regard to the vesting percentages of Article Seven.

Trust Agreement:   The Agreement entered into between the Firm and the Trustee to carry out the purposes of the Plan.

Trustee:   The bank(s), trust company(ies) or insurance company(ies) designated from time to time by the Policy Board to serve as Trustee(s) under the Trust Agreement.

Trust Fund:   The property which shall from time to time be held under the Trust Agreement by the Trustee(s).

Vestable Service:   Any Plan Year beginning after attainment of age 17 (age 21 for Plan years beginning before 1985) in which an Employee has at least 1,000 hours of Employment, except as otherwise provided in Paragraph 4.3 relating to Employment prior to a Break-in-Service.

2.2   The masculine pronoun, wherever used herein, shall include the feminine. Wherever any words are used herein in the singular, they shall be construed as though they were also used in the plural unless the context indicates otherwise.

## ARTICLE THREE

### Contributions

3.1   The entire cost of the Plan shall be borne by the Employing Firms and no contributions shall be made by Participants. Subject to the right of the Policy Board to amend, modify or terminate the Plan, the Employing Firms expect to contribute to the Trust Fund such amounts, in the aggregate, as shall be determined by the Enrolled Actuaries selected by the Committee as necessary to fund the costs of the benefits for Employees provided hereunder, together with such amounts as are required to pay expenses of the Plan as provided in Paragraph 8.8.

6

3.2    In determining costs, the Enrolled Actuaries shall apply forfeitures of the unvested interests of terminating Participants actuarially to reduce contributions required of the Employing Firms.    Forfeitures shall not be applied to increase any benefits otherwise payable under the Plan.

## ARTICLE FOUR

### Participation

4.1    **Requirements.** Each Employee on July 1, 1975 and each person who shall thereafter become an Employee, provided his Employment commenced or commences before age 60, shall become a Participant as of July 1 of the first Plan Year in which he satisfies both of the following requirements:

(i)    The Plan Year begins on or after the date on which he commences Employment, and

(ii)    He shall have attained age 21 (age 25 for Plan Years beginning before 1985) not later than December 31 of that Plan Year.

4.2    **Terminations.** A Participant shall cease to be such as of the earliest of:

(i)    the date on which he shall become a partner or Principal of any of the Employing Firms,

(ii)    his death,

(iii)    the date on which he shall become an Annuitant or Early Annuitant, or

(iv)    the beginning of a Plan Year which constitutes a Break-in-Service.

4.3    **Reinstatement.** A Participant who ceases to be such by reason of a Break-in-Service, but who continues to be an Employee, shall again become a Participant as of the first day of the first succeeding Plan Year in which he has at least 1,000 hours of Employment. A Participant who ceases to be such by reason of a Break-in-Service resulting from a termination of his Employment shall as a general rule again become a Participant as of the day on which he resumes Employment. If, however, by reason of the rule set forth in the next sentence, the Participant's Employment prior to the Break-in-Service is not taken into account in determining his Vestable Service and Credited Service, he shall not again become a Participant until the July 1 next following or coinciding with the day on which he resumes Employment. In determining the Credited Service and Vestable Service of a reinstated Participant, his Employment prior to the Break-in-Service shall be taken in account unless both of the following conditions exist:

7

      (i)     At the time of his Break-in-Service, the Participant had no nonforfeitable rights, as determined under Article Seven, to a retirement or termination benefit, and

      (ii)    His number of consecutive Break-in-Service years equals or exceeds the greater of (a) five consecutive Break-in-Service years, or (b) the number of years of Vestable Service which had accumulated prior to the Break-in-Service. For Plan Years beginning before 1985, (a) in the preceding sentence does not apply.

In which case, Employment prior to his Break-in-Service will be disregarded in determining his Credited Service and Vestable Service.

4.4   **Disability.** Any Participant who becomes disabled will continue to qualify as a Participant and accumulate Credited Service under the Plan until the earliest of his Normal Retirement Date, the cessation of such disability, his return to gainful Employment, termination of Employment, or death. A Participant shall be considered disabled for the purposes of the Plan if he is disabled under the definition used to determine eligibility for disability benefits under the Firm's Long Term Disability Plan and for as long as eligibility for such benefits shall continue.

## ARTICLE FIVE

### Annual Retirement Benefit

5.1   **Annuitant's benefit.** Each Annuitant shall be entitled to an Annual Retirement Benefit commencing as of his Normal Retirement Date or Postponed Retirement Date based on the greater of the amounts determined under A or B below, in each case rounded upward to the nearest whole dollar:

   A. A basic amount equal to the product of his Average Final Compensation multiplied by an accrued benefit factor. The accrued benefit factor shall be 2% per year for each year of Credited Service, but not in excess of 60% in total.

      The basic amount determined pursuant to the preceding paragraph shall be reduced by an amount equal to 80% of the Social Security Offset Base. In the event an Annuitant has less than 30 years of Credited Service, his social security offset shall be reduced to an amount determined by applying a fraction the numerator of which is his years of Credited Service and the denominator of which is thirty. In no event shall the Annual Retirement Benefit determined pursuant to Paragraph 5.1A exceed $75,000 with respect to benefits payable in Plan Years beginning after June 30, 1985. The maximum Annual Retirement Benefit payable in preceding Plan Years shall be determined in accordance with the terms of the Plan as in effect during each such year.

8

B. An amount equal to the single life annuity which could be distributed as the Actuarially Equivalent value of his interest, if any, in the Trust Fund under the DAP, determined as of May 31, 1974.

5.2  **Early Annuitant's benefit.**  An Early Annuitant upon submitting notice to the Committee shall be entitled to an Annual Retirement Benefit, commencing on the first day of the month coinciding with or following the later of i) his 60th birthday or ii) termination of his employment, based on the greater of the amounts determined under A or B below, in each case rounded upward to the nearest whole dollar.

A. An amount determined pursuant to Paragraph 5.1A, based on the Early Annuitant's Credited Service, except that:

The basic amount determined under the first paragraph of Paragraph 5.1A shall be reduced by an amount determined by multiplying such basic amount by the applicable percentage in Column A below and the applicable percentage in Column B below shall be substituted for the 80% factor appearing in the last paragraph of Paragraph 5.1A. Each applicable percentage shall be that which coincides with the Early Annuitant's age at the date his benefits shall commence:

|        | Column A | Column B |
|--------|----------|----------|
| Age 64 | 2%       | 75%      |
| Age 63 | 4%       | 70%      |
| Age 62 | 6%       | 65%      |
| Age 61 | 8%       | 60%      |
| Age 60 | 10%      | 55%      |

B. The amount determined under Paragraph 5.1B.

5.3  **Equitable benefits.**  The Annual Retirement Benefit of an Annuitant determined under Paragraph 5.1, or that of an Early Annuitant determined under paragraph 5.2, shall in no event be less than the Annual Retirement Benefit which would have been determined under paragraph 5.2 had he retired on the earliest date for which he would have been eligible for a benefit under Paragraph 5.2.

5.4  **Social security supplement.**  An Early Annuitant who terminates Employment prior to age 62 shall, in addition to his Annual Retirement Benefit, be entitled to receive from the Plan a social security supplement during the period extending from the date on which payment of his Annual Retirement Benefit commences, and ending with the first day of the month in which he attains age 62. The amount of the social security supplement shall be equal to the primary social security benefit to which the Early Annuitant would be entitled at age 62 under the Social Security Act as in effect at the date of his termination of Employment, and based on the assumption that after his termination of Employment he will have no income which would be treated as wages for purposes of the Social Security Act.

9

5.5 **Terminated Participant's benefit.**    A former Participant whose Employment is terminated prior to his Normal Retirement Age for any reason other than death, and who has less than thirty years of Credited Service, shall be entitled to an Annual Retirement Benefit commencing on the first day of the month coinciding with or following his 65th birthday which shall be the greater of the amounts determined under A or B below, in each case rounded upward to the nearest whole dollar:

A. A Terminated Participant's benefit shall be determined by applying the rules of Paragraph 5.1A on the assumption that he continues as an Employee until his Normal Retirement Age and continues to earn Compensation at the same rate as his Average Final Compensation. This assumption shall be applied in computing both his basic amount and his Social Security Offset Base.  The Annual Retirement Benefit thus determined shall be reduced to an amount determined by multiplying it by a fraction, the numerator of which shall be his actual years of Credited Service and the denominator of which shall be the years of Credited Service which he would have had if continued in Employment until his Normal Retirement Age.

If the Terminated Participant's Annual Retirement Benefit is not fully vested under Article Seven, it shall be further reduced by applying his vested percentage determined under that Article.

B. The amount determined under Paragraph 5.1B.

5.6 **Frozen social security offset.**    An Annuitant's benefit, Early Annuitant's benefit or Terminated Participant's benefit, once determined pursuant to the provisions of this Article, shall not thereafter be diminished by reason of any increase in the benefit levels payable under the Social Security Act, or any increase in the wage base under that Act, which takes effect after the date of such person's retirement or other termination of Employment or, if earlier, the date of his first receipt of benefits under the Plan.

5.7 **Optional early retirement benefits.**

A. A Participant who is at least age 60 and has at least 20 years of Credited Service, but is not yet eligible for an Annuitant's or Early Annuitant's benefit, may elect by Notice to the Committee to retire and receive a reduced benefit commencing on the first day of the month coinciding with or following his retirement. The benefit shall be determined in the same manner as an Annuitant's benefit under Paragraph 5.1, or an Early Annuitant's benefit under Paragraph 5.2 if the Participant would have been eligible for such benefit had he continued his Employment, except that:

(i)    the Participant's actual years of Credited Service shall be used in the computations, and

(ii)    the benefit amount so determined shall be reduced as set forth in Paragraph 5.7C below.

10

B. A Terminated Participant who had at least 20 years of Credited Service may elect by Notice to the Committee to receive a reduced benefit commencing on the first day of the month coinciding with or following his 60th birthday or on the first day of any subsequent month preceding his 65th birthday. The benefit shall be determined in the same manner as a Terminated Participant's benefit under Paragraph 5.5 except that the amount so determined shall be reduced as set forth in Paragraph 5.7C below.

C. In determining an optional early retirement benefit the amount computed under Paragraph 5.1, 5.2, 5.5. or 13.3 shall be reduced 1/180th for each month that the benefit payments will precede the date on which benefits would otherwise have been payable.

5.8  **Benefit adjustment.** Effective July 1, 1984 the Annual Retirement Benefits then being receive by Annuitants, Early Annuitants and Terminated Participants shall be increased by applying the factors set forth below provided, however, that the Annual Retirement Benefit as adjusted shall not exceed the maximum benefit permitted under Paragraph 5.1A:

| If retirement commenced | Benefits shall be increased |
|---|---|
| On or before January 1, 1981 | 11% |
| February 1 to June 30, 1981 | 8% |
| July 1 to December 31, 1981 | 5% |
| January 1 to June 30, 1982 | 4.5% |
| July 1 to December 31, 1982 | 3% |
| January 1 to June 30, 1983 | 2.5% |

5.9  **Special Limitation.** In the case of an Annuitant or Terminated Participant who had less than ten years of Credited Service, his Annual Retirement Benefit shall not exceed the product of $90,000 multiplied by a fraction, the numerator of which shall be his years of Credited Service and the denominator of which shall be ten.

5.10  **Combined Plan Limitation.** In the case of any Participant who at any time participated in any defined contribution plan of an Employing Firm qualified under Section 401(a) of the Code, the rate of benefit accrual by such Participant under this Plan during any limitation year will be reduced to the extent necessary to prevent the sum of the defined plan fraction (as defined in Section 415(e)(2) of the Code or any successor provision) and the defined contribution plan fraction (as defined in Section 415(e)(3) of the Code or any successor provision) with respect to that Participant for any limitation year from exceeding 1.0.

5.11  **Special Rule for 5 Percent Owners.** In the case of any Participant who is a 5 percent owner, as that term is defined in Section 416 of the Code or any successor provision, payment of retirement benefits to that Participant shall in no event commence later than the April 1 following the calendar year in which that Participant attains age 70-1/2.

11

## ARTICLE SIX

### Form of Retirement and Survivor Benefits

6.1 **Normal Form of Retirement Benefit.** Unless a different mode of payment provided by this Article Six is elected in accordance with the provisions thereof, the following shall apply:

A. An Annuitant, Early Annuitant or Terminated Participant who is married at the date payment of his retirement benefits commences shall receive a benefit which is Actuarially Equivalent to his Annual Retirement Benefit, payable in equal monthly installments as one amount while he shall live and, if he shall die leaving a Surviving Spouse to whom he was married at the time payment of his retirement benefits commenced, one-half of such amount payable to such Surviving Spouse after his death and continuing to and including the first day of the month in which the death of the Surviving Spouse occurs.

B. Any other Annuitant, Early Annuitant or Terminated Participant shall receive the Annual Retirement Benefit to which he is entitled, payable in equal monthly installments continuing to and including the first day of the month in which his death shall occur.

6.2 **Election to Change Form of Benefits.**

A. At any time during the 90-day period ending on the date on which payment of his retirement benefits commences, a Participant or Terminated Participant who would be entitled to the form of benefit payment described in Paragraph 6.1A may elect by Notice to the Committee, with the consent of his spouse, to receive the form of benefit described in Paragraph 6.1B. The consent of spouse shall be valid only if furnished in accordance with the requirements of Paragraph 6.6. Any election made in accordance with this Paragraph 6.2A may be revoked by the Participant or Terminated Participant at any time within the aforementioned 90-day period.

B. At any time during the 90-day period described in Paragraph 6.2A, a Participant or Terminated Participant who would be entitled to the form of benefit payment described in Paragraph 6.1A may elect, by Notice to the Committee, to convert that form of benefit to an Actuarially Equivalent benefit payable during his lifetime, with the provision that after his death a benefit of equal amount shall be payable for her lifetime to a Surviving Spouse to whom he was married at the time payment of his retirement benefits commenced.

6.3 **Preretirement Surviving Spouse Annuity.** In the event of the death of a Participant or Terminated Participant prior to the time payment of his retirement benefits has commenced, whose benefits are at least partially vested under Article Seven, and

12

who shall leave a Surviving Spouse, that spouse shall be entitled to receive a survivor annuity determined in accordance with the provisions of Subparagraph A, B or C of this Paragraph 6.3, whichever shall be applicable.

A. In the case of a Participant who, at the time of his death, could have retired and begun to receive an immediate retirement benefit determined pursuant to Article Five, and in the case of a Terminated Participant who at the time of his death could have elected to receive the immediate commencement of a retirement benefit determined pursuant to Article Five, his Surviving Spouse shall be entitled to receive for her lifetime an immediate survivor annuity, determined pursuant to Article Five and Paragraph 6.1A as if the participant had begun to receive retirement benefits as of the day before his death. The Participant or Terminated Participant may elect, pursuant to Paragraph 6.4, to waive the survivor annuity provided by this Paragraph 6.3A.

B. In the case of a Participant or Terminated Participant who dies on or after his 50th birthday, leaving a Surviving Spouse, but who does not meet the conditions set forth in Paragraph 6.3A, a survivor annuity determined in accordance with this Paragraph 6.3B shall be payable to the Surviving Spouse. In the case of a Participant, the survivor annuity shall be determined pursuant to Article Five and Paragraph 6.1A (giving effect to the vesting provisions of Article Seven) on the basis that (i) the Participant separated from Employment on his date of death, (ii) he survived to the earliest date on which he could have begun to receive the distribution of retirement benefits pursuant to Article Five, (iii) he began to receive retirement benefits on that earliest date pursuant to Paragraph 6.1A, and (iv) he died on the day after such earliest date. In the case of a Terminated Participant, the survivor annuity shall be determined pursuant to Article Five and Paragraph 6.1A (giving effect to the vesting provisions of Article Seven) on the basis that (i) he survived until the earliest date on which he could have begun to receive the distribution of retirement benefits, pursuant to Article Five, (ii) he began to receive retirement benefits on such earliest date pursuant to Paragraph 6.1A, and (iii) he died on the day after such earliest date. Payment of the survivor annuity to the Surviving Spouse shall commence on the earliest date on which the Participant or Former Participant could have begun to receive the distribution of retirement benefits pursuant to Article Five, had he lived, and shall continue for the lifetime of the Surviving Spouse. A Participant or Former Participant may elect, pursuant to Paragraph 6.4, to waive the survivor annuity provided by this Paragraph 6.3B.

C. In the case of a Participant or Terminated Participant who dies before his 50th birthday, leaving a Surviving Spouse, that Surviving Spouse shall be entitled to receive a survivor annuity for her lifetime, in an amount determined in the same manner and commencing at the same time as set forth under Paragraph 6.3B.

6.4 **Election to Waive Preretirement Surviving Spouse Annuity.** An election by a Participant or Terminated Participant to waive the preretirement surviving spouse annuity provided under Paragraph 6.3A or B shall be subject to the following conditions:

    i) The election shall be submitted, on a Notice to the Committee, during the period beginning on the first day of the first Plan Year in which the Participant or Terminated Participant attains age 35 (or, if earlier, the date on which a Terminated Participant separated from Employment) and ending on the date of death (the "election period"),

    ii) The election must be accompanied by a consent of spouse which meets the requirements of Paragraph 6.6, and

    iii) Any election once made may be revoked by the Participant or Terminated Participant during the election period.

6.5 **Reduction of Retirement Benefits.** In the case of a Participant or Terminated Participant whose spouse would have been entitled to receive a surviving spouse annuity pursuant to Paragraph 6.3A or B, had he died during the period described therein, the Annual Retirement Benefit otherwise determined under Article Five for the Participant or Terminated Participant who survives that period shall be reduced by 1/60th of 1% for each month or portion thereof during which the surviving spouse annuity protection was in effect for that Participant or Terminated Participant. The surviving spouse annuity protection provided by Paragraph 6.3A or B shall be regarded as being in effect for any month or portion thereof which precedes his 65th birthday and during which it had not been waived by the Participant or Terminated Participant pursuant to the provisions of said Paragraph 6.3A or B.

6.6 **Consent of Spouse Requirement.** For purposes of this Article Six, a consent of spouse to an election by a Participant or Former Participant must be in writing, must acknowledge the effect of such election, and must be witnessed by a notary public or a by a member of the Committee. A consent of spouse once given may not be revoked by that spouse. Any such consent shall be binding only with respect to the spouse by whom it is given, and not with respect to any subsequent spouse of a Participant or Terminated Participant.

6.7 **Written Explanations.** The Committee shall provide to each Participant and Terminated Participant, within such time as may be provide by Section 417 of the Code (or any successor provision) and the regulations thereunder, such information with regard to the form of retirement and survivor benefits, and the elections provided under this Article Six, as such Code section and regulations may require.

6.8 **Effect of Death of Spouse.** If the spouse to whom an Annuitant, Early Annuitant or Terminated Participant was married at the time such individual began to receive reduced retirement

benefits pursuant to Paragraph 6.1A or 6.2B should predecease him, he shall continue to receive such reduced benefits.

6.9     **Lump Sum Benefits.** The Committee may, in its sole discretion, make a lump sum payment to an Annuitant, Early Annuitant, Terminated Participant or Surviving Spouse equal to the Actuarially Equivalent amount of the annuity to which such individual would otherwise be entitled pursuant to Articles Five and Six, provided:

i)      Such lump sum distribution does not exceed $3,500 and,

ii)     either the distribution of the retirement or surviving spouse annuity has not already commenced, or if it has commenced the Annuitant, Early Annuitant or Terminated Participant and his spouse, if any, (or in the case of a surviving spouse annuity, the Surviving Spouse) consent in writing to the lump sum payment. Any lump sum payment to any person pursuant to this Paragraph 6.9 shall be in full discharge of all obligations under the Plan with respect to such person.

In the event a former Participant who had receive a lump sum payment pursuant to this provision again becomes an Employee and a Participant, his Employment prior to receipt of the lump sum payment shall not be taken into account in determining his Credited Service except as provided in the next sentence. If (i) the lump sum payment represented less than the present value of his accrued benefit at the time of his termination because his entire accrued benefit was not vested under Article Seven and (ii) he elects to repay to the Plan the full amount of such lump sum payment with interest at the rate of 5% compounded annually to the date of repayment, his prior Credited Service shall be restored for all purposes under the Plan.

## ARTICLE SEVEN

### Vesting of Benefits

7.1     **Application.** The vesting rules set forth in Paragraph 7.2 shall be applicable to the determination of a Terminated Participant's benefits under Paragraph 5.5A provided, however, that the entire accrued benefit determined under that paragraph shall be forfeited if the Terminated Participant has not had at least five years of Vestable Service.

7.2     **Vesting rules.** Any Employee with five or more years of Vestable Service shall be vested in 50% of his Termination Benefit when the sum of his age and years of Vestable Service totals 45. Each year thereafter the vested percentage shall be determined as follows:

15

| If years of Vestable Service equal or exceed | And sum of age and Vestable Service equals or exceeds | Then the nonforfeitable percentage is |
|:---:|:---:|:---:|
| 6 | 47 | 60% |
| 7 | 49 | 70% |
| 8 | 51 | 80% |
| 9 | 53 | 90% |
| 10 | 55 | 100% |

Notwithstanding the above rule –

(a)     Any Employee with 10 years of Vestable Service shall be vested 50% of his Termination Benefit and an additional 10% shall vest for each additional year of Vestable Service until the entire 100% is attained.

(b)     An Employee shall be fully vested in his accrued benefit upon attainment of Normal Retirement Age.

(c)     If the Plan is determined to be top heavy for any Plan Year, pursuant to Article Thirteen, the vesting schedule and related rules in Paragraph 13.1 (c) shall apply rather than the schedule and rules set forth above.

7.3     **Forfeiture at Death.**  Upon the death of a Participant, Annuitant, Early Annuitant, Terminated Participant or Surviving Spouse, no benefits shall be payable under the Plan to any other person with respect to the deceased, other than any surviving spouse annuity which may become payable pursuant to the provisions of Article Six.

## ARTICLE EIGHT

### Advisory Committee

8.1     The Plan shall be administered by a Committee consisting of not less than three nor more than six members to be appointed by and to serve at the pleasure of the Policy Board. Vacancies in the Committee shall be filled by the Policy Board.

8.2     The members of the Committee shall elect a chairman from among the Committee membership and a secretary who may, but need not, be one of the members of the Committee, and may appoint from their number such committees with such powers as they shall determine; may authorize one or more of their number, or any agent, to execute or deliver any instrument or to make any payment in their behalf; and may employ counsel, agents, and such clerical, accounting and actuarial services as they may require in carrying out the provisions of the Plan.

8.3     Three of the members of the Committee at the time in office shall constitute a quorum for the transaction of business. All resolutions or other action taken by the Committee shall be by vote of a majority of the members of the Committee present at any meeting, or without a meeting by instrument in writing signed by all the members of the Committee.

16

8.4    The Committee shall have all powers necessary to administer the Plan except to the extent any such powers are vested in any other Fiduciary. The Committee may from time to time establish rules for the administration of the Plan. Except as otherwise herein expressly provided, the Committee shall have the exclusive right to interpret the Plan and to decide any matters arising in connection with the administration and operation of the Plan, and any rules, interpretations or decisions so made shall be conclusive and binding on all persons having an interest in the Plan; provided, however, that all such rules, interpretations and decisions shall be applied in a uniform manner to all Employees similarly situated.

8.5    No member of the Committee shall receive any compensation for his services as such.

8.6    Subject to the provisions of this Plan, it shall be the duty of the Committee to compute and certify to the Trustee the amount of retirement benefit payable hereunder to any retiring or terminating Participant or to any Surviving Spouse.

8.7    The Committee shall be entitled to rely conclusively upon all tables, valuations, certificates, opinions and reports furnished by any actuary, accountant, controller, counsel or other person who is employed or engaged for such purposes.

8.8    All expenses that shall arise in connection with the Administration of the Plan shall be paid out of the property of the Trust Fund unless paid by the Employing Firms.

## ARTICLE NINE

### Amendment and Termination

9.1    **Right to amend or terminate.** The Firm reserves the right, by action of the Policy Board, to amend, modify, terminate or discontinue contributions under the Plan in whole or in part at any time. Not less than ten days before the effective date of a termination of the Plan to which Title IV of the Act applies, the Committee shall notify the Pension Benefit Guaranty Corporation thereof and termination benefits shall be paid only in accordance with the procedural and substantive requirements of Title IV of the Act. No amendment of the Plan shall be effective unless the Plan as so amended continues to be for the exclusive benefit of Participants, Terminated Participants, Annuitants, Early Annuitants and Surviving Spouses, and no amendment shall deprive any such person without his consent of any benefit theretofore accrued or vested in him, provided that (i) any and all amendments may be made, retroactively if required, which are necessary to qualify or maintain the qualification of the Plan under Section 401(a) of the Internal Revenue Code (or any successor statutory provision) and (ii) the Firm shall in no event be required to make an amendment that will increase the cost of the Plan.

17

9.2   **Distribution of funds upon termination.**

A. In the event of termination of the Plan, the assets of the Plan shall be allocated in accordance with the priorities established in Section 4044 of the Act (or any successor statutory provision). In the event of a partial termination of the Plan, that portion of the assets of the Plan allocable to the terminating Employees shall be allocated as aforesaid.

B. In the event of the "termination" or "partial termination" of the Plan (as those terms are used in Section 411(d)(3) of the Internal Revenue Code, or any successor statutory provision), the rights of Participants to benefits accrued to the date of such termination or partial termination, to the extent funded as of such date, shall be nonforfeitable.

C. In the event that the Trust Fund at termination is insufficient to provide all benefits guaranteed by the Pension Benefit Guaranty Corporation, any payment of retirement income in excess of $10,000 received during any 12-month period within the three years immediately preceding the date of termination of the Plan shall be deemed to have been paid subject to the provisions of Section 4045 of the Act (or any successor statutory provision).

D. In the event of termination of the Plan because of failure to obtain a favorable determination letter from the Internal Revenue Service that the Plan qualifies under Section 401(a) of the Internal Revenue Code, the Employing Firms shall be entitled to a return of any contributions which they may have made pursuant to Article Three for any Plan Year for which the Plan is held to be not qualified under Section 401(a). Such contributions shall be returned within a period of one year from the date of denial of qualification. Further, any amount remaining in the Trust Fund after the full satisfaction of all liabilities under the Plan shall be returned to the Employing Firms to the extent permitted by the Trust Agreement.

## ARTICLE TEN

## General Provisions

10.1   **Responsibility of Fiduciaries.**

A. The members of the Policy Board and the Committee shall discharge their duties with respect to the Plan solely in the interests of the Participants, Terminated Participants, Surviving Spouses, Annuitants and Early Annuitants and with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

B. No Fiduciary under the Plan shall be liable for an act or omission of another person in carrying out any fiduciary responsibility where such fiduciary responsibility is allocated to such other person by the Plan or pursuant to a procedure established in the Plan except to the extent that:

(1) such Fiduciary participated knowingly in, or knowingly undertook to conceal, an act or omission of such other person, knowing such act or omission to be a breach of fiduciary responsibility;

(2) such Fiduciary, by his failure to comply with Section 404(a)(1) of the Act (or any successor statutory provision) in the administration of his specific responsibilities which give rise to his status as a Fiduciary, as enabled such other person to commit a breach of fiduciary responsibility;

(3) such Fiduciary has knowledge of a breach of fiduciary responsibility by such other person, unless he makes reasonable efforts under the circumstances to remedy the breach; or

(4) such Fiduciary is a "named fiduciary" (as such term is defined in Section 402(a)(2) of the Act, or any successor statutory provision) and has violated his duties under Section 404(a)(1) of the Act (or any successor statutory provision):

(a) with respect to the allocation of fiduciary responsibilities among named fiduciaries or the designation of persons other than named fiduciaries to carry out fiduciary responsibilities under the Plan;

(b) with respect to the establishment or implementation of procedures for allocating fiduciary responsibilities among named fiduciaries or the designation of persons other than named fiduciaries to carry out fiduciary responsibilities under the Plan; or

(c) in continuing the allocation of fiduciary responsibilities among named fiduciaries or the designation of persons other than named fiduciaries to carry out fiduciary responsibilities under the Plan.

C. Anything in the Plan, or any amendment thereof, to the contrary notwithstanding, no provision of the Plan shall be so construed as to violate the requirements of Sections 404, 405, 406 and 407 of the Act (or any successor statutory provisions).

19

10.2    **No guaranty of Employment.**    The Plan shall not be deemed to constitute a contract between any Employing Firm and any Employee or to be a consideration for, or an inducement for, the employment of any Employee by any Employing Firm. Nothing contained in the Plan shall be deemed to give any Employee the right to be retained in the service of an Employing Firm or to interfere with the right of an Employing Firm to discharge or to terminate the service of any Employee at any time without regard to the effect such discharge or termination may have on any rights under the Plan.

10.3    **Payments to minors and incompetents.**    If any person entitled to receive any benefits hereunder is known to be a minor or is deemed by the Committee to be, or is to the Committee's knowledge adjudged legally to be incapable of giving valid receipt and discharge for such benefits, the same shall be paid to such other persons as the Committee may designate or to the duly appointed guardian of the person so entitled. Such payment shall, to the extent made, be deemed a complete discharge of any liability for such payment under the Plan.

10.4    **Nonalienation of benefits.**    No benefit payable under the Plan shall be subject in any manner to alienation, anticipation, assignment, garnishment or pledge; and any attempt to alienate, anticipate, assign, garnishee or pledge the same shall be void; and no such benefits shall be in any manner liable for or subject to the debts, liabilities, engagements or torts of any person entitled thereto; and if any such person is adjudicated bankrupt or attempts to alienate, anticipate, assign or pledge any benefits, then such benefits shall cease, and in this event the Committee shall cause the same to be held or applied to or for the benefit of the person entitled thereto, his spouse, his children or other dependents, or relatives, or any of them, in such manner and in such proportion as the Committee, in its discretion, may deem proper. This Paragraph 10.4 shall not apply to any "qualified domestic relations order", as that term is defined in Section 414(p) of the Code (or any successor provision) and the regulations thereunder.

10.5    **Appointment of Trustee(s).**    The Trustee(s) shall have such power as to investments, reinvestments, control and disbursement of the Trust Fund as shall be set forth in the Trust Agreement, which may be modified from time to time. No person shall have any interest in, or right to, any part or all of the Trust Fund, except as expressly provided in the Plan or the Trust Agreement. The Trust Agreement, as from time to time in effect, shall be a part of the Plan and the rights and duties of any person under the Plan shall be subject to all the terms and provisions of the Trust Agreement. The Policy Board may remove the Trustee(s) at any time in accordance with the terms of the Trust Agreement and upon such removal or upon the resignation of any such Trustee(s), the Policy Board shall designate a successor Trustee(s).

20

10.6    **Purchase of annuities.** If the Committee for any reason deems it advisable, any or all of the retirement benefits payable under the Plan may be provided through the purchase of annuities from such insurance company or companies as may be approved by the Committee. Payment therefor shall be made from the Trust Fund.

10.7    **Provisions in the event of early termination.** Anything in the Plan to the contrary notwithstanding, if the Plan is terminated or the full current costs have not been funded during the first ten years after the effective date of the Plan, or during the ten-year period following the effective date of any amendment that substantially increases benefits under the Plan, the benefits which become payable during the Restricted Period (as defined below) to any Restricted Person (as defined below) shall be limited to such Person's Unrestricted Benefits (as defined below) at that time. For the purpose of the preceding sentence:

(a)    Restricted Person means each of the 25 highest paid Employees of any Employing Firm on the effective date whose anticipated annual normal retirement benefit under the plan exceeds $1,500.

(b)    Restricted Period means the period from the effective date of the Plan or the Amendment to the later of July 1, 1985, or the date on which the full current costs of the Plan shall be met for the first time.

(c)    Unrestricted Benefits of any Restricted Person means the annual retirement benefit of such Person that can be provided by an amount of employer contributions which does not exceed the greater of :

   (i) $20,000; or

   (ii) the amount computed by multiplying 20% of the first $50,000 of his annual compensation by the number of years from the effective date of the Plan or the Amendment to the earliest of the date of termination of the Plan, the date his benefit becomes payable or the date as of which the full current costs of the Plan were not funded.

   This provision shall not restrict the current payment of the full retirement benefit called for by the Plan to any Annuitant, Early Annuitant, Terminated Participant or Surviving Spouse while the Plan is in full effect and its full current costs have been met, nor shall it restrict the payment of any retirement benefit withheld for prior years (under the foregoing provisions) after all deficits for all prior years and full current costs have been met.

10.8    **Non-diversion of assets.** Subject to the provisions of Paragraph 9.2(D), all contributions when made to the Trust Fund and all property and funds of the Trust Fund, including income

from investments and from all other sources, shall be retained for the exclusive benefit of Participants, Terminated Participants, Surviving Spouses, Annuitants and Early Annuitants included in the Plan and shall be used to pay benefits provided hereunder or to pay expenses of administration of the Plan and the Fund.

10.9    **Mergers, consolidations and transfers of Plan assets.** In the case of any merger or consolidation of the Plan with, or transfer of assets or liabilities of the Plan to any other plan, each Participant shall (if the Plan then terminated) receive a benefit immediately after such merger, consolidation or transfer which shall be at least equal to the benefit he would have been entitled to receive immediately before such merger, consolidation or transfer (if the Plan had then terminated).

10.10   **Notice to the Committee.** Each Participant, each type of Annuitant and each Surviving Spouse must furnish Notice to the Committee of such information as it may reasonably request for the purpose of the proper administration of the Plan. Requests to the Committee for any information or other communications must be made on a Notice to the Committee.

10.11   **Governing law.** The provision of the Plan shall be construed, enforced and administered in accordance with the laws of the State of New York, except as any such laws may be superseded by the Act.

10.12   **Effective date.** The Plan shall become effective as of July 1, 1975.

## ARTICLE ELEVEN

### Inclusion of Prior Retirees as Annuitants

11.1    Any retired former Employee of an Employing Firm or his Surviving Spouse who as of June 30, 1975 was receiving a pension under the Predecessor Plan or directly from the Firm shall be an Annuitant commencing July 1, 1975. Commencing with July 1, 1975 each such Annuitant or Surviving Spouse shall receive from the Trust Fund, as a monthly retirement benefit, the same aggregate amount as he had received from the aforementioned sources in the month prior to that date. The Enrolled Actuaries shall take the aggregate cost of this benefit into account in determining the past service liability under the Plan.

22

## ARTICLE TWELVE

## Past Service Credits

12.1 **Credited Service.** With respect to any Participant who qualified as such on July 1, 1975, Employment prior to that date shall be taken into account in determining his Credited Service as if the Plan had been in effect from the date his Employment commenced with the following exception: In applying Paragraph 4.1 for this purpose, age 30 shall be substituted for age 25.

12.2 **Vestable Service.** With respect to any Participant who qualified as such on July 1, 1975, any year ended prior to that date which is counted as a year of Credited Service under Paragraph 13.1 shall also be counted as a year of Vestable Service. In addition, in the case of any Participant who commenced Employment prior to July 1, 1975 but with respect to whom the year ended on June 30, 1975 is not a year of Credited Service under Paragraph 13.1, that year shall nevertheless count as a year of Vestable Service if:

(i)   The Participant had at least 1,000 hours of Employment in that year, and

(ii)  He had attained age 21 prior to the beginning of that year.

12.3 **Minimum benefit.** Any Participant who shall be 57 years of age or older on July 1, 1975 and whose Average Final Compensation shall be no more than $20,000 shall be paid out of the Trust Fund the higher of the benefit calculated under this Plan or the benefit payable under the Firm's prior unqualified plan which after 25 years of service provided a maximum benefit of 33-1/3% of Average Final Compensation without deduction for social security. In the case of optional early retirement under Paragraph 5.7, the benefit determined under the prior unqualified plan shall also be reduced in the manner set forth in Paragraph 5.7C.

## ARTICLE THIRTEEN

## (effective as of July 1, 1984)

13.1 **Effect of Top Heavy Status.** In the event the Plan is determined to be "top heavy" for any Plan Year beginning after 1983, the following additional provisions shall take effect for that Plan Year:

a)   The amount of Compensation taken into account for any Participant shall not exceed $200,000 or such larger amount as may be permitted under Section 416(d) of the

Code (or any successor provision) pursuant to authorized cost of living adjustments.

b) The minimum accrued benefit for any Participant who is not a key employee shall equal the product of (1) his average annual compensation (as defined in Paragraph 13.2(g)) and (2) 2% for each year of Credited Service, to a maximum of 10 years of Credited Service. For this purpose, only years of Credited Service which correspond to Plan Years during which the Plan is top heavy shall be taken into account.

c) The vested portion of any Participant's accrued benefit shall be determined on the basis of the Participant's number of years of Vestable Service according to the following schedule:

### Vesting Schedule

| Years of Vestable Service | Percentage |
|---|---|
| 2 | 20% |
| 3 | 40% |
| 4 | 60% |
| 5 | 80% |
| 6 | 100% |

If in any subsequent Plan Year, the Plan ceases to be top heavy, the Committee may, in its sole discretion, elect to (1) continue to apply the above vesting schedule in determining the vested portion of any Participant's accrued benefit, or (2) revert to the vesting schedule in effect before the Plan first became top heavy. Any such reversion shall be treated as a Plan amendment.

The computation of a Participant's nonforfeitable percentage of his interest in the Plan shall not be reduced as the result of any direct or indirect amendment to this Article. In the event the Plan is amended to change or modify any vesting schedule, a Participant with at least five (5) years of Vestable Service as of the expiration date of the election period may elect to have his nonforfeitable percentage computed under the Plan without regard to such amendment. If a Participant fails to make such election, then such Participant shall be subject to the new vesting schedule. The Participant's election period shall commence on the adoption date of the amendment and shall end 60 days after the latest of:

(i) the adoption date of the amendment

(ii) the effective date of the amendment, or

(iii) the date the Participant receives written notice of the amendment.

24

13.2 **Definitions.**

    a) A key employee is any Participant who meets the definition of a key employee under Section 416 of the Code or any successor provision.

    b) The Plan shall be treated as top heavy for any Plan Year if the aggregation group of which it is part is top heavy based on the determination dates falling within any calendar year, pursuant to Paragraph 13.3.

    c) The determination date for any Plan Year is the last day of the preceding Plan Year.

    d) The aggregation group consists of this Plan, and any other defined benefit or defined contribution plan of an Employing Firm qualified under Section 401(a) of the Code which is required to be aggregated with this Plan pursuant to the provisions of Section 416 of the Code.

    e) The present value of the accrued benefits shall be determined using UP-1984 mortality table and an interest rate equal to 7%.

    f) Compensation for purposes of this Article Thirteen means an Employee's total compensation as reported on Form W-2 for the calendar year that ends within the Plan Year.

    g) Average annual compensation means an Employee's compensation averaged over a period of consecutive years, not to exceed five years, which produces the highest average. Average annual compensation shall not include compensation received for years beginning after the close of the last Plan Year in which the Plan is top heavy.

13.3 **Determination of Top Heavy Status.** For each calendar year, a determination shall be made for the aggregation group as to whether the present value of the accrued benefits of the key employees under all plans included in the aggregation group exceeds 60% of the total present value of the accrued benefits of all partners, principals and Employees under all such plans, excluding former key employees. For this purpose, the terms "key employee" and "partners, principals and Employees" shall include their beneficiaries. The calculation of this 60% test shall be made pursuant to Section 416 of the Code and the regulations thereunder.

In making this calculation, the valuation date with respect to the Plan shall be the same as the determination date. If the 60% test is exceeded for any calendar year, then the aggregation group shall be treated as a top heavy group and the Plan shall be treated as top heavy for the Plan Year, the determination date for which falls within the calendar year. The 60% test shall include distributions made within the Plan Year that includes the determination date or within the four (4) preceding Plan Years.

25

13.4   **Effect on Limitations of Paragraph 5.10.**     If the Plan is top heavy for any Plan Year, then the limitations in Paragraph 5.10 shall be applied by substituting 1.0 for 1.25 in determining the dollar limitations for purposes of the combined fraction under Section 415(e) of the Code.

## ARTICLE FOURTEEN

14.1   **Survivor Annuities.**  A survivor annuity shall be payable to any Surviving Spouse to whom the payment of a survivor annuity is required under Section 303(c)(2) or Section 303(e) of the Retirement Equity Act of 1984 (REA).  Such survivor annuity shall be subject to the same terms and conditions as are provided under Article Six, except to the extent the aforementioned REA sections may otherwise require.

26