# Exhibit D
# Part 1

RETIREMENT PLAN FOR EMPLOYEES

OF

PRICE WATERHOUSE LLP

EFFECTIVE JULY 1, 1975
(As amended and restated effective July 1, 1994)

RETIREMENT PLAN FOR EMPLOYEES OF

Price Waterhouse LLP

## TABLE OF CONTENTS

Page

**ARTICLE ONE**
Purpose of Plan . . . . . . . . . . . . . . . . . . . . . . 1

**ARTICLE TWO**
Definitions . . . . . . . . . . . . . . . . . . . . . . . 2

**ARTICLE THREE**
Contributions . . . . . . . . . . . . . . . . . . . . . . 11
  3.1   Employing Firms Contributions. . . . . . . . . . 11
  3.2   Forfeitures. . . . . . . . . . . . . . . . . . . 11

**ARTICLE FOUR**
Participation . . . . . . . . . . . . . . . . . . . . . . 12
  4.1   Requirements. . . . . . . . . . . . . . . . . . 12
  4.2   Terminations . . . . . . . . . . . . . . . . . . 12
  4.3   Reinstatement . . . . . . . . . . . . . . . . . 13
  4.4   Disability . . . . . . . . . . . . . . . . . . . 13

**ARTICLE FIVE**
Annual Retirement Benefit . . . . . . . . . . . . . . . . 14
  5.1   Annuitant's Benefit . . . . . . . . . . . . . . 14
  5.2   Early Annuitant's Benefit . . . . . . . . . . . 14
  5.3   Equitable Benefits . . . . . . . . . . . . . . . 15
  5.4   Social Security Supplement . . . . . . . . . . . 15
  5.5   Terminated Participant's Benefit . . . . . . . . 15
  5.6   Frozen Social Security Offset . . . . . . . . . 16
  5.7   Optional Early Retirement Benefits . . . . . . . 16
  5.8   Benefit Adjustment . . . . . . . . . . . . . . . 17
  5.9   Partner and Principal Benefits . . . . . . . . . 17
  5.10  Minimum Benefits . . . . . . . . . . . . . . . . 18

**ARTICLE SIX**
Form of Retirement and Survivor Benefits . . . . . . . . . 19
  6.1   Normal Form of Retirement Benefit. . . . . . . . 19
  6.2   Election to Change Form of Benefits. . . . . . . 19
  6.3   Optional Forms of Benefit Payments. . . . . . . 19
  6.4   Beneficiary. . . . . . . . . . . . . . . . . . . 20
  6.5   Death Benefit Incidental. . . . . . . . . . . . 21
  6.6   Preretirement Surviving Spouse Annuity. . . . . 21
  6.7   Lump Sum Death Benefit . . . . . . . . . . . . . 22
  6.8   Death Benefits . . . . . . . . . . . . . . . . . 22
  6.9   Consent of Spouse Requirement . . . . . . . . . 22

i

TABLE OF CONTENTS

Page

6.10  Written Explanations  . . . . . . . . . . . . .  23
6.11  Effect of Death of Beneficiary  . . . . . . . .  23
6.12  Small Lump Sum Benefits  . . . . . . . . . . .  24
6.13  Pension Commencement Date  . . . . . . . . . .  25
6.14  Location of Participant or Beneficiary Unknown  . .  25

ARTICLE SEVEN
Vesting of Benefits . . . . . . . . . . . . . . . . .  26
7.1  Application . . . . . . . . . . . . . . . . . .  26
7.2  Vesting Rules . . . . . . . . . . . . . . . . .  26
7.3  Amendments Affecting  . . . . . . . . . . . . .  27
7.4  Commencement of Benefits  . . . . . . . . . . .  27
7.5  Death Distributions . . . . . . . . . . . . . .  27
7.6  Forfeiture of Non-Vested Accrued Benefit  . . .  28
7.7  Direct Rollover.  . . . . . . . . . . . . . . .  29

ARTICLE EIGHT
Advisory Committee . . . . . . . . . . . . . . . . . .  31
8.1  Appointment of the Advisory Committee . . . . .  31
8.2  Organization of the Advisory Committee  . . . .  31
8.3  Decisions of the Advisory Committee.  . . . . .  31
8.4  Duties of the Advisory Committee. . . . . . . .  31
8.5  Compensation of the Advisory Committee. . . . .  31
8.6  Advisory Committee to Compute and Certify Amount of
     Retirement Benefit  . . . . . . . . . . . . . .  31
8.7  Reliance on Actuary, Accountant, Controller,
     Counsel and Other Experts . . . . . . . . . . .  32
8.8  Expenses Paid Out of Trust Fund . . . . . . . .  32
8.9  Claim Procedure.  . . . . . . . . . . . . . . .  32

ARTICLE NINE
Amendment and Termination . . . . . . . . . . . . . .  34
9.1  Right to Amend or Terminate . . . . . . . . . .  34
9.2  Distribution of Funds Upon Termination  . . . .  34
9.3  Failure of Plan to Qualify Upon Amendment . . .  35

ARTICLE TEN
General Provisions . . . . . . . . . . . . . . . . . .  36
10.1  Responsibility of Fiduciaries  . . . . . . . .  36
10.2  No Guaranty of Employment  . . . . . . . . . .  37
10.3  Payments to Minors and Incompetents  . . . . .  37
10.4  Nonalienation of Benefits  . . . . . . . . . .  37
10.5  Appointment of Trustee(s)  . . . . . . . . . .  38
10.6  Purchase of Annuities  . . . . . . . . . . . .  38
10.7  Limitation of Benefits . . . . . . . . . . . .  38

ii

## TABLE OF CONTENTS

Page

10.8   No Diversion of Assets . . . . . . . . . . . . .    39
10.9   Mergers, Consolidations and Transfers of Plan
       Assets . . . . . . . . . . . . . . . . . . . . .    40
10.10  Notice to the Committee . . . . . . . . . . . .     40
10.11  Governing Law . . . . . . . . . . . . . . . . .     40
10.12  Effective Date . . . . . . . . . . . . . . . . .    40

**ARTICLE ELEVEN**
**Inclusion of Prior Retirees as Annuitants** . . . . . . . . . .    41

**ARTICLE TWELVE**
**Past Service Credits** . . . . . . . . . . . . . . . . . .    42
12.1   Credited Service . . . . . . . . . . . . . . . .    42
12.2   Vestable Service . . . . . . . . . . . . . . . .    42
12.3   Minimum Benefit . . . . . . . . . . . . . . . .     42

**ARTICLE THIRTEEN**
**Top-Heavy Rules** . . . . . . . . . . . . . . . . . . .    43
13.1   Applicability of Top Heavy Rules . . . . . . . .    43
13.2   Top Heavy Status . . . . . . . . . . . . . . . .    43
13.3   Minimum Accrued Benefit . . . . . . . . . . . .     45
13.4   Vesting Requirement and Schedule . . . . . . . .    46
13.5   Definitions . . . . . . . . . . . . . . . . . .     47

**ARTICLE FOURTEEN**
**Limitation on Benefits** . . . . . . . . . . . . . . . .    49
14.1   Maximum Benefit Accruals . . . . . . . . . . . .    49
14.2   Participation in Other Qualified Plans . . . . .    49
14.3   Nonreduction of Certain Benefits . . . . . . . .    50
14.4   Definitions . . . . . . . . . . . . . . . . . .     51

# RETIREMENT PLAN FOR EMPLOYEES

## OF

## Price Waterhouse LLP

### ARTICLE ONE
### Purpose of Plan

1.1   This Plan is designed to provide retirement benefits for eligible Employees and, in certain events, Partners and Principals of the Firm.

1

## ARTICLE TWO
## Definitions


2.1  As used in this Plan the following terms shall have the respective meaning hereinafter set forth:

Act:

Employee Retirement Income Security Act of 1974 (ERISA) and as it may be amended from time to time.

Actuarially Equivalent:

An amount determined by applying the UP-1984 mortality table and an interest rate determined as of the first day of each Plan Year which is equal to that particular interest rate used by the Pension Benefit Guaranty Corporation as of each such first day which, pursuant to regulations promulgated under Code Sections 411(a)(11) or 417(e), satisfies the requirements of those Code sections.

Affiliated Employer

The Employing Firm and any corporation which is a member of a controlled group of corporations (as defined in Section 414(b) of the Code) which includes an Employing Firm; any trade or business (whether or not incorporated which is under common control (as defined in Section 414(c) of the Code) with the Employing Firm; any organization (whether or not incorporated) which is a member of an affiliated service group (as defined in Section 414(m) of the Code) which includes the Employing Firm; and any other entity required to be aggregated with the Employing Firm pursuant to regulations under Section 414(o) of the Code.

Annual Retirement
Benefit:

The amount determined pursuant to Article Five on which benefits under the Plan are based.

Annuitant:

Any person who has or shall have retired after reaching Normal Retirement Age, and who shall have been a Participant during the Plan Year preceding his Normal Retirement Date.

2

Average Final
Compensation:

The average of a Participant's annual Compensation for his five highest paid years out of the last ten Plan Years during which he was a Participant, or if he was a Participant for less than ten years, such lesser period, except for Plan Years beginning July 1, 1979 and ending June 30, 1988, which shall consider only any Plan Year beginning prior to a Participant's Normal Retirement Age if such Participant did not have an hour of Employment on or after July 1, 1988.  In the case of a disabled Participant who continues to accrue Credited Service under Paragraph 4.4, Average Final Compensation shall be determined in the manner stated above by reference to his last period of active Employment.

Break-in-Service:

Any Plan Year during which an Employee has not more than 500 hours of Employment.

Code:

The Internal Revenue Code of 1986, as it has been and may be amended from time to time.  Reference to any section of the Code shall include any provision successor thereto.

Committee:

The Advisory Committee described in Article Eight and at the time acting.

Compensation:

Compensation shall include the remuneration for services rendered which is paid by the Employing Firm to or for an Employee during a Plan Year in which the Employee was a Participant in the Plan which is includible in income for Federal income tax purposes (Form W-2 income): provided, however, that Compensation shall not include any of the following items (even if includible in gross income): reimbursements or other expense allowances, fringe benefits (cash and noncash), moving expenses, deferred compensation (other than any pretax contributions made, as permitted by Section 401(k) of the Code, to the Savings Plan for Employees and Partners of Price Waterhouse LLP) and welfare benefits.  Compensation shall include wages, salary, overtime, commissions, bonuses and other amounts

3

received (without regard to whether an amount is paid in cash) for personal services actually rendered in the course of employment with the Employing Firms, and any other amounts not currently includible in income under Section 125 of the Code pursuant to a salary reduction agreement.

Notwithstanding the foregoing, and except for computing the limitations under Article Fourteen, the amount of any Employee's Compensation for any Plan Year beginning on or after (i) January 1, 1989 shall not exceed $200,000, increased from time to time in accordance with Section 401(a)(17) of the Code and (ii) January 1, 1994 shall not exceed $150,000, increased from time to time in accordance with Section 401(a)(17) of the Code. In determining "Compensation" of an Employee for purposes of the compensation limits described in the preceding sentence, the family member attribution rules of Section 414(q)(6) of the Code shall apply, except that in applying such rules, the term "family" shall include only the spouse of the Employee and any lineal descendants of the Employee who have not attained age 19 before the close of the Plan Year.

Subject to Paragraph 6.3D, notwithstanding the foregoing, no Compensation earned by a Participant after June 30, 1994 shall be considered for purposes of determining his Annual Retirement Benefit under the Plan.

**Credited Service:** Any Plan Year in which a Participant has at least 1,000 hours of Employment, except for Plan Years beginning July 1, 1979 and ending June 30, 1988 any Plan Year beginning prior to a Participant's Normal Retirement Age if such Participant did not have an hour of Employment on or after July 1, 1988 and as otherwise provided in:

Paragraph 4.3, relating to Employment prior to a Break-in-Service, and

Paragraph 6.13, relating to distribution of benefits as a lump-sum payment.

Subject to Paragraph 6.3D, notwithstanding the foregoing, no Participant shall earn Credited Service after June 30, 1994 for purposes of determining his Annual Retirement Benefit under the Plan.

DAP:    The Deferred Annuity Plan Based on Profits, as in effect from July 1, 1955 through May 31, 1974.

Early Annuitant:    Any person with at least 30 years of Credited Service who shall have terminated his Employment prior to his Normal Retirement Age for any reason other than death.

Employee:    Any individual employed by any of the Employing Firms.  Employees shall also include:

(i)    Controlled Groups, etc.  An individual employed by an Affiliated Employer shall be considered an Employee of an Employing Firm.

(ii)    Leased Employee.  Any leased Employee shall be considered an Employee. Contributions or benefits provided to such Leased Employee by the leasing organization for services rendered for an Employing Firm shall be considered made by the Employing Firm.  Independent contractors shall not be considered Employees.

(iii)    Partner.  Any individual reported as a Partner on the Employing Firm's income tax return shall be considered an Employee for purposes of this Plan.  Partner shall also include partner-equivalent employees of an incorporated Employing Firm.

(iv)    Principal.  Any individual who (1) on his behalf has signed the Agreement, made as of July 1, 1979, between the Firm and the Principals (as that term is defined in that Agreement), as such Agreement may from time to time be amended, or (2) who prior to July 1, 1979 signed an Agreement with Principal shall be

5

considered an Employee for purposes of this Plan.

Employing Firm:    The Firm and each other firm (1) one or more of the partners of which shall be a partner of the Firm, (2) which the Firm shall designate as an Employing Firm and (3) which shall adopt the Plan.

Employment:    Service as an Employee with any of the Employing Firms. However, if during any year an Employee is employed by two or more Employing Firms for a total of 1,000 hours or more each, he shall be deemed to have completed only one year of service. Leaves of absence with the advance written approval of the Employing Firm shall be deemed to be Employment. For Plan Years beginning after 1984, a maternity or paternity leave of absence, as described in (iv) below, shall be deemed to be Employment. Employment shall not be deemed to be interrupted by a period of disability as defined in Paragraph 4.4, or by service in the Armed Forces of the United States, if the Employee shall return within the period within which his right to reemployment shall be protected by a Federal law then in effect. The periods of such leaves of absence, disability or service in the Armed Forces shall be included in determining Credited Service and Vestable Service. In all matters relating to Employment determinations, all Employees in similar circumstances shall be treated alike. An hour of Employment shall be:

(i)    Each hour for which an Employee is paid, or entitled to payment, for the performance of duties for an Employing Firm during the Plan Year;

(ii)    Each hour for which an Employee is paid, or entitled to payment, by an Employing Firm on account of a period of time during which no duties are performed (irrespective of whether employment has terminated) due to vacation, holiday, illness, incapacity (including

6

disability), military duty or leave of absence;

(iii) Each hour for which back pay, irrespective of mitigation of damages, is either awarded or agreed to by an Employing Firm, except that the same hour shall not be credited under either paragraph (i) or (ii) and under this paragraph (iii).

(iv) A "maternity or paternity leave of absence" shall mean, for Plan Years beginning after 1984, an absence from work for any period by reason of the Employee's pregnancy, birth of the Employee's child, placement of a child with the Employee in connection with the adoption of such child, or any absence for the purpose of caring for such child for a period immediately following such birth or placement. For this purpose, hours of Employment shall be credited for the Plan Year in which the absence from work begins, only if credit therefore is necessary to prevent the Employee from incurring a Break-in-Service, or, in any other case, in the immediately following Plan Year. The hours of Employment credited for a "maternity or paternity leave of absence" shall be those which would normally have been credited but for such absence, or, in any case in which the Committee is unable to determine such hours normally credited, eight hours of Employment per day. The total hours of Employment required to be credited for a "maternity or paternity leave of absence" shall not exceed 501.

Hours of Employment shall be computed in accordance with paragraphs (b) and (c) of Section 2530.200b-2 of the Department of Labor Regulations.

7

Enrolled Actuaries:    The actuaries enrolled by the Joint Board for the Enrollment of Actuaries as provided by the Act who shall be engaged by the Committee.

Fiduciary:    A "fiduciary" as defined in Section 3(21) of the Act (or any successor statutory provision).

Firm:    The United States firm of Price Waterhouse LLP with its principal office in New York, N.Y. and all successors to such firm.

Highly Compensated Employee:    With respect to any Plan Year, each current or former Employee of any of the Employing Firms or an Affiliated Employer who is a "highly compensated employee," within the meaning of Section 414(q) of the Code, in that Plan Year.

Leased Employee:    Any individual who is not otherwise employed by an Affiliated Employer but who, pursuant to an agreement between an Affiliated Employer and any other person, has performed services for any of the Affiliated Employers (or for any of the Affiliated Employers and related persons (as determined in accordance with Section 414(n) of the Code)) on a substantially full-time basis for a period of at least one year and such services are of a type historically performed by employees in the Affiliated Employer's business field. The determination of whether a person is a Leased Employee will be made pursuant to the rules and regulations under Section 414(n) of the Code.

Normal Retirement Date:    The first of the month coinciding with or following the attainment of Normal Retirement Age.

Normal Retirement Age:    The 65th birthday of a Participant.

Notice to the Committee:    Written notice on a form provided for the particular purpose by the Committee which is properly completed and executed by the

8

|  | party giving such notice and which is delivered to the Committee. |
|---|---|
| Participant: | Any Employee of any of the Employing Firms who at the particular time shall be a Participant in accordance with the provision of Article Four. |
| Plan: | This Retirement Plan for Employees of Price Waterhouse LLP and as it shall be amended from time to time. |
| Plan Year: | The twelve-month period beginning July 1, 1975 and each subsequent twelve-month period beginning with July 1. |
| Policy Board: | The Policy Board of the Firm. |
| Postponed Retirement Date: | The first day of the calendar month following any month in which a person who remains as an Employee after his Normal Retirement Date shall retire. |
| Predecessor Plan: | The Pension Plan for Employees of Price Waterhouse as in effect from June 1, 1974 through June 30, 1975. |
| Primary Social Security Benefit: | The amount of the old age benefit which an Employee would be entitled to receive at age 65 under the Federal Social Security Act as in effect on the date of termination of his Employment. |
| Social Security Offset Base: | The Primary Social Security Benefit computed on the assumption that, except as provided in Paragraph 5.5, after retirement or other severance of Employment an Annuitant or Early Annuitant will have no income which would be treated as wages for purposes of the Social Security Act. |
| Surviving Spouse: | A spouse to whom a Participant, Annuitant, Early Annuitant or Terminated Participant was married for at least one year as of the date of his death. |
| Terminated Participant: | A former Employee other than an Annuitant or Early Annuitant who is entitled to |

9

benefits under the Plan as provided in Articles Five through Seven.

Termination Benefit:

The Annual Retirement Benefit to which a Terminated Participant would be entitled under Paragraph 5.5A, determined without regard to the vesting percentages of Article Seven.

Trust Agreement:

The Agreement entered into between the Firm and the Trustee to carry out the purposes of the Plan.

Trustee:

The bank(s), trust company(ies), insurance company(ies) or person(s) designated from time to time by the Policy Board to serve as Trustee(s) under the Trust Agreement.

Trust Fund:

The property which shall from time to time be held under the Trust Agreement by the Trustee(s).

Vestable Service:

Any Plan Year beginning after attainment of age 17 (age 21 for Plan Years beginning before 1985) in which an Employee has at least 1,000 hours of Employment, except as otherwise provided in Paragraph 4.3 relating to Employment prior to a Break-in-Service.

2.2  The masculine pronoun, wherever used herein, shall include the feminine. Wherever any words are used herein in the singular, they shall be construed as though they were also used in the plural unless the context indicates otherwise.

## ARTICLE THREE
## Contributions

3.1 **Employing Firms Contributions**. The entire cost of the Plan shall be borne by the Employing Firms and no contributions shall be made by Participants. Subject to the right of the Policy Board to amend, modify or terminate the Plan, the Employing Firms expect to contribute to the Trust Fund such amounts, in the aggregate, as shall be determined by the Enrolled Actuaries selected by the Committee as necessary to fund the costs of the benefits for Employees provided hereunder, together with such amounts as are required to pay expenses of the Plan as provided in Paragraph 8.8.

3.2 **Forfeitures**. In determining costs, the Enrolled Actuaries shall apply forfeitures of the unvested interests of terminating Participants actuarially to reduce contributions required of the Employing Firms. Forfeitures shall not be applied to increase any benefits otherwise payable under the Plan.

11

## ARTICLE FOUR
## Participation

4.1  **Requirements.**

    A.    Each Employee on July 1, 1975 and each person who shall thereafter become an Employee shall become a Participant as of July 1 of the first Plan Year in which he satisfies both of the following requirements, provided that he is an Eligible Employee on such date:

        (i)    The Plan Year begins on or after the date on which he commences Employment, and

        (ii)    He shall have attained age 21 (age 25 for Plan Years beginning before 1985) not later than December 31 of that Plan Year.

    B.    No Employee who is not a Participant as of June 30, 1994 shall be eligible to become a Participant for any Plan Year beginning after June 30, 1994.

    C.    Notwithstanding any other provision of the Plan, an Employee who failed to become a Participant prior to July 1, 1988 by reason of the then requirement that an Employee be under age 60 on the date his Employment commenced shall not be credited with Final Average Compensation and Credited Service for any period prior to July 1, 1988.

    D.    For purposes of this Paragraph 4.1, Eligible Employees consist of Employees who are employed by any of the Employing Firms, including Employees (i) employed by the Employing Firm in Puerto Rico and (ii) who are United States nationals employed by the Employing Firms in Saudi Arabia, Cairo, Egypt and the Netherland Antilles. Eligible Employees shall not consist of Employees who are (i) temporary foreign exchange Employees, (ii) temporary faculty members from United States universities, (iii) temporary student interns, and (iv) temporary office staff.

4.2  **Terminations.** A Participant shall cease to be such as of the earliest of:

    (i)    his death,

    (ii)    the date on which he shall become an Annuitant or Early Annuitant, or

12

       (iii) the beginning of a Plan Year which constitutes a Break-in-Service.

4.3  **Reinstatement**. A Participant who ceases to be such by reason of a Break-in-Service, but who continues to be an Employee, shall again become a Participant as of the first day of the first succeeding Plan Year in which he has at least 1,000 hours of Employment. A Participant who ceases to be such by reason of a Break-in-Service resulting from a termination of his Employment shall as a general rule again become a Participant as of the day on which he resumes Employment. If, however, by reason of the rule set forth in the next sentence, the Participant's Employment prior to the Break-in-Service is not taken into account in determining his Vestable Service and Credited Service, he shall not again become a Participant until the July 1 next following or coinciding with the day on which he resumes Employment. In determining the Credited Service and Vestable Service of a reinstated Participant, his Employment prior to the Break-in-Service shall be taken in account unless both of the following conditions exist:

      (i)   At the time of his Break-in-Service, the Participant had no nonforfeitable rights, as determined under Article Seven, to a retirement or termination benefit, and

      (ii)  His number of consecutive Break-in-Service years equals or exceeds the greater of (a) five consecutive Break-in-Service years, or (b) the number of years of Vestable Service which had accumulated prior to the Break-in-Service. For Plan Years beginning before 1985, clause (a) in the preceding sentence does not apply.

In which case, Employment prior to his Break-in-Service will be disregarded in determining his Credited Service and Vestable Service.

4.4  **Disability**. Any Participant who becomes disabled will continue to qualify as a Participant and accumulate Credited Service under the Plan until the earliest of his Normal Retirement Date, the cessation of such disability, his return to gainful Employment, termination of Employment, or death. A Participant shall be considered disabled for the purposes of the Plan if he is disabled under the definition used to determine eligibility for disability benefits under the Firm's Long Term Disability Plan and for as long as eligibility for such benefits shall continue.

13

**ARTICLE FIVE**
**Annual Retirement Benefit**

5.1  **Annuitant's Benefit**.  Each Annuitant shall be entitled to an Annual Retirement Benefit commencing as of his Normal Retirement Date or Postponed Retirement Date based on the greater of the amounts determined under A or B below, in each case rounded upward to the nearest whole dollar:

A.  A basic amount equal to the product of his Average Final Compensation multiplied by an accrued benefit factor.  The accrued benefit factor shall be 2% per year for each year of Credited Service, excluding Credited Service as Partner or a Principal, but not in excess of 60% in total.

The basic amount determined pursuant to the preceding paragraph shall be reduced by an amount equal to 80% of the Social Security Offset Base.  In the event an Annuitant has less than 30 years of Credited Service excluding Credited Service as a Partner or a Principal, his Social Security Offset shall be reduced to an amount determined by applying a fraction the numerator of which is his years of Credited Service and the denominator of which is 30.  In no event shall the Annual Retirement Benefit determined pursuant to Paragraph 5.1A exceed $75,000 with respect to benefits payable in Plan Years beginning after June 30, 1985.  The maximum Annual Retirement Benefit payable in preceding Plan Years shall be determined in accordance with the terms of the Plan as in effect during each such year.

B.  An amount equal to the single life annuity which could be distributed as the Actuarially Equivalent value of his interest, if any, in the Trust Fund under the DAP, determined as of May 31, 1974.

5.2  **Early Annuitant's Benefit**.  An Early Annuitant upon submitting notice to the Committee shall be entitled to an Annual Retirement Benefit, commencing on the first day of the month coinciding with or following the  later of i) his 60th birthday or ii) termination of his Employment, based on the greater of the amounts determined under A or B below, in each case rounded upward to the nearest whole dollar.

A.  An amount determined pursuant to Paragraph 5.1A, based on the Early Annuitant's Credited Service, except that:

14

The basic amount determined under the first paragraph of Paragraph 5.1A shall be reduced by an amount determined by multiplying such basic amount by the applicable percentage in Column A below and the applicable percentage in Column B below shall be substituted for the 80% factor appearing in the last paragraph of Paragraph 5.1A. Each applicable percentage shall be that which coincides with the Early Annuitant's age at the date his benefits shall commence:

|        | Column A | Column B |
|--------|----------|----------|
| Age 64 | 2%       | 75%      |
| Age 63 | 4%       | 70%      |
| Age 62 | 6%       | 65%      |
| Age 61 | 8%       | 60%      |
| Age 60 | 10%      | 55%      |

B.     The amount determined under Paragraph 5.1B.

5.3  **Equitable Benefits.**  The Annual Retirement Benefit of an Annuitant determined under Paragraph 5.1, or that of an Early Annuitant determined under Paragraph 5.2, shall in no event be less than the Annual Retirement Benefit which would have been determined under Paragraph 5.2 had he retired on the earliest date for which he would have been eligible for a benefit under Paragraph 5.2.

5.4  **Social Security Supplement.**  An Early Annuitant who terminates Employment prior to age 62 shall, in addition to his Annual Retirement Benefit, be entitled to receive from the Plan a Social Security supplement during the period extending from the date on which payment of his Annual Retirement Benefit commences, and ending with the last day of the month in which he attains age 62, or the last day of the preceding month if his birthday is the first day of the month. The amount of the Social Security supplement shall be equal to the Primary Social Security Benefit to which the Early Annuitant would be entitled at age 62 under the Social Security Act as in effect at the date of his termination of Employment, and based on the assumption that after his termination of Employment he will have no income which would be treated as wages for purposes of the Social Security Act.

5.5  **Terminated Participant's Benefit.**  A former Participant whose Employment is terminated prior to his Normal Retirement Age for any reason other than death, and who has less than thirty years of Credited Service, shall be entitled to an Annual Retirement Benefit commencing on the first day of the month coinciding with or following his 65th birthday which shall be

15

the greater of the amounts determined under A or B below, in each case rounded upward to the nearest whole dollar:

A.    A Terminated Participant's benefit shall be determined by applying the rules of Paragraph 5.1A on the assumption that he continues as an Employee until his Normal Retirement Age and continues to earn Compensation at the same rate as his Average Final Compensation. This assumption shall be applied in computing both his basic amount and his Social Security Offset Base. The Annual Retirement Benefit thus determined shall be reduced to an amount determined by multiplying it by a fraction, the numerator of which shall be his actual years of Credited Service and the denominator of which shall be the years of Credited Service which he would have had if he continued in Employment until his Normal Retirement Age.

If the Terminated Participant's Annual Retirement Benefit is not fully vested under Article Seven, it shall be further reduced by applying his vested percentage determined under that Article.

B.    The amount determined under Paragraph 5.1B.

5.6    **Frozen Social Security Offset.**  An Annuitant's benefit, Early Annuitant's benefit or Terminated Participant's benefit, once determined pursuant to the provisions of this Article, shall not thereafter be diminished by reason of any increase in the benefit levels payable under the Social Security Act, or any increase in the wage base under that Act, which takes effect after the date of such person's retirement or other termination of Employment or, if earlier, the date of his first receipt of benefits under the Plan.

5.7    **Optional Early Retirement Benefits.**

A.    A Participant who is at least age 60 and has at least 20 years of Credited Service, but is not yet eligible for an Annuitant's or Early Annuitant's benefit, may elect by Notice to the Committee to retire and receive a reduced benefit commencing on the first day of the month coinciding with or following his retirement. The benefit shall be determined in the same manner as an Annuitant's benefit under Paragraph 5.1, or an Early Annuitant's benefit under Paragraph 5.2 if the Participant would have been eligible for such benefit had he continued his Employment, except that:

(i)    the Participant's actual years of Credited Service shall be used in the computations, and

16

(ii)   the benefit amount so determined shall be reduced as set forth in Paragraph 5.7C below.

B.   A Terminated Participant who had at least 20 years of Credited Service may elect by Notice to the Committee to receive a reduced benefit commencing on the first day of the month coinciding with or following his 60th birthday or on the first day of any subsequent month preceding his 65th birthday. The benefit shall be determined in the same manner as a Terminated Participant's benefit under Paragraph 5.5 except that the amount so determined shall be reduced as set forth in Paragraph 5.7C below.

C.   In determining an optional early retirement benefit the amount computed under Paragraph 5.1, 5.2, 5.5 or 13.2 shall be reduced 1/180th for each month that the benefit payments will precede the date on which benefits would otherwise have been payable.

5.8   **Benefit Adjustment.** Effective July 1, 1993 the Annual Retirement Benefits then being receive by Annuitants, Early Annuitants and Terminated Participants shall be increased by applying the factors set forth below provided, however, that the Annual Retirement Benefit as adjusted shall not exceed the maximum benefit permitted under Paragraph 5.1A:

| If retirement commenced | Benefits shall be increased |
| --- | --- |
| On or before June 30, 1990 | 6% |
| July 31 to December 31, 1990 | 4% |
| January 1 to June 30, 1991 | 3% |
| July 1 to December 31, 1991 | 2.5% |
| January 1 to June 30, 1992 | 1.5% |

5.9   **Partner and Principal Benefits.** The accrued benefit of a Participant who becomes a Partner or Principal of the Firm shall be determined as of the day before he becomes a Partner or a Principal based on Average Final Compensation and Credited Service as of such date. However, if the Participant's accrued benefit is not vested at the time he becomes a Partner or a Principal, his service as a Partner or a Principal shall continue to count toward Vestable Service in his accrued benefit. Further, for each Plan Year beginning on and after July 1, 1989 in which a Partner or Principal has at least one hour of Employment, he shall accrue a benefit of $10 per month for each year of Credited Service as a Partner or Principal; provided that for a Participant who became a Participant prior to July 1, 1975, such accrual shall commence on July 1, 1975.

17

5.10 **Minimum Benefits**.  If a Participant is a non-Highly Compensated Employee and has at least one hour of Employment on or after July 1, 1989, his benefit at his Normal or Postponed Retirement Date shall be calculated under the formula set forth in Paragraph 5.1 but computed as if he had terminated Employment with five years of Credited Service.  Further, if a Participant has at least one hour of Employment on or after July 1, 1989, but subsequently becomes a Highly Compensated Employee, his accrued benefit at his Normal or Postponed Retirement Date will be calculated as described in the prior sentence, but determined as if the Participant terminated Employment with five years of Credited Service as of the last day of the last Plan Year in which he was a non-Highly Compensated Employee.

18

## ARTICLE SIX
## Form of Retirement and Survivor Benefits

6.1 **Normal Form of Retirement Benefit.** Unless a different mode of payment provided by this Article Six is elected in accordance with the provisions hereof, the following shall apply:

A.    An Annuitant, Early Annuitant or Terminated Participant who is married at the date payment of his retirement benefits commence shall receive a benefit which is Actuarially Equivalent to his Annual Retirement Benefit, payable in equal monthly installments as one amount while he shall live and, if he shall die leaving a Surviving Spouse to whom he was married at the time payment of his retirement benefits commenced, one-half of such amount payable to such Surviving Spouse after his death and continuing to and including the first day of the month in which the death of the Surviving Spouse occurs.

B.    Any other Annuitant, Early Annuitant or Terminated Participant shall receive the Annual Retirement Benefit to which he is entitled, payable in equal monthly installments continuing to and including the first day of the month in which his death shall occur.

6.2 **Election to Change Form of Benefits.** At any time during the 90-day period ending on the date on which payment of his retirement benefits commence, a Participant or Terminated Participant who would be entitled to the form of benefit payment described in Paragraph 6.1A may elect by Notice to the Committee, with the consent of his spouse, to receive a form of benefit described in Paragraph 6.1B or 6.3A or Paragraph 6.3B or 6.3C (if the Beneficiary is other than the Participant's spouse) whereby the spouse (i) consents not to receive the form of payment described in Paragraph 6.1A and (ii) consents to the optional form described herein if so elected by the Participant. The consent of spouse shall be valid only if furnished in accordance with the requirements of Paragraph 6.9. Any election made in accordance with this Paragraph 6.2 may be revoked by the Participant or Terminated Participant at any time within the aforementioned 90-day period.

6.3 **Optional Forms of Benefit Payments.** Subject to the spousal consent requirements prescribed by Paragraph 6.2 above, a Participant may elect, during the 90-day period described in Paragraph 6.2 to convert the retirement income otherwise payable to him as of that date to a retirement benefit which shall be its Actuarial Equivalent in accordance with one of the following options:

19

A.     **Lump Sum Payment Option.**  A single lump sum payment shall be paid to the Participant.

B.     **Joint and 100% Survivor Option.**  An actuarially reduced retirement benefit shall be paid to the Participant for life with the provision that after his death such reduced benefit shall be payable to his beneficiary for life.

C.     **Joint and 50% Survivor Option.**  An actuarially reduced retirement benefit shall be paid to the Participant for life with the provision that after his death such reduced benefit shall be payable to his beneficiary for life.

D.     **Non-Highly Compensated Employees Special Option.**  A special option shall be available to Participants who were in the active employ of an Employing Firm on June 30, 1994. If such Participant (1) is a non-Highly Compensated Employee but is not a Partner or a Principal on the date he retires on or after the earlier of age 65 or age 60 with at least 20 years of Credited Service, (2) does not elect the Lump Sum Payment Option under the Plan, and (3) rolls over his entire account balance attributable to Employing Firms contributions in the Retirement Benefit Accumulation Plan for Employees of Price Waterhouse LLP to this Plan as of the last day of the month preceding his retirement date, then he shall receive an Annual Retirement Benefit equal to the Annual Retirement Benefit that he would have received under the Plan as in effect on June 30, 1994 computed, however, by using his Average Final Compensation and Credited Service through his actual date of retirement.  For any Plan Year taken into account for calculating the Participant's Average Final Compensation, Compensation for such Plan Year shall not exceed $150,000.  In no event, shall the Annual Retirement Benefit of a Participant be less than the sum of his accrued benefit as of June 30, 1994 plus the benefit that could be purchased with the rolled over amount using the Actuarially Equivalent assumptions.

6.4  **Beneficiary.**  Each Participant shall at any time during the 90-day period ending on the date on which payment of his retirement benefits commence designate one or more beneficiaries (who may be any one or more members of his family or other persons, executors, administrators, any trust, foundation, or other entity) to receive such amounts as may be payable to such beneficiary upon and after the death of the Participant in accordance with this Paragraph 6.4.  Such designation shall be made by executing and filing a written designation of beneficiary on a Notice to the Committee.

20

Prior to his Pension Commencement Date, each Participant may also, in the same manner, and at any time and from time to time, change any beneficiary previously designated by him, without notice to, or consent of, any previously designated beneficiary; provided, that a Participant whose current spouse was his spouse at his Pension Commencement Date (as defined in Paragraph 6.13) may change his beneficiary designation so as to name a beneficiary other than such spouse only if he files a Notice to the Committee with respect to such change of beneficiary.

If any such Participant shall fail to designate a beneficiary or if any individual designated as a beneficiary shall fail to survive the Participant, the beneficiary shall be the Participant's Surviving. Any amounts remaining due under this Plan to a beneficiary at the time of the beneficiary's death shall, unless otherwise provided by the Participant in his designation of beneficiary, be paid to the beneficiary's estate. If the designated beneficiary (a) cannot be located for a period of one year following the death of the Participant despite mailing to the last known address of the designated beneficiary, and, (b) has not made written claim within such period to the Committee, then such beneficiary shall be treated as having predeceased the Participant. Any payments owing to a Participant's or beneficiary's estate under this Plan may, at the election of the legal representative of the estate, be computed and paid in a single lump sum actuarially equivalent to the value of such payments.

6.5 **Death Benefit Incidental.** If the beneficiary designated by a Participant to receive an optional form of benefit under Paragraphs 6.3B and C shall be an individual other than the Participant's spouse, the election of such option shall be valid only if the benefits to be paid under the option satisfy the incidental death benefit requirement set forth in regulations under Section 401(a)(9) of the Code.

6.6 **Preretirement Surviving Spouse Annuity.** In the event of the death of a Participant or Terminated Participant prior to the time payment of his retirement benefits has commenced, whose benefits are at least partially vested under Article Seven, and who shall leave a Surviving Spouse, that spouse shall be entitled to receive a survivor annuity.

A.    In the case of a Participant who, at the time of his death, could have retired and begun to receive an immediate retirement benefit determined pursuant to Article Five, and in the case of a Terminated Participant who at the time of his death could have elected to receive the immediate commencement of a retirement benefit determined pursuant to Article Five, his Surviving Spouse shall be entitled to receive for

21

his lifetime an immediate survivor annuity, determined pursuant to Article Five and Paragraph 6.1A as if the Participant had begun to receive retirement benefits as of the day before his death.

B.    The foregoing survivor annuity shall be determined after giving effect to any actuarial reductions applicable under Paragraphs 6.1A, 5.2, 5.5 and 5.7 and after giving effect to any applicable vesting percentage under Paragraph 7.2. In addition, in the case of a survivor annuity which begins before the Participant would have reached his 60th birthday, such payment shall be actuarially reduced to reflect the commencement of payments prior to such 60th birthday.

C.    The survivor annuity shall be payable monthly for the lifetime of the Participant's Surviving Spouse, shall begin as of the Starting Date and shall end with the payment for the month in which such spouse dies. For purposes of this Paragraph 6.6, "Starting Date" shall mean (i) in the case of a Participant who dies before his Normal Retirement Date, the day that would have been the Participant's Normal Retirement Date, or if the Surviving Spouse so elects, the first day of any earlier month after such death, and (ii) in the case of a Participant who dies after his Normal Retirement Date and before his Pension Commencement Date (as defined in Paragraph 6.13), the first day of the month following the Participant's death.

6.7    **Lump Sum Death Benefit.** The spouse of a Participant may, in lieu of receiving the Preretirement Surviving Spouse Annuity, elect to receive the death benefit as a single sum amount that is the Actuarial Equivalent of the Preretirement Surviving Spouse Annuity beginning any time from the later of the date of the Participant's death or the earliest date on which the Participant could have begun to receive the distribution of retirement benefits pursuant to Article Five, but distribution must begin by the date on which the deceased Participant would have attained age 70-1/2.

6.8    **Death Benefits.** There are no death benefits payable under the Plan, except those payable in accordance with the Preretirement Surviving Spouse Annuity and the lump sum death benefit or any post-retirement option, as described within this Article Six.

6.9    **Consent of Spouse Requirement.**

A.    For purposes of this Article Six, a consent of spouse to an election by a Participant or former Participant must be in writing, must acknowledge the effect of such

22

election, and must be witnessed by a notary public or by a member of the Committee. A consent of spouse once given may not be revoked by that spouse. Any such consent shall be binding only with respect to the spouse by whom it is given, and not with respect to any subsequent spouse of a Participant or Terminated Participant.

B.      Spousal consent to such election shall not be required if the Participant establishes to the satisfaction of a Plan representative that such written consent may not be obtained because:

(i)     there is no spouse;

(ii)    the spouse cannot be located;

(iii)   the Participant furnishes a court order to the Committee establishing that the Participant is legally separated or has been abandoned (within the meaning of local law), unless a qualified domestic relations order pertaining to such Participant provides that the spouse's consent must be obtained;

(iv)    there exist such other circumstances as the Secretary of the Treasury may by regulations prescribe.

6.10    **Written Explanations**.  The Committee shall provide to each Participant and Terminated Participant within a reasonable period prior to the commencement of benefits a written explanation of:

(i)     the terms and conditions of the joint and survivor annuity form of benefit described in Paragraph 6.1A;

(ii)    the Participant's right to make, and the effect of, an election to waive such joint and survivor annuity form of benefit;

(iii)   the rights of a Participant's spouse; and

(iv)    the right to make, and the effect of, a revocation of a previous election to waive the joint and survivor annuity.

6.11    **Effect of Death of Beneficiary**.  If the beneficiary that an Annuitant, Early Annuitant or Terminated Participant has elected or the spouse at the time such individual began to receive reduced retirement benefits pursuant to Paragraph

23

6.1A, 6.3B or 3C should predecease him, he shall continue to receive such reduced benefits.

6.12 **Small Lump Sum Benefits**.  The Committee shall, in its sole discretion, make a lump sum payment to an Annuitant, Early Annuitant, Terminated Participant or Surviving Spouse equal to the Actuarially Equivalent amount of the annuity to which such individual would otherwise be entitled pursuant to Articles Five and Six, provided:

i)     Such lump sum distribution does not exceed $3,500 and,

ii)    either the distribution of the retirement or surviving spouse annuity has not already commenced, or if it has commenced the Annuitant, Early Annuitant or Terminated Participant and his spouse, if any, (or in the case of a surviving spouse annuity, the Surviving Spouse) consent in writing to the lump sum payment.  Any lump sum payment to any person pursuant to this Paragraph 6.12 shall be in full discharge of all obligations under the Plan with respect to such person.

If the actuarial value of a Participant's benefit is zero because the Participant's vested percentage as determined in accordance with Paragraph 7.2 is zero percent, the Participant shall be deemed to have received a lump sum distribution of his entire benefit as of the date he terminates Employment.

In the event a former Participant who had received a lump sum payment pursuant to this provision again becomes an Employee and a Participant, his Employment prior to receipt of the lump sum payment shall not be taken into account in determining his Credited Service except as provided in the next sentence.  If (i) the lump sum payment represented less than the present value of his accrued benefit at the time of his termination because his entire accrued benefit was not vested under Article Seven and (ii) he elects to repay to the Plan the full amount of such lump sum payment with interest at the rate of five percent compounded annually to the date of repayment, his prior Credited Service shall be restored for all purposes under the Plan.  Such repayment can only be before the earlier of five years after the first date on which the Participant is subsequently reemployed by the Employer, or the date the Participant incurs five consecutive Break-in-Service years following the date of the distribution. If a Participant is deemed to receive a distribution of zero and the Participant resumes Employment under the Plan before the date he incurs five consecutive Break-in-Service years, upon the

24

reemployment of such Participant, the Participant's accrued benefit will be restored to the amount of the accrued benefit on the date of such deemed distribution.

6.13 **Pension Commencement Date**. Pension Commencement Date shall mean the first day as of which a retirement benefit or its Actuarial Equivalent under the Plan is payable to or on behalf of a Participant.

6.14 **Location of Participant or Beneficiary Unknown**. In the event that all, or any portion, of the retirement benefit payable to a Participant or his or her beneficiary hereunder shall remain unpaid solely by reason of the inability of the Committee, after sending a certified letter, return receipt requested, to the last known address, and after further diligent effort, to ascertain the whereabouts of such Participant or his or her beneficiary, the benefit so payable shall remain in the Trust Fund until such time as the Participant or beneficiary makes a claim for such distribution, which shall be payable in accordance with the terms of the Plan. Reasonable expenses incurred in the attempt to locate such Participant or beneficiary in excess of expenses ordinarily incurred in locating Participants or beneficiaries (as determined by the Committee) shall be charged against the retirement benefit of such Participant or beneficiary.

## ARTICLE SEVEN
### Vesting of Benefits

7.1  **Application.** The vesting rules set forth in Paragraph 7.2 shall be applicable to the determination of a Terminated Participant's benefits under Paragraph 5.5A provided, however, that the entire accrued benefit determined under that paragraph shall be forfeited if the Terminated Participant has not had at least five years of Vestable Service. A Participant shall be 100% vested in his accrued benefit upon attainment of Normal Retirement Age, provided that he remains employed by an Employing Firm on such date.

7.2  **Vesting Rules.**

A.    **Termination of Employment prior to July 1, 1989.** Any Participant whose termination of Employment occurs prior to July 1, 1989 with five or more years of Vestable Service shall be vested in 50% of his Termination Benefit when the sum of his age and years of Vestable Service totals 45. Each year thereafter the vested percentage shall be determined as follows:

| If years of Vestable Service equal or exceed | And sum of age and Vestable Service equals or exceeds | Then the nonforfeitable percentage is |
|---|---|---|
| 6 | 47 | 60% |
| 7 | 49 | 70% |
| 8 | 51 | 80% |
| 9 | 53 | 90% |
| 10 | 55 | 100% |

Notwithstanding the above rule, any Employee with 10 years of Vestable Service shall be vested in 50% of his Termination Benefit and an additional 10% shall vest for each additional year of Vestable Service until the entire 100% is attained.

B.    **Termination of Employment on or after July 1, 1989.** Any Participant whose termination of Employment occurs on or after July 1, 1989 shall be vested in his Termination Benefit, as follows:

| If years of Vestable Service equal | Then the nonforfeitable percentage is |
|---|---|
| Less than 5 | 0% |
| 5 or more | 100% |