# Exhibit D
# Part 2

7.3    **Amendments Affecting Change in Vesting Schedule.** If the Plan's vesting schedule is amended, or the Plan is amended in any way that directly or indirectly affects the computation of a Participant's nonforfeitable percentage of his accrued benefit, each Participant with at least three years of service with an Employing Firm may elect, within a reasonable period after the adoption of the amendment, to have the nonforfeitable percentage computed under the Plan without regard to such amendment. The Participant's election may be made at any time during the period ending on the latest of:

(i)     60 days after the amendment is adopted;

(ii)    60 days after the amendment becomes effective; or

(iii) 60 days after the Participant is issued written notice of the amendment by the Employing Firm or the Committee.

7.4    **Commencement of Benefits.** The following provisions apply notwithstanding anything to the contrary set forth elsewhere in this Plan:

A.    **Required Beginning Date.** The accrued benefit of a Participant must be distributed, or distribution must commence no later than April 1 of the calendar year following the calendar year in which the Participant attains age 70-1/2 even though the Participant may be still employed by an Employing Firm.

B.    **Required Distribution.** Unless the Participant elects otherwise, in writing, distribution of his benefits shall begin no later than the 60th day after the latest of the end of the Plan Year in which

(i)     the Participant attains age 65;

(ii)    occurs the 10th anniversary of the year in which the Participant began participating in the Plan; or

(iii) the Participant terminates his Employment with an Employing Firm.

Payment shall be made hereunder whether or not a claim for benefits has been filed by the Participant.

7.5    **Death Distributions.**

A.    **After Commencement of Benefits.** Except as provided under Paragraphs 6.7 through 6.9, if the Participant dies after distribution of his benefit

has commenced, the remaining portion of the bene-
fit will continue to be distributed at least as
rapidly as under the method of distribution in
effect prior to the Participant's death.

B.   **Prior to Commencement of Benefits.**  If the
Participant dies before distribution of his
Benefit commences, the Participant's accrued
benefit shall be distributed no later than five
years after the Participant's death, subject to
the following:

(i)   If any portion of the Participant's
interest is payable to a beneficiary
designated by the Participant, distribu-
tions may be made in substantially equal
installments over the life or life
expectancy of such beneficiary commencing
no later than one year after the Partici-
pant's death.

(ii)  If the beneficiary designated by the
Participant is the Surviving Spouse, the
date distributions are required to begin in
accordance with Paragraph (i) above shall
not be earlier than the date on which the
Participant would have attained age 70-1/2,
and, if the spouse dies before payments
begin, subsequent distributions shall be
made as if the spouse had been the
Participant.

7.6   **Forfeiture of Non-Vested Accrued Benefit.**  Any portion of a
Participant's accrued benefit that is not vested shall be
forfeited by him under the Plan:

A.   As of the last day of the Plan Year in which the
Participant first incurs five consecutive Break-in
Service years, as defined in Paragraph 4.3; or, if
earlier,

B.   On the date the Participant receives a lump sum
distribution of his entire vested accrued benefit (or
is deemed to have received a lump sum distribution of
his entire vested accrued benefit) in accordance with
the provisions of Paragraphs 6.3A or 6.12 as a result
of his termination of participation in the Plan. If a
terminated Participant received his benefit in a lump
sum under Paragraphs 6.3A or 6.12 (including a
Participant with no vested benefits), the Participant's
benefit is cashed out.

28

7.7   **Direct Rollover**.

A.   **General Application**.   This   Section   applies   to
distributions   made   on   or   after   January   1,   1993.
Notwithstanding   any   provision   of   the   Plan   to   the
contrary   that   would   otherwise   limit   a   distributee's
election   under   this   Section,   a   distributee   may   elect,
at   the   time   and   in   the   manner   prescribed   by   the
Committee,   to   have   any   portion   of   an   eligible   rollover
distribution   paid   directly   to   an   eligible   retirement
plan   specified   by   the   distributee   in   a   direct   rollover.

B.   **Definitions**.

   (i)   **Eligible rollover distribution**.   An   eligible
rollover   distribution   is   any   distribution   of
all   or   any   portion   of   the   balance   to   the
credit   of   the   distributee,   **except   that   an
eligible   rollover   distribution   does   not
include**:   any   distribution   that   is   one   of   a
series   of   substantially   equal   periodic
payments   (not   less   frequently   than   annually)
made   for   the   life   (or   life   expectancy)   by   the
distributee   or   the   joint   lives   (or   joint   life
expectancies)   of   the   distributee   **and   the**
distributee's   designated   beneficiary,   or   for   a
specified   period   of   ten   years   or   more;   any
distribution   to   the   extent   such   distribution
is   required   under   Section   401(a)(9)   of   the
Code;   and   the   portion   of   any   distribution   that
is   not   includible   in   gross   income   (determined
without   regard   to   the   exclusion   for   net
unrealized   appreciation   with   respect   to
employer   securities).

   (ii)   **Eligible retirement plan**.   An   eligible   retire-
ment   plan   is   an   individual   retirement   annuity
described   in   Section   408(b)   of   the   Code,   an
annuity   plan   described   in   Section   403(a)   of
the   Code,   or   a   qualified   trust   described   in
Section   401(a)   of   the   Code,   that   accepts   the
distributee's   eligible   rollover   distribution.
However,   in   the   case   of   an   eligible   rollover
distribution   to   the   Surviving   Spouse,   an
eligible   retirement   plan   is   an   individual
retirement   account   or   individual   retirement
annuity.

   (iii)   **Distributee**.   A   distributee   includes   a
Participant   or   former   Participant.   In
addition,   the   Participant's   or   former
Participant's   Surviving   Spouse   and   the

29

Participant's or former Participant's Spouse or former Spouse who is the alternate payee under a "qualified domestic relations order," as defined in Section 414(p) of the Code, are distributees with regard to the interest of the spouse or former spouse.

(iv) **Direct rollover.** A direct rollover is a payment by the Plan to the eligible retirement plan specified by the distributee.

## ARTICLE EIGHT
### Advisory Committee

8.1 **Appointment of the Advisory Committee.** The Plan shall be administered by a Committee consisting of not less than three nor more than six members to be appointed by and to serve at the pleasure of the Policy Board. Vacancies in the Committee shall be filled by the Policy Board.

8.2 **Organization of the Advisory Committee.** The members of the Committee shall elect a chairman from among the Committee membership and a secretary who may, but need not, be one of the members of the Committee, and may appoint from their number such committees with such powers as they shall determine; may authorize one or more of their number, or any agent, to execute or deliver any instrument or to make any payment in their behalf; and may employ counsel, agents, and such clerical, accounting and actuarial services as they may require in carrying out the provisions of the Plan.

8.3 **Decisions of the Advisory Committee.** Three of the members of the Committee at the time in office shall constitute a quorum for the transaction of business. All resolutions or other action taken by the Committee shall be by vote of a majority of the members of the Committee present at any meeting, or without a meeting by instrument in writing signed by all the members of the Committee.

8.4 **Duties of the Advisory Committee.** The Committee shall have full and complete discretionary authority to administer the Plan except to the extent any such powers are vested in any other Fiduciary. The Committee may from time to time establish rules for the administration of the Plan. Except as otherwise herein expressly provided, the Committee shall have the exclusive right to interpret the Plan and to decide any matters arising in connection with the administration and operation of the Plan, and any rules, interpretations or decisions so made shall be conclusive and binding on all persons having an interest in the Plan; provided, however, that all such rules, interpretations and decisions shall be applied in a uniform manner to all Employees similarly situated.

8.5 **Compensation of the Advisory Committee.** No member of the Committee shall receive any compensation for his services as such.

8.6 **Advisory Committee to Compute and Certify Amount of Retirement Benefit.** Subject to the provisions of this Plan, it shall be the duty of the Committee to compute and certify to the

Trustee the amount of retirement benefit payable hereunder to any retiring or terminating Participant or to any Surviving Spouse.

8.7 **Reliance on Actuary, Accountant, Controller, Counsel and Other Experts**. The Committee shall be entitled to rely conclusively upon all tables, valuations, certificates, opinions and reports furnished by any actuary, accountant, controller, counsel or other person who is employed or engaged for such purposes.

8.8 **Expenses Paid Out of Trust Fund**. All expenses that shall arise in connection with the Administration of the Plan shall be paid out of the property of the Trust Fund unless paid by the Employing Firms.

8.9 **Claim Procedure**.

A. **Filing a Claim**. Any Participant or beneficiary under the Plan may file a written claim for a Plan benefit with the Committee or with a person named by the Committee to receive claims under the Plan.

B. **Notice of Denial of Claim**. In the event of a denial or limitation of any benefit or payment due to or requested by any Participant or beneficiary under the Plan ("claimant"), the claimant shall be given a written notification containing specific reasons for the denial or limitation of his benefit. The written notification shall contain specific reference to the pertinent Plan provisions on which the denial or limitation of his benefit is based. In addition, it shall contain a description of any other material or information necessary for the claimant to perfect a claim, and an explanation of why such material or information is necessary. The notification shall further provide appropriate information as to the steps to be taken if the claimant wishes to submit his claim for review. This written notification shall be given to a claimant within 90 days after receipt of his claim by the Committee unless special circumstances require an extension of time for processing the claim. If such an extension of time for processing is required, written notice of the extension shall be furnished to the claimant prior to the termination of said 90 day period, and such notice shall indicate the special circumstances which make the postponement appropriate.

C. **Right of Review**. In the event of a denial or limitation of his benefit, the claimant or his duly authorized representative shall be permitted to review pertinent documents and to submit to the Committee

32

issues and comments in writing. In addition, the claimant or his duly authorized representative may make a written request for a full and fair review of his claim and its denial by the Committee; provided, however, that such written request must be received by the Committee (or its delegate to receive such requests) within 60 days after receipt by the claimant of written notification of the denial or limitation of the claim. The 60 day requirement may be waived by the Committee in appropriate cases.

D.     **Decision on Review.** A decision shall be rendered by the Committee within 60 days after the receipt of the request for review, provided that where special circumstances require an extension of time for processing the decision, it may be postponed on written notice to the claimant (prior to the expiration of the initial 60 day period) for an additional 60 days, but in no event shall the decision be rendered more than 120 days after the receipt of such request for review. Any decision by the Committee shall be furnished to the claimant in writing and shall set forth the specific reasons for the decision and the specific Plan provisions on which the decision is based. Any decision by the Committee upon review shall be final, conclusive and binding on all persons for all purposes.

E.     **Court Action.** No Participant or beneficiary shall have the right to seek judicial review of a denial of benefits, or to bring any action in any court to enforce a claim for benefits prior to filing a claim for benefits or exhausting his rights to review under this Paragraph 8.9.

## ARTICLE NINE
### Amendment and Termination

9.1 **Right to Amend or Terminate.** The Firm reserves the right, by action of the Policy Board, to amend, modify, terminate or discontinue contributions under the Plan in whole or in part at any time. No amendment of the Plan shall be effective unless the Plan as so amended continues to be for the exclusive benefit of Participants, Terminated Participants, Annuitants, Early Annuitants and Surviving Spouses, and no amendment shall deprive any such person without his consent of any benefit theretofore accrued or vested in him in violation of Section 411(d)(6) of the Code, provided that (i) any and all amendments may be made, retroactively if required, which are necessary to qualify or maintain the qualification of the Plan under Section 401(a) of the Code (or any successor statutory provision) and (ii) the Firm shall in no event be required to make an amendment that will increase the cost of the Plan.

9.2 **Distribution of Funds Upon Termination.**

A. **Allocation of Assets.** In the event of termination of the Plan, the assets of the Plan shall be allocated in accordance with the priorities established in Section 4044 of the Act (or any successor statutory provision). In the event of a partial termination of the Plan, that portion of the assets of the Plan allocable to the terminating Employees shall be allocated as aforesaid.

B. **Vesting Upon Termination or Partial Termination of the Plan.** In the event of the "termination" or "partial termination" of the Plan (as those terms are used in Section 411(d)(3) of the Code, or any successor statutory provision), the rights of Participants to benefits accrued to the date of such termination or partial termination, to the extent funded as of such date, shall be nonforfeitable.

C. **Recapture of Certain Payments.** In the event that the Trust Fund at termination is insufficient to provide all benefits guaranteed by the Pension Benefit Guaranty Corporation, any payment of retirement income in excess of $10,000 received during any 12-month period within the three years immediately preceding the date of termination of the Plan shall be deemed to have been paid subject to the provisions of Section 4045 of the Act (or any successor statutory provision).

D.    **Reversion of Assets.**    In the event of termination of the Plan because of failure to obtain a favorable determination letter from the Internal Revenue Service that the Plan qualifies under Section 401(a) of the Code, the Employing Firms shall be entitled to a return of any contributions which they may have made pursuant to Article Three for any Plan Year for which the Plan is held to be not qualified under Section 401(a) of the Code.    Such contributions shall be returned within a period of one year from the date of denial of qualification.    Further, any amount remaining in the Trust Fund after the full satisfaction of all liabilities under the Plan shall be returned to the Employing Firms to the extent permitted by the Trust Agreement.

9.3    **Failure of Plan to Qualify Upon Amendment.**    If any amendment to the Plan should be determined not to meet the qualification requirements under Section 401(a) of the Code, then such amendment shall be null and void and no Participant or beneficiary shall have any rights whatsoever created by such amendment, and the rights of a Participant or beneficiary shall be determined under the Plan prior to such amendments.

**ARTICLE TEN**
**General Provisions**

10.1 **Responsibility of Fiduciaries.**

A.    The members of the Policy Board and the Committee shall discharge their duties with respect to the Plan solely in the interests of the Participants, Terminated Participants, Surviving Spouses, Annuitants and Early Annuitants and with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

B.    No Fiduciary under the Plan shall be liable for an act or omission of another person in carrying out any fiduciary responsibility where such fiduciary responsibility is allocated to such other person by the Plan or pursuant to a procedure established in the Plan except to the extent that:

(1)    such Fiduciary participated knowingly in, or knowingly undertook to conceal, an act or omission of such other person, knowing such act or omission to be a breach of fiduciary responsibility;

(2)    such Fiduciary, by his failure to comply with Section 404(a)(1) of the Act (or any successor statutory provision) in the administration of his specific responsibilities which give rise to his status as a Fiduciary, has enabled such other person to commit a breach of fiduciary responsibility;

(3)    such Fiduciary has knowledge of a breach of fiduciary responsibility by such other person, unless he makes reasonable efforts under the circumstances to remedy the breach; or

(4)    such Fiduciary is a "named fiduciary" (as such term is defined in Section 402(a)(2) of the Act, or any successor statutory provision) and has violated his duties under Section 404(a)(1) of the Act (or any successor statutory provision):

(a)    with respect to the allocation of fiduciary responsibilities among named fiduciaries or the designation of persons other than named fiduciaries to carry out fiduciary responsibilities under the Plan;

36

(b)   with respect to the establishment or implementation of procedures for allocating fiduciary responsibilities among named fiduciaries or the designation of persons other than named fiduciaries to carry out fiduciary responsibilities under the Plan; or

(c)   in continuing the allocation of fiduciary responsibilities among named fiduciaries or the designation of persons other than named fiduciaries to carry out fiduciary responsibilities under the Plan.

C.   Anything in the Plan, or any amendment thereof, to the contrary notwithstanding, no provision of the Plan shall be so construed as to violate the requirements of Sections 404, 405, 406 and 407 of the Act (or any successor statutory provisions).

10.2 **No Guaranty of Employment**.   The Plan shall not be deemed to constitute a contract between any Employing Firm and any Employee or to be a consideration for, or an inducement for, the employment of any Employee by any Employing Firm.   Nothing contained in the Plan shall be deemed to give any Employee the right to be retained in the service of an Employing Firm or to interfere with the right of an Employing Firm to discharge or to terminate the service of any Employee at any time without regard to the effect such discharge or termination may have on any rights under the Plan.

10.3 **Payments to Minors and Incompetents**.   If any person entitled to receive any benefits hereunder is known to be a minor or is deemed by the Committee to be, or is to the Committee's knowledge adjudged legally to be incapable of giving valid receipt and discharge for such benefits, the same shall be paid to such other persons as the Committee may designate or to the duly appointed guardian of the person so entitled. Such payment shall, to the extent made, be deemed a complete discharge of any liability for such payment under the Plan.

10.4 **Nonalienation of Benefits**.   No benefit payable under the Plan shall be subject in any manner to alienation, anticipation, assignment, garnishment or pledge; and any attempt to alienate, anticipate, assign, garnishee or pledge the same shall be void; and no such benefits shall be in any manner liable for or subject to the debts, liabilities, engagements or torts of any person entitled thereto; and if any such person is adjudicated bankrupt or attempts to alienate, anticipate, assign or pledge any benefits, then such benefits shall cease, and in this event the Committee shall cause the same to be held or applied to or for the benefit of the person

37

entitled thereto, his spouse, his children or other depen-
dents, or relatives, or any of them, in such manner and in
such proportion as the Committee, in its discretion, may deem
proper. This Paragraph 10.4 shall not apply to any "qualified
domestic relations order", as that term is defined in Section
414(p) of the Code (or any successor provision) and the
regulations thereunder.

10.5 **Appointment of Trustee(s).** The Trustee(s) shall have such
power as to investments, reinvestments, control and
disbursement of the Trust Fund as shall be set forth in the
Trust Agreement, which may be modified from time to time. No
person shall have any interest in, or right to, any part or
all of the Trust Fund, except as expressly provided in the
Plan or the Trust Agreement. The Trust Agreement, as from
time to time in effect, shall be a part of the Plan and the
rights and duties of any person under the Plan shall be
subject to all the terms and provisions of the Trust
Agreement. The Policy Board may remove the Trustee(s) at any
time in accordance with the terms of the Trust Agreement and
upon such removal or upon the resignation of any such
Trustee(s), the Policy Board shall designate a successor
Trustee(s).

10.6 **Purchase of Annuities.** If the Committee for any reason deems
it advisable, any or all of the retirement benefits payable
under the Plan may be provided through the purchase of
annuities from such insurance company or companies as may be
approved by the Committee. Payment therefor shall be made
from the Trust Fund.

10.7 **Limitation of Benefits.** The limitations described in this
Section apply for Plan Years beginning on or after January 1,
1994 in the event of a termination of the Plan or a
distribution to a Participant described herein.

   A. **Plan Termination.** In the event of a termination of the
      Plan, the benefit of any Highly Compensated active or
      former Employee is limited to a benefit that is
      nondiscriminatory under Section 401(a)(4) of the Code.

   B. **Limitation of Benefits.** The benefits distributed to
      any of the 25 Highly Compensated Employees or Highly
      Compensated former Employees who have the greatest
      Compensation from an Employing Firm in the current or
      any prior Plan Year are restricted such that the annual
      payments are no greater than an amount equal to the
      payment that would be made on behalf of the Employee
      under a single life annuity that is the Actuarial
      Equivalent of the sum of the Employee's accrued benefit
      and the Employee's other benefits under the Plan (other
      than a Social Security supplement) and the amount of

the payments that the Employee is entitled to receive under a Social Security supplement, if any.

The preceding paragraph shall not apply if: (i) after payment to or on behalf of an Employee of benefits payable, as determined without the application of the limitations described in the preceding paragraph, the value of Plan assets equals or exceeds 110% of the value of current liabilities, as defined in Section 412(e)(7) of the Code, or (ii) the value of the benefits payable to or on behalf of the Employee, as determined without the application of the limitations described in the preceding paragraph, is less than one percent of the value of current liabilities before distribution, or (iii) the value of the benefits payable to or on behalf of the Employee, as determined without the application of the limitations described in the preceding paragraph, does not exceed the amount described in Section 411(a)(11)(A) of the Code, or (iv) the Plan requires adequate security to guarantee any repayment of benefits under the circumstances and upon the terms described in Rev. Rul. 92-76, 1992-38 I.R.B. 5.

10.8 **No Diversion of Assets.**

A. **Exclusive Benefit.** Subject to the provisions of Paragraph 9.2D, all contributions when made to the Trust Fund and all property and funds of the Trust Fund, including income from investments and from all other sources, shall be retained for the exclusive benefit of Participants, Terminated Participants, Surviving Spouses, Annuitants and Early Annuitants included in the Plan and shall be used to pay benefits provided hereunder or to pay expenses of administration of the Plan and the Fund.

B. **Return of Employing Firms Contributions.** To the extent permitted or required by ERISA and the Code, contributions to the Trust under this Plan are subject to the following conditions:

(i)    If a contribution or any part thereof is made to the Trust by the Employing Firm under a mistake of fact, such contribution or part thereof shall be returned to the Employing Firm within one year after the date the contribution is made;

(ii)   Anything in this Section 10.8 to the contrary notwithstanding, (1) no earnings on an Employing Firm contribution shall be returned

39

to the Employing Firm and losses on the contribution shall reduce the amount to be returned, and (2) no return of an Employing Firm's contribution shall be made to the extent that a Participant's accrued benefit would be reduced to less than his accrued benefit had the contribution to be returned not been made;

(iii)     Contributions to the Trust are specifically conditioned on their deductibility under the Code and, to the extent a deduction is disallowed for any such contribution, such amount shall be returned to the Employing Firm within one year after the date of the disallowance of the deduction.

10.9 **Mergers, Consolidations and Transfers of Plan Assets.** In the case of any merger or consolidation of the Plan with, or transfer of assets or liabilities of the Plan to any other plan, each Participant shall (if the Plan then terminated) receive a benefit immediately after such merger, consolidation or transfer which shall be at least equal to the benefit he would have been entitled to receive immediately before such merger, consolidation or transfer (if the Plan had then terminated).

10.10 **Notice to the Committee.** Each Participant, each type of Annuitant and each Surviving Spouse must furnish Notice to the Committee of such information as it may reasonably request for the purpose of the proper administration of the Plan. Requests to the Committee for any information or other communications must be made on a Notice to the Committee.

10.11 **Governing Law.** The provision of the Plan shall be construed, enforced and administered in accordance with the laws of the State of New York, except as any such laws may be superseded by the Act.

10.12 **Effective Date.** The Plan shall become effective as of July 1, 1975.

## ARTICLE ELEVEN
### Inclusion of Prior Retirees as Annuitants

11.1 Any retired former Employee of an Employing Firm or his Surviving Spouse who as of June 30, 1975 was receiving a pension under the Predecessor Plan or directly from the Firm shall be an Annuitant commencing July 1, 1975. Commencing with July 1, 1975 each such Annuitant or Surviving Spouse shall receive from the Trust Fund, as a monthly retirement benefit, the same aggregate amount as he had received from the aforementioned sources in the month prior to that date. The Enrolled Actuaries shall take the aggregate cost of this benefit into account in determining the past service liability under the Plan.

# ARTICLE TWELVE
## Past Service Credits

12.1 **Credited Service**.   With respect to any Participant who qualified as such on July 1, 1975, Employment prior to that date shall be taken into account in determining his Credited Service as if the Plan had been in effect from the date his Employment commenced with the following exception:  in applying Paragraph 4.1 for this purpose, age 30 shall be substituted for age 25.

12.2 **Vestable Service**.   With respect to any Participant who qualified as such on July 1, 1975, any year ended prior to that date which is counted as a year of Credited Service under Paragraph 12.1 shall also be counted as a year of Vestable Service.   In addition, in the case of any Participant who commenced Employment prior to July 1, 1975 but with respect to whom the year ended on June 30, 1975 is not a year of Credited Service under Paragraph 12.1, that year shall nevertheless count as a year of Vestable Service if:

   (i)   The Participant had at least 1,000 hours of Employment in that year, and

   (ii)  He had attained age 21 prior to the beginning of that year.

12.3 **Minimum Benefit**.  Any Participant who shall be 57 years of age or older on July 1, 1975 and whose Average Final Compensation shall be no more than $20,000 shall be paid out of the Trust Fund the higher of the benefit calculated under this Plan or the benefit payable under the Firm's prior unqualified plan which after 25 years of service provided a maximum benefit of 33-1/3% of Average Final Compensation without deduction for social security.   In the case of optional early retirement under Paragraph 5.7, the benefit determined under the prior unqualified plan shall also be reduced in the manner set forth in Paragraph 5.7C.

42

**ARTICLE THIRTEEN**
**Top-Heavy Rules**

13.1 **Applicability of Top Heavy Rules.**  If the Plan is or becomes a Top Heavy Plan for any Plan Year beginning after 1983, the provisions of this Article Thirteen shall apply and shall supersede all other conflicting provisions of the Plan during any Plan Year in which the Plan is Top Heavy.

13.2 **Top Heavy Status.**

A.    **Determination.**  The Plan shall be a Top Heavy Plan if any of the following conditions exist:

(i)    If the top heavy ratio for the Plan exceeds 60% and the Plan is not part of any required aggregation group or permissive aggregation group of plans.

(ii)   If the Plan is part of a required aggregation group of plans but not part of a permissive aggregation group and the top heavy ratio for the group of plans exceeds 60%.

(iii)  If the Plan is part of a required aggregation group and part of a permissive aggregation group of plans and the top heavy ratio for the permissive aggregation group exceeds 60%.

Solely for the purpose of determining if the Plan, or any other plan included in a required aggregation group of which the Plan is a part, is top heavy (within the meaning of Section 416(g) of the Code) the accrued benefit of an Employee other than a key employee (within the meaning of Section 416(i)(1) of the Code) shall be determined under (a) the method, if any, that uniformly applies for accrual purposes under all plans maintained by the Affiliated Employers, or (b) if there is no such method, as if such benefit accrued not more rapidly than the slowest accrual rate permitted under the fractional accrual rate of Section 411(b)(1)(C) of the Code.

B.    **Top Heavy Ratio.**  The top heavy ratio shall be determined as follows:

(i)    If the Employing Firm sponsors one or more defined benefit plans (including any simplified employee pension plans) and the Employing Firm has never maintained any defined contribution

43

plans which have covered or could cover a Participant in the Plan, the top heavy ratio shall be a fraction, the numerator of which is the sum of the present value of accrued benefits of all Key Employees as of the determination date (including any part of any accrued benefit distributed during the five year period ending on the determination date), and the denominator of which is the sum of the present value of all accrued benefits (including any part of any accrued benefit distributed in the five year period ending on the  determination date) of all Participants as of the determination date, determined in accordance with Section 416 of the Code and the regulations thereunder.

(ii) If the Employing Firm sponsors one or more defined benefit plans (including any simplified employee pension plan) and the Employing Firm sponsors or has sponsored one or more defined contribution plans which have covered or could cover a Participant, the top heavy ratio is a fraction, the numerator of which is the sum of (a) the present value of accrued benefits for all Key Employees under the defined benefit plans determined under Paragraph (i), above, and (b) the sum of the account balances of all Key Employees under the aggregated defined contribution plans for all Key Employees as of the determination date(s), and the denominator of which is the sum of (1) the present value of accrued benefits of all participants under the aggregated defined benefit plans determined under (i), above, and (2) the sum of the account balances of all participants under the aggregated defined contribution plans, determined in accordance with Section 416 of the Code and the regulations thereunder.  Both the numerator and the denominator of the top heavy ratio shall be adjusted for any distribution of an account balance or accrued benefit made in the five year period ending on the determination date.

(iii) The account balances and accrued benefits of a Participant who was formerly a Key Employee but who is not a Key Employee during the current Plan Year shall be disregarded in calculating the numerator and denominator of the top heavy ratio.

(iv) The account balances and accrued benefits of a Key Employee who has not performed any services

44

for the Employing Firm at any time during the five year period ending on the determination date shall not be taken into account in determining the top heavy ratio.

(v)  In calculating the top heavy ratio, the valuation date for determining the value of account balances and the present value of accrued benefits shall be the most recent accounting date that occurs within or ends with the 12 month period ending on the determination date, except as provided in Section 416 of the Code and the regulations thereunder for the first and second plan years of a defined benefit plan.  When aggregating plans, the value of account balances and accrued benefits shall be calculated with reference to the determination dates occurring within the same calendar year.

(vi) Any deductible contributions made by Participants shall not be included in computing the top heavy ratio.  The extent to which distributions, rollovers, and trustee-to-trustee transfers are taken into account in determining the top heavy ratio shall be determined pursuant to Section 416 of the Code and the regulations thereunder.

13.3 **Minimum Accrued Benefit.**

A.    **Minimum Accrual.**  Notwithstanding any other provision in this Plan except as provided in Subsections (C) and (D) below, for any Plan Year in which the Plan is Top Heavy, each Participant who is not a Key Employee and has completed 1,000 Hours of Service shall accrue a benefit (to be provided solely by Employing Firm contributions and expressed as a life annuity commencing at Normal Retirement Date) of not less than two percent of his or her highest average compensation for the five consecutive years for which the Participant had the highest compensation.  The minimum accrual of a Participant who remains employed with the Employing Firm following his Normal Retirement Date shall be nonforfeitable.  The minimum accrual is determined without regard to any Social Security contribution.  The minimum accrual applies even though under other Plan provisions the Participant would not otherwise be entitled to receive an accrual, or would have received a lesser accrual for the year because (i) the non-Key Employee fails to make mandatory contributions to the Plan or (ii) the

45

non-Key Employee's Compensation is less than a stated amount.

B.   **Top Heavy Compensation.**  For purposes of computing the minimum accrued benefit, Top Heavy compensation shall include either (i) all compensation, as such term is defined for Section 415 purposes, (ii) all wages subject to tax under Section 3101(a) of the Code without the dollar limitation of Section 3121(a) of the Code or (iii) W-2 wages for the calendar year ending with or within the Plan Year.

C.   **Limit on Accruals.**  No additional benefit shall be accrued pursuant to Subsection (A) above, to the extent that the total accruals on behalf of the Participant attributable to Employing Firm contributions will provide a benefit expressed as a life annuity commencing at Normal Retirement Date that equals or exceeds 20% of the Participant's highest average compensation for the five consecutive years for which the Participant had the highest compensation.

D.   **Coverage by Other Plans.**  The provisions in Subsection (A), above, shall not apply to any Participant to the extent that the Participant is covered under any other plan or plans sponsored by the Employing Firm and the minimum allocation or benefit requirement applicable to this Top Heavy Plan will be met in the other plan or plans.

13.4 **Vesting Requirement and Schedule.**  Notwithstanding the provisions of Article Seven, for any Plan Year during which the Plan is a Top Heavy Plan, the following vesting schedule shall be applicable if it would produce a greater vesting percentage for a Participant than that prescribed by Article Seven:

| Years of Vestable Service | Percent Vested |
|---|---|
| Less than 3 years | 0% |
| 3 or more years | 100% |

In the event the Plan ceases to be a Top Heavy Plan, the vesting percentage for a Participant who has completed three years of Employment shall be determined from the foregoing vesting schedule or the provisions set forth in Article Seven, whichever produces the greater vested interest.  If a Participant had not completed five years of Employment prior to January 1, 1989, his vested interest shall be equal to the greater of A. or B. below.

46

A.    is the product of the vesting percentage from the vesting schedule above and the Participant's accrued benefit as of the last day of the most recent Plan Year during which the Plan was a Top Heavy Plan, and

B.    is the Participant's vested interest determined under the provisions of Article Seven.

13.5  **Definitions.**  The following words and phrases shall have the meanings set forth below for purposes of this Article Thirteen:

A.    **Determination Date.**  The last day of the first Plan Year, and for subsequent Plan Years, the last day of the preceding Plan Year, during which the Plan is Top Heavy.

B.    **Key Employee.**  Any Employee or former Employee, and beneficiaries of such Employee, who at any time during the Plan Year or any of the four preceding Plan Years was:

(i)   an officer of the Employing Firm with Compensation that exceeds 50% of the dollar limitation in Section 415(b)(1)(A) of the Code in effect for such Plan Year,

(ii)  one of the 10 Employees owning (or considered to own under Section 318 of the Code) the largest interests in the Employing Firm, provided the Employee's Compensation from the Employing Firm for the Plan Year exceeds the maximum dollar limitation in effect under Section 415(c)(1)(A) of the Code for the Plan Year,

(iii) an Employee owning at least a five percent interest in the Employing Firm, or

(iv)  an Employee with Compensation from the Employing Firm of more than $150,000 for the Plan Year who is a one percent owner of the Employing Firm.

The determination of who is a Key Employee shall be made in accordance with Section 416(i)(1) of the Code and the regulations thereunder.

C.    **Non-Key Employee.**  Any Employee other than a Key Employee.

D.    **Permissive Aggregation Group.**  The required aggregation group of plans sponsored by the Employing Firm, plus any other plan or plans of the Employing

47

Firm which would continue to satisfy the requirements of Sections 401(a)(4) and 410 of the Code when considered as a group with the required aggregation group.

E.    **Present Value Factors**.  For purposes of determining the present value for this Article Thirteen, the following factors shall be used:  the mortality table specified in Section 2.1 of the Plan, and five percent interest per annum.

F.    **Required Aggregation Group**.  Each qualified plan sponsored by the Employing Firm in which at least one Key Employee participates, and any other qualified plan sponsored by the Employing Firm which enables a plan in which a Key Employee participates to meet the requirements of Sections 401(a)(4) or 410 of the Code.

G.    **Valuation Date**. The most recent accounting date that occurs within or ends with the 12 month period ending on the determination date, except as provided in Section 416 of the Code and the regulations thereunder for the first and second plan years of a defined benefit plan.

**ARTICLE FOURTEEN**
**Limitation on Benefits**

14.1 **Maximum Benefit Accruals.**

    A.    **Applicability.**  This Paragraph 14.1, except for Paragraph D, shall apply regardless of whether any Participant is or has ever been a Participant in another qualified plan maintained by an Employing Firm or an Affiliated Employer.  If any Participant is or has ever been a participant in another qualified plan or a welfare benefit fund (as defined in Section 419(e) of the Code) maintained by an Employing Firm or an Affiliated Employer, Paragraph 14.2 shall also apply to such Participant's benefit.

    B.    **Reduction in Accrual.**  The Annual Benefit, as defined in Paragraph 14.4C, payable to a Participant shall not at any time exceed the Maximum Permissible Amount, as defined in Paragraph 14.4L.  If the benefit the Participant would otherwise accrue during the Limitation Year, as defined in Paragraph 14.4K, would produce an Annual Benefit in excess of the Maximum Permissible Amount, the rate of accrual shall be reduced so that the Annual Benefit will equal the Maximum Permissible Amount.

    C.    **Participant Contributions.**  The Plan shall accept no Participant contributions.

    D.    **Exception for de Minimis Benefits.**  The limitation in Paragraph B is deemed satisfied if the Annual Benefit payable to a Participant is not more than $1,000 multiplied by the Participant's number of years of service (not to exceed 10) with an Employing Firm or an Affiliated Employer, and the Employing Firm or Affiliated Employer has not at any time maintained a defined contribution plan in which such Participant participated.

14.2 **Participation in Other Qualified Plans.**  This Paragraph 14.2 shall apply if any Participant is or has ever been a participant in another qualified plan or welfare benefit fund (as defined in Section 419(e) of the Code) maintained by the Employing Firm or an Affiliated Employer.

    A.    **Participation in Defined Benefit Plan.**  If the Participant is covered by another qualified defined benefit plan or plans maintained by the Employing

Firm or an Affiliated Employer and the sum of the
Participant's Annual Benefit accrued under the Plan
and such plan(s) exceeds the Maximum Permissible
Amount, the accrual of benefits in excess of the
Maximum Permissible Amount shall be reduced as
follows.  The Annual Benefit accrued by the
Participant under the Plan for any Limitation Year
shall be reduced so that the Maximum Permissible
Amount shall not be exceeded for such Limitation
Year.  In the event reduction of the accrual of the
Participant's Annual Benefit under the Plan is not
sufficient to reduce the aggregate Annual Benefits
for such Limitation Year to the Maximum Permissible
Amount, the Annual Benefit(s) under such other
plan(s) sponsored by any Employing Firm or an
Affiliated Employer shall be reduced for the
Limitation Year according to the terms of such
plans(s).

B.    <u>Participation in Defined Contribution Plan</u>.  If the
Participant is or has ever been a participant in a
defined contribution plan or plans maintained by an
Employing Firm or an Affiliated Employer, and the sum
of the Defined Benefit Fraction and the Defined
Contribution Fraction, as defined in Paragraphs 14.4
G and I, respectively, exceeds 1.0, the Annual
Benefit accrued and/or Annual Additions, as defined
in Subsection 14.4 B, made on the Participant's
behalf for such Limitation Year shall be reduced as
follows.  The Annual Benefit accrued by the Partici-
pant for the Limitation Year under the Plan shall be
reduced, and then, if necessary, the Annual Benefit
accrued by the Participant under any other defined
benefit plan(s) sponsored by an Employing Firm or an
Affiliated Employer shall be reduced, such that the
sum of both fractions as adjusted does not exceed
1.0.  In the event reductions in the Annual Benefit
accrued to such defined benefit plan(s) are insuf-
ficient to reduce the sum of the Defined Contribution
Fraction and the Defined Benefit fraction to 1.0, the
Annual Additions which are credited to the
Participant for the Limitation Year in which the sum
of the Defined Benefit Fraction and the Defined
Contribution Fraction exceeds 1.0 shall be reduced
according to the terms of such defined contribution
plan(s) to the extent necessary to reduce the sum of
the fractions for the Limitation Year to 1.0.

14.3 **Nonreduction of Certain Benefits.**  In the case of an indivi-
dual who was a participant in one or more defined benefit
plans established by an Employing Firm or an Affiliated

50

Employer as of the first day of the first Limitation Year beginning after December 31, 1986, the application of the limitations of this Article Fourteen shall not cause the Maximum Permissible Amount for such individual under all such defined benefit plans to be less than the individual's Current Accrued Benefit as defined in Paragraph 14.4 E. The preceding sentence applies only if all such defined benefit plans met the requirements of Section 415 of the Code, for all Limitation Years beginning before January 1, 1987.

14.4 **Definitions.** The following words and phrases shall have the meanings set forth below for purposes of this Article Fourteen:

A. **Adjustment Factor.** The cost of living adjustment factor prescribed by the Secretary of the Treasury under Section 415(d) of the Code for years beginning after December 31, 1987, applied to such items and in such manner as the Secretary shall prescribe.

B. **Annual Additions.** The sum of the following amounts credited to a Participant's account for the Limitation Year:

(i) Employing Firms contributions,

(ii) Employee contributions, and

(iii) Forfeitures.

Amounts allocated, after March 31, 1984, to an individual medical account, as defined in Section 415(l)(2) of the Code, which is part of a defined benefit plan maintained by any Employing Firm or an Affiliated Employer are treated as annual additions to a defined contribution plan. Also, amounts derived from contributions paid or accrued after December 31, 1985, in taxable years ending after such date, which are attributable to post-retirement medical benefits allocated to the separate account of a key employee, as defined in Section 419A(d)(3) of the Code, under a welfare benefit fund, as defined in Section 419(e) of the Code, maintained by any Employing Firm or an Affiliated Employer, are treated as annual additions to a defined contribution plan. The Annual Addition for any Limitation Year beginning before January 1, 1987 shall not be recomputed to treat all Employee contributions as an Annual Addition.

C. **Annual Benefit.** A retirement benefit under the Plan which is payable annually in the form of a straight

51

life annuity.  Except as provided below, a benefit payable in a form other than a straight life annuity shall be adjusted to an actuarial equivalent straight life annuity before applying the limitations of this Article Fourteen.  The interest rate assumption used to determine actuarial equivalence will be the greater of the interest rate specified in Section 2.2 of the Plan or five percent.  The Annual Benefit does not include any benefits attributable to Employee contributions or rollover contributions, or the assets transferred from a qualified plan that was not maintained by an Employing Firm or an Affiliated Employer.  No actuarial adjustment to the benefit is required for (i) the value of a "qualified joint and survivor annuity (as defined in Treas. Reg. § 1.401(a)-11(b)(a)), (ii) the value of benefits that are not directly related to retirement benefits (such as the qualified disability benefit, preretirement death benefits, and post-retirement medical benefits), and (iii) the value of post-retirement cost-of-living increases made in accordance with federal income tax regulations.

D.    **Section 415 Compensation.**  A Participant's earned income, wages, salaries, and fees for professional services, and other amounts received for personal services actually rendered in the course of Employment with an Employing Firm or an Affiliated Employer maintaining the Plan (including, but not limited to, commissions paid salesmen, compensation for services on the basis of a percentage of profits, commissions on insurance premiums tips and bonuses), but excluding the following:

(i)    Employing Firm contributions to a plan of deferred compensation which are not included in the Participant's gross income for the taxable year in which contributed, or Employing Firms contributions under a simplified employee pension plan to the extent such contributions are deductible by the Participant, or any distributions from a plan of deferred compensation;

(ii)   Amounts realized from the exercise of a nonqualified stock option, or when restricted stock (or property) held by the Participant either becomes freely transferable or is no longer subject to a substantial risk of forfeiture;

52

(iii) Amounts realized from the sale, exchange or other disposition of stock acquired under a qualified stock option; and

(iv) Other amounts which received special tax benefits, including but not limited to amounts under Section 125 or 401(k) of the Code, or contributions made by an Employing Firm (whether or not under a salary reduction agreement) towards the purchase of an annuity described in Section 403(b) of the Code (whether or not the amounts are actually excludable from the gross income of the Employee).

Section 415 Compensation for any Limitation Year is the compensation actually paid or includable in the Participant's gross income during such year except that Compensation in excess of the annual compensation limitation (described in Section 401(a)(17) of the Code) as adjusted for inflation by the Secretary of the Treasury shall not be considered.

E.  **Current Accrued Benefit.**  A Participant's accrued benefit under the Plan, determined as if the Participant had separated from service as of the close of the last Limitation Year beginning before January 1, 1987, when expressed as an annual benefit within the meaning of Section 415(b)(2) of the Code. In determining the amount of a  Participant's Current Accrued Benefit, the following shall be disregarded:

(i)  any change in the terms and conditions of the Plan after May 5, 1986; and

(ii) any cost of living adjustment occurring after May 5, 1986.

F.  **Defined Benefit Dollar Limitation.**  The limitation set forth in Section 415(b)(1) of the Code.

G.  **Defined Benefit Fraction.**  A fraction, the numerator of which is the sum of the Participant's projected annual benefits under all the defined benefit plans (whether or not terminated) maintained by an Employing Firm or an Affiliated Employer, and the denominator of which is the lesser of 125% of the dollar limitation in effect for the Limitation Year under Section 415(b)(1)(A) of the Code, or 140% of the highest average compensation. Notwithstanding the preceding sentence, if the Participant was a participant in a plan in existence on May 6, 1986,

53

the denominator of this fraction will not be less
than 125% of the sum of the Annual Benefits under
such plans which the Participant has accrued as of
the end of the last Limitation Year beginning before
January 1, 1987.  The preceding sentence applies only
if the defined benefit plans individually and in the
aggregate satisfied the requirements of Section 415
of the Code for all Limitation Years beginning before
January 1, 1987.

H.    **Defined Contribution Dollar Limitation.**  $30,000 or,
if greater, one-fourth of the Defined Benefit Dollar
Limitation in effect for the Limitation Year.

I.    **Defined Contribution Fraction.**  A fraction, the
numerator of which is the sum of (1) the Annual
Additions to the Participant's accounts under all the
defined contribution plans (whether or not termin-
ated) maintained by any Employing Firm or an
Affiliated Employer for the current and all prior
Limitation Years (including the Annual Additions
attributable to the Participant's non-deductible
employee contributions to this and all other defined
benefit plans (whether or not terminated) maintained
by an Employing Firm or an Affiliated Employer), and
(2) the Annual Additions attributable to all welfare
benefit funds, as defined in Section 419(e) of the
Code, maintained by an Employing Firm or an Affili-
ated Employer, and the denominator of which is the
sum of the maximum aggregate amounts for the current
and all prior Limitation Years of service with an
Employing Firm or an Affiliated Employer (regardless
of whether a defined contribution plan was maintained
by an Employing Firm or an Affiliated Employer).  The
maximum aggregate amount in any Limitation Year is
the lesser of 125% of the dollar limitation in effect
under Section 415(c)(1)(A) of the Code or 35% of the
Participant's Section 415 Compensation for such year.
If the Employee was a participant as of the first day
of the first Limitation Year beginning after December
31, 1986, in one or more defined contribution plans
maintained by an Employing Firm or an Affiliated
Employer that were in existence on May 6, 1986, the
numerator of this fraction will be adjusted if the
sum of this fraction and the defined benefit fraction
would otherwise exceed 1.0 under the terms of the
Plan.  Under the adjustment, an amount equal to the
product of (i) the excess of the sum of the fractions
over 1.0 times (ii) the denominator of this fraction,
will be permanently subtracted from the numerator of
this fraction.  The adjustment is calculated using
the fractions as they would be computed as of the end

54

of the last Limitation Year beginning before
January 1, 1987, and disregarding any changes in the
terms and conditions of the plans made after May 5,
1986, but using the limitations applicable to the
first Limitation Year beginning on or after January
1, 1987.

If the Plan satisfied the applicable requirements of
Section 415 of the Code as in effect for all
Limitation Years beginning before January 1, 1987, an
amount shall be subtracted from the numerator of the
defined contribution plan fraction (not exceeding
such numerator) as prescribed by the Secretary of the
Treasury so that the sum of the defined benefit plan
fraction and defined contribution plan fraction
computed under Section 415(e)(1) of the Code (as
revised by this Paragraph) does not exceed 1.0 for
such Limitation Year.

J.   **Highest Average Compensation.**  The average compensa-
tion for the three consecutive years of service with
any Employing Firm or an Affiliated Employer that
produces the highest average.

K.   **Limitation Year.**  The calendar year.

L.   **Maximum Permissible Amount.**  The Maximum Permissible
Amount at a Participants Social Security Retirement
Age, as defined in Paragraph 14.4N, is the lesser of
$90,000 or 100% of the Participant's Highest Average
Compensation.  The Maximum Permissible Amount shall
be adjusted as follows:

   (i)   **Adjustment for Inflation.**  Effective January 1,
1988, and each January 1 thereafter, the $90,000
limitation above will be automatically adjusted
to the new dollar limitation determined by the
Commissioner of Internal Revenue for that
calendar year.  The new limitation will apply to
Limitation Years ending within the calendar year
of the date of the adjustment.

   (ii)  **Preservation of Current Accrued Benefit.**  Not-
withstanding anything to the contrary in this
Paragraph 14.4, if the Plan was actually in
existence on May 6, 1986 and met the applicable
requirements of Section 415 of the Code as in
effect for all Limitation Years, if the Current
Accrued Benefit of an individual who was a
Participant as of the first day of the
Limitation Year beginning on or after January 1,
1987 exceeds the benefit limitations under

55

Section 415(b) of the Code (as modified in this Paragraph) then, for purposes of Sections 415(b) and 415(e) of the Code, the Defined Benefit Dollar Limitation with respect to such individual shall be equal to such Current Accrued Benefit.

(iii) **Adjustment for Early Retirement.**  If the Annual Benefit of a Participant commences before the Participant's Social Security Retirement Age, the Defined Benefit Dollar Limitation shall be adjusted so that it is the actuarial equivalent of an annual benefit of $90,000, multiplied by the Adjustment Factor, as defined in **Paragraph 14.4A**, as prescribed by the Secretary of the Treasury, beginning at the Social Security Retirement Age.  The adjustment provided for in the preceding sentence shall be made in such manner as the Secretary of the Treasury may prescribe which is consistent with the reduction for old-age insurance benefits commencing before the Social Security Retirement Age under the Social Security Act.

(iv) **Adjustment for Deferred Retirement.**  If the Annual Benefit of a Participant commences after the Participant's Social Security Retirement Age, the Defined Benefit Dollar Limitation shall be adjusted so that it is the Actuarial Equivalent of a benefit of $90,000 beginning at the Social Security Retirement Age, multiplied by the Adjustment Factor as provided by the Secretary of the Treasury, based on the lesser of the interest rate assumption under the Plan at Section 2.1 or on an assumption of [five percent] per year.

(v) **Adjustment of Limitation for Years of Participation and Years of Service.**  If a Participant has completed less than 10 years of participation (as defined in Section 415(b)(5) of the Code), the Participant's Accrued Benefit shall not exceed the Defined Benefit Dollar Limitation, as adjusted, by multiplying such amount by a fraction, the numerator of which is the Participant's number of years (or part thereof) of participation in the Plan, and the denominator of which is 10.

If a Participant has completed less than 10 years of service (as defined in Section 415(b)(5) of the Code) with an Employing Firm or

56

an Affiliated Employer, the limitations
described in Sections 415(b)(1)(B) and 415(b)(4)
of the Code shall be adjusted by multiplying
such amounts by a fraction, the numerator of
which is the Participant's number of years of
service (or part thereof), and the denominator
of which is 10.

In no event shall this clause (v) reduce the
limitations provided under Sections 415(b)(1)
and (4) of the Code to an amount less than one-
tenth of the applicable limitation (as deter-
mined without regard to this clause (v)).

(vi) **Application to Changes in Benefit Structure.** To
the extent provided by the Secretary of the
Treasury, this Paragraph 14.4L shall be applied
separately with respect to each change in the
benefit structure of the Plan.

M.    **Projected Annual Benefit:**  The Annual Benefit, to
which the Participant would be entitled under the
terms of the Plan assuming:

(i)  the Participant will continue employment until
Normal Retirement Age under the Plan (or current
age, if later), and

(ii) the Participant's Section 415 Compensation for
the current Limitation Year and all other
relevant factors used to determine benefits
under the Plan will remain constant for all
future Limitation Years.

N.    **Social Security Retirement Age.**  The age used as the
retirement age for the Participant under Section
216(1) of the Social Security Act, except that such
section shall be applied without regard to the age
increase factor, and as if the early retirement age
under Section 216(1)(2) of such Act were 62.