# Exhibit E

RETIREMENT PLAN FOR EMPLOYEES

OF

PRICEWATERHOUSECOOPERS LLP

EFFECTIVE JULY 1, 1975
(As amended and restated effective July 1, 1995)

RETIREMENT PLAN FOR EMPLOYEES OF

PRICEWATERHOUSECOOPERS LLP

TABLE OF CONTENTS

Page

**ARTICLE ONE**
Purpose of Plan .................................................................................................. 5

**ARTICLE TWO**
Definitions........................................................................................................... 6

**ARTICLE THREE**
Contributions ..................................................................................................... 13
3.1    Employing Firms Contributions ........................................................... 13
3.2    Forfeitures ............................................................................................. 13

**ARTICLE FOUR**
Participation ....................................................................................................... 14
4.1    Requirements ......................................................................................... 14
4.2    Terminations .......................................................................................... 14
4.3    Reinstatement......................................................................................... 14
4.4    Disability................................................................................................ 15

**ARTICLE FIVE**
Annual Retirement Benefit ................................................................................ 16
5.1    Annuitant's Benefit................................................................................ 16
5.2    Early Annuitant's Benefit ..................................................................... 16
5.3    Equitable Benefits................................................................................. 17
5.4    Social Security Supplement................................................................... 17
5.5    Terminated Participant's Benefit .......................................................... 17
5.6    Frozen Social Security Offset................................................................ 18
5.7    Optional Early Retirement Benefits...................................................... 18
5.8    Benefit Adjustment................................................................................ 19
5.9    Partner and Principal Benefits .............................................................. 20
5.10   Minimum Benefits ................................................................................. 20

# TABLE OF CONTENTS

Page

**ARTICLE SIX**
Form of Retirement and Survivor Benefits.................................................................21
6.1    Normal Form of Retirement Benefit.................................................................21
6.2    Election to Change Form of Benefits...............................................................21
6.3    Optional Forms of Benefit Payments..............................................................21
6.4    Beneficiary.........................................................................................................22
6.5    Death Benefit Incidental...................................................................................23
6.6    Preretirement Surviving Spouse Annuity.......................................................23
6.7    Lump Sum Death Benefit.................................................................................23
6.8    Death Benefits...................................................................................................23
6.9    Consent of Spouse Requirement......................................................................23
6.10  Written Explanations.........................................................................................24
6.11  Effect of Death of Beneficiary.........................................................................24
6.12  Small Lump Sum Benefits................................................................................24
6.13  Pension Commencement Date..........................................................................25
6.14  Location of Participant or Beneficiary Unknown...........................................25

**ARTICLE SEVEN**
Vesting of Benefits..............................................................................................26
7.1    Application.........................................................................................................26
7.2    Vesting Rules.....................................................................................................26
7.3    Amendments Affecting Change in Vesting Schedule.....................................26
7.4    Commencement of Benefits..............................................................................27
7.5    Death Distributions...........................................................................................27
7.6    Forfeiture of Non-Vested Accrued Benefit.....................................................27
7.7    Direct Rollover..................................................................................................28

**ARTICLE EIGHT**
Advisory Committee.............................................................................................29
8.1    Appointment of the Advisory Committee........................................................29
8.2    Organization of the Advisory Committee........................................................29
8.3    Decisions of the Advisory Committee.............................................................29
8.4    Duties of the Advisory Committee...................................................................29
8.5    Compensation of the Advisory Committee.....................................................29
8.6    Advisory Committee to Compute and Certify Amount of Retirement Benefit.............29
8.7    Reliance on Actuary, Accountant, Controller, Counsel and Other Experts.........29
8.8    Expenses Paid Out of Trust Fund....................................................................29
8.9    Claim Procedure................................................................................................29

# TABLE OF CONTENTS

Page

**ARTICLE NINE**
Amendment and Termination ........................................................................... 31
9.1    Right to Amend or Terminate .............................................................. 31
9.2    Distribution of Funds Upon Termination ........................................... 31
9.3    Failure of Plan to Qualify Upon Amendment ..................................... 31

**ARTICLE TEN**
General Provisions .......................................................................................... 32
10.1    Responsibility of Fiduciaries ............................................................ 32
10.2    No Guaranty of Employment ........................................................... 32
10.3    Payments to Minors and Incompetents ............................................ 33
10.4    Nonalienation of Benefits ................................................................ 33
10.5    Appointment of Trustee(s) ............................................................... 33
10.6    Purchase of Annuities ..................................................................... 33
10.7    Limitation of Benefits ...................................................................... 33
10.8    No Diversion of Assets ..................................................................... 34
10.9    Mergers, Consolidations and Transfers of Plan Assets .................... 34
10.10   Notice to the Committee ................................................................... 34
10.11   Governing Law ................................................................................. 34
10.12   Effective Date .................................................................................. 34

**ARTICLE ELEVEN**
Inclusion of Prior Retirees as Annuitants ...................................................... 35

**ARTICLE TWELVE**
Past Service Credits ....................................................................................... 36
12.1    Credited Service ............................................................................... 36
12.2    Vestable Service ............................................................................... 36
12.3    Minimum Benefit .............................................................................. 36

**ARTICLE THIRTEEN**
Top-Heavy Rules ............................................................................................ 37
13.1    Applicability of Top Heavy Rules ..................................................... 37
13.2    Top Heavy Status ............................................................................. 37
13.3    Minimum Accrued Benefit ............................................................... 38
13.4    Vesting Requirement and Schedule .................................................. 39
13.5    Definitions ....................................................................................... 39

# TABLE OF CONTENTS

Page

ARTICLE FOURTEEN

Limitation on Benefits ................................................................................................ 41

14.1    Maximum Benefit Accruals ............................................................................ 41

14.2    Participation in Other Qualified Plans ........................................................... 41

14.3    Nonreduction of Certain Benefits .................................................................. 42

14.4    Definitions ....................................................................................................... 42

APPENDIX A ............................................................................................................ 48

RETIREMENT PLAN FOR EMPLOYEES

OF

PRICEWATERHOUSECOOPERS LLP

ARTICLE ONE

Purpose of Plan

1.1    This Plan is designed to provide retirement benefits for eligible Employees and, in certain events, Partners and Principals of the Firm.

ARTICLE TWO

Definitions

2.1    As used in this Plan the following terms shall have the respective meaning hereinafter set forth:

Act:

Employee Retirement Income Security Act of 1974 (ERISA) and as it may be amended from time to time.

Actuarially Equivalent:

An amount determined by applying the 1983 Group Annuity Mortality Table and an interest rate for the month of May preceding the first day of each Plan Year which is equal to the annual rate of interest on 30-year Treasury securities, as specified by the Commissioner of the Internal Revenue Service, for such month of May.

Affiliated Employer:

The Employing Firm and any corporation which is a member of a controlled group of corporations (as defined in Section 414(b) of the Code) which includes an Employing Firm; any trade or business (whether or not incorporated which is under common control (as defined in Section 414(c) of the Code) with the Employing Firm; any organization (whether or not incorporated) which is a member of an affiliated service group (as defined in Section 414(m) of the Code) which includes the Employing Firm; and any other entity required to be aggregated with the Employing Firm pursuant to regulations under Section 414(o) of the Code.

Annual Retirement Benefit:

The amount determined pursuant to Article Five on which benefits under the Plan are based.

Annuitant:

Any person who has or shall have retired after reaching Normal Retirement Age, and who shall have been a Participant during the Plan Year preceding his Normal Retirement Date.

Average Final Compensation:

The average of a Participant's annual Compensation for his five highest paid years out of the last ten Plan Years during which he was a Participant, or if he was a Participant for less than ten years, such lesser period, except for Plan Years beginning July 1, 1979 and ending June 30, 1988, which shall consider only any Plan Year beginning prior to a Participant's Normal Retirement Age if such Participant did not have an hour of Employment on or after July 1, 1988. In the case of a disabled Participant who continues to accrue Credited Service under Paragraph 4.4, Average Final Compensation shall be determined in the manner stated above by reference to his last period of active Employment.

Break-in-Service:

Any Plan Year during which an Employee has not more than 500 hours of Employment.

Code:

The Internal Revenue Code of 1986, as it has been and may be amended from time to time. Reference to any section of the Code shall include any

provision successor thereto.

Committee:

The Advisory Committee described in Article Eight and at the time acting.

Compensation:

Compensation shall include the remuneration for services rendered which is paid by the Employing Firm to or for an Employee during a Plan Year in which the Employee was a Participant in the Plan which is includable in income for Federal income tax purposes (Form W-2 income); provided, however, that Compensation shall not include any of the following items (even if includable in gross income): reimbursements or other expense allowances, fringe benefits (cash and noncash), moving expenses, deferred compensation (other than any pretax contributions made, as permitted by Section 401(k) of the Code, to the Savings Plan for Employees and Partners of PricewaterhouseCoopers LLP or the Savings Plan for Employees of PricewaterhouseCoopers LLP) and welfare benefits. Compensation shall include wages, salary, overtime, commissions, bonuses and other amounts received (without regard to whether an amount is paid in cash) for personal services actually rendered in the course of employment with the Employing Firms, and any other amounts not currently includable in income under Section 125 of the Code pursuant to a salary reduction agreement or under Section 132(f)(4) of the Code for a qualified transportation benefit.

Notwithstanding the foregoing, and except for computing the limitations under Article Fourteen, the amount of any Employee's Compensation for any Plan Year beginning on or after (i) January 1, 1989 shall not exceed $200,000, increased from time to time in accordance with Section 401(a)(17) of the Code and (ii) January 1, 1994 shall not exceed $150,000, increased from time to time in accordance with Section 401(a)(17) of the Code. For Plan Years ending prior to July 1, 1997, in determining "Compensation" of an Employee for purposes of the compensation limits described in the preceding sentence, the family member attribution rules of Section 414(q)(6) of the Code shall apply, except that in applying such rules, the term "family" shall include only the spouse of the Employee and any lineal descendants of the Employee who have not attained age 19 before the close of the Plan Year.

Subject to Paragraph 6.3D, notwithstanding the foregoing, no Compensation earned by a Participant after June 30, 1994 shall be considered for purposes of determining his Annual Retirement Benefit under the Plan.

Credited Service:

Any Plan Year in which a Participant has at least 1,000 hours of Employment, except for Plan Years beginning July 1, 1979 and ending June 30, 1988 any Plan Year beginning prior to a Participant's Normal Retirement Age if such Participant did not have an hour of Employment on or after July 1, 1988 and as otherwise provided in:

Paragraph 4.3, relating to Employment prior to a Break-in-Service, and

Paragraph 6.13 relating to distribution of benefits as a lump-sum payment.

Subject to Paragraph 6.3D, notwithstanding the foregoing, no Participant shall earn Credited Service after June 30, 1994 for purposes of determining his Annual Retirement Benefit under the Plan.

DAP: The Deferred Annuity Plan based on profits, as in effect from July 1, 1955 through May 31, 1974.

Early Annuitant: Any person with at least 30 years of Credited Service who shall have terminated his Employment, or in the case of a person who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal who shall have ceased to be active, prior to his Normal Retirement Age for any reason other than death.

Employee: Any individual employed by any of the Employing Firms. Employees shall also include:

(i) Controlled Groups, etc. An individual employed by an Affiliated Employer shall be considered an Employee of an Employing Firm.

(ii) Leased Employees. Any leased Employee shall be considered an Employee. Contributions or benefits provided to such Leased Employee by the leasing organization for services rendered for an Employing Firm shall be considered made by the Employing Firm. Independent contractors shall not be considered Employees.

(iii) Partners. Any individual reported as a Partner on the Employer's Federal income tax return shall be considered an Employee for purposes of this Plan. Partner shall also include partner-equivalent employees of an incorporated Employer. Effective July 1, 1998 and thereafter, any individual who (1) has signed the Partners and Principals Agreement dated July 1, 1998 between the Firm and the Partners and Principals and who is designated as a Partner of the Firm; (2) is admitted as a Partner of the Firm; or, (3) signed the Restated Agreement with respect to Price Waterhouse LLP dated as of January 15, 1997 as a Limited Equity Partner (as that term is defined in the Restated Agreement) shall be considered an Employee for purposes of this Plan.

(iv) Principals. Any individual who (1) on his behalf has signed the Agreement, made as of July 1, 1979, between the Firm and the Principals (as that term is defined in that Agreement), as such Agreement may from time to time be amended, or (2) who prior to July 1, 1979 signed an Agreement with Principal shall be considered an Employee for purposes of this Plan. Effective July 1, 1998 and thereafter, any individual who (1) has signed the Partners and Principals Agreement dated July 1, 1998 between the Firm and the Partners and Principals and who is designated as a Principal of the Firm; (2) is admitted as a Principal of the Firm; or, (3) signed the Restated Agreement with respect to Price Waterhouse LLP dated as of January 15, 1997 as a Limited Equity Principal (as that term is defined in the Restated Agreement) shall be considered an Employee

for purposes of this Plan.

Employing Firm: The Firm and each other firm (1) one or more of the partners of which shall be a partner of the Firm, (2) which the Firm shall designate as an Employing Firm and (3) which shall adopt the Plan.

Employment: Service as an Employee with any of the Employing Firms. However, if during any year an Employee is employed by two or more Employing Firms for a total of 1,000 hours or more each, he shall be deemed to have completed only one year of service. Leaves of absence with the advance written approval of the Employing Firm shall be deemed to be Employment. For Plan Years beginning after 1984, a maternity or paternity leave of absence, as described in (iv) below, shall be deemed to be Employment. Employment shall not be deemed to be interrupted by a period of disability as defined in Paragraph 4.4, or by service in the Armed Forces of the United States, if the Employee shall return within the period within which his right to reemployment shall be protected by a Federal law then in effect. The periods of such leaves of absence, disability or service in the Armed Forces shall be included in determining Credited Service and Vestable Service. In all matters relating to Employment determinations, all Employees in similar circumstances shall be treated alike. An hour of Employment shall be:

(i)   Each hour for which an Employee is paid, or entitled to payment, for the performance of duties for an Employing Firm during the Plan Year;

(ii)  Each hour for which an Employee is paid, or entitled to payment, by an Employing Firm on account of a period of time during which no duties are performed (irrespective of whether employment has terminated) due to vacation, holiday, illness, incapacity (including disability), military duty or leave of absence;

(iii) Each hour for which back pay, irrespective of mitigation of damages, is either awarded or agreed to by an Employing Firm, except that the same hour shall not be credited under either paragraph (i) or (ii) and under this paragraph (iii).

(iv)  A "maternity or paternity leave of absence" shall mean, for Plan Years beginning after 1984, an absence from work for any period by reason of the Employee's pregnancy, birth of the Employee's child, placement of a child with the Employee in connection with the adoption of such child, or any absence for the purpose of caring for such child for a period immediately following such birth or placement. For this purpose, hours of Employment shall be credited for the Plan Year in which the absence from work begins, only if credit therefore is necessary to prevent the Employee from incurring a Break-in-Service, or, in any other case, in the immediately following Plan Year. The hours of Employment credited for a "maternity or paternity leave of absence" shall be those which would normally have been credited but for such absence, or, in any case in which the Committee is unable to determine such hours normally

9

credited, eight hours of Employment per day. The total hours of Employment required to be credited for a "maternity or paternity leave of absence" shall not exceed 501.

Hours of Employment shall be computed in accordance with paragraphs (b) and (c) of Section 2530.200b-2 of the Department of Labor Regulations.

For purposes of satisfying the vesting requirements under the Plan, Hours of Employment on or after July 1, 1997 for any Price Waterhouse firm listed under "European Area" in Schedule 1 to the Cooperation Agreement dated As Of September 30, 1997, among certain Price Waterhouse firms (as such Schedule may be amended from time to time) whether as a "Firm", Specified Subsidiary", "Connected Firm" as defined therein (collectively, the "Firms", and collectively with the Firm and all its Affiliated Employers, the "PW Firms"); and, on or after January 1, 1998 and prior to July 1, 1998 for Price Waterhouse Canada and Price Waterhouse Australasia shall be credited to the Participant (regardless of whether such employment occurred before the Participant became an Employee or after the Participant ceased to be an Employee) for the Computation Period in which the employment occurs on the basis of 95 Hours of Service for each semi-monthly payroll period for which at least one Hour of Service would be entitled to be credited.

Effective July 1, 1998, for purposes of satisfying the vesting requirements under the Plan, an individual's Hours of Employment shall include any Hours that were credited under the Plan prior to the transfer of its sponsorship from Price Waterhouse LLP to PricewaterhouseCoopers LLP.

For purposes of satisfying the vesting requirements under the Plan, Hours of Service shall include employment with a Member Firm, Network Firm or Relevant Entity of the PricewaterhouseCoopers Global Network on or after July 1, 1998, regardless of whether such employment occurred before the Participant became an Employee or after the Participant ceased to be an Employee. Such Hours of Service shall be credited for the computation period in which the employment occurs on the basis of 95 Hours of Service for each semimonthly payroll period for which at least one Hour of Service would be entitled to be credited.

| | |
|---|---|
| Enrolled Actuaries: | The actuaries enrolled by the Joint Board for the Enrollment of Actuaries as provided by the Act who shall be engaged by the Committee. |
| Fiduciary: | A "fiduciary" as defined in Section 3(21) of the Act (or any successor statutory provision). |
| Firm: | The United States firm of Price Waterhouse LLP with its principal office in New York, N.Y. and all successors to such firm. Effective July 1, 1998, the United States firm of PricewaterhouseCoopers LLP with its principal office in New York, NY. |
| Highly Compensated Employee: | With respect to any Plan Year, each current or former Employee of any of the Employing Firms or an Affiliated Employer who is a "highly compensated employee," within the meaning of Section 414(q) of the Code, |

in that Plan Year. For "determination years" of the Plan ending June 30, 2001 and thereafter, the determination for the "look-back year" of who is a Highly Compensated Employee shall be made with reference to the calendar year beginning within the "look-back year" in accordance with Notice 97-45.

Leased Employee:    Any individual who is not otherwise employed by an Affiliated Employer but who, pursuant to an agreement between an Affiliated Employer and any other person, has performed services for any of the Affiliated Employers (or for any of the Affiliated Employers and related persons (as determined in accordance with Section 414(n) of the Code)) on a substantially full-time basis for a period of at least one year and such services are of a type historically performed by employees in the Affiliated Employer's business field. For Plan Years beginning July 1, 1997 and thereafter, any individual who is not otherwise employed by an Affiliated Employer but who, pursuant to an agreement between an Affiliated Employer and any other person, has performed services for any of the Affiliated Employers (or for any of the Affiliated Employers and related persons (as determined in accordance with Section 414(n) of the Code)) on a substantially full-time basis for a period of at least one year and such services are under the primary direction and control of an Affiliated Employer. The determination of whether a person is a Leased Employee will be made pursuant to the rules and regulations under Section 414(n) of the Code.

Normal Retirement Date:    The first of the month coinciding with or following the attainment of Normal Retirement Age.

ormal Retirement Age:    The 65th birthday of a Participant.

Notice to the Committee:    Written notice on a form provided for the particular purpose by the Committee which is properly completed and executed by the party giving such notice and which is delivered to the Committee.

Participant:    Any Employee of any of the Employing Firms who at the particular time shall be a Participant in accordance with the provision of Article Four.

Plan:    This Retirement Plan for Employees of PricewaterhouseCoopers LLP and as it shall be amended from time to time.

Plan Year:    The twelve-month period beginning July 1, 1975 and each subsequent twelve-month period beginning with July 1.

Postponed Retirement Date:    The first day of the calendar month following any month in which a person who remains as an Employee after his Normal Retirement Date shall retire.

Effective for Employees who attain age 70 1/2 after December 31, 1998, distribution of an Annual Retirement Benefit shall not commence prior to the Postponed Retirement Date notwithstanding that the Employee may have attained age 70 1/2. An Annual Retirement Benefit that is paid upon a Postponed Retirement Date after the Employee attains age 70 1/2 shall be the Actuarial Equivalent of both the Annual Retirement Benefit that would

have been paid had the Postponed Retirement Date occurred when the Employee attained age 70 1/2 and benefits accrued after attainment of age 70 1/2.

Predecessor Plan: The Pension Plan for Employees of Price Waterhouse as in effect from June 1, 1974 through June 30, 1975.

Primary Social Security Benefit: The amount of the old age benefit which an Employee would be entitled to receive at age 65 under the Federal Social Security Act as in effect on the date of termination of his Employment, or in the case of a person who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal on the date he ceases to be active.

Social Security Offset Base: The Primary Social Security Benefit computed on the assumption that, except as provided in Paragraph 5.5, after retirement or other severance of Employment an Annuitant or Early Annuitant will have no income which would be treated as wages for purposes of the Social Security Act.

Surviving Spouse: A spouse to whom a Participant, Annuitant, Early Annuitant or Terminated Participant was married for at least one year as of the date of his death.

Terminated Participant: A former Employee other than an Annuitant or Early Annuitant who is entitled to benefits under the Plan as provided in Articles Five through Seven. For purposes of this definition, a Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal is a Terminated Participant when he ceases to be active.

Termination Benefit: The Annual Retirement Benefit to which a Terminated Participant would be entitled under Paragraph 5.5A, determined without regard to the vesting percentages of Article Seven.

Trust Agreement: The Agreement entered into between the Firm and the Trustee to carry out the purposes of the Plan.

Trustee: The bank(s), trust company(ies), insurance company(ies) or person(s) designated from time to time by the Policy Board (effective July 1, 1998, the Board of Partners and Principals) to serve as Trustee(s) under the Trust Agreement.

Trust Fund: The property which shall from time to time be held under the Trust Agreement by the Trustee(s).

Vestable Service: Any Plan Year beginning after attainment of age 17 (age 21 for Plan Years beginning before 1985) in which an Employee has at least 1,000 hours of Employment, except as otherwise provided in Paragraph 4.3 relating to Employment prior to a Break-in-Service.

2.2    The masculine pronoun, wherever used herein, shall include the feminine. Wherever any words are used herein in the singular, they shall be construed as though they were also used in the plural unless the context indicates otherwise.

# ARTICLE THREE

## Contributions

3.1   Employing Firms Contributions. The entire cost of the Plan shall be borne by the Employing Firms and no contributions shall be made by Participants. Subject to the right of the Policy Board to amend, modify or terminate the Plan, the Employing Firms expect to contribute to the Trust Fund such amounts, in the aggregate, as shall be determined by the Enrolled Actuaries selected by the Committee as necessary to fund the costs of the benefits for Employees provided hereunder, together with such amounts as are required to pay expenses of the Plan as provided in Paragraph 8.8.

3.2   Forfeitures. In determining costs, the Enrolled Actuaries shall apply forfeitures of the unvested interests of terminating Participants actuarially to reduce contributions required of the Employing Firms. Forfeitures shall not be applied to increase any benefits otherwise payable under the Plan.

ARTICLE FOUR

Participation

4.1    Requirements.

A.    Each Employee on July 1, 1975 and each person who shall thereafter become an Employee shall become a Participant as of July 1 of the first Plan Year in which he satisfies both of the following requirements, provided that he is an Eligible Employee on such date:

(i)    The Plan Year begins on or after the date on which he commences Employment, and

(ii)    He shall have attained age 21 (age 25 for Plan Years beginning before 1985) not later than December 31 of that Plan Year.

B.    No Employee who is not a Participant as of June 30, 1994 shall be eligible to become a Participant for any Plan Year beginning after June 30, 1994.

C.    Notwithstanding any other provision of the Plan, an Employee who failed to become a Participant prior to July 1, 1988 by reason of the then requirement that an Employee be under age 60 on the date his Employment commenced shall not be credited with Final Average Compensation and Credited Service for any period prior to July 1, 1988.

D.    For purposes of this Paragraph 4.1, Eligible Employees consist of Employees who are employed by any of the Employing Firms, including Employees (i) employed by the Employing Firm in Puerto Rico and (ii) who are United States nationals employed by the Employing Firms in Saudi Arabia, Cairo, Egypt and the Netherland Antilles. Eligible Employees shall not consist of Employees who are (i) temporary foreign exchange Employees, (ii) temporary faculty members from United States universities, (iii) temporary student interns, (iv) temporary office staff, and (v) Leased Employees as defined under Section 414(n) of the Code.

4.2    Terminations. A Participant shall cease to be such as of the earliest of:

(i)    his death,

(ii)    the date on which he shall become an Annuitant or Early Annuitant, or

(iii)    the beginning of a Plan Year which constitutes a Break-in-Service.

4.3    Reinstatement. A Participant who ceases to be such by reason of a Break-in-Service, but who continues to be an Employee, shall again become a Participant as of the first day of the first succeeding Plan Year in which he has at least 1,000 hours of Employment. A Participant who ceases to be such by reason of a Break-in-Service resulting from a termination of his Employment shall as a general rule again become a Participant as of the day on which he resumes Employment. If, however, by reason of the rule set forth in the next sentence, the Participant's Employment prior to the Break-in-Service is not taken into account in determining his Vestable Service and Credited Service, he shall not again become a Participant until the July 1 next following or coinciding with the day on which he resumes Employment. In determining the Credited Service and Vestable Service of a reinstated Participant, his Employment prior to the Break-in- Service shall be taken in account unless both of the following conditions exist:

(i)  At the time of his Break-in-Service, the Participant had no nonforfeitable rights, as determined under Article Seven, to a retirement or termination benefit, and

(ii)  His number of consecutive Break-in-Service years equals or exceeds the greater of (a) five consecutive Break-in-Service years, or (b) the number of years of Vestable Service which had accumulated prior to the Break-in-Service. For Plan Years beginning before 1985, clause (a) in the preceding sentence does not apply.

In which case, Employment prior to his Break-in-Service will be disregarded in determining his Credited Service and Vestable Service.

4.4   Disability. Any Participant who becomes disabled will continue to qualify as a Participant and accumulate Credited Service under the Plan until the earliest of his Normal Retirement Date, the cessation of such disability, his return to gainful Employment, termination of Employment, or death. A Participant shall be considered disabled for the purposes of the Plan if he is disabled under the definition used to determine eligibility for disability benefits under the Firm's Long Term Disability Plan and for as long as eligibility for such benefits shall continue.

ARTICLE FIVE

Annual Retirement Benefit

5.1 Annuitant's Benefit. Each Annuitant shall be entitled to an Annual Retirement Benefit commencing as of his Normal Retirement Date or Postponed Retirement Date based on the greater of the amounts determined under A or B below, in each case rounded upward to the nearest whole dollar:

A.    A basic amount equal to the product of his Average Final Compensation multiplied by an accrued benefit factor. The accrued benefit factor shall be 2% per year for each year of Credited Service, excluding Credited Service as a Partner or a Principal, but not in excess of 60% in total.

The basic amount determined pursuant to the preceding paragraph shall be reduced by an amount equal to 80% of the Social Security Offset Base. In the event an Annuitant has less than 30 years of Credited Service excluding Credited Service as a Partner or a Principal, his Social Security Offset shall be reduced to an amount determined by applying a fraction the numerator of which is his years of Credited Service and the denominator of which is 30. In no event shall the Annual Retirement Benefit determined pursuant to Paragraph 5.1A exceed $75,000 with respect to benefits payable in Plan Years beginning after June 30, 1985. The maximum Annual Retirement Benefit payable in preceding Plan Years shall be determined in accordance with the terms of the Plan as in effect during each such year.

B.    An amount equal to the single life annuity which could be distributed as the Actuarially Equivalent value of his interest, if any, in the Trust Fund under the DAP, determined as of May 31, 1974.

On or after July 1, 1997 and prior to July 1, 1998, a transfer, leave of absence, appointment, secundment, or any othe arrangement with the same result, from any PW Firm to another PW Firm shall not be considered a termination of employment from the Employer, or in the case of a Partner or Principal or Limited Equity Partner or Limited Equity Principal ceasing to be active. Effective July 1, 1998, a transfer, leave of absence, appointment, secundment, or any other arrangement with the same result, from any Member Firm, Network Firm or Relevant Entity of the PricewaterhouseCoopers Global Network to another Member Firm, Network Firm or Relevant Entity of the PricewaterhouseCoopers Global Network shall neither be considered a termination of employment from the Employer, nor be considered ceasing to be active.

5.2 Early Annuitant's Benefit. An Early Annuitant upon submitting notice to the Committee shall be entitled to an Annual Retirement Benefit, commencing on the first day of the month coinciding with or following the later of (i) his 60th birthday or (ii) termination of his Employment, or in the case of an Early Annuitant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal when he ceases to be active, based on the greater of the amounts determined under A or B below, in each case rounded upward to the nearest whole dollar.

A.    An amount determined pursuant to Paragraph 5.1A, based on the Early Annuitant's Credited Service, except that:

The basic amount determined under the first paragraph of Paragraph 5.1A shall be reduced by an amount determined by multiplying such basic amount by the applicable percentage in Column A below and the applicable percentage in Column B below shall be substituted for the 80% factor appearing in the last paragraph of Paragraph 5.1A. Each applicable percentage shall be that which coincides with the Early Annuitant's age at the date his benefits shall commence:

16

|         | Column A | Column B |
|---------|----------|----------|
| Age 64  | 2%       | 75%      |
| Age 63  | 4%       | 70%      |
| Age 62  | 6%       | 65%      |
| Age 61  | 8%       | 60%      |
| Age 60  | 10%      | 55%      |

B.  The amount determined under Paragraph 5.1B.

For purposes of this Plan, a Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal ceases to be active when he ceases to perform significant services for the Employer.

On or after July 1, 1997 and prior to July 1, 1998, a transfer, leave of absence, appointment, secundment, or any other arrangement with the same result, from any PW Firm to another PW Firm shall not be considered a termination of employment from the Employer, or in the case of a Partner or Principal or Limited Equity Partner or Limited Equity Principal ceasing to be active. Effective July 1, 1998, a transfer, leave of absence, appointment, secundment, or any other arrangement with the same result, from any Member Firm, Network Firm or Relevant Entity of the PricewaterhouseCoopers Global Network to another Member Firm, Network Firm or Relevant Entity of the PricewaterhouseCoopers Global Network shall neither be considered a termination of employment from the Employer, nor be considered ceasing to be active.

5.3   Equitable Benefits. The Annual Retirement Benefit of an Annuitant determined under Paragraph 5.1, or that of an Early Annuitant determined under Paragraph 5.2, shall in no event be less than the Annual Retirement Benefit which would have been determined under Paragraph 5.2 had he retired on the earliest date for which he would have been eligible for a benefit under Paragraph 5.2.

5.4   Social Security Supplement. An Early Annuitant who terminates Employment, or in the case of an Early Annuitant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal when he ceases to be active, prior to age 62 shall, in addition to his Annual Retirement Benefit, be entitled to receive from the Plan a Social Security supplement during the period extending from the date on which payment of his Annual Retirement Benefit commences, and ending with the last day of the month in which he attains age 62, or the last day of the preceding month if his birthday is the first day of the month. The amount of the Social Security supplement shall be equal to the Primary Social Security Benefit to which the Early Annuitant would be entitled at age 62 under the Social Security Act as in effect at the date of his termination of Employment, or in the case of an Early Annuitant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal when he ceases to be active, and based on the assumption that after his termination of Employment, or in the case of an Early Annuitant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal when he ceases to be active, he will have no income which would be treated as wages for purposes of the Social Security Act.

5.5   Terminated Participant's Benefit. A former Participant whose Employment is terminated, or in the case of a former Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal who ceases to be active prior to his Normal Retirement Age for any reason other than death, and who has less than thirty years of Credited Service, shall be entitled to an Annual Retirement Benefit commencing on the first day of the month coinciding with or following his 65th birthday which shall be the greater of the amounts determined under A or B below, in each case rounded upward to the nearest whole dollar:

A.    A Terminated Participant's benefit shall be determined by applying the rules of Paragraph 5.1A on the assumption that he continues as an Employee until his Normal Retirement Age and continues to earn Compensation at the same rate as his Average Final Compensation. This assumption shall be applied in computing both his basic amount and his Social Security Offset Base. The Annual Retirement Benefit thus determined shall be reduced to an amount determined by multiplying it by a fraction, the numerator of which shall be his actual years of Credited Service and the denominator of which shall be the years of Credited Service which he would have had if he continued in Employment until his Normal Retirement Age.

If the Terminated Participant's Annual Retirement Benefit is not fully vested under Article Seven, it shall be further reduced by applying his vested percentage determined under that Article.

B.    The amount determined under Paragraph 5.1B.

On or after July 1, 1997 and prior to July 1, 1998, a transfer, leave of absence, appointment, secundment, or any other arrangement with the same result, from any PW Firm to another PW Firm shall not be considered a termination of employment from the Employer, or in the case of a Partner or Principal or Limited Equity Partner or Limited Equity Principal ceasing to be active. Effective July 1, 1998, a transfer, leave of absence, appointment, secundment, or any other arrangement with the same result, from any Member Firm, Network Firm or Relevant Entity of the PricewaterhouseCoopers Global Network to another Member Firm, Network Firm or Relevant Entity of the PricewaterhouseCoopers Global Network shall neither be considered a termination of employment from the Employer, nor be considered ceasing to be active.

5.6    Frozen Social Security Offset. An Annuitant's benefit, Early Annuitant's benefit or Terminated Participant's benefit, once determined pursuant to the provisions of this Article, shall not thereafter be diminished by reason of any increase in the benefit levels payable under the Social Security Act, or any increase in the wage base under that Act, which takes effect after the date of such person's retirement or other termination of Employment, or in the case of an Annuitant, Early Annuitant or Terminated Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal when he ceases to be active or, if earlier, the date of his first receipt of benefits under the Plan.

5.7    Optional Early Retirement Benefits.

A.    A Participant who is at least age 60 and has at least 20 years of Credited Service, but is not yet eligible for an Annuitant's or Early Annuitant's benefit, may elect by Notice to the Committee to retire and receive a reduced benefit commencing on the first day of the month coinciding with or following his retirement. The benefit shall be determined in the same manner as an Annuitant's benefit under Paragraph 5.1, or an Early Annuitant's benefit under Paragraph 5.2 if the Participant would have been eligible for such benefit had he continued his Employment, except that:

(i)    the Participant's actual years of Credited Service shall be used in the computations, and

(ii)    the benefit amount so determined shall be reduced as set forth in Paragraph 5.7C below.

B.    A Terminated Participant who had at least 20 years of Credited Service may elect by Notice to the Committee to receive a reduced benefit commencing on the first day of the month coinciding with or following his 60th birthday or on the first day of any subsequent month preceding his 65th birthday. The benefit shall be determined in the same manner as a Terminated Participant's benefit under Paragraph 5.5 except that the amount so determined shall be reduced as set forth in Paragraph 5.7C below.

C.    In determining an optional early retirement benefit the amount computed under Paragraph 5.1, 5.2, 5.5 or 13.2 shall be reduced 1/180th for each month that the benefit payments will precede the date on which benefits would otherwise have been payable.

On or after July 1, 1997 and prior to July 1, 1998, a transfer, leave of absence, appointment, secundment, or any other arrangement with the same result, from any PW Firm to another PW Firm shall not be considered a termination of employment from the Employer, or in the case of a Partner or Principal or Limited Equity Partner or Limited Equity Principal ceasing to be active. Effective July 1, 1998, a transfer, leave of absence, appointment, secundment, or any other arrangement with the same result, from any Member Firm, Network Firm or Relevant Entity of the PricewaterhouseCoopers Global Network to another Member Firm, Network Firm or Relevant Entity of the PricewaterhouseCoopers Global Network shall neither be considered a termination of employment from the Employer, nor be considered ceasing to be active.

5.8   Benefit Adjustment. Effective July 1, 1993 the Annual Retirement Benefits then being received by Annuitants, Early Annuitants and Terminated Participants shall be increased by applying the factors set forth below; provided, however, that the Annual Retirement Benefit as adjusted shall not exceed the maximum benefit permitted under Paragraph 5.1A:

| If retirement commenced | Benefits shall be increased |
| --- | --- |
| On or before June 30, 1990 | 6% |
| July 31 to December 31, 1990 | 4% |
| January 1 to June 30, 1991 | 3% |
| July 1 to December 31, 1991 | 2.5% |
| January 1 to June 30, 1992 | 1.5% |

Effective July 1, 1996, the Annual Retirement Benefits then being received by Annuitants, Early Annuitants and Terminated Participants shall be increased by applying the factors set forth below; provided, however, that an Annual Retirement Benefit as adjusted shall not exceed the maximum benefit permitted under Paragraph 5.1A:

| If retirement commenced | Benefits shall be increased |
| --- | --- |
| On or before June 30, 1993 | 4.0% |
| July 1, 1993 to December 31, 1993 | 3.0% |
| January 1, 1994 to June 30, 1994 | 2.5% |
| July 1, 1994 to December 31, 1994 | 2.0% |
| January 1, 1995 to June 30, 1995 | 1.0% |
| After June 30, 1995 | No increase |

Effective July 1, 1999, the Annual Retirement Benefits then being received by Annuitants, Early Annuitants and Terminated Participants shall be increased by applying the factors set forth below; provided, however, that an Annual Retirement Benefit as adjusted shall not exceed the maximum benefit permitted under Paragraph 5.1A:

| If retirement commenced | Benefits shall be increased |
| --- | --- |
| On or before June 30, 1996 | 2.6% |
| July 1, 1996 to December 31, 1996 | 2.0% |
| January 1, 1997 to June 30, 1997 | 1.4% |
| July 1, 1997 to December 31, 1997 | 1.1% |
| January 1, 1998 to June 30, 1998 | 0.5% |
| After June 30, 1998 | No increase |

5.9    Partner and Principal Benefits. The accrued benefit of a Participant who becomes a Partner or Principal of the Firm shall be determined as of the day before he becomes a Partner or a Principal based on Average Final Compensation and Credited Service as of such date. However, if the Participant's accrued benefit is not vested at the time he becomes a Partner or a Principal, his service as a Partner or a Principal shall continue to count toward Vestable Service in his accrued benefit. Further, for each Plan Year beginning on and after July 1, 1989 in which a Partner or Principal has at least one hour of Employment, he shall accrue a benefit of $10 per month for each year of Credited Service as a Partner or Principal; provided that for a Participant who became a Participant prior to July 1, 1975, such accrual shall commence on July 1, 1975.

5.10   Minimum Benefits. If a Participant is a non-Highly Compensated Employee and has at least one hour of Employment on or after July 1, 1989, his benefit at his Normal or Postponed Retirement Date shall be calculated under the formula set forth in Paragraph 5.1 but computed as if he had terminated Employment with five years of Credited Service. Further, if a Participant has at least one hour of Employment on or after July 1, 1989, but subsequently becomes a Highly Compensated Employee, his accrued benefit at his Normal or Postponed Retirement Date will be calculated as described in the prior sentence, but determined as if the Participant terminated Employment with five years of Credited Service as of the last day of the last Plan Year in which he was a non-Highly Compensated Employee.

ARTICLE SIX

Form of Retirement and Survivor Benefits

6.1    Normal Form of Retirement Benefit. Unless a different mode of payment provided by this Article Six is elected in accordance with the provisions hereof, the following shall apply:

A.    An Annuitant, Early Annuitant or Terminated Participant who is married at the date payment of his retirement benefits commence shall receive a benefit which is Actuarially Equivalent to his Annual Retirement Benefit, payable in equal monthly installments as one amount while he shall live and, if he shall die leaving a Surviving Spouse to whom he was married at the time payment of his retirement benefits commenced, one-half of such amount payable to such Surviving Spouse after his death and continuing to and including the first day of the month in which the death of the Surviving Spouse occurs.

B.    Any other Annuitant, Early Annuitant or Terminated Participant shall receive the Annual Retirement Benefit to which he is entitled, payable in equal monthly installments continuing to and including the first day of the month in which his death shall occur.

6.2    Election to Change Form of Benefits. At any time during the 90-day period ending on the date on which payment of his retirement benefits commence, a Participant or Terminated Participant who would be entitled to the form of benefit payment described in Paragraph 6.1A may elect by Notice to the Committee, with the consent of his spouse, to receive a form of benefit described in Paragraph 6.1B or 6.3A or Paragraph 6.3B or 6.3C (if the Beneficiary is other than the Participant's spouse) whereby the spouse (i) consents not to receive the form of payment described in Paragraph 6.1A and (ii) consents to the optional form described herein if so elected by the Participant. The consent of the spouse shall be valid only if furnished in accordance with the requirements of Paragraph 6.9. Any election made in accordance with this Paragraph 6.2 may be revoked by the Participant or Terminated Participant at any time within the aforementioned 90-day period.

6.3    Optional Forms of Benefit Payments. Subject to the spousal consent requirements prescribed by Paragraph 6.2 above, a Participant may elect, during the 90-day period described in Paragraph 6.2 to convert the retirement income otherwise payable to him as of that date to a retirement benefit which shall be its Actuarial Equivalent in accordance with one of the following options:

A.    Lump Sum Payment Option. A single lump sum payment shall be paid to the Participant.

B.    Joint and 100% Survivor Option. An actuarially reduced retirement benefit shall be paid to the Participant for life with the provision that after his death such reduced benefit shall be payable to his beneficiary for life.

C.    Joint and 50% Survivor Option. An actuarially reduced retirement benefit shall be paid to the Participant for life with the provision that after his death such reduced benefit shall be payable to his beneficiary for life.

D.    A special option shall be available to Participants who were in the active employ of an Employing Firm on June 30, 1994.   If such Participant (1) is a non-Highly Compensated Employee but is not a Partner or Principal on the date he retires (or if earlier, April 1 of the calendar year following the calendar year during which he attains age 70 1/2) on or after the earlier of age 65 or age 60 with at least 20 years of Credited Service, (2) retires (or, if earlier is still an Employee on April 1 of the calendar year following the calendar year during which he attains age 70 1/2), (3) does not elect the Lump Sum Payment Option under the Plan, and (4) rolls over his entire account balance attributable to Employing Firms contributions in the Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP  to this Plan as of the last day of the month preceding his retirement date (or if earlier, April 1 of the calendar year following the calendar year

during which he attains age 70 1/2), then he shall receive an Annual Retirement Benefit equal to the Annual Retirement Benefit he would have received under the Plan as in effect on June 30, 1994 computed, however, by using his Average Final Compensation and Credited Service through his actual date of retirement. For any Plan Year taken into account for purposes of calculating the Participant's Average Final Compensation Compensation for such Plan Year shall not exceed $150,000. In no event shall the Annual Retirement Benefit of a Participant be less than the sum of his accrued benefit as of June 30, 1994 plus the benefit that could be purchased with the rolled over amount using the Actuarially Equivalent assumptions.

Effective January 1, 1996, for purposes only of determining a Participant's Average Final Compensation and Credited Service under this Section 6.3D, employment with Price Waterhouse MCS (North America) LLC shall be treated as if it were employment with the Employing Firm.

Effective April 1, 1996, for purposes only of determining a Participant's Average Final Compensation and Credited Service under this Section 6.3D, employment with Price Waterhouse LLC shall be treated as if it were employment with an Employing Firm.

Effective December 27, 1996, for purposes only of determining a Participant's Average Final Compensation and Credited Service under this Section 6.3D, employment with PW Utilities Services LLC shall be treated as if it were employment with an Employing Firm.

Effective January 6, 1997, for purposes only of determining a Participant's Average Final Compensation and Credited Service under this Section 6.3D, employment with Price Waterhouse Publications LLC, Price Waterhouse Business Turnaround Services LLC and Price Waterhouse Financial Solutions LLC shall be treated as if it were employment with an Employing Firm.

6.4    Beneficiary. Each Participant shall at any time during the 90-day period ending on the date on which payment of his retirement benefits commence designate one or more beneficiaries (who may be any one or more members of his family or other persons, executors, administrators, any trust, foundation, or other entity) to receive such amounts as may be payable to such beneficiary upon and after the death of the Participant in accordance with this Paragraph 6.4. Such designation shall be made by executing and filing a written designation of beneficiary on a Notice to the Committee. Prior to his Pension Commencement Date, each Participant may also, in the same manner, and at any time and from time to time, change any beneficiary previously designated by him, without notice to, or consent of, any previously designated beneficiary; provided, that a Participant whose current spouse was his spouse at his Pension Commencement Date (as defined in Paragraph 6.13) may change his beneficiary designation so as to name a beneficiary other than such spouse only if he files a Notice to the Committee with respect to such change of beneficiary.

If any such Participant shall fail to designate a beneficiary or if any individual designated as a beneficiary shall fail to survive the Participant, the beneficiary shall be the Participant's Surviving Spouse. Any amounts remaining due under this Plan to a beneficiary at the time of the beneficiary's death shall, unless otherwise provided by the Participant in his designation of beneficiary, be paid to the beneficiary's estate. If the designated beneficiary (a) cannot be located for a period of one year following the death of the Participant despite mailing to the last known address of the designated beneficiary, and, (b) has not made written claim within such period to the Committee, then such beneficiary shall be treated as having predeceased the Participant. Any payments owing to a Participant's or beneficiary's estate under this Plan may, at the election of the legal representative of the estate, be computed and paid in a single lump sum actuarially equivalent to the value of such payments.

After a Participant's death and prior to commencement of any distribution of benefits under the Plan, the Beneficiary designated by the Participant may disclaim receipt of such benefit in favor of another individual or entity, subject to receipt by and such procedures for such disclaimer as may be required by the Advisory Committee. Prior to accepting a disclaimer by a Beneficiary, the Advisory Committee may require such additional

documents or other items, or such actions, as in its sole judgment it deems appropriate. No disclaimer by a Beneficiary may result in a distribution of benefits to the individual or entity in whose favor such disclaimer is made in a form that could not have been elected by the Participant had the Participant designated such individual as his or her beneficiary instead of the Beneficiary.

6.5    Death Benefit Incidental. If the beneficiary designated by a Participant to receive an optional form of benefit under Paragraphs 6.3B and C shall be an individual other than the Participant's spouse, the election of such option shall be valid only if the benefits to be paid under the option satisfy the incidental death benefit requirement set forth in regulations under Section 401(a)(9) of the Code.

6.6    Preretirement Surviving Spouse Annuity. In the event of the death of a Participant or Terminated Participant prior to the time payment of his retirement benefits has commenced, whose benefits are at least partially vested under Article Seven, and who shall leave a Surviving Spouse, that spouse shall be entitled to receive a survivor annuity.

   A.    In the case of a Participant who, at the time of his death, could have retired and begun to receive an immediate retirement benefit determined pursuant to Article Five, and in the case of a Terminated Participant who at the time of his death could have elected to receive the immediate commencement of a retirement benefit determined pursuant to Article Five, his Surviving Spouse shall be entitled to receive for his lifetime an immediate survivor annuity, determined pursuant to Article Five and Paragraph 6.1A as if the Participant had begun to receive retirement benefits as of the day before his death.

   B.    The foregoing survivor annuity shall be determined after giving effect to any actuarial reductions applicable under Paragraphs 6.1A, 5.2, 5.5 and 5.7 and after giving effect to any applicable vesting percentage under Paragraph 7.2. In addition, in the case of a survivor annuity which begins before the Participant would have reached his 60th birthday, such payment shall be actuarially reduced to reflect the commencement of payments prior to such 60th birthday.

   C.    The survivor annuity shall be payable monthly for the lifetime of the Participant's Surviving Spouse, shall begin as of the Starting Date and shall end with the payment for the month in which such spouse dies. For purposes of this Paragraph 6.6, "Starting Date" shall mean (i) in the case of a Participant who dies before his Normal Retirement Date, the day that would have been the Participant's Normal Retirement Date, or if the Surviving Spouse so elects, the first day of any earlier month after such death, and (ii) in the case of a Participant who dies after his Normal Retirement Date and before his Pension Commencement Date (as defined in Paragraph 6.13), the first day of the month following the Participant's death.

6.7    Lump Sum Death Benefit. The spouse of a Participant may, in lieu of receiving the Preretirement Surviving Spouse Annuity, elect to receive the death benefit as a single sum amount that is the Actuarial Equivalent of the Preretirement Surviving Spouse Annuity beginning any time from the later of the date of the Participant's death or the earliest date on which the Participant could have begun to receive the distribution of retirement benefits pursuant to Article Five, but distribution must begin by the date on which the deceased Participant would have attained age 70½.

6.8    Death Benefits. There are no death benefits payable under the Plan, except those payable in accordance with the Preretirement Surviving Spouse Annuity and the lump sum death benefit or any post-retirement option, as described within this Article Six.

6.9    Consent of Spouse Requirement.

   A.    For purposes of this Article Six, a consent of spouse to an election by a Participant or former Participant must be in writing, must acknowledge the effect of such election, and must be witnessed by a notary public or by a member of the Committee. A consent of spouse once given may not be revoked by that spouse. Any

such consent shall be binding only with respect to the spouse by whom it is given, and not with respect to any subsequent spouse of a Participant or Terminated Participant.

B.    Spousal consent to such election shall not be required if the Participant establishes to the satisfaction of a Plan representative that such written consent may not be obtained because:

(i)     there is no spouse;

(ii)    the spouse cannot be located;

(iii)   the Participant furnishes a court order to the Committee establishing that the Participant is legally separated or has been abandoned (within the meaning of local law), unless a qualified domestic relations order pertaining to such Participant provides that the spouse's consent must be obtained; or

(iv)   there exists such other circumstances as the Secretary of the Treasury may by regulations prescribe.

6.10   Written Explanations. The Committee shall provide to each Participant and Terminated Participant within a reasonable period prior to the commencement of benefits a written explanation of:

(i)     the terms and conditions of the joint and survivor annuity form of benefit described in Paragraph 6.1A;

(ii)    the Participant's right to make, and the effect of, an election to waive such joint and survivor annuity form of benefit;

(iii)   the rights of a Participant's spouse; and

(iv)   the right to make, and the effect of, a revocation of a previous election to waive the joint and survivor annuity.

6.11   Effect of Death of Beneficiary. If the beneficiary that an Annuitant, Early Annuitant or Terminated Participant has elected or the spouse at the time such individual began to receive reduced retirement benefits pursuant to Paragraph 6.1A, 6.3B or 3C should precease him, he shall continue to receive such reduced benefits.

6.12   Small Lump Sum Benefits. The Committee shall, in its sole discretion, make a lump sum payment to an Annuitant, Early Annuitant, Terminated Participant or Surviving Spouse equal to the Actuarially Equivalent amount of the annuity to which such individual would otherwise be entitled pursuant to Articles Five and Six, provided:

i)     Such lump sum distribution does not exceed $5,000 ($3,500 prior to July 1, 1998) and,

ii)    either the distribution of the retirement or surviving spouse annuity has not already commenced, or if it has commenced the Annuitant, Early Annuitant or Terminated Participant and his spouse, if any, (or in the case of a surviving spouse annuity, the Surviving Spouse) consent in writing to the lump sum payment. Any lump sum payment to any person pursuant to this Paragraph 6.12 shall be in full discharge of all obligations under the Plan with respect to such person.

If the actuarial value of a Participant's benefit is zero because the Participant's vested percentage as determined in accordance with Paragraph 7.2 is zero percent, the Participant shall be deemed to have received a lump sum distribution of his entire benefit as of the date he terminates Employment, or in the case of a Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal as of the date he ceases to be active.

In the event a former Participant who had received a lump sum payment pursuant to this provision again becomes an Employee and a Participant, his Employment prior to receipt of the lump sum payment shall not be taken into account in determining his Credited Service except as provided in the next sentence. If (i) the lump sum payment represented less than the present value of his accrued benefit at the time of his termination because his entire accrued benefit was not vested under Article Seven and (ii) he elects to repay to the Plan the full amount of such lump sum payment with interest at the rate of five percent compounded annually to the date of repayment, his prior Credited Service shall be restored for all purposes under the Plan. Such repayment can only be before the earlier of five years after the first date on which the Participant is subsequently reemployed by the Employer, or in the case of a Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal when he again becomes active or the date the Participant incurs five consecutive Break-in-Service years following the date of the distribution. If a Participant is deemed to receive a distribution of zero and the Participant resumes Employment, or in the case of a Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal again becomes active and is under the Plan before the date he incurs five consecutive Break-in-Service years, upon the reemployment of such Participant, or in the case of a Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal when he again becomes active, the Participant's accrued benefit will be restored to the amount of the accrued benefit on the date of such deemed distribution.

6.13   Pension Commencement Date.  Pension Commencement Date shall mean the first day as of which a retirement benefit or its Actuarial Equivalent under the Plan is payable to or on behalf of a Participant.

6.14   Location of Participant or Beneficiary Unknown.  In the event that all, or any portion, of the retirement benefit payable to a Participant or his or her beneficiary hereunder shall remain unpaid solely by reason of the inability of the Committee, after sending a certified letter, return receipt requested, to the last known address, and after further diligent effort, to ascertain the whereabouts of such Participant or his or her beneficiary, the benefit so payable shall remain in the Trust Fund until such time as the Participant or beneficiary makes a claim for such distribution, which shall be payable in accordance with the terms of the Plan. Reasonable expenses incurred in the attempt to locate such Participant or beneficiary in excess of expenses ordinarily incurred in locating Participants or beneficiaries (as determined by the Committee) shall be charged against the retirement benefit of such Participant or beneficiary.

ARTICLE SEVEN

Vesting of Benefits

7.1    Application. The vesting rules set forth in Paragraph 7.2 shall be applicable to the determination of a Terminated Participant's benefits under Paragraph 5.5A provided, however, that the entire accrued benefit determined under that paragraph shall be forfeited if the Terminated Participant has not had at least five years of Vestable Service. A Participant shall be 100% vested in his accrued benefit upon attainment of Normal Retirement Age, provided that he remains employed by an Employing Firm on such date.

7.2    Vesting Rules.

A.    Termination of Employment prior to July 1, 1989. Any Participant whose termination of Employment occurs prior to July 1, 1989 with five or more years of Vestable Service shall be vested in 50% of his Termination Benefit when the sum of his age and years of Vestable Service totals 45. Each year thereafter the vested percentage shall be determined as follows:

| If years of Vestable Service equal or exceed | And sum of age and Vestable Service equals or exceeds | Then the nonforfeitable percentage is |
|---|---|---|
| 6 | 47 | 60% |
| 7 | 49 | 70% |
| 8 | 51 | 80% |
| 9 | 53 | 90% |
| 10 | 55 | 100% |

Notwithstanding the above rule, any Employee with 10 years of Vestable Service shall be vested in 50% of his Termination Benefit and an additional 10% shall vest for each additional year of Vestable Service until the entire 100% is attained.

B.    Termination of Employment on or after July 1, 1989. Any Participant whose termination of Employment occurs on or after July 1, 1989 shall be vested in his Termination Benefit, as follows:

| If years of Vestable Service equal | Then the nonforfeitable percentage is |
|---|---|
| Less than 5 | 0% |
| 5 or more | 100% |

7.3    Amendments Affecting Change in Vesting Schedule. If the Plan's vesting schedule is amended, or the Plan is amended in any way that directly or indirectly affects the computation of a Participant's nonforfeitable percentage of his accrued benefit, each Participant with at least three years of service with an Employing Firm may elect, within a reasonable period after the adoption of the amendment, to have the nonforfeitable percentage computed under the Plan without regard to such amendment. The Participant's election may be made at any time during the period ending on the latest of:

(i)    60 days after the amendment is adopted;

    (ii)    60 days after the amendment becomes effective; or

    (iii)   60 days after the Participant is issued written notice of the amendment by the Employing Firm or the Committee.

7.4    Commencement of Benefits. The following provisions apply notwithstanding anything to the contrary set forth elsewhere in this Plan:

    A.    Required Beginning Date. The accrued benefit of a Participant must be distributed, or distribution must commence no later than April 1 of the calendar year following the calendar year in which the Participant attains age 70½ even though the Participant may be still employed by an Employing Firm.

    B.    Required Distribution. Unless the Participant elects otherwise, in writing, distribution of his benefits shall begin no later than the 60th day after the latest of the end of the Plan Year in which:

        (i)    the Participant attains age 65;

        (ii)   occurs the 10th anniversary of the year in which the Participant began participating in the Plan; or

        (iii)  the Participant terminates his Employment with an Employing Firm.

Payment shall be made hereunder whether or not a claim for benefits has been filed by the Participant.

7.5    Death Distributions.

    A.    After Commencement of Benefits. Except as provided under Paragraphs 6.7 through 6.9, if the Participant dies after distribution of his benefit has commenced, the remaining portion of the benefit will continue to be distributed at least as rapidly as under the method of distribution in effect prior to the Participant's death.

    B.    Prior to Commencement of Benefits. If the Participant dies before distribution of his Benefit commences, the Participant's accrued benefit shall be distributed no later than five years after the Participant's death, subject to the following:

        (i)    If any portion of the Participant's interest is payable to a beneficiary designated by the Participant, distributions may be made in substantially equal installments over the life or life expectancy of such beneficiary commencing no later than one year after the Participant's death.

        (ii)   If the beneficiary designated by the Participant is the Surviving Spouse, the date distributions are required to begin in accordance with Paragraph (i) above shall not be earlier than the date on which the Participant would have attained age 70½, and, if the spouse dies before payments begin, subsequent distributions shall be made as if the spouse had been the Participant.

7.6    Forfeiture of Non-Vested Accrued Benefit. Any portion of a Participant's accrued benefit that is not vested shall be forfeited by him under the Plan:

    A.    As of the last day of the Plan Year in which the Participant first incurs five consecutive Break-in Service years, as defined in Paragraph 4.3; or, if earlier,

    B.    On the date the Participant receives a lump sum distribution of his entire vested accrued benefit (or is deemed to have received a lump sum distribution of his entire vested accrued benefit) in accordance with the provisions of Paragraphs 6.3A or 6.12 as a result of his termination of participation in the Plan. If a terminated Participant received his benefit in a lump sum under Paragraph 6.3A or 6.12 (including a Participant with no vested benefits), the Participant's benefit is cashed out.

7.7    Direct Rollover.

A.    General Application. This Section applies to distributions made on or after January 1, 1993. Notwithstanding any provision of the Plan to the contrary that would otherwise limit a distributee's election under this Section, a distributee may elect, at the time and in the manner prescribed by the Committee, to have any portion of an eligible rollover distribution paid directly to an eligible retirement plan specified by the distributee in a direct rollover.

B.    Definitions.

(i)    Eligible rollover distribution. An eligible rollover distribution is any distribution of all or any portion of the balance to the credit of the distributee, except that an eligible rollover distribution does not include: any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the distributee or the joint lives (or joint life expectancies) of the distributee and the distributee's designated beneficiary, or for a specified period of ten years or more; any distribution to the extent such distribution is required under Section 401(a)(9) of the Code; the portion of any distribution that is not includable in gross income (determined without regard to the exclusion for net unrealized appreciation with respect to employer securities) and, effective January 1, 1999, any hardship distribution described in Section 401(k)(2)(B)(i)(IV), 403(b)(7) or 403(b)(11) of the Code.

(ii)    Eligible retirement plan. An eligible retirement plan is an individual retirement account described in Section 408(a) of the Code, an individual retirement annuity described in Section 408(b) of the Code, an annuity plan described in Section 403(a) of the Code, or a qualified trust described in Section 401(a) of the Code, that accepts the distributee's eligible rollover distribution.  In the case of an eligible rollover distribution to the surviving spouse, for distributions made prior to January 1, 2002, an eligible retirement plan is an individual retirement account or individual retirement annuity, and for distributions made after December 31, 2001, an eligible retirement plan shall also include a qualified trust described in Section 401(a) of the Code.  For distributions made after December 31, 2001, an eligible retirement plan with respect to that portion of an eligible rollover distribution that is not includable in gross income (determined without regard to the exclusion for net unrealized appreciation with respect to employer securities) shall be a qualified trust under section 401(a) of the Code which is a defined contribution plan and which separately accounts for amounts so transferred (including separately accounting for the portion of such distribution which is includable in gross income and the portion of such distribution which is not so includable), an individual retirement account described in section 408(a) of the Code, or an individual retirement annuity described in section 408(b) of the Code.

(iii)    Distributee. A distributee includes a Participant or former Participant. In addition, the Participant's or former Participant's Surviving Spouse and the Participant's or former Participant's Spouse or former Spouse who is the alternate payee under a "qualified domestic relations order," as defined in Section 414(p) of the Code, are distributees with regard to the interest of the spouse or former spouse.

(iv)    Direct rollover. A direct rollover is a payment by the Plan to the eligible retirement plan specified by the distributee.

ARTICLE EIGHT

Advisory Committee

8.1    Appointment of the Advisory Committee. The Plan shall be administered by a Committee consisting of not less than three nor more than six members to be appointed by and to serve at the pleasure of the Policy Board (effective July 1, 1998, the Board of Partners and Principals). Vacancies in the Committee shall be filled by the Policy Board (effective July 1, 1998, the Board of Partners and Principals).

8.2    Organization of the Advisory Committee. The members of the Committee shall elect a chairman from among the Committee membership and a secretary who may, but need not, be one of the members of the Committee, and may appoint from their number such committees with such powers as they shall determine; may authorize one or more of their number, or any agent, to execute or deliver any instrument or to make any payment in their behalf; and may employ counsel, agents, and such clerical, accounting and actuarial services as they may require in carrying out the provisions of the Plan.

8.3    Decisions of the Advisory Committee. Three of the members of the Committee at the time in office shall constitute a quorum for the transaction of business. All resolutions or other action taken by the Committee shall be by vote of a majority of the members of the Committee present at any meeting, or without a meeting by instrument in writing signed by all the members of the Committee.

8.4    Duties of the Advisory Committee. The Committee shall have full and complete discretionary authority to administer the Plan except to the extent any such powers are vested in any other Fiduciary. The Committee may from time to time establish rules for the administration of the Plan. Except as otherwise herein expressly provided, the Committee shall have the exclusive right to interpret the Plan and to decide any matters arising in connection with the administration and operation of the Plan, and any rules, interpretations or decisions so made shall be conclusive and binding on all persons having an interest in the Plan; provided, however, that all such rules, interpretations and decisions shall be applied in a uniform manner to all Employees similarly situated. It is intended that the discretion of the Advisory Committee be subject to the abuse of discretion standard set forth in Firestone Tire & Rubber Co. v. Bruch, 109 S. Ct. 998 (1989).

8.5    Compensation of the Advisory Committee. No member of the Committee shall receive any compensation for his services as such.

8.6    Advisory Committee to Compute and Certify Amount of Retirement Benefit. Subject to the provisions of this Plan, it shall be the duty of the Committee to compute and certify to the Trustee the amount of retirement benefit payable hereunder to any retiring or terminating Participant or to any Surviving Spouse.

8.7    Reliance on Actuary, Accountant, Controller, Counsel and Other Experts. The Committee shall be entitled to rely conclusively upon all tables, valuations, certificates, opinions and reports furnished by any actuary, accountant, controller, counsel or other person who is employed or engaged for such purposes.

8.8    Expenses Paid Out of Trust Fund. All expenses that shall arise in connection with the Administration of the Plan shall be paid out of the property of the Trust Fund unless paid by the Employing Firms.

8.9    Claim Procedure.

A.    Filing a Claim. Any Participant under the Plan may file a written claim for a benefit with the Plan Administrator or with a person named by the Plan Administrator to receive claims under the Plan.

B.    Notice of Denial of Claim. In the event of denial or limitation of any benefit due to or requested by any Participant (or his beneficiary) under the Plan, the Participant shall be given a written notification containing specific reasons for the denial of his benefit. The written notification shall contain specific reference to the pertinent Plan provisions on which the denial is based. In addition, the written notification shall contain a description of any additional material or information necessary for the Participant to perfect a claim, and an explanation of why such material or information is necessary. The written notification shall further provide appropriate information as to the steps to be taken if the Participant wishes to submit his claim for review. The written notification shall be given to a Participant within ninety (90) days after receipt of his claim by the Plan Administrator unless special circumstances require an extension of time, not to exceed ninety (90) days from the end of the initial 90-day period for processing the claim. If such an extension of time for processing is required, written notice of the extension shall be furnished to the Participant prior to the termination of said initial 90-day period, and such notice shall indicate the special circumstances which make the extension appropriate and the date by which the Advisory Committee expects to render the final decision.

C.    Right of Review. In the event of a denial or limitation of his benefit, the Participant or his duly authorized representative shall be permitted to review pertinent documents and to submit to the Plan Administrator issues and comments in writing. In addition, the Participant or his duly authorized representative may make a written request for full and fair review of his claim and its denial by the Plan Administrator; provided, however, that such written request must be received by the Plan Administrator within sixty (60) days after the receipt by the claimant of written notification of the denial or limitation of the claim. The 60-day requirement may be waived by the Plan Administrator in appropriate cases.

D.    Decision on Review. A decision shall be rendered by the Plan Administrator within sixty (60) days after the receipt of the request for review, provided that where special circumstances require an extension of time for processing the decision, it may be postponed on written notice to the Participant (prior to the expiration of the initial 60-day period for an additional sixty (60) days), but in no event shall the decision be rendered more than one hundred twenty (120) days after the receipt of such request for review. Any decision by the Plan Administrator shall be furnished to the Participant in writing and shall set forth the specific reasons for the decision and the specific Plan provisions on which the decision is based. Any decision by the Plan Administrator shall be final, conclusive, and binding on the Participant and all persons.

E.    Court Action. No Participant (or his beneficiary) shall have the right to seek judicial review of a denial of benefits, or to bring any action in any court to enforce a claim for benefits, prior to filing a claim for benefits and exhausting his rights to review under this Section.

ARTICLE NINE

Amendment and Termination

9.1   *Right to Amend or Terminate.* The Firm reserves the right, by action of the Policy Board (effective July 1, 1998, the Board of Partners and Principals; and, effective December 14, 2001, the Finance Committee of the Board of Partners and Principals), to amend, modify, terminate or discontinue contributions under the Plan in whole or in part at any time. No amendment of the Plan shall be effective unless the Plan as so amended continues to be for the exclusive benefit of Participants, Terminated Participants, Annuitants, Early Annuitants and Surviving Spouses, and no amendment shall deprive any such person without his consent of any benefit theretofore accrued or vested in him in violation of Section 411 (d)(6) of the Code, provided that (i) any and all amendments may be made, retroactively if required, which are necessary to qualify or maintain the qualification of the Plan under Section 401(a) of the Code (or any successor statutory provision) and (ii) the Firm shall in no event be required to make an amendment that will increase the cost of the Plan.

9.2   Distribution of Funds Upon Termination.

    A.   Allocation of Assets. In the event of termination of the Plan, the assets of the Plan shall be allocated in accordance with the priorities established in Section 4044 of the Act (or any successor statutory provision). In the event of a partial termination of the Plan, that portion of the assets of the Plan allocable to the terminating Employees shall be allocated as aforesaid.

    B.   Vesting Upon Termination or Partial Termination of the Plan. In the event of the "termination" or "partial termination" of the Plan (as those terms are used in Section 411(d)(3) of the Code, or any successor statutory provision), the rights of Participants to benefits accrued to the date of such termination or partial termination, to the extent funded as of such date, shall be nonforfeitable.

    C.   Recapture of Certain Payments. In the event that the Trust Fund at termination is insufficient to provide all benefits guaranteed by the Pension Benefit Guaranty Corporation, any payment of retirement income in excess of $10,000 received during any 12-month period within the three years immediately preceding the date of termination of the Plan shall be deemed to have been paid subject to the provisions of Section 4045 of the Act (or any successor statutory provision).

    D.   Reversion of Assets. In the event of termination of the Plan because of failure to obtain a favorable determination letter from the Internal Revenue Service that the Plan qualifies under Section 401(a) of the Code, the Employing Firms shall be entitled to a return of any contributions which they may have made pursuant to Article Three for any Plan Year for which the Plan is held to be not qualified under Section 401(a) of the Code. Such contributions shall be returned within a period of one year from the date of denial of qualification. *Further, any amount remaining in the Trust Fund after the full satisfaction of all liabilities under the Plan shall be returned to the Employing Firms to the extent permitted by the Trust Agreement.*

9.3   Failure of Plan to Qualify Upon Amendment. If any amendment to the Plan should be determined not to meet the qualification requirements under Section 401(a) of the Code, then such amendment shall be null and void and no Participant or beneficiary shall have any rights whatsoever created by such amendment, and the rights of a Participant or beneficiary shall be determined under the Plan prior to such amendments.

ARTICLE TEN

General Provisions

10.1  Responsibility of Fiduciaries.

A.  The members of the Policy Board and the Committee shall discharge their duties with respect to the Plan solely in the interests of the Participants, Terminated Participants, Surviving Spouses, Annuitants and Early Annuitants and with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

B.  No Fiduciary under the Plan shall be liable for an act or omission of another person in carrying out any fiduciary responsibility where such fiduciary responsibility is allocated to such other person by the Plan or pursuant to a procedure established in the Plan except to the extent that:

(1)  such Fiduciary participated knowingly in, or knowingly undertook to conceal an act or omission of such other person, knowing such act or omission to be a breach of fiduciary responsibility;

(2)  such Fiduciary, by his failure to comply with Section 404(a)(1) of the Act (or any successor statutory provision) in the administration of his specific responsibilities which give rise to his status as a Fiduciary, has enabled such other person to commit a breach of fiduciary responsibility;

(3)  such Fiduciary has knowledge of a breach of fiduciary responsibility by such other person, unless he makes reasonable efforts under the circumstances to remedy the breach; or

(4)  such Fiduciary is a "named fiduciary" (as such term is defined in Section 402(a)(2) of the Act, or any successor statutory provision) and has violated his duties under Section 404(a)(1) of the Act (or any successor statutory provision):

(a)  with respect to the allocation of fiduciary responsibilities among named fiduciaries or the designation of persons other than named fiduciaries to carry out fiduciary responsibilities under the Plan;

(b)  with respect to the establishment or implementation of procedures for allocating fiduciary responsibilities among named fiduciaries or the designation of persons other than named fiduciaries to carry out fiduciary responsibilities under the Plan; or

(c)  in continuing the allocation of fiduciary responsibilities among named fiduciaries or the designation of persons other than named fiduciaries to carry out fiduciary responsibilities under the Plan.

C.  Anything in the Plan, or any amendment thereof, to the contrary notwithstanding, no provision of the Plan shall be so construed as to violate the requirements of Sections 404, 405, 406 and 407 of the Act (or any successor statutory provisions).

10.2  No Guaranty of Employment. The Plan shall not be deemed to constitute a contract between any Employing Firm and any Employee or to be a consideration for, or an inducement for, the employment of any Employee by any Employing Firm. Nothing contained in the Plan shall be deemed to give any Employee the right to be retained in the service of an Employing Firm or to interfere with the right of an Employing Firm to discharge or to terminate

the service of any Employee at any time without regard to the effect such discharge or termination may have on any rights under the Plan.

10.3    Payments to Minors and Incompetents. If any person entitled to receive any benefits hereunder is known to be a minor or is deemed by the Committee to be, or is to the Committee's knowledge adjudged legally to be incapable of giving valid receipt and discharge for such benefits, the same shall be paid to such other persons as the Committee may designate or to the duly appointed guardian of the person so entitled. Such payment shall, to the extent made, be deemed a complete discharge of any liability for such payment under the Plan.

10.4    Nonalienation of Benefits. No benefit payable under the Plan shall be subject in any manner to alienation, anticipation, assignment, garnishment or pledge; and any attempt to alienate, anticipate, assign, garnishee or pledge the same shall be void; and no such benefits shall be in any manner liable for or subject to the debts, liabilities, engagements or torts of any person entitled thereto; and if any such person is adjudicated bankrupt or attempts to alienate, anticipate, assign or pledge any benefits, then such benefits shall cease, and in this event the Committee shall cause the same to be held or applied to or for the benefit of the person entitled thereto, his spouse, his children or other dependents, or relatives, or any of them, in such manner and in such proportion as the Committee, in its discretion, may deem proper. This Paragraph 10.4 shall not apply to any "qualified domestic relations order", as that term is defined in Section 414(p) of the Code (or any successor provision) and the regulations thereunder.

10.5    Appointment of Trustee(s). The Trustee(s) shall have such power as to investments, reinvestments, control and disbursement of the Trust Fund as shall be set forth in the Trust Agreement, which may be modified from time to time. No person shall have any interest in, or right to, any part or all of the Trust Fund, except as expressly provided in the Plan or the Trust Agreement. The Trust Agreement, as from time to time in effect, shall be a part of the Plan and the rights and duties of any person under the Plan shall be subject to all the terms and provisions of the Trust Agreement. The Policy Board may remove the Trustee(s) at any time in accordance with the terms of the Trust Agreement and upon such removal or upon the resignation of any such Trustee(s), the Policy Board shall designate a successor Trustee(s).

10.6    Purchase of Annuities. If the Committee for any reason deems it advisable, any or all of the retirement benefits payable under the Plan may be provided through the purchase of annuities from such insurance company or companies as may be approved by the Committee. Payment therefor shall be made from the Trust Fund.

10.7    Limitation of Benefits. The limitations described in this Section apply for Plan Years beginning on or after January 1, 1994 in the event of a termination of the Plan or a distribution to a Participant described herein.

A.    Plan Termination. In the event of a termination of the Plan, the benefit of any Highly Compensated active or former Employee is limited to a benefit that is nondiscriminatory under Section 401(a)(4) of the Code.

B.    Limitation of Benefits. The benefits distributed to any of the 25 Highly Compensated Employees or Highly Compensated former Employees who have the greatest Compensation from an Employing Firm in the current or any prior Plan Year are restricted such that the annual payments are no greater than an amount equal to the payment that would be made on behalf of the Employee under a single life annuity that is the Actuarial Equivalent of the sum of the Employee's accrued benefit and the Employee's other benefits under the Plan (other than a Social Security supplement) and the amount of the payments that the Employee is entitled to receive under a Social Security supplement, if any.

The preceding paragraph shall not apply if: (i) after payment to or on behalf of an Employee of benefits payable, as determined without the application of the limitations described in the preceding paragraph, the value of Plan assets equals or exceeds 110% of the value of current liabilities, as defined in Section 412(c)(7) of the Code, or (ii) the value of the benefits payable to or on behalf of the Employee, as determined without the application of the limitations described in the preceding paragraph, is less than one percent of the value of current liabilities before distribution, or (iii) the value of the benefits payable to or on

33

behalf of the Employee, as determined without the application of the limitations described in the preceding paragraph, does not exceed the amount described in Section 411(a)(11)(A) of the Code, or (iv) the Plan requires adequate security to guarantee any repayment of benefits under the circumstances and upon the terms described in Rev. Rul. 92-76, 1992-38 I.R.B. 5.

10.8   No Diversion of Assets.

A.   Exclusive Benefit. Subject to the provisions of Paragraph 9.2D, all contributions when made to the Trust Fund and all property and funds of the Trust Fund, including income from investments and from all other sources, shall be retained for the exclusive benefit of Participants, Terminated Participants, Surviving Spouses, Annuitants and Early Annuitants included in the Plan and shall be used to pay benefits provided hereunder or to pay expenses of administration of the Plan and the Fund.

B.   Return of Employing Firms Contributions. To the extent permitted or required by ERISA and the Code, contributions to the Trust under this Plan are subject to the following conditions:

(i)   If a contribution or any part thereof is made to the Trust by the Employing Firm under a mistake of fact, such contribution or part thereof shall be returned to the Employing Firm within one year after the date the contribution is made;

(ii)   Anything in this Section 10.8 to the contrary notwithstanding, (1) no earnings on an Employing Firm contribution shall be returned to the Employing Firm and losses on the contribution shall reduce the amount to be returned, and (2) no return of an Employing Firm's contribution shall be made to the extent that a Participant's accrued benefit would be reduced to less than his accrued benefit had the contribution to be returned not been made;

(iii)   Contributions to the Trust are specifically conditioned on their deductibility under the Code and, to the extent a deduction is disallowed for any such contribution, such amount shall be returned to the Employing Firm within one year after the date of the disallowance of the deduction.

10.9   Mergers, Consolidations and Transfers of Plan Assets. In the case of any merger or consolidation of the Plan with, or transfer of assets or liabilities of the Plan to any other plan, each Participant shall (if the Plan then terminated) receive a benefit immediately after such merger, consolidation or transfer which shall be at least equal to the benefit he would have been entitled to receive immediately before such merger, consolidation or transfer (if the Plan had then terminated).

10.10   Notice to the Committee. Each Participant, each type of Annuitant and each Surviving Spouse must furnish Notice to the Committee of such information as it may reasonably request for the purpose of the proper administration of the Plan. Requests to the Committee for any information or other communications must be made on a Notice to the Committee.

10.11   Governing Law. The provisions of the Plan shall be construed, enforced and administered in accordance with the laws of the State of New York, except as any such laws may be superseded by the Act.

10.12   Effective Date. The Plan shall become effective as of July 1, 1975.

## ARTICLE ELEVEN

### Inclusion of Prior Retirees as Annuitants

11.1 Any retired former Employee of an Employing Firm or his Surviving Spouse who as of June 30, 1975 was receiving a pension under the Predecessor Plan or directly from the Firm shall be an Annuitant commencing July 1, 1975. Commencing with July 1, 1975 each such Annuitant or Surviving Spouse shall receive from the Trust Fund, as a monthly retirement benefit, the same aggregate amount as he had received from the aforementioned sources in the month prior to that date. The Enrolled Actuaries shall take the aggregate cost of this benefit into account in determining the past service liability under the Plan.

# ARTICLE TWELVE

## Past Service Credits

12.1    Credited Service. With respect to any Participant who qualified as such on July 1, 1975, Employment prior to that date shall be taken into account in determining his Credited Service as if the Plan had been in effect from the date his Employment commenced with the following exception: in applying Paragraph 4.1 for this purpose, age 30 shall be substituted for age 25.

12.2    Vestable Service. With respect to any Participant who qualified as such on July 1, 1975, any year ended prior to that date which is counted as a year of Credited Service under Paragraph 12.1 shall also be counted as a year of Vestable Service. In addition, in the case of any Participant who commenced Employment prior to July 1, 1975 but with respect to whom the year ended on June 30, 1975 is not a year of Credited Service under Paragraph 12.1, that year shall nevertheless count as a year of Vestable Service if:

(i)    The Participant had at least 1,000 hours of Employment in that year, and

(ii)    He had attained age 21 prior to the beginning of that year.

12.3    Minimum Benefit. Any Participant who shall be 57 years of age or older on July 1, 1975 and whose Average Final Compensation shall be no more than $20,000 shall be paid out of the Trust Fund the higher of the benefit calculated under this Plan or the benefit payable under the Firm's prior unqualified plan which after 25 years of service provided a maximum benefit of 33 1/3% of Average Final Compensation without deduction for social security. In the case of optional early retirement under Paragraph 5.7, the benefit determined under the prior unqualified plan shall also be reduced in the manner set forth in Paragraph 5.7C.

ARTICLE THIRTEEN

Top-Heavy Rules

13.1  Applicability of Top Heavy Rules. If the Plan is or becomes a Top Heavy Plan for any Plan Year beginning after 1983, the provisions of this Article Thirteen shall apply and shall supersede all other conflicting provisions of the Plan during any Plan Year in which the Plan is Top Heavy.

13.2  Top Heavy Status.

    A.    Determination. The Plan shall be a Top Heavy Plan if any of the following conditions exist:

        (i)    If the top heavy ratio for the Plan exceeds 60% and the Plan is not part of any required aggregation group or permissive aggregation group of plans.

        (ii)    If the Plan is part of a required aggregation group of plans but not part of a permissive aggregation group and the top heavy ratio for the group of plans exceeds 60%.

        (iii)    If the Plan is part of a required aggregation group and part of a permissive aggregation group of plans and the top heavy ratio for the permissive aggregation group exceeds 60%.

        Solely for the purpose of determining if the Plan, or any other plan included in a required aggregation group of which the Plan is a part, is top heavy (within the meaning of Section 416(g) of the Code) the accrued benefit of an Employee other than a key employee (within the meaning of Section 416(i)(1) of the Code) shall be determined under (a) the method, if any, that uniformly applies for accrual purposes under all plans maintained by the Affiliated Employers, or (b) if there is no such method, as if such benefit accrued not more rapidly than the slowest accrual rate permitted under the fractional accrual rate of Section 411 (b)(1)(C) of the Code.

    B.    Top Heavy Ratio. The top heavy ratio shall be determined as follows:

        (i)    If the Employing Firm sponsors one or more defined benefit plans (including any simplified employee pension plans) and the Employing Firm has never maintained any defined contribution plans which have covered or could cover a Participant in the Plan, the top heavy ratio shall be a fraction, the numerator of which is the sum of the present value of accrued benefits of all Key Employees as of the determination date (including any part of any accrued benefit distributed during the five year period ending on the determination date), and the denominator of which is the sum of the present value of all accrued benefits (including any part of any accrued benefit distributed in the five year period ending on the determination date) of all Participants as of the determination date, determined in accordance with Section 416 of the Code and the regulations thereunder.

        (ii)    If the Employing Firm sponsors one or more defined benefit plans (including any simplified employee pension plan) and the Employing Firm sponsors or has sponsored one or more defined contribution plans which have covered or could cover a Participant, the top heavy ratio is a fraction, the numerator of which is the sum of (a) the present value of accrued benefits for all Key Employees under the defined benefit plans determined under Paragraph (i), above, and (b) the sum of the account balances of all Key Employees under the aggregated defined contribution plans for all Key Employees as of the determination date(s), and the denominator of which is the sum of (1) the present value of accrued benefits of all participants under the aggregated defined

benefit plans determined under (i), above, and (2) the sum of the account balances of all participants under the aggregated defined contribution plans, determined in accordance with Section 416 of the Code and the regulations thereunder. Both the numerator and the denominator of the top heavy ratio shall be adjusted for any distribution of an account balance or accrued benefit made in the five year period ending on the determination date.

(iii)    The account balances and accrued benefits of a Participant who was formerly a Key Employee but who is not a Key Employee during the current Plan Year shall be disregarded in calculating the numerator and denominator of the top heavy ratio.

(iv)    The account balances and accrued benefits of a Key Employee who has not performed any services for the Employing Firm at any time during the five year period ending on the determination date shall not be taken into account in determining the top heavy ratio.

(v)    In calculating the top heavy ratio, the valuation date for determining the value of account balances and the present value of accrued benefits shall be the most recent accounting date that occurs within or ends with the 12 month period ending on the determination date, except as provided in Section 416 of the Code and the regulations thereunder for the first and second plan years of a defined benefit plan. When aggregating plans, the value of account balances and accrued benefits shall be calculated with reference to the determination dates occurring within the same calendar year.

(vi)    Any deductible contributions made by Participants shall not be included in computing the top heavy ratio. The extent to which distributions, rollovers, and trustee-to-trustee transfers are taken into account in determining the top heavy ratio shall be determined pursuant to Section 416 of the Code and the regulations thereunder.

13.3    Minimum Accrued Benefit.

A.    Minimum Accrual. Notwithstanding any other provision in this Plan except as provided in Subsections (C) and (D) below, for any Plan Year in which the Plan is Top Heavy, each Participant who is not a Key Employee and has completed 1,000 Hours of Service shall accrue a benefit (to be provided solely by Employing Firm contributions and expressed as a life annuity commencing at Normal Retirement Date) of not less than two percent of his or her highest average compensation for the five consecutive years for which the Participant had the highest compensation. The minimum accrual of a Participant who remains employed with the Employing Firm following his Normal Retirement Date shall be nonforfeitable. The minimum accrual is determined without regard to any Social Security contribution. The minimum accrual applies even though under other Plan provisions the Participant would not otherwise be entitled to receive an accrual, or would have received a lesser accrual for the year because (i) the non-Key Employee fails to make mandatory contributions to the Plan or (ii) the non-Key Employee's Compensation is less than a stated amount.

B.    Top Heavy Compensation. For purposes of computing the minimum accrued benefit, Top Heavy compensation shall include either (i) all compensation, as such term is defined for Section 415 purposes, (ii) all wages subject to tax under Section 3101(a) of the Code without the dollar limitation of Section 3121(a) of the Code or (iii) W-2 wages for the calendar year ending with or within the Plan Year.

C.    Limit on Accruals. No additional benefit shall be accrued pursuant to Subsection (A) above, to the extent that the total accruals on behalf of the Participant attributable to Employing Firm contributions will provide a benefit expressed as a life annuity commencing at Normal Retirement Date that equals or exceeds 20% of the Participant's highest average compensation for the five consecutive years for which the Participant had the highest compensation.

D.   Coverage by Other Plans. The provisions in Subsection (A), above, shall not apply to any Participant to the extent that the Participant is covered under any other plan or plans sponsored by the Employing Firm and the minimum allocation or benefit requirement applicable to this Top Heavy Plan will be met in the other plan or plans.

13.4   Vesting Requirement and Schedule. Notwithstanding the provisions of Article Seven, for any Plan Year during which the Plan is a Top Heavy Plan, the following vesting schedule shall be applicable if it would produce a greater vesting percentage for a Participant than that prescribed by Article Seven:

| Years of Vestable Service | Percent Vested |
|---|---|
| Less than 3 years | 0% |
| 3 or more years | 100% |

In the event the Plan ceases to be a Top Heavy Plan, the vesting percentage for a Participant who has completed three years of Employment shall be determined from the foregoing vesting schedule or the provisions set forth in Article Seven, whichever produces the greater vested interest. If a Participant had not completed five years of Employment prior to January 1, 1989, his vested interest shall be equal to the greater of A. or B. below.

A.   Is the product of the vesting percentage from the vesting schedule above and the Participant's accrued benefit as of the last day of the most recent Plan Year during which the Plan was a Top Heavy Plan, and

B.   Is the Participant's vested interest determined under the provisions of Article Seven.

5   Definitions. The following words and phrases shall have the meanings set forth below for purposes of this Article Thirteen:

A.   Determination Date. The last day of the first Plan Year, and for subsequent Plan Years, the last day of the preceding Plan Year, during which the Plan is Top Heavy.

B.   Key Employee. Any Employee or former Employee, and beneficiaries of such Employee, who at any time during the Plan Year or any of the four preceding Plan Years was:

(i)   An officer of the Employing Firm with Compensation that exceeds 50% of the dollar limitation in Section 415(b)(1)(A) of the Code in effect for such Plan Year,

(ii)   One of the 10 Employees owning (or considered to own under Section 318 the Code) the largest interests in the Employing Firm, provided the Employee's Compensation from the Employing Firm for the Plan Year exceeds the maximum dollar limitation in effect under Section 415(c)(1)(A) of the Code for the Plan Year,

(iii)   An Employee owning at least a five percent interest in the Employing Firm, or

(iv)   An Employee with Compensation from the Employing Firm of more than $150,000 for the Plan Year who is a one percent owner of the Employing Firm.

The determination of who is a Key Employee shall be made in accordance with Section 416(i)(1) of the Code and the regulations thereunder.

C.   Non-Key Employee. Any Employee other than a Key Employee.

39

D.    Permissive Aggregation Group. The required aggregation group of plans sponsored by the Employing Firm, plus any other plan or plans of the Employing Firm which would continue to satisfy the requirements of Sections 401(a)(4) and 410 of the Code when considered as a group with the required aggregation group.

E.    Present Value Factors. For purposes of determining the present value for this Article Thirteen, the following factors shall be used: the mortality table specified in Section 2.1 of the Plan, and five percent interest per annum.

F.    Required Aggregation Group. Each qualified plan sponsored by the Employing Firm in which at least one Key Employee participates, and any other qualified plan sponsored by the Employing Firm which enables a plan in which a Key Employee participates to meet the requirements of Section 401(a)(4) or 410 of the Code.

G.    Valuation Date. The most recent accounting date that occurs within or ends with the 12 month period ending on the determination date, except as provided in Section 416 of the Code and the regulations thereunder for the first and second plan years of a defined benefit plan.

ARTICLE FOURTEEN

Limitation on Benefits

14.1   Maximum Benefit Accruals.

A.   Applicability. This Paragraph 14. 1, except for Paragraph D, shall apply regardless of whether any Participant is or has ever been a Participant in another qualified plan maintained by an Employing Firm or an Affiliated Employer. If any Participant is or has ever been a participant in another qualified plan or a welfare benefit fund (as defined in Section 419(e) of the Code) maintained by an Employing Firm or an Affiliated Employer, Paragraph 14.2 shall also apply to such Participant's benefit.

B.   Reduction in Accrual. The Annual Benefit, as defined in Paragraph 14.4C, payable to a Participant shall not at any time exceed the Maximum Permissible Amount, as defined in Paragraph 14.4L. If the benefit the Participant would otherwise accrue during the Limitation Year, as defined in Paragraph 14.4K, would produce an Annual Benefit in excess of the Maximum Permissible Amount, the rate of accrual shall be reduced so that the Annual Benefit will equal the Maximum Permissible Amount.

C.   Participant Contributions. The Plan shall accept no Participant contributions.

D.   Exception for de Minimis Benefits. The limitation in Paragraph B is deemed satisfied if the Annual Benefit payable to a Participant is not more than $1,000 multiplied by the Participant's number of years of service (not to exceed 10) with an Employing Firm or an Affiliated Employer, and the Employing Firm or Affiliated Employer has not at any time maintained a defined contribution plan in which such Participant participated.

2   Participation in Other Qualified Plans. This Paragraph 14.2 shall apply if any Participant is or has ever been a participant in another qualified plan or welfare benefit fund (as defined in Section 419(e) of the Code) maintained by the Employing Firm or an Affiliated Employer.

A.   Participation in Defined Benefit Plan. If the Participant is covered by another qualified defined benefit plan or plans maintained by the Employing Firm or an Affiliated Employer and the sum of the Participant's Annual Benefit accrued under the Plan and such plan(s) exceeds the Maximum Permissible Amount, the accrual of benefits in excess of the Maximum Permissible Amount shall be reduced as follows. The Annual Benefit accrued by the Participant under the Plan for any Limitation Year shall be reduced so that the Maximum Permissible Amount shall not be exceeded for such Limitation Year. In the event reduction of the accrual of the Participant's Annual Benefit under the Plan is not sufficient to reduce the aggregate Annual Benefits for such Limitation Year to the Maximum Permissible Amount, the Annual Benefit(s) under such other plan(s) sponsored by any Employing Firm or an Affiliated Employer shall be reduced for the Limitation Year according to the terms of such plans(s).

B.   Participation in Defined Contribution Plan. For Limitation Years beginning prior to January 1, 2000, if the Participant is or has ever been a participant in a defined contribution plan or plans maintained by an Employing Firm or an Affiliated Employer, and the sum of the Defined Benefit Fraction and the Defined Contribution Fraction, as defined in Paragraphs 14.4G and I, respectively, exceeds 1.0, the Annual Benefit accrued and/or Annual Additions, as defined in Subsection 14.4B, made on the Participant's behalf for such Limitation Year shall be reduced as follows. The Annual Benefit accrued by the Participant for the Limitation Year under the Plan shall be reduced, and then, if necessary, the Annual Benefit accrued by the Participant under any other defined benefit plan(s) sponsored by an Employing Firm or an Affiliated Employer shall be reduced, such that the sum of both fractions as adjusted does not exceed 1.0. In the event reductions in the Annual Benefit accrued to such defined benefit plan(s) are insufficient to reduce the sum of

41

the Defined Contribution Fraction and the Defined Benefit fraction to 1.0, the Annual Additions which are credited to the Participant for the Limitation Year in which the sum of the Defined Benefit Fraction and the Defined Contribution Fraction exceeds 1.0 shall be reduced according to the terms of such defined contribution plan(s) to the extent necessary to reduce the sum of the fractions for the Limitation Year to 1.0

14.3    Nonreduction of Certain Benefits. In the case of an individual who was a participant in one or more defined benefit plans established by an Employing Firm or an Affiliated Employer as of the first day of the first Limitation Year beginning after December 31, 1986, the application of the limitations of this Article Fourteen shall not cause the Maximum Permissible Amount for such individual under all such defined benefit plans to be less than the individual's Current Accrued Benefit as defined in Paragraph 14.4E. The preceding sentence applies only if all such defined benefit plans met the requirements of Section 415 of the Code, for all Limitation Years beginning before January 1, 1987.

14.4    Definitions. The following words and phrases shall have the meanings set forth below for purposes of this Article Fourteen:

A.    Adjustment Factor. The cost of living adjustment factor prescribed by the Secretary of the Treasury under Section 415(d) of the Code for years beginning after December 31, 1987, applied to such items and in such manner as the Secretary shall prescribe.

B.    Annual Additions. The sum of the following amounts credited to a Participant's account for the Limitation Year:

(i)     Employing Firms contributions,

(ii)    Employee contributions, and

(iii)   Forfeitures.

Amounts allocated, after March 31, 1984, to an individual medical account, as defined in Section 415(l)(2) of the Code, which is part of a defined benefit plan maintained by any Employing Firm or an Affiliated Employer are treated as annual additions to a defined contribution plan. Also, amounts derived from contributions paid or accrued after December 31, 1985, in taxable years ending after such date, which are attributable to post-retirement medical benefits allocated to the separate account of a key employee, as defined in Section 419A(d)(3) of the Code, under a welfare benefit fund, as defined in Section 419(e) of the Code, maintained by any Employing Firm or an Affiliated Employer, are treated as annual additions to a defined contribution plan. The Annual Addition for any Limitation Year beginning before January 1, 1987 shall not be recomputed to treat all Employee contributions as an Annual Addition.

C.    Annual Benefit. A retirement benefit under the Plan which is payable annually in the form of a straight life annuity. Except as provided below, a benefit payable in a form other than a straight life annuity shall be adjusted to an Actuarial Equivalent straight life annuity before applying the limitations of this Article Fourteen. For forms of payment other than lump sums, the interest rate assumption used to determine actuarial equivalence will be the greater of the interest rate specified in Section 2.1 of the Plan or five percent. The Annual Benefit does not include any benefits attributable to Employee contributions or rollover contributions, or the assets transferred from a qualified plan that was not maintained by an Employing Firm or an Affiliated Employer. No actuarial adjustment to the benefit is required for the (i) value of a "qualified joint and survivor annuity (as defined in Treas. Reg. Section 1.401(a)-11(b)(a), (ii) the value of benefits that are not directly related to retirement benefits (such as the qualified disability benefit, preretirement death benefits, and post-retirement medical benefits), and (iii) the value of post-retirement cost-of-living increases made in accordance with federal income tax regulations.

D.    Section 415 Compensation. A Participant's earned income, wages, salaries, and fees for professional services, and other amounts received for personal services actually rendered in the course of Employment with an Employing Firm or an Affiliated Employer maintaining the Plan (including, but not limited to, commissions paid salesmen, compensation for services on the basis of a percentage of profits, commissions on insurance premiums tips and bonuses), but excluding the following:

(i)    Employing Firm contributions to a plan of deferred compensation which are not included in the Participant's gross income for the taxable year in which contributed, or Employing Firms contributions under a simplified employee pension plan to the extent such contributions are deductible by the Participant, or any distributions from a plan of deferred compensation;

(ii)    Amounts realized from the exercise of a nonqualified stock option, or when restricted stock (or property) held by the Participant either becomes freely transferable or is no longer subject to a substantial risk of forfeiture;

(iii)    Amounts realized from the sale, exchange or other disposition of stock acquired under a qualified stock option; and

(iv)    For Limitation Years beginning prior to January 1, 1998, other amounts which received special tax benefits, including but not limited to amounts under Section 125 or 401(k) of the Code, or contributions made by an Employing Firm (whether or not under a salary reduction agreement) towards the purchase of an annuity described in Section 403(b) of the Code (whether or not the amounts are actually excludable from the gross income of the Employee). For Limitation Years beginning after 2000, Section 415 Compensation shall include elective amounts that are not includable in the gross income of the Participant by reason of Section 132(f)(4) of the Code.

Section 415 Compensation for any Limitation Year is the compensation actually paid or includable in the Participant's gross income during such year except that Compensation in excess of the annual compensation limitation (described in Section 401(a)(17) of the Code) as adjusted for inflation by the Secretary of the Treasury shall not be considered.

E.    Current Accrued Benefit. A Participant's accrued benefit under the Plan, determined as if the Participant had separated from service as of the close of the last Limitation Year beginning before January 1, 1987, when expressed as an annual benefit within the meaning of Section 415(b)(2) of the Code. In determining the amount of a Participant's Current Accrued Benefit, the following shall be disregarded:

(i)    any change in the terms and conditions of the Plan after May 5, 1986; and

(ii)    any cost of living adjustment occurring after May 5, 1986.

F.    Defined Benefit Dollar Limitation. The limitation set forth in Section 415(b)(1) of the Code.

G.    Defined Benefit Fraction. A fraction, the numerator of which is the sum of the Participant's projected annual benefits under all the defined benefit plans (whether or not terminated) maintained by an Employing Firm or an Affiliated Employer, and the denominator of which is the lesser of 125% of the dollar limitation in effect for the Limitation Year under Section 415(b)(1)(A) of the Code, or 140% of the highest average compensation. Notwithstanding the preceding sentence, if the Participant was a participant in a plan in existence on May 6, 1986, the denominator of this fraction will not be less than 125% of the sum of the Annual Benefits under such plans which the Participant has accrued as of the end of the last Limitation Year beginning before January 1, 1987. The preceding sentence applies only if the defined benefit plans

43

individually and in the aggregate satisfied the requirements of Section 415 of the Code for all Limitation Years beginning before January 1, 1987.

H.   Defined Contribution Dollar Limitation. $30,000 or, if greater, one-fourth of the Defined Benefit Dollar Limitation in effect for the Limitation Year.

I.   Defined Contribution Fraction. A fraction, the numerator of which is the sum of (1) the Annual Additions to the Participant's accounts under all the defined contribution plans (whether or not terminated) maintained by any Employing Firm or an Affiliated Employer for the current and all prior Limitation Years (including the Annual Additions attributable to the Participant's non-deductible employee contributions to this and all other defined benefit plans (whether or not terminated) maintained by an Employing Firm or an Affiliated Employer), and (2) the Annual Additions attributable to all welfare benefit funds, as defined in Section 419(e) of the Code, maintained by an Employing Firm or an Affiliated Employer, and the denominator of which is the sum of the maximum aggregate amounts for the current and all prior Limitation Years of service with an Employing Firm or an Affiliated Employer (regardless of whether a defined contribution plan was maintained by an Employing Firm or an Affiliated Employer). The maximum aggregate amount in any Limitation Year is the lesser of 125% of the dollar limitation in effect under Section 415(c)(1)(A) of the Code or 35% of the Participant's Section 415 Compensation for such year. If the Employee was a participant as of the first day of the first Limitation Year beginning after December 31, 1986, in one or more defined contribution plans maintained by an Employing Firm or an Affiliated Employer that were in existence on May 6, 1986, the numerator of this fraction will be adjusted if the sum of this fraction and the defined benefit fraction would otherwise exceed 1.0 under the terms of the Plan. Under the adjustment, an amount equal to the product of (i) the excess of the sum of the fractions over 1.0 times (ii) the denominator of this fraction, will be permanently subtracted from the numerator of this fraction. The adjustment is calculated using the fractions as they would be computed as of the end of the last Limitation Year beginning before January 1, 1987, and disregarding any changes in the terms and conditions of the plans made after May 5, 1986, but using the limitations applicable to the first Limitation Year beginning on or after January 1, 1987.

If the Plan satisfied the applicable requirements of Section 415 of the Code as in effect for all Limitation Years beginning before January 1, 1987, an amount shall be subtracted from the numerator of the defined contribution plan fraction (not exceeding such numerator) as prescribed by the Secretary of the Treasury so that the sum of the defined benefit plan fraction and defined contribution plan fraction computed under Section 415(e)(1) of the Code (as revised by this Paragraph) does not exceed 1.0 for such Limitation Year.

J.   Highest Average Compensation. The average compensation for the three consecutive years of service with any Employing Firm or an Affiliated Employer that produces the highest average.

K.   Limitation Year. The calendar year.

L.   Maximum Permissible Amount. The Maximum Permissible Amount at a Participants Social Security Retirement Age, as defined in Paragraph 14.4N, is the lesser of $90,000 or 100% of the Participant's Highest Average Compensation. The Maximum Permissible Amount shall be adjusted as follows:

   (i)   Adjustment for Inflation. Effective January 1, 1988, and each January 1 thereafter, the $90,000 limitation above will be automatically adjusted to the new dollar limitation determined by the Commissioner of Internal Revenue for that calendar year. The new limitation will apply to Limitation Years ending within the calendar year of the date of the adjustment.

   (ii)   Preservation of Current Accrued Benefit. Notwithstanding anything to the contrary in this Paragraph 14.4, if the Plan was actually in existence on May 6, 1986 and met the applicable requirements of Section 415 of the Code as in effect for all Limitation Years, if the Current Accrued Benefit of an individual who was a Participant as of the first day of the Limitation Year beginning on or after

44

January 1, 1987 exceeds the benefit limitations under Section 415(b) of the Code (as modified in this Paragraph) then, for purposes of Sections 415(b) and 415(e) of the Code, the Defined Benefit Dollar Limitation with respect to such individual shall be equal to such Current Accrued Benefit.

(iii)    Adjustment for Early Retirement. If the Annual Benefit of a Participant commences before the Participant's Social Security Retirement Age, the Defined Benefit Dollar Limitation shall be adjusted so that it is the actuarial equivalent of an annual benefit of $90,000, multiplied by the Adjustment Factor, as defined in Paragraph 14.4A, as prescribed by the Secretary of the Treasury, beginning at the Social Security Retirement Age. The adjustment provided for in the preceding sentence shall be made in such manner as the Secretary of the Treasury may prescribe which is consistent with the reduction for old-age insurance benefits commencing before the Social Security Retirement Age under the Social Security Act. Effective for Limitation Years beginning after 1999, where the benefit commencement date is prior to Social Security Retirement Age but not prior to age 62, the Defined Benefit Dollar Limit shall be reduced by 5/9 of 1% for each month prior to the Social Security Retirement Date up to 36 months and by 5/12 of 1% for each month prior to the Social Security Retirement Date in excess of 36 months. Where the benefit commencement date is prior to age 62, the Defined Benefit Dollar Limit shall be further reduced based on (1) the applicable factor under Section 5.2 or Section 5.7 that is used to reduce the Participant's benefit or (2) 5% interest and the mortality table specified in Section 2.1, whichever produces a lower limit.

(iv)    Adjustment for Deferred Retirement. If the Annual Benefit of a Participant commences after the Participant's Social Security Retirement Age, the Defined Benefit Dollar Limitation shall be adjusted so that it is the Actuarial Equivalent of a benefit of $90,000 beginning at the Social Security Retirement Age, multiplied by the Adjustment Factor as provided by the Secretary of the Treasury, based on the lesser of the interest rate assumption under the Plan at Section 2.1 or on an assumption of five percent per year. Effective for Limitation Years beginning after 1999, the Defined Benefit Dollar Limit shall not be adjusted for deferred retirement.

(v)    Adjustment of Limitation for Years of Participation and Years of Service. If a Participant has completed less than 10 years of participation (as defined in Section 415(b)(5) of the Code), the Participant's Accrued Benefit shall not exceed the Defined Benefit Dollar Limitation, as adjusted, by multiplying such amount by a fraction, the numerator of which is the Participant's number of years (or part thereof) of participation in the Plan, and the denominator of which is 10.

If a Participant has completed less than 10 years of service (as defined in Section 415(b)(5) of the Code) with an Employing Firm or an Affiliated Employer, the limitations described in Sections 415(b)(1)(B) and 415(b)(4) of the Code shall be adjusted by multiplying such amounts by a fraction, the numerator of which is the Participant's number of years of service (or part thereof), and the denominator of which is 10.

In no event shall this clause (v) reduce the limitations provided under Sections 415(b)(1) and (4) of the Code to an amount less than one-tenth of the applicable limitation (as determined without regard to this clause (v)).

(vi)    Application to Changes in Benefit Structure. To the extent provided by the Secretary of the Treasury, this Paragraph 14.4L, shall be applied separately with respect to each change in the benefit structure of the Plan.

M.    Projected Annual Benefit: The Annual Benefit, to which the Participant would be entitled under the terms of the Plan assuming:

(i)    the Participant will continue employment until Normal Retirement Age under the Plan (or current age, if later), and

(ii)   the Participant's Section 415 Compensation for the current Limitation Year and all other relevant factors used to determine benefits under the Plan will remain constant for all future Limitation Years.

N.   Social Security Retirement Age. The age used as the retirement age for the Participant under Section 216(l) of the Social Security Act, except that such section shall be applied without regard to the age increase factor, and as if the early retirement age under Section 216(l)(2) of such Act were 62.

In witness whereof the Firm has caused this Plan to be executed on the date indicated below to be effective as of the dates stated above.

PricewaterhouseCoopers LLP

By: _____     Date: _____

John F. Carter
U.S. Partner Affairs Leader

G:\ebs\DRAFT\Nacron\PW Plans\PwC Retirement Plan_28Dec01.doc

## Appendix A

### Special Provisions Applicable to Participants who are CVC Participants

Notwithstanding any other provision of the Plan to the contrary, the provisions of this Appendix A shall apply to any Participant (a "CVC Participant") who (1) terminated employment from the Firm and commenced employment with The McGraw-Hill Companies, Inc. in connection with the Agreement For The Purchase And Sale Of Assets By And Between The McGraw-Hill Companies, Inc. As Buyer And PricewaterhouseCoopers LLP As Seller, dated as of August 2, 2001 (the "CVC Transaction"), and (2) was eligible to become, but was not yet, covered by the provisions of Section 6.3D of the Plan. Unless modified in this Appendix A, the general provisions of the Plan shall apply to a CVC Participant.

1. For purposes of Section 6.3D of the Plan:

    (A) Continuous and uninterrupted employment of a Participant, who is also a CVC Participant, by The McGraw-Hill Companies, Inc. that commenced immediately upon his termination of employment from the Firm in connection with the CVC Transaction, to his termination of employment from The McGraw-Hill Companies, Inc. shall be considered employment by the Firm for the purposes of determining whether the Participant:

    1. Is employed by the Firm upon his attainment of age 60 or age 65, and

    2. Has at least 20 years of Credited Service

    so as to be covered by Section 6.3D; provided, however, that if his Annual Retirement Benefit under this Plan or his Benefit under the Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP is distributed prior to the earlier of his termination of employment from The McGraw-Hill Companies, Inc. or April 1 following the calendar during which he attains age 70 1/2 then such age and/or Credited Service shall be determined without regard to his employment by The McGraw-Hill Companies, Inc. 95 Hours of Employment shall be credited to a CVC Participant for each semimonthly payroll period of the Firm during any part of which the CVC Participant is employed by The McGraw-Hill Companies, Inc. The amount of a CVC Participant's Annual Retirement Benefit shall be determined without regard to his employment with and compensation paid by The McGraw-Hill Companies, Inc.

    (B) The date that a Participant, who is also a CVC Participant, may elect the special option under Section 6.3D shall be the earliest of his (i) termination of employment from the Firm, (ii) termination of employment from The McGraw-Hill Companies, or (iii) attaining age 70 1/2, and such date shall be treated as his date of retirement for purposes of being covered by Section 6.3D, subject to the requirement of Section 6.3D that he have attained age 65 or age 60 with at least 20 years of Credited Service.

2. For purposes of this Appendix A, The McGraw-Hill Companies, Inc. shall include all corporations that are members of the controlled group of corporations (within the meaning of Section 414(b) of the Code) of which The McGraw-Hill Companies, Inc. is a member, and any trade or business (whether or not incorporated) which is under common control (within the meaning of Section 414(c) of the Code) with The McGraw Hill Companies, Inc.